O2CV1210 EXbA - N

FILED

Oct 15  9 56 AM '03

U. S. DISTRICT COURT
HAVEN. CONN.

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREW BARTON, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| VS. | : | NO. 302CV1210(PCD) |
| | : | |
| CITY OF BRISTOL; AND IN THEIR INDIVIDUAL | : | |
| AND OFFICIAL CAPACITIES, RICHARD MULLANEY | : | |
| POLICE SERGEANT; BRIAN SUCHINSKI, POLICE | : | |
| DETECTIVE; AFSCME LOCAL 3754; AND IN HIS | : | |
| INDIVIDUAL AND OFFICIAL CAPACITY MELVIN | : | |
| DEKOW, UNION PRESIDENT | : | |
| Defendants | : | JULY 31, 2003 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS, RICHARD MULLANEY AND BRIAN SUCHINSKI'S, MOTION FOR SUMMARY JUDGMENT

## I.    FACTS

In August of 1999, the defendant, Richard Mullaney, was a Detective Sergeant in the

Bristol Police Department and was responsible for supervising detectives on the Narcotics

Enforcement Team including the plaintiff, Andrew Barton. (Exhibit "A"). The defendant,

Brian Suchinski, also was a detective on the Bristol Police Department Narcotics

Enforcement Team in August, 1999. (Exhibit "B").

On August 31, 1999, a joint narcotics investigation was conducted by the Bristol and

West Hartford Police Departments at Meineke Muffler, 114 Farmington Avenue in Bristol.

KERNAN & HENRY, LLP    ATTORNEYS AT LAW
P. O. BOX 2156    •    WATERBURY, CONNECTICUT 06722    •    (203) 756-8961    •    JURIS NO. 30960    •    FAX (203) 754-2353

(Exhibit "A"; Exhibit "C").  Sergeant Mullaney, Detective Suchinski and the plaintiff all

participated in the investigation.  During the course of the investigation, the plaintiff

confronted Sergeant Mullaney and vigorously disputed his decision to arrest a suspect at the

scene rather than by obtaining a warrant. (Exhibit "A"; Exhibit "D"; Exhibit "E"; Exhibit

"F").  The confrontation occurred in the presence of detectives from the West Hartford

Police Department and Menieke Muffler employees.  (Exhibit "A"; Exhibit "D"; Exhibit

"F").  Detective Barton persisted in publicly debating the issue, at times raising his voice,

until Sergeant Mullaney was forced to firmly end the dispute. (Exhibit "A"; Exhibit "D";

Exhibit "F").   The plaintiff does not dispute that a discussion took place between himself

and Sergeant Mullaney concerning the manner in which the arrest was to be conducted.

(Exhibit "J" at 181).

On September 1, 1999, Sergeant Mullaney verbally reported Detective Barton's

conduct during the August 31, 1999 investigation to Detective Lieutenant Thomas Killiany,

who directed Sergeant Mullaney to document the incident in a written report. (Exhibit "A";

Exhibit "E").  Sergeant Mullaney submitted a written report to Lieutenant Killiany on

September 3, 1999, and the report was reviewed by Lieutenant Killiany, Captain Donald

Kalwat, and Bristol Police Chief John DiVenere. (Exhibit "A"; Exhibit "D"; Exhibit "E").

2

Lieutenant Killiany, Captain Kalwat and Chief DiVenere each directed Sergeant Mullaney to issue a written reprimand to the Detective Barton for violations of two sections of the Bristol Police Department Code of Conduct, Section 1.00 - Conduct Unbecoming an Officer and Section 2.22 - Quarreling with Other Employees or a Supervisory Officer in Public View. (Exhibit "A"; Exhibit "E"). On September 14, 1999, Sergeant Mullaney issued a written reprimand to Detective Barton at the direction of Lieutenant Killiany, Captain Kalwat and Chief DiVenere. (Exhibit "A"; Exhibit "G"; Exhibit "H").

On September 24, 1999, the plaintiff was removed from his position on the Emergency Response Team (ERT). (Complaint ¶26). On October 1, 1999, the plaintiff filed a grievance concerning his removal from the ERT. (Complaint ¶ 27; Exhibit "I").

At no time have the duties of the defendants, Sergeant Mullaney and Detective Suchinski, included supervising the Emergency Response Team, disciplining Emergency Response Team members or making decisions concerning the removal of officers from the Emergency Response Team. (Exhibit "A"; Exhibit "B"; Exhibit "J," at 43-44). Neither Sergeant Mullaney nor Detective Suchinski was personally involved in the decision to remove the plaintiff from his position on the ERT. (Exhibit "A"; Exhibit "B").

## II.     LEGAL STANDARD

3

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *See* Fed.R.Civ.P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994). The determination of which facts are material to a particular claim is made based upon the substantive law upon which those claims rest. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In determining whether there is a genuine issue as to any material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *See* Anderson, 477 U.S. at 255; Gallo, 22 F.3d at 1223; Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989); Project Release v. Prevost, 722 F.2d 960, 968 (2d Cir. 1983). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See* Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).). However, the nonmoving party "may not rest upon mere conclusory allegations or denials." *See* Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal citations omitted).

4

On a motion for summary judgment, a court cannot try issues of fact; it can only determine whether there are issues to be tried. *See* Anderson, 477 U.S. at 255; Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987). The function of the court at this stage is not to weigh the evidence and determine what is true, but rather to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord,* Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d. Cir. 1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

### III.    LAW AND ARGUMENT

      A.    **The defendants are entitled to summary judgment with respect to Count One of the Complaint because the plaintiff has failed to demonstrate that the defendants treated him differently than similarly situated persons.**

5

The Equal Protection Clause requires that the government treat all similarly situated individuals alike. Harlen Assoc. Inc. v. Village of Mineola, 273 F.3d 494, 499(2d Cir. 2001), quoting City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  The prototypical equal protection claim involves discrimination against people based on their membership in a protected class.  Harlen, 273 F.3d at 299.  However, the United States Supreme Court has affirmed that equal protection claims can be brought by a "class of one" where a plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. African Trade Co. v. Abromaitis, 294 F.3d 355, 362-363(2d Cir. 2002), quoting Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

In order to sustain a "class of one" Equal Protection claim, courts of the Second Circuit have traditionally required plaintiffs to prove both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. Harlen, 273 F.3d at 499, quoting LaTrieste Rest. & Cabaret v. Village of Portchester, 40 F.3d 587, 590 (2d Cir. 1994).

6

In the present case, the plaintiff can not, as a matter of law, demonstrate that he was treated differently from similarly situated individuals or that such differential treatment was based on impermissible motives. Instead, the evidence demonstrates that on August 31, 1999, during the course of a joint narcotics investigation being conducted by the Bristol and West Hartford Police Departments, the plaintiff became involved in a heated dispute with Sergeant Mullaney in public view and in the presence of officers from the West Hartford Police Department. (Exhibit "A"; Exhibit "D"; Exhibit "E"; Exhibit "F"). The public dispute continued until Sergeant Mullaney was forced to firmly end the confrontation. (Exhibit "A"; Exhibit "D"; Exhibit "F").

On September 1, 1999, Sergeant Mullaney verbally reported this incident to Detective Lieutenant Killiany. (Exhibit "A"; Exhibit "E"). Lieutenant Killiany directed Sergeant Mullaney to document the incident in a written report. (Exhibit "A"; Exhibit "E"). As instructed, Sergeant Mullaney submitted a written report to Lieutenant Killiany on September 3, 1999. (Exhibit "A"; Exhibit "D"; Exhibit "E"). Sergeant Mullaney's report indicated that the plaintiff, in public view, had interrupted Sergeant Mullaney's discussion with another officer, interjected his own opinion as to the manner in which an arrest should be conducted, vigorously disputed Sergeant Mullaney's decision, and continued to hotly

7

debate the issue until Sergeant Mullaney firmly ended the confrontation. (Exhibit "D").

Sergeant Mullaney's written report was reviewed not only by Lieutenant Killiany, but also by Captain Donald Kalwat and Bristol Police Chief John DiVenere. (Exhibit "E"). Lieutenant Killiany, Captain Kalwat and Chief DiVenere each concluded that the plaintiff had violated two sections of the Bristol Police Department Code of Conduct, and that, at the very least, the plaintiff should be issued a written reprimand. (Exhibit "A"; Exhibit "E").

In accordance with the recommendation of Lieutenant Killiany, Captain Kalwat and Chief DiVenere, Sergeant Mullaney issued a written reprimand to the plaintiff on September 14, 1999 for violations of Section 1.00 - Conduct Unbecoming an Officer, and Section 2.22 - Quarreling with Other Employees or a Supervisory Officer in Public View[1]. (Exhibit "A"; Exhibit "G"; Exhibit "H").

The plaintiff has failed to establish that under these circumstances Sergeant Mullaney treated the plaintiff differently from any other similarly situated officer. For example, the plaintiff offers no evidence which demonstrates that similar instances of conduct by other

---

[1] Pursuant to the Bristol Police Department Code of Conduct, a violation Section 2.22 - Fighting or Quarreling with Other Employees or a Supervisory Official in Public View is a "Class E" offense which carries a maximum penalty of suspension for 15 work days.

8

officers under the supervision of Sergeant Mullaney were unreported. The plaintiff also fails to establish that other officers who engaged in similar behavior were disciplined less severely than the plaintiff. Furthermore, the plaintiff fails to establish that Sergeant Mullaney had declined to follow the disciplinary recommendations of superior officers, including the Chief of Police, in any similar situation.

Accordingly, in the present case, there is no evidence from which a jury could conclude that Sergeant Mullaney treated the plaintiff differently from any other officer by reporting the plaintiff's public misconduct to superior officers and by following the disciplinary recommendations of those officers.

While the plaintiff does allege that Sergeant Mullaney's account of the August 31, 1999 incident is false, the plaintiff fails to substantiate this claim. (Complaint, Count 1, ¶ 10). Sergeant Mullaney's account of events was corroborated by Detective Kevin Mellon in a memorandum to Bristol Police Captain Donald Kalwat dated August 20, 2002. (Exhibit "F").

In his memorandum, Detective Mellon, who was an eyewitness to the August 31, 1999 incident, reported that Detective Barton had been loud and animated in pressing his point of view as to how the investigation should have been conducted. (Exhibit "F").

9

Detective Mellon also reported that Detective Barton continued to loudly debate the issue

until Sergeant Mullaney was forced to sternly end the dispute. (Exhibit "F"). Detective

Mellon reported that the entire incident had taken place in view of detectives from the West

Hartford Police Department and other members of the public. (Exhibit "F").

In his Complaint, the plaintiff also alleges specific instances in which he claims that

the defendants treated him differently from similarly situated officers.  However, the plaintiff

can not, as a matter of law, prove these allegations against the defendants.  For example, the

plaintiff alleges that Detective Suchinski "placed a rubber rat on the plaintiff's desk."

(Complaint, Count 1, ¶ 14).  However, when the plaintiff was asked during his deposition

whether he knew for a fact or had any evidence that Detective Suchinski placed the rubber

rat on his desk, the plaintiff responded "No, I don't." (Exhibit "J" at 74).  When the plaintiff

was asked whether anyone had told him that Suchinski placed the rubber rat on his desk, the

plaintiff responded, "No, they did not." (Exhibit "J" at 74).

The plaintiff also alleges that Detective Suchinski hid the plaintiff's rental car keys.

(Complaint, Count 1, ¶ 15).  When asked about this alleged conduct during his deposition,

the plaintiff stated only that:

Sometimes I would be the first person in the office and would go to get the keys to

10

the Infinity and they wouldn't be there. Time after time Detective Mendella found them locked in his desk. And he even mentioned to me how [Detective Suchinski] would retrieve the keys from his desk. Therefore, I would not be able to use the car.

(Exhibit "J" at 74-75).

Accordingly, the plaintiff cannot demonstrate that Detective Suchinski either placed the keys to the Infinity in Detective Mendella's desk or that he intended to conceal them from the plaintiff. Furthermore, the Infinity was not specifically assigned to the plaintiff, and the plaintiff was not personally entitled to its use. (Exhibit "B"; Exhibit "J" at 74). The Infinity was one of several vehicles used in the narcotics unit, and all vehicles were assigned daily on a first come first served basis. (Exhibit "B"; Exhibit "J" at 74).

The plaintiff also alleges that Detective Suchinski failed to give him important phone messages. (Complaint, Count 1, ¶ 16). During his deposition, the plaintiff testified that sometime after May of 1999, an informant told him that she had spoken with Detective Suchinski on the telephone and left a message for the plaintiff which the plaintiff never received. (Exhibit "J" at 78). The plaintiff further testified that this happened on numerous occasions, however, the plaintiff was unable to recall the dates or details of any other such occurrences. (Exhibit "J" at 78).

Detective Suchinski has expressly denied that he deliberately withheld any phone

11

messages from the plaintiff. (Exhibit "B").  Furthermore, even if the plaintiff's allegation

could be proven, evidence of one missed phone message, in and of itself, does not constitute

impermissibly differential treatment pursuant to the Equal Protection clause.  Missed phone

messages are not unheard of in any office and can happen to any individual for any number of

reasons.

The plaintiff also alleges that Detective Suchinski "made false allegations against the

plaintiff to get him into trouble," and "encouraged Mullaney to make false allegations against

the plaintiff regarding the August 31, 1999 investigation." (Complaint, Count 1, ¶ 17-18).

However, the plaintiff has failed to demonstrate not only that the allegations concerning the

August 31, 1999 incident were false, but also that Detective Suchinski was in any way

involved with the investigation.

Instead, the evidence in the present case demonstrates that following his personal

involvement in the incident, Sergeant Mullaney immediately reported the plaintiff's conduct

to Detective Lieutenant Killiany.  Lieutenant Killiany then requested a written account of the

incident from Sergeant Mullaney.  Sergeant Mullaney produced the written report which was

reviewed by Lieutenant Killiany, Captain Kalwat and Chiefe DiVenere. Based upon their

independent review of the incident, Lieutenant Killiany, Captain Kalwat and Chief DiVenere

12

recommended that the plaintiff be issued a written reprimand for his conduct.  There is no

evidence that Detective Suchinski was in any manner involved in this process.

Accordingly, because the plaintiff can not establish that the defendants treated him

differently from similarly situated officers based on an impermissible motive, the defendants

are entitled to summary judgment with respect to Count One of the Complaint.

    **B.**    <u>**The defendants are entitled to summary judgment as to Count Two of**</u>
<u>**the Complaint because the plaintiff cannot establish that the defendants**</u>
<u>**violated the plaintiff's substantive or procedural due process rights.**</u>

The Due Process clause of the Fourteenth Amendment provides: "[N]or shall any

State deprive any person of life, liberty or property without due process of law." <u>Daniels v.</u>

<u>Williams</u>, 474 U.S. 327, 331 (1986).  The Due Process clause of the Fourteenth Amendment

confers both substantive and procedural rights. <u>Albright v. Oliver</u>, 510 U.S. 266 (1994).

Substantive due process prevents the government from engaging in conduct that shocks the

conscience . . . or interferes with rights implicit in the concept of ordered liberty. <u>United</u>

<u>States v. Salerno</u>, 481 U.S. 739, 746 (1987), quoting <u>Rochin v. California</u>, 342 U.S. 165, 172

(1952); <u>Palko v. Connecticut</u>, 302 U.S. 319, 325-326 (1937).  When government action

depriving a person of life, liberty or property survives substantive due process scrutiny, it

must still be implemented in a fair manner . . . This requirement has traditionally been

13

referred to as procedural due process.  <u>Salerno</u>, 481 U.S. at 746, quoting <u>Mathews v.</u>

<u>Eldridge</u>, 424 U.S. 319, 335 (1976).

The United States Supreme Court has traditionally held that the interests which are

entitled to protection as a matter of substantive due process involve an individual's freedom

of choice with respect to certain basic matters of procreation, marriage and family life.

<u>Harrah Independent School Dist. v. Martin</u>, 440 U.S. 194, 198 (1979), citing <u>Kelley v.</u>

<u>Johnson</u>, 425 U.S. 238, 244 (1976); <u>Roe v. Wade</u>, 410 U.S. 113 (1973); <u>Eisenstadt v. Baird</u>,

405 U.S. 438 (1972); <u>Stanley v. Illinois</u>, 405 U.S. 645 (1972); <u>Griswold v. Connecticut</u>, 381

U.S. 479 (1965); <u>Meyer v. Nebraska</u>, 262 U.S. 390 (1923). Matters such as employment

sanctions and contract nonrenewal do not implicate substantive due process protection. *See*

<u>Harrah</u>, 440 U.S. at 198.

In the present case, the plaintiff has failed to allege the deprivation of any right

resembling his freedom of choice with respect to basic matters of procreation, marriage or

family life.  Instead, the plaintiff claims only that he was treated unfairly in the course of his

public employment.  Accordingly, in the present case, the plaintiff is not entitled to the

protection of substantive due process.

Procedural due process, on the other hand, imposes constraints on governmental

14

decisions which deprive individuals of liberty or property interests within the meaning of the Fifth and Fourteenth Amendments. Mathews v. Eldridge, 424 U.S. 319, 332 (1976). In the present case, the plaintiff has failed to establish the deprivation of any liberty or property interest sufficient to implicate procedural due process protection.

The United States Supreme Court has recognized only limited circumstances in which a public employee may establish a violation of his liberty interests. See Board of Regents v. Roth, 408 U.S. 564, 573 (1972). Thus, where a state actor fails to rehire an employee, certain circumstances surrounding the non-continuance of employment might give rise to a claim of denial of liberty interest. Abramson v. Pataki, 278 F.3d 93 (2d Cir. 2002), citing Roth, 408 U.S. at 573. These circumstances are: 1) that the employee was defamed; and 2) that the defamation occurred in the course of termination of governmental employment or was coupled with a deprivation of a legal right or status, such as a loss of job opportunities. Abramson, 278 F.3d at 101, 103.

In the present case, the plaintiff can not establish a violation of his liberty interests because the plaintiff cannot establish that he was defamed in the course of termination from public employment. The Second Circuit Court of Appeals has made it clear that "in order for public employees to assert cognizable violations of their liberty interests, the defamation

15

complained of must occur in the course of termination of employment." <u>Saulpaugh v.</u>

<u>Monroe Community Hospital</u>, 4 F.3d 134, 144 (1993), cert. denied 510 U.S. 1164 (1994),

citing <u>Paul v. Davis</u>, 424 U.S. 693, 709 (1976);  <u>Easton v. Sundram</u>, 947 F.2d 1011,1016 (2d

Cir. 1991), cert. denied 504 U.S. 911 (1992); <u>Neu v. Corcoran</u>, 869 F.2d 662 (2d Cir. 1989),

cert denied 493 U.S. 816 (1989).  Therefore, because the plaintiff does not claim that he was

terminated from employment with the Bristol Police Department, the plaintiff can not

establish a violation of his liberty interests.

     A person may, however, possess a protected property interest in public employment if

contractual or statutory provisions guarantee continued employment absent sufficient cause

for discharge.  <u>Abramson</u>, 278 F.3d at 99, citing <u>Goetz v. Windsor Cent. Sch. Dist.</u>, 698 F.2d

606, 608-609 (2d Cir. 1983).  In the present case, the plaintiff can not establish that he was

deprived of any constitutionally protected property interest in continued public employment.

     The plaintiff does not claim that he was actually terminated from his public

employment with the Bristol Police Department.  Instead, in the present case, the plaintiff

claims that he was deprived of a constitutionally protected property interest by his removal

from the ERT. (Complaint Count 2 ¶ 5).  However, the plaintiff's membership in the ERT, in

and of itself, did not constitute a constitutionally protected property interest.

16

The plaintiff's ERT membership did not constitute employment separate and distinct from the plaintiff's employment as a Bristol police officer.  At all times that the plaintiff was a member of the ERT, the plaintiff maintained his rank as Detective in the Narcotics Enforcement unit of the Bristol Police Department. (Exhibit "J" p. 21-22). The plaintiff did not receive a separate salary for his position on the ERT, nor did the plaintiff receive any change in his base pay as a result of his ERT membership. (Exhibit "J" p. 21-22). Instead, the plaintiff's position on the ERT was compensated only by overtime pay for the time that was spent by the plaintiff on his ERT duties.  (Exhibit "J" p. 21-22).

Courts of this Circuit have consistently held that the right to work overtime is not a constitutionally protected property interest. Caniello v. City of New York, NO. 00 Civ 3009 (BSJ) (S.D.N.Y. 2001). Where an employee has retained his rank and base pay after an administrative action, courts have not found an unconstitutional deprivation of property. Id., citing Kane v. Krebser, 44 F.Supp.2d 542 (S.D.N.Y. 1999); McNill v. N.Y.C. Dept. of Correction, 950 F. 564 (S.D.N.Y. 1996); Weg v. Macchiarola, 729 F.Supp. 328, 337-38 (S.D.N.Y. 1990); Boyd v. Schembri, 1997 U.S. Dist. LEXIS 11965 (S.D.N.Y. Aug. 13, 1997).  Accordingly, because the plaintiff does not claim that he was terminated from employment and claims only that he was removed from a position which provided him with

17

additional overtime pay, the plaintiff can not establish that he was deprived of a constitutionally protected property interest.

Furthermore, even if the plaintiff's position on the ERT did constitute a constitutionally protected property interest, there is no genuine issue as to the fact that the defendants, Sergeant Mullaney and Detective Suchinski, were not involved in the decision to remove the plaintiff from the ERT.  At the time of the plaintiff's removal from the ERT in 1999, Captain Richard Kalwat was in command of the ERT, and ultimately, the chief of police had the final say in decisions which affected the ERT. (Exhibit "A"; Exhibit "J"at 43). Neither Sergeant Mullaney nor Detective Suchinski was  involved in the ERT chain of command, and neither defendant would have been involved in the decision to remove the plaintiff from the ERT. (Exhibit "A"; Exhibit "B"; Exhibit "J"at 43-44).

Moreover, even if the defendants had in some way been involved in the decision to remove the plaintiff from the ERT, the defendants' actions would be entitled to the protection of qualified immunity. The defense of qualified immunity shields government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McEvoy v. Spencer, 124 F.3d 92, 97, (2d Cir. 1997) quoting, Harlow v. Fitzgerald, 457 U.S. 800, 818

18

(1982).

A right is "clearly established" when "[t]he contours of the right [are] . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . [T]he unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). *See, e.g.* Malley v. Briggs, 475 U.S. 335, 341 (qualified immunity protects "all but the plainly incompetent or those who knowingly break the law."); Mitchell v. Forsyth, 472 U.S. 511,528 (1985) (officials are immune unless "the law clearly proscribed the actions they took.")

In determining whether a particular right was clearly established at the time defendants acted, the Second Circuit has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant or official would have understood that his or her acts were unlawful. Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991). *See* Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989), *citing,* Anderson, 483 U.S. at 640.

In the present case, the plaintiff's claimed procedural due process rights were not clearly established at the time he was removed from the ERT. At the time of the plaintiff's removal from the ERT, no Second Circuit court had recognized the existence of a

19

constitutionally protected property interest in a police officer's membership on an emergency

response team which merely entitled the officer to additional overtime pay. To the contrary,

the courts of this Circuit had consistently held that the right to work overtime is not a

constitutionally protected property interest and that, where an employee experiences no

change in rank and base pay, there is no unconstitutional deprivation of property. *See*

Canniello, *supra*, and cases cited therein.

Accordingly, in the present case, since the plaintiff can not establish the

unconstitutional deprivation of any substantive or procedural due process right, the

defendants are entitled to summary judgment with respect to Count Two of the plaintiff's

Complaint.

### C.   The defendants are entitled to summary judgment with respect to Count Three of the Complaint because the plaintiff cannot sufficiently establish a claim of First Amendment Retaliation.

A public employee does not relinquish First Amendment rights to comment on

matters of public interest by virtue of government employment. Connick v. Myers, 461 U.S.

138, 140 (1983), citing Pickering v. Board of Ed., 391 U.S. 563 (1968). However, the State's

interests as an employer in regulating the speech of its employees differ significantly from

those it possesses in connection with regulation of the speech of the citizenry in general.

20

Connick, 461 U.S. at 140, quoting Pickering, 391 U.S. at 568.

Accordingly, the extent of permissible government regulation of speech of a public employee is determined by balancing the interest of the employee, in his role as a citizen, in commenting on matters of public concern against the interest of the government, in its role as employer, in promoting the efficiency of the services it performs through its employees. Mandell v. City of Suffolk, 316 F.3d 368 (2d Cir. 2003), quoting Morris v. Lindau, 196 F.3d 102, 109-110 (2d Cir. 1999).

Before reaching this balancing test, however, a court must be satisfied that a plaintiff claiming First Amendment retaliation has demonstrated that: (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action so that it can be said that the speech was a motivating factor in the determination. Mandell, 316 F.3d at 382; Morris, 196 F.3d at 110.

In the present case, the plaintiff does not allege that he engaged in any specific speech which is constitutionally protected. The plaintiff also does not allege any adverse employment action which was taken against him as a result of any constitutionally protected speech. Instead, the plaintiff alleges that on September 14, 1999, he was reprimanded based

21

on a "false allegation" made by Sergeant Mullaney. (Complaint, Count One ¶ 24). The plaintiff does not allege that such reprimand was the result of any constitutionally protected speech on the plaintiff's part.

The plaintiff further alleges that on September 24, 1999, he was removed from his position on the ERT. (Complaint, Count One ¶ 26). The plaintiff alleges that he filed a grievance concerning his removal from the ERT on October 1, 1999. (Complaint, Count One ¶ 27). The plaintiff does not allege that any adverse employment action was taken against him by Sergeant Mullaney or Detective Suchinski following the filing of the grievance.

Accordingly, although the plaintiff alleges that the acts of the defendants constitute a violation of the plaintiff's First Amendment "right to seek redress without fear of reprisal," the plaintiff has failed to identify any adverse employment action which was taken against him as a result of engaging in any constitutionally protected speech. Although the plaintiff alleges that he suffered adverse employment action in that he was removed from the ERT, the plaintiff does not identify any constitutionally protected speech which preceded the removal. The only specific instance of speech identified by the plaintiff in his Complaint is his filing of a grievance in October of 1999. However, this speech occurred only after the plaintiff had been removed from the ERT.

22

Furthermore, the plaintiff's First Amendment retaliation claim would fail even if the plaintiff had properly identified some adverse employment action which was taken against him following his filing of the grievance.  In order for a public employee to state a cognizable claim for First Amendment retaliation, the employee must demonstrate that his speech was related to a matter of public concern.  *See* Mandell, 316 F.3d at 382; Morris, 196 F.3d at 110. A personal grievance concerning internal office affairs is not related to  matters of public concern.  Connick, 461 U.S. at 154; *see also* Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999).  In the present case, the plaintiff's grievance related only to his personal removal from the ERT, and therefore, did not address a matter of public concern. (Exhibit "I").

Accordingly, in the present case, because the plaintiff cannot demonstrate that he suffered any adverse employment action as the direct result of engaging in constitutionally protected speech, the plaintiff cannot establish a claim of First Amendment retaliation.

**D.**    **The defendants are entitled to summary judgment with respect to Count Five of the Complaint because the plaintiff cannot sufficiently establish a claim of intentional infliction of emotional distress pursuant to Connecticut law.**

In order for a plaintiff to prevail on a claim for intentional infliction of emotional distress, the following four elements must be established: (1) that the actor intended to inflict

23

emotional distress or knew or should have known that emotional distress was likely to result from his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Appleton v. Board of Ed., 254 Conn. 205, 210 (2000); Peytan v. Ellis, 200 Conn. 243, 253 (1986).

Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated in a decent society. Appleton, 254 Conn. at 210, quoting Peytan, 200 Conn. at 254 n. 5; W. Prosser & W. Keeton, Torts (5th Ed. 1984) §12 p. 60. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Appleton, 254 Conn. at 211. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and cause him to exclaim "Outrageous!" Id., quoting 1 Restatement (Second) Torts § 46, comment (d), p. 73 (1965).

Whether a defendant's conduct is sufficient to satisfy the requirement that if be extreme and outrageous is initially a question for the court to determine. Appleton, 254 Conn. at 210, quoting Bell v. Board of Ed., 55 Conn. App. 400, 410 (1999). In the present case, the

KERNAN & HENRY, LLP   ATTORNEYS AT LAW

P. O. BOX 2156   •   WATERBURY, CONNECTICUT 06722   •   (203) 756-8961   •   JURIS NO. 30960   •   FAX (203) 754-2353

conduct of the defendants, Sergeant Mullaney and Detective Suchinski, was not extreme and outrageous as a matter of law.

There is no genuine issue as to the fact that Sergeant Mullaney acted reasonably following the August 1, 1999 incident. Sergeant Mullaney verbally reported the incident to Lieutenant Killiany on September 1, 1999. (Exhibit "A"). When Lieutenant Killiany requested that Sergeant Mullaney document his account of the incident in a written report, Sergeant Mullaney did so promptly. (Exhibit "A"; Exhibit "E"). The report was reviewed by Lieutanant Killiany, Captani Kalwat and Chief DiVenere, all of whom recommended that Sergeant Mullaney issue a written reprimand to the plaintiff. (Exhibit "E"). Sergeant Mullaney followed the instructions of his superior officers and issued a written reprimand to the plaintiff on September 14, 1999. (Exhibit "A"; Exhibit "G"; Exhibit "H").

In his Complaint, the plaintiff alleges that the allegations made by Sergeant Mullaney with respect to the August 31, 1999 incident are false. (Complaint, Count 1, ¶ 10). However, Sergeant Mullaney's account of events was corroborated by Detective Kevin Mellon in a memorandum to Bristol Police Captain Donald Kalwat dated August 20, 2002. (Exhibit "F"). The plaintiff further alleges instances of conduct, such as the alleged rubber rat and hidden car key incidents, which he claims to be extreme and outrageous. However, as discussed

25

with respect to the plaintiff's Equal Protection claim, the plaintiff can not, as a matter of law,

prove any of these allegations against the defendants.

Furthermore, even if the allegations of the Complaint could be proven, they still

would not constitute extreme and outrageous conduct. In <u>Appleton</u>, the Connecticut Supreme

Court held that the plaintiff had failed to allege extreme and outrageous conduct where the

plaintiff alleged as follows:

> that [the defendant] made condescending comments to her in front of her fellow
> colleagues questioning her vision and ability to read; telephoned the plaintiff's
> daughter representing that the plaintiff had been acting differently and should take a
> few days off from work; and telephoned the police, who came to the school and
> escorted the plaintiff out of the building to her car.  The plaintiff also asserted . . . that
> she was subjected to two psychiatric examinations at the request of the [school]
> board, and that she was forced to take a suspension and a leave of absence and,
> ultimately, forced to resign.

<u>Appleton</u>, 254 Conn. at 211.

Similarly, in a recent Connecticut Superior Court decision, it was held that a plaintiff

police officer had failed to demonstrate a pattern of extreme and outrageous conduct where

the plaintiff testified that "he was told . . ., when still in the police academy, that the chief

was trying to fire him and two others," and that "he felt that he was working for someone

that's looking to get me and had been . . . from the date I was hired in 1989." <u>Forsythe v.</u>

26

Ambrogio, No. CV 97 0404059S, Superior Court, Judicial District of New Haven (Jun. 28, 2001) (Lager, J.) (Exhibit "K"). The Forsythe court held that, even if proven, such assertions do not, as a matter of law, amount to extreme and outrageous conduct. Id.

Accordingly, in the present case, the allegations of the plaintiff's Complaint, even if proven, do not support a finding of extreme and outrageous conduct. Therefore, because the plaintiff can not, as a matter of law, establish that the defendants' conduct was extreme and outrageous, the defendants are entitled to summary judgment with respect to Count Five of the Complaint which claims intentional infliction of emotional distress.

## IV.    CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment of the defendants, Richard Mullaney and Brian Suchinski, should be granted.

> DEFENDANTS,
> RICHARD MULLANEY and
> BRIAN SUCHINSKI
>
> BY _____
> Melissa A. Scozzafava
> Of Kernan & Henry, LLP
> P.O. Box 2156
> Waterbury, CT 06722-2156
> Federal Bar No.: CT 23560

27

## **CERTIFICATION**

I hereby certify that a true copy of the foregoing Objection was mailed, first class mail, postage prepaid, on July 31st, 2003 to:

Erin I. O'Neil, Esq.
Brewer & O'Neil
818 Farmington Avenue
West Hartford, CT 06119

Alexandria L. Bufford, Esq.
Michael J. Rose, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114

Richard Lacey, Esq.
Corporation Counsel
City of Bristol
111 North Main Street
Bristol, CT 06010

Eric R. Brown, Esq.
AFSCME Council 15 Legal Dept.
290 Pratt Street
Meriden, CT 06450

_____
Melissa A. Scozzafava

28