UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW BARTON | : CIVIL ACTION NO. |
| | : 302 CV 1210 (PCD) |
| VS. | : |
| | : |
| CITY OF BRISTOL, ET. AL. | : JULY 31, 2003 |

## DEFENDANTS MELVIN DEKOW AND AFSCME LOCAL 754's MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 9(c), the defendants Melvin DeKow and AFSCME Local 754 (hereafter "Union defendants") hereby move for summary judgment as against the plaintiff on the plaintiff's complaint, and in favor of the Union defendants upon their affirmative defenses.

The Union defendants so move on the following grounds:

1. The Court does not have jurisdiction over the plaintiff's claims against the Union defendants;

2. There exist no genuine issues of material fact which support the plaintiff's claims that the Union defendants failed in their statutory duty to represent the plaintiff; violated the plaintiff's civil rights; or intentionally inflicted emotional distress upon the plaintiff.

The Union defendants submit a memorandum of law, a Local Rule 9(c)(1) statement, affidavits and supporting documentation in support of their motion.

**ORAL ARGUMENT IS REQUESTED**

Wherefore the Union defendants move that summary judgment be granted in their favor as to all counts asserted against them.

THE DEFENDANTS
MELVIN DEKOW AND
AFSCME LOCAL 754,

By: *Eric R. Brown* (signature)
Eric R. Brown
Fed Bar No. CT13519
AFSCME Co. 15 Legal Dept.
290 Pratt Street
Meriden, CT 06450
203-237-2250
203-237-2262 (Fax)
attyerb@yahoo.com (E-Mail)

## CERTIFICATION

The undersigned certifies that the foregoing was mailed postage prepaid to all parties of record on the date set forth herein:

Attorney James Brewer
Attorney Erin O'Neil-Baker
Brewer & O'Neil
818 Farmington Ave.
West Hartford, CT 06119

Attorney Alexandra Vocchio
Attorney Michael Rose
Howd & Ludorf
65 Wethersfield Ave.
Hartford, CT 06114

Attorney Melissa Scozzafava
Attorney John McDonald
Kernan & Henry
P.O. Box 2156
Waterbury, CT 06722

*Eric R. Brown* (signature)

2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREW BARTON | : | CIVIL ACTION NO.: |
| | : | 302 CV 1210 (PCD) |
| VS. | : | |
| | : | |
| CITY OF BRISTOL, ET. AL. | : | JULY 31, 2003 |

**LOCAL RULE 9(c)1 STATEMENT**

Pursuant to Local Rule 9(c)1, the Union defendants Melvin DeKow and Local 754, AFSCME file this statement of undisputed facts in support of their Motion for Summary Judgment. (Exhibit numbers refer to the exhibits attached to the Union defendants' Motion for Summary Judgment).

1. The defendant Melvin DeKow was President of AFSCME Local 754 from January 1, 1999 through December 31, 2002. (Affidavit of Melvin DeKow, Exhibit 1, Para. 2)

2. In September, 1999, neither Melvin DeKow, in his capacity as Union President or as an individual, nor AFSCME Local 754, engaged in any investigation of the plaintiff as alleged in the Complaint, based upon any allegation by the defendant Mullaney, or any other precipitating event. (Exhibit 1, Para. 3).

3. Prior to October 1, 1999, the Union was never notified by the Plaintiff that he was subject to any investigation by the Bristol Police Department. (Exhibit 1, Para. 4).

4. The Plaintiff never requested that the Union file a grievance on his behalf, relative

1

    to a written reprimand received by the plaintiff on September 14, 1999. (Exhibit 1, Para. 5).

5. On September 24, 1999, the Plaintiff was removed from the City of Bristol Police Department's ERT team. (Complaint, Para. 26).

6. The plaintiff asserts that his removal from the ERT team is the sole act which constituted a violation of his claimed right to "equal protection." (Plaintiff's Responses to City of Bristol's Interrogatories, May 9, 2003, Exhibit 2, # 7).

7. The plaintiff asserts that his position on the ERT team constituted a property right protected by the Fourteenth Amendment. (Exhibit 2, #8).

8. The plaintiff testified at his deposition on April 10, 2003 to the following:

    Q    To your knowledge was Mr. DeKow involved in the decision to remove you from the Emergency Response Team?
    A    I have no idea.
    (Tr. Depo. Test. of Andrew Barton, April 10, 2003, p. 44, Lines 5-7; Exhibit 3).

9. The plaintiff claims that the only way by which the Union defendants failed to represent his interests as required by statute was that "the union did not pursue the plaintiff's grievance (sic) final level." (Plaintiff's responses to Union defendant's interrogatories, April 7, 2003, Exhibit 4, # 5).

10. Asked to "[D]escribe with particularity each and every way in which the union defendants allegedly failed to represent you, and state the dates on which such failure occurred," the plaintiff responded "[T]he union defendants did not pursue the plaintiff's grievance regarding his removal from ERT. The dates are unknown to the plaintiff." (Exhibit 4, # 10).

2

11. On October 1, 1999, Local 754 vice president Rob Mendella received a memo from the Plaintiff on "Bristol Police Department" letterhead, requesting that the Union grieve the Plaintiff's removal from the ERT team which occurred on September 24, 1999. (Affidavit of Robert Mendella, Exhibit 5, Para. 2; Exhibit 6).

12. On October 5, 1999, Mendella, on behalf of the Union, filed Local Grievance number 99-38, grieving the plaintiff's removal from the ERT team, which resulted from an allegedly unjustified written reprimand. (Exhibit 5, Para. 3; Exhibit 7).

13. The grievance was denied at the first step by Police Chief John DiVenire on October 5, 1999. (Exhibit 7).

14. On October 20, 1999, Kevin Mellon, Grievance Chairman of Local 754, filed the grievance to the second step of the grievance process. (Affidavit of Kevin Mellon, Exhibit 8, Para. 2; Exhibit 9).

15. On November 12, 1999, Mellon filed the grievance with Jim Byer, Director of Personnel, and Dr. Chmieleski of the Police Commission, seeking a hearing. (Exhibit 8, Para. 3; Exhibit 10).

16. On or about December 7, 1999, the grievance was sent to AFSCME Council 15 Legal Department and arbitration was requested in accord with the terms of the collective bargaining agreement. (Exhibit 11).

17. On December 9, the grievance was filed with the State Board of Mediation and Arbitration and arbitration was requested. (Exhibit 11).

18. On March 1, 2000, the State Board of Mediation and Arbitration sent notice to the

undersigned, attorney for AFSCME Council 15, and to Kevin Mellon, advising that a hearing on the plaintiff's grievance would be held on May 3, 2000. (Exhibit 12).

19. On March 9, 2000, Mellon sent an MDT (mobile data terminal) message over the Bristol Police Department MDT system advising the plaintiff and DeKow of the arbitration hearing to be held on May 3, 2000. (Exhibit 8, Para. 4; Exhibit 13).

20. Hearing was held in the matter on May 3, 2000 before a tri-partite panel of the Connecticut State Board of Mediation and Arbitration. (Exhibit 14).

21. A decision and award was issued on April 19, 2001, denying the grievance as being non-arbitrable. (Exhibit 14).

22. Pursuant to the rules of the State Board of Mediation and Arbitration (Exhibit 15), only the Union is a proper party to a grievance arbitration before the State Board of Mediation and Arbitration.

23. The grievant has no standing, either under the Collective Bargaining Agreement (Exhibit 16), or the rules of the State Board of Mediation and Arbitration, to pursue the grievance to arbitration (Exhibit 15).

24. The Collective Bargaining Agreement, at Article 15:1.4 states:

> STEP FOUR. Should the grievance not be settled to the satisfaction of the Union, it may within twenty (20) calendar days after receipt of the decision rendered in Step Three submit the grievance to arbitration, with a copy to the Director of Personnel. Arbitration shall be conducted by the Connecticut State Board of Mediation and Arbitration in accordance with its rules and regulations.

25. The Union asserted in the arbitration that the City had failed to comply with the grievance procedures set forth in the collective bargaining agreement when the City designated the Assistant Director of Personnel, rather than the Director of Personnel as expressly stated in the collective bargaining agreement, to hear the grievance at Step Two of the grievance procedure. (Exhibit 14).

26. The arbitrators found that the City did not violate the Collective Bargaining Agreement in this regard, and therefore found that the Union failed to exhaust the available grievance procedure before proceeding to arbitration. Thus the arbitrators held that the grievance was not arbitrable. (Exhibit 14).

27. The Union made the exact same claim on behalf of Officer Joel Estes following his removal as DARE officer for the Bristol Police Department. (Exhibit 17).

28. The State Board of Mediation and Arbitration heard that grievance on September 12, 2000. On April 24, 2001, a different panel of arbitrators from that which heard the plaintiff's grievance, found in the Union's favor and held that the grievance was arbitrable. (Exhibit 17).

29. Neither DeKow nor AFSCME Local 754 had any authority to make a decision to remove the plaintiff from the ERT team, or to deprive him of any property or liberty interest which he enjoyed in his employment with the City of Bristol, nor did either DeKow or AFSCME Local 754 conspire to have the plaintiff removed from the ERT team, or suffer a deprivation of any constitutionally-protected interests. (Exhibit 1, Para. 6).

30. In this regard, the plaintiff never filed any internal union charges of misconduct

against the any union members, including DeKow, as a result of any of the facts alleged in his complaint. (Exhibit 4 - Plaintiff's responses to Union defendant's interrogatories, April 7, 2003, #4). *See*, Exhibit 18, <u>AFSCME International Constitution,</u> Article X - Judicial Procedure, Section 2.D., which allows members to bring internal charges against a Union for "acting in collusion with management to the detriment of the welfare of the union or its membership." See also, Article X, Section 2.G. which prohibits "Willful violation of a legally negotiated and approved collective bargaining agreement." Substantiated charges can result in "full or partial restitution, where the consequences of the offense can be measured in material terms." (Exhibit 18, Article X, Section 15.C.)

31. The plaintiff does not claim that either of the Union defendants played any role in the alleged infliction of emotional distress which occurred to him. (Exhibit 2, #13). The plaintiff was asked:

> 13. With respect to paragraph (Count?) 5 of your Complaint, please state, in detail, all facts upon which you base the allegation that the defendants have intentionally inflicted severe emotional distress upon the plaintiff.
> ANSWER: On September 1, 1999, Mullaney falsely alleged that plaintiff acted inappropriately towards him during the 8/31/99 narcotics investigation. September 1999, the plaintiff was maliciously investigated by defendants based upon a false allegation by Mullaney. Suchinski and Mullaney were friends. Suchinski harassed plaintiff on several occasions. Suchinski placed a rubber rat on plaintiff's desk. Suchinski hid the plaintiff's rental car keys. Suchinski failed to give plaintiff important messages. Suchinski made false allegations against plaintiff to get him into trouble. Suchinski encouraged Mullaney to make false allegations against plaintiff regarding the 8/31/99 investigation. Mullaney produced false statements regarding plaintiff's conduct on his report.

32. The plaintiff has not sought any type of psychological treatment for any alleged emotional distress which occurred as a result of the action or inaction of the Union

defendants. (Exhibit 4, #7, "the plaintiff has not received any such treatment.").

33. Local 754 is funded through union dues paid by its members, and receives no governmental funding. (Exhibit 19, Affidavit of Ken Gallup, Para. 3).

34. Regulatory control of Local 754 is maintained by AFSCME Council 15, and AFSCME International, the Local's parent organizations. (Exhibit 19, Para. 4)

35. The Union plays no role in the appointment of personnel to the position of ERT team member in the Bristol Police Department. (Exhibit 19, Para. 5).

THE DEFENDANTS
MELVIN DEKOW AND
AFSCME LOCAL 754,

By: _____
Eric R. Brown
Fed Bar No. CT13519
AFSCME Co. 15 Legal Dept.
290 Pratt Street
Meriden, CT 06450
203-237-2250
203-237-2262 (Fax)
attyerb@yahoo.com (E-Mail)

7

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREW BARTON | : | CIVIL ACTION NO.: |
| | : | 302 CV 1210 (PCD) |
| VS. | : | |
| | : | |
| CITY OF BRISTOL, ET. AL. | : | JULY 31, 2003 |

**DEFENDANTS MELVIN DEKOW AND AFSCME LOCAL 754's
MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

The plaintiff has brought a five-count complaint against the defendants alleging, *inter alia*, a violation of 42 U.S.C. Section 1983 based upon an alleged deprivation of "equal protection" rights set forth in the 14th Amendment to the U.S. Constitution, (Count One); alleging a violation of 42 U.S.C. Section 1983 based upon an alleged deprivation of "due process" rights set forth in the 14th Amendment to the U.S. Constitution, (Count Two); alleging a violation of 42 U.S.C. Section 1983 based upon an alleged retaliation for the exercise of "free speech" rights as set forth in the 1st Amendment to the U.S. Constitution, (Count Three); alleging a breach of the statutory duty of fair representation found in Connecticut General Statutes (Count 4); and alleging the intentional infliction of emotional distress under Connecticut common law (Count 5).

Counts 1, 2, 3, and 5 are brought against the defendant DeKow in his individual capacity and official capacity as union president. Counts 2 and 4 are brought against the defendant AFSCME Local 754.

1

The Union defendants have affirmatively asserted in their defense that the Court lacks subject-matter jurisdiction over the plaintiff's claims; that the plaintiff has failed to exhaust his available administrative remedies; and that the plaintiff has failed to state a claim for which relief can be granted.

The Union defendants now come before this Court seeking an order granting their motion for summary judgment as to each count of the complaint applicable to them, and upon the affirmative defenses asserted by them in defense of the claims against them.

**I.    Statement of Facts**

The plaintiff has alleged that the Union defendants acted under "color of law" to deprive the plaintiff of his right to liberty guaranteed by the Fourteenth Amendment to the United States Constitution, without due process of law. (Complaint, Para. I). The plaintiff has not alleged any deprivation of a "property" interest by the Union defendants. The plaintiff has alleged that DeKow acted under "color of law" in retaliating against the plaintiff for exercising his rights to free speech guaranteed by the First Amendment to the U.S. Constitution.

The defendant Melvin DeKow was President of AFSCME Local 754 from January 1, 1999 through December 31, 2002. (Affidavit of Melvin DeKow, Exhibit 1, Para. 2)

In September, 1999, neither Melvin DeKow, in his capacity as Union President or as an individual, nor AFSCME Local 754, engaged in any investigation of the plaintiff as

2

alleged in the Complaint, based upon any allegation by the defendant Mullaney, or any other precipitating event. (Exhibit 1, Para. 3). As such, neither of the Union defendants failed to follow proper procedures in any investigation of the Plaintiff.

Prior to October 1, 1999, the Union was never notified by the Plaintiff that he was subject to any investigation by the Bristol Police Department. (Exhibit 1, Para. 4). The Plaintiff never requested that the Union file a grievance on his behalf, relative to a written reprimand received by the plaintiff on September 14, 1999. (Exhibit 1, Para. 5). On September 24, 1999, the Plaintiff was removed from the City of Bristol Police Department's ERT team. (Complaint, Para. 26).

The plaintiff asserts that his removal from the ERT team is the sole act which constituted a violation of his claimed right to "equal protection." (Plaintiff's Responses to City of Bristol's Interrogatories, May 9, 2003, Exhibit 2, # 7). The plaintiff asserts that his position on the ERT team constituted a property right protected by the Fourteenth Amendment. (Exhibit 2, #8). There is no dispute that the plaintiff maintained his position as police officer employed by the City of Bristol at all times relevant to the Complaint.

The plaintiff testified at his deposition on April 10, 2003 to the following:

> Q   To your knowledge was Mr. DeKow involved in the decision to remove you from the Emergency Response Team?
> A   I have no idea.

(Tr. Depo. Test. of Andrew Barton, April 10, 2003, p. 44, Lines 5-7; Exhibit 3).

3

The plaintiff claims that the only way by which the Union defendants failed to represent his interests as required by statute was that "the union did not pursue the plaintiff's grievance (sic) final level." (Plaintiff's responses to Union defendant's interrogatories, April 7, 2003, Exhibit 4, # 5). Asked to "[D]escribe with particularity each and every way in which the union defendants allegedly failed to represent you, and state the dates on which such failure occurred," the plaintiff responded "[T]he union defendants did not pursue the plaintiff's grievance regarding his removal from ERT. The dates are unknown to the plaintiff." (Exhibit 4, # 10).

On October 1, 1999, Local 754 vice president Rob Mendella received a memo from the Plaintiff on "Bristol Police Department" letterhead, requesting that the Union grieve the Plaintiff's removal from the ERT team which occurred on September 24, 1999. (Affidavit of Robert Mendella, Exhibit 5, Para. 2; Exhibit 6).

On October 5, 1999, Mendella, on behalf of the Union, filed Local Grievance number 99-38, grieving the plaintiff's removal from the ERT team, which resulted from an allegedly unjustified written reprimand. (Exhibit 5, Para. 3; Exhibit 7). The grievance was denied at the first step by Police Chief John DiVenire on October 5, 1999. (Exhibit 7).

On October 20, 1999, Kevin Mellon, Grievance Chairman of Local 754, filed the grievance to the second step of the grievance process. (Affidavit of Kevin Mellon, Exhibit

4

8, Para. 2; Exhibit 9). On November 12, 1999, Mellon filed the grievance with Jim Byer, Director of Personnel, and Dr. Chmieleski of the Police Commission, seeking a hearing. (Exhibit 8, Para. 3; Exhibit 10).

On or about December 7, 1999, the grievance was sent to AFSCME Council 15 Legal Department and arbitration was requested in accord with the terms of the collective bargaining agreement. (Exhibit 11). On December 9, the grievance was filed with the State Board of Mediation and Arbitration and arbitration was requested. (Exhibit 11).

On March 1, 2000, the State Board of Mediation and Arbitration sent notice to the undersigned, attorney for AFSCME Council 15, and to Kevin Mellon, advising that a hearing on the plaintiff's grievance would be held on May 3, 2000. (Exhibit 12).

On March 9, 2000, Mellon sent an MDT (mobile data terminal) message over the Bristol Police Department MDT system advising the plaintiff and DeKow of the arbitration hearing to be held on May 3, 2000. (Exhibit 8, Para. 4; Exhibit 13).

Hearing was held in the matter on May 3, 2000 before a tri-partite panel of the Connecticut State Board of Mediation and Arbitration. (Exhibit 14). A decision and award was issued on April 19, 2001, denying the grievance as being non-arbitrable. (Exhibit 14). Pursuant to the rules of the State Board of Mediation and Arbitration (Exhibit 15), only the Union is a proper party to a grievance arbitration before the State Board of Mediation and Arbitration. The grievant has no standing, either under the

Collective Bargaining Agreement (Exhibit 16), or the rules of the State Board of Mediation and Arbitration, to pursue the grievance to arbitration (Exhibit 15).

The Collective Bargaining Agreement, at Article 15:1.4 states:

> STEP FOUR. Should the grievance not be settled to the satisfaction of the Union, it may within twenty (20) calendar days after receipt of the decision rendered in Step Three submit the grievance to arbitration, with a copy to the Director of Personnel. Arbitration shall be conducted by the Connecticut State Board of Mediation and Arbitration in accordance with its rules and regulations.

The Union asserted in the arbitration that the City had failed to comply with the grievance procedures set forth in the collective bargaining agreement when the City designated the Assistant Director of Personnel, rather than the Director of Personnel as expressly stated in the collective bargaining agreement, to hear the grievance at Step Two of the grievance procedure. (Exhibit 14). The arbitrators found that the City did not violate the Collective Bargaining Agreement in this regard, and therefore found that the Union failed to exhaust the available grievance procedure before proceeding to arbitration. Thus the arbitrators held that the grievance was not arbitrable. (Exhibit 14).

The Union made the exact same claim on behalf of Officer Joel Estes following his removal as DARE officer for the Bristol Police Department. (Exhibit 17). The State Board of Mediation and Arbitration heard that grievance on September 12, 2000. On April 24, 2001, a different panel of arbitrators from that which heard the plaintiff's

grievance, found in the Union's favor and held that the grievance was arbitrable. (Exhibit 17).

Neither DeKow nor AFSCME Local 754 had any authority to make a decision to remove the plaintiff from the ERT team, or to deprive him of any property or liberty interest which he enjoyed in his employment with the City of Bristol, nor did either DeKow or AFSCME Local 754 conspire to have the plaintiff removed from the ERT team, or suffer a deprivation of any constitutionally-protected interests. (Exhibit 1, Para. 6).

In this regard, the plaintiff never filed any internal union charges of misconduct against any union members, including DeKow, as a result of any of the facts alleged in his complaint. (Exhibit 4 - Plaintiff's responses to Union defendant's interrogatories, April 7, 2003, #4). *See*, Exhibit 18, AFSCME International Constitution, Article X - Judicial Procedure, Section 2.D., which allows members to bring internal charges against a Union for "acting in collusion with management to the detriment of the welfare of the union or its membership." See also, Article X, Section 2.G. which prohibits "Willful violation of a legally negotiated and approved collective bargaining agreement." Substantiated charges can result in "full or partial restitution, where the consequences of the offense can be measured in material terms." (Exhibit 18, Article X, Section 15.C.)

The plaintiff does not claim that either of the Union defendants played any role in

7

the alleged infliction of emotional distress which occurred to him. (Exhibit 2, #13). The plaintiff was asked:

> 13. With respect to paragraph (Count?) 5 of your Complaint, please state, in detail, all facts upon which you base the allegation that the defendants have intentionally inflicted severe emotional distress upon the plaintiff.
> ANSWER: On September 1, 1999, Mullaney falsely alleged that plaintiff acted inappropriately towards him during the 8/31/99 narcotics investigation. September 1999, the plaintiff was maliciously investigated by defendants based upon a false allegation by Mullaney. Suchinski and Mullaney were friends. Suchinski harassed plaintiff on several occasions. Suchinski placed a rubber rat on plaintiff's desk. Suchinski hid the plaintiff's rental car keys. Suchinski failed to give plaintiff important messages. Suchinski made false allegations against plaintiff to get him into trouble. Suchinski encouraged Mullaney to make false allegations against plaintiff regarding the 8/31/99 investigation. Mullaney produced false statements regarding plaintiff's conduct on his report.

The plaintiff has not sought any type of psychological treatment for any alleged emotional distress which occurred as a result of the action or inaction of the Union defendants. (Exhibit 4, #7, "the plaintiff has not received any such treatment.").

Local 754 is funded through union dues paid by its members, and receives no governmental funding. (Exhibit 19, Affidavit of Ken Gallup, Para. 3). Regulatory control of Local 754 is maintained by AFSCME Council 15, and AFSCME International, the Local's parent organizations. (Exhibit 19, Para. 4) The Union plays no role in the appointment of personnel to the position of ERT team member in the Bristol Police Department. (Exhibit 19, Para. 5).

## II. Standard of Law

"A court shall grant a motion for summary judgment under Fed.R.Civ.P. 56 if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a mater of law. Silver v. City Univ., 947 F.2d 1021, 1022 (2d. Cir. 1991)." Balestracci v. General Dynamics, Corp., 221 F.Supp.2d 258, 266 (D.Conn. 2002).

## III. Law and Argument

### A. As a matter of law, the Union defendants cannot be held liable for any alleged violation of 42 U.S.C. 1983.

The plaintiff's claims against the Union defendants under 42 U.S.C. Section 1983 must fail because the Union defendants are not "state actors." In order to be found liable for a violation of one's civil rights under Section 1983, the defendant must have been a state actor acting under color of law.

Even assuming that the Union defendants can somehow be characterized as state actors acting under color of law, the Union defendants did not engage in any behavior which deprived the plaintiff of a civil right protected by 42 U.S.C. Section 1983. Based upon the undisputed facts, it must be concluded that the Union defendants did not deprive the plaintiff of any constitutional interest protected by Section 1983.

#### 1. The Union defendants are not state actors.

9

"In order to state a claim under Section 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law. Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." Ciambriello v. Nassau County, 292 F.3d 307, 323 (2d. Cir., 2002).

The applicable statute states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. Section 1983.

If a defendant has not acted under "color of law," then a Section 1983 action will not lie against him.

With respect to private organizations or their representatives, such as the Union defendants, the test as to whether the defendant is a "state actor" is "whether there is a sufficiently close nexus between the state and the challenged action of the [union] so that the action of the latter may be fairly treated as that of the state itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974).

10

Based upon the allegations of the Complaint, the only actions of the Union which appear to be claimed as violative of some protected right of the plaintiff, are the Union's alleged failure to process the plaintiff's grievance regarding his removal from ERT. No other allegations in the Complaint, nor in the plaintiff's discovery responses, indicate any other questionable actions of the Union defendants.

The Second Circuit in <u>Jackson v. Statler Foundation</u>, 496 F.2d 623 (2d Cir. 1973), established a specific list of factors to be considered in analyzing whether an entity's conduct constitutes "state action." <u>Id</u>. at 629. Those factors are:

> 1) the degree to which the private organization is dependent on governmental aid; (2) the extent and intrusiveness of the governmental regulatory scheme; (3) whether that scheme connotes government approval of the activity or whether the assistance is merely provided to all without such connotation; (4) the extent to which the organization serves a public function or acts as a surrogate for the state; (5) whether the organization has legitimate claims to recognition as a 'private' organization in associational or other constitutional terms.

Here, the plaintiff has not alleged, nor can he prove that any act or omission of either of the Union defendants was done under the "color of state law". The plaintiff cannot satisfy the five prongs of the <u>Jackson</u> test to establish a close nexus between the Union defendants and state action, to create an inference that the Union defendants were state actors.

With regard to the first prong of the <u>Jackson</u> test, Local 754 is funded through

11