

15

# STATE OF CONNECTICUT

# REGULATION

# OF

# THE STATE BOARD OF MEDIATION AND ARBITRATION

# CONCERNING

# ORGANIZATION AND POLICIES OF THE STATE BOARD OF MEDIATION AND ARBITRATION

This booklet consists of The State Board of Mediation and Arbitration regulations concerning the organization and policies of the Board. Information in this booklet, will enable you to understand the policies and procedures of the Board. Please read this material carefully. If you have any questions, you may contact the Board of Mediation and Arbitration.

## [ARTICLE I]

### Description of the Organization

#### Sec. 31-91-1. Creation and Authority.

(a) The Connecticut State Board of Mediation and Arbitration (hereinafter referred to as the "board") was created by Sec. 31-91 of the Connecticut General Statutes, and administers various statutes that provide for mediation and arbitration services to private and public sector employers and employee organizations and appeals pursuant to Sec. 53-303e of the Connecticut General Statutes. The board is composed of six members appointed by the Governor, for six year terms as provided in Sec. 4-9a of the Connecticut General Statutes, with the public, labor, and management each represented by two members. One of the public members is designated by the Governor as the chairman and the other public member shall be the deputy chairman. The members shall have the power to complete any matter pending at the expiration of the terms for which they were appointed.

(b) Alternate members of the board are appointed by the Governor upon request of the Labor Commissioner or the chairman of the board for a term of up to one year or until a replacement is appointed. The number of alternate members appointed shall depend upon necessity and demand. Alternate members shall serve when duties are delegated. While performing such delegated duty, alternate members shall have all the powers of members of the board. Alternate members shall have the power to complete any matter pending after the expiration of the terms for which they were appointed.

(c) Board members and alternates shall take the applicable oath of office described in Sec. 31-92a of the Connecticut General Statutes before assuming their duties for the term of appointment. The director shall record the date that each board member or alternate took the oath as well as the name and title of the person administering the oath.

(d) Wherever any provisions of the Connecticut General Statutes refer to the secretary of the Board of Mediation and Arbitration, they are construed to refer to the board director. The duties of the board director shall include but are not limited to serving as:

(1) secretary to the board;

(2) agent for service of civil process directed to the board;

(3) agent for the board when so authorized;

(4) custodian of the board's records;

(5) provider of certified copies of documents; and

(6) mediator in high priority cases.

## Sec. 31-91-2. Functions.

(a) The six member board establishes policy and promulgates regulations for the operation of the board. It provides advice and consent to the Labor Commissioner on the appointment of full time mediators who shall be responsible to the board.

(b) The board provides employers and employee organizations with mediators for the purpose of settlement of grievances or mediation of impasses in contract negotiations. It also makes available arbitration services for the purpose of arbitration of disputes over the interpretation or application of the terms of the written collective agreements.

## Sec. 31-91-3. Meetings of the Board.

(a) The board shall hold regular meetings on the third Monday of every other month, except when an emergency arises. A quorum shall consist of four members, provided there is at least one public, labor, and management member present. A member who is unable to attend a meeting may, by completing a proxy form, designate an appropriate alternate member to serve as a substitute. The minutes of the meeting shall be recorded in a formal book of minutes, and these official minutes shall be signed by the director of the board.

(b) The chairman may convene special and emergency meetings.

## Sec. 31-91-4. Official Address.

(a) All communications should be addressed to the State Board of Mediation and Arbitration, 38 Wolcott Hill Road, Wethersfield, Connecticut, 06109.

(b) Except as otherwise provided in this subsection, faxes shall be accepted by the board for communication purposes with the board. To meet any mandated time frame, faxes shall be received by the close of the business day of the board. The close of the business day is 4:30 p.m. Faxes shall not be accepted for last best offers in interest arbitration or for briefs in any proceedings.

(c) Any civil process directed to the board shall be served on the board director at the board's office during regular business hours. Regular business hours are 8:30 a.m. to 4:30 p.m.

## Sec. 31-91-5. Public Information.

The public may inspect only the regulations, decisions and public records of the board at its office in

Wethersfield. Written requests should be submitted to the board at its above-stated official address.

## [ARTICLE II]

### Rules of Procedure for Grievance Arbitration

**Sec. 31-91-22. Purpose and scope of arbitration services.**

Arbitration is the procedure of submitting disputes between an employer and the employee organization designated to represent his employees to a third party neutral or tripartite panel for decision. The arbitration services of the board are available to employers and employee organizations.

**Sec. 31-91-23. Conditions for initiation of arbitration procedure.**

(a) A grievance or dispute will be heard by the board when any of the following conditions is

met:

(1) The board is specifically named as arbitrator within a collective bargaining

agreement or;

(2) The parties to the dispute submit in writing their mutual request for arbitration

and mutual agreement to be bound by the board's decision; or

(3) An employee files a written claim alleging that he was discharged in violation

of Sec. 53-303e of the Connecticut General Statutes.

(b) A party claiming the dispute is not arbitrable shall submit notice of such claim and the reasons therefor, to the board and to the opposing party at least ten days prior to the initial hearing date.

**Sec. 31-91-24. Demand for arbitration services; payment of filing fee; and types of cases.**

(a) A submission or demand for arbitration services shall be submitted on a completed and signed grievance arbitration request form which shall include a general statement of the dispute and the position of the filing party. The purpose of the general statement is to provide the board with the general outline of the dispute. A demand for arbitration shall be accompanied by the twenty five (25) dollar filing fee. A confirmation letter and a copy of the request for grievance arbitration form will be forwarded to the parties involved in the case.

(b) A bill for the filing fee will be sent to the non-demanding party and is due within thirty (30) days of the date of the confirmation letter. The failure of the non-demanding party to pay the twenty five (25) dollar filing fee will not delay the arbitration process. Where payment of the filing fee is not timely made, the board may seek such payment through all available legal means.

(c) Except as set forth in subsection (d) and subsection (e) of this Section and subsection (h) of Section

31-91-36 of the Regulations of Connecticut State Agencies, the board shall schedule cases in chronological order.

(d) Priority cases are cases involving terminations, suspensions of thirty (30) days or more, or layoffs. In these cases the board requests the parties to set a mutually acceptable date as soon as possible and notify the board of such date so a hearing date can be scheduled. Where the parties do not agree on a date, the board shall assign a date.

(e) Expedited cases are cases where the parties mutually request the expedited process before a panel or single arbitrator.

## Sec. 31-91-25. Notice of hearing.

The board shall provide notice of the date, time, and location of the formal hearing no later than twenty-one (21) days prior to such hearing. Two cases a day may be scheduled for any employer and employee organization having more than one case awaiting a hearing before the board. Where two cases are scheduled they shall be cases between the employer and the same bargaining unit. When letters are sent to the parties scheduling hearings, two cases may be listed rather than one. Cases shall be heard in the order listed.

## Sec. 31-91-26. Location of hearings.

(a) Arbitration hearings shall be scheduled in the Labor Department, 38 Wolcott Hill Road, Wethersfield, or at such other locations as may be designated by the board.

(b) The cost of hearing rooms for arbitrations held at locations other than the Labor Department at Wethersfield, shall be shared equally by the parties.

## Sec. 31-91-27. Postponements.

(a) Where the board has scheduled a case a party may within 15 days of receipt of the hearing notice request one postponement per case by: (1) obtaining from the opposing party an agreement for the postponement, (2) confirming a new mutually acceptable hearing date, (which must be at least three months but not longer than six months from the date of the postponement request), and (3) notifying the case manager, who originally scheduled the case, of the agreement to postpone and the new mutually acceptable hearing date. Unless the parties have agreed on a postponement and a new hearing date, and have so notified the case manager within 15 days, the request for postponement shall proceed under the board's formal postponement policy set forth in subsection (c) of this Section.

(b) In priority and expedited cases where a hearing date has been scheduled a party may within 15 days of receipt of the hearing notice, request one postponement per case by: (1) obtaining from the opposing party an agreement for the postponement, (2) confirming a new mutually acceptable hearing date, and (3) notifying the case manager, who originally scheduled the case, of the agreement to postpone and the new mutually acceptable hearing date. Where the parties have not agreed on a postponement or a new hearing date within 15 days and have not so notified the case manager, the request for postponement shall proceed under the board's formal postponement policy set forth in subsection (c) of this Section.

(c) Any formal postponement shall be granted by the board only where the requesting party or parties have demonstrated to the board that there is sufficient cause for such postponement.

(d) For the purposes of this section sufficient cause includes, but is not limited to:

(1) death or illness;

(2) spokesman handling the case is required to

appear in court and cannot be available at a later time that day; (evidence of court appearance is required);

(3) a previously scheduled vacation; or,

(4) a previously scheduled interest arbitration hearing.

In all postponement requests the board may require written documentation, which shall become part of the record.

(e) The board shall contact the non-requesting party to give them an opportunity to comment prior to granting a postponement where the request for postponement is for a reason other than those enumerated in subsection (d) of this Section.

(f) The board shall notify the parties to the case that a postponement has been granted.

## Sec. 31-91-28. Appointment of the Panel.

(a) The board shall be represented at arbitration proceedings by a tripartite panel of three of its members, unless the parties have jointly agreed that a single public member of the board shall represent the board.

(b) Whenever a tripartite panel is used, the employer and employee organization may each select their advocate member from the appropriate permanent advocate members of the board, who will represent their interests on the panel. If either party fails to designate its advocate arbitrator or the advocate arbitrator is unavailable, the board shall select an advocate arbitrator for that party in the following manner:

(1) One of the permanent advocate board members shall be designated, if one is

available; or

(2) If neither permanent advocate board member is available, an alternate advocate

board member shall be designated by the board.

(c) The public member of the panel shall serve as chairman and shall be selected by the board pursuant to the following procedure:

(1) The chairman of the board shall be designated if he is available.

(2) If the chairman is not available, the deputy chairman shall be designated.

(3) If both the chairman and the deputy chairman are not available, an alternate

public member shall be designated by the board.

(d) Where a single arbitrator has been selected to hear a case, he shall have all the powers of a panel.

### Sec. 31-91-29. Waiver of Oral Hearings.

The parties may provide, by written agreement, for the waiver of oral hearings. If the parties are unable to agree as to the procedure, the panel chairman shall specify a fair and equitable procedure. If the panel assigned to hear the case feels that a hearing is necessary to make a full and fair decision, it may order a hearing.

### Sec. 31-91-30. Stenographic records.

The board does not provide a stenographic service during arbitration hearings. If either or both parties feel it is necessary to have their respective arbitration hearings recorded, they should make the necessary arrangements with a private reporting service at their own expense. Whenever a transcript is ordered by a party, three copies shall be sent to the board. In single member proceedings, one copy shall be required.

### Sec. 31-91-31. Adjournments.

The chairman may adjourn a hearing either upon his own initiative or in response to a request by either party if good cause is shown.

### Sec. 31-91-32. Arbitration in the absence of a party.

An arbitration hearing may proceed in the absence of any party, who, after due notice, fails to be present or fails to obtain a postponement or adjournment. An award shall not be made solely on the default of a party. The panel members shall require the appearing party to submit such evidence as may be required for the making of an award.

### Sec. 31-91-33. Principal spokesperson.

Each party shall be represented at the hearing by a principal spokesperson who shall present the party's case. The principal spokesperson may be an attorney or other authorized representative.

### Sec. 31-91-34. Attendance at hearings; subpoenas.

(a) Persons having a direct interest in the arbitration proceedings are entitled to attend the hearings. It shall be discretionary with the chairman and subject to the agreement of all parties whether any other persons may attend.

(b) The subpoena power of the board may be used at the discretion of the panel only when it becomes evident that the panel will be unable to render a fair and just decision without the appearance of a material witness or pertinent records or documents.

### Sec. 31-91-35. Opening the hearing.

(a) Hearings shall open with the recording of the time, date and place of the hearing, the identity of the panel members present, the identity of parties and their representatives present.

(b) The parties shall present to the panel prior to proceeding with the merits of the case, a carefully worded statement of the issue or issues in dispute between them on which the board is requested to rule. Where the parties are unable to agree upon the issue or issues to be decided, the panel shall frame the issue or issues prior to proceeding on the merits of the case.

## Sec. 31-91-36. Order of proceedings.

(a) The party who has filed the grievance will normally proceed first with the presentation of evidence, except that the employer shall proceed first in disciplinary cases, and the panel shall have discretion to vary the normal procedure but shall afford full and equal opportunity to all parties for presentation of relevant evidence.

(b) Each party will be permitted to make an opening statement through its principal spokesperson.

(c) Each party will have a full opportunity to present relevant evidence and to cross-examine witnesses, subject to the rulings of the panel or single arbitrator.

(d) Each party's representative will have an opportunity to make a closing statement to the panel.

(e) Once a hearing has commenced, the panel may continue the hearing to a specific date: (1) on its own initiative or, (2) on the request of a party where the panel finds that good cause is shown.

(f) The board expects all parties to be prepared to conclude the hearings without delay.

(g) The filing party may withdraw a grievance from arbitration at any time prior to the issuance of the panel's decision, upon filing a written withdrawal with the board. When a withdrawal is filed, the grievance shall be dismissed with prejudice unless a written statement is received from the filing party stating the withdrawal is without prejudice. A notice to withdraw a grievance before the hearing date shall be received by the board before the close of business, five (5) business days prior to the date of the hearing. Where said notice has not been received within this time limit, the parties are required to appear before the panel assigned to hear the issue(s). The parties may choose to have only one representative appear before the panel to withdraw a grievance.

(h) Where a grievance which has been scheduled by the board for a hearing is withdrawn or settled prior to the hearing date, the parties may mutually choose to substitute another grievance which has not already been scheduled for a hearing. The parties may mutually choose any pending grievance, regardless of its chronological order. It shall be the responsibility of the parties to select the case which they choose to have heard in lieu of the case originally scheduled, and to notify the board accordingly. Only where the board has approved such substitutions prior to the hearing date may the hearing proceed.

(i) Where the parties withdraw a grievance scheduled for a hearing and do not choose the option of substituting another grievance of their choice in lieu of the withdrawn grievance, the board may substitute the next grievance listed in chronological order in lieu of the case being withdrawn. Such substitutions may only be made by the board where the withdrawal is submitted at least three (3) weeks prior to the hearing date.

## Sec. 31-91-37. Evidence.

(a) The parties may offer such evidence as they desire and shall produce such additional evidence as the panel members may deem necessary to an understanding and determination of the dispute. The panel

members shall be the judge of the relevance and materiality of the evidence offered. Conformity to legal rules of evidence shall not be necessary. All evidence shall be taken in the presence of all panel members and both parties, except where any of the parties is absent, in default or has waived his right to be present.

(b) Documents, records and other pertinent data, when offered by either party, may be received in evidence by the panel. Written evidence must be submitted either in the original or proper copies thereof. The names and addresses of all witnesses and exhibits in order received shall be made a part of the case file and recorded on the official hearing forms supplied by the board. The panel shall not be required to return exhibits.

(c) In tripartite proceedings, the parties shall be required to submit five copies of each exhibit to the chairman at the hearing: one copy for each of the three panel members, one copy for the other party, and one copy for the case file. In proceedings before a single arbitrator, three copies of each exhibit must be submitted.

### Sec. 31-91-38. Witnesses.

(a) All witnesses shall be sworn. The chairman of the panel shall administer the following oath to all witnesses: "You solemnly swear that the evidence you shall give, concerning the case now in question, shall be the truth, the whole truth and nothing but the truth, so help you God." When any person, required to take an oath, from scruples of conscience declines to take it in the usual form or when the chairman is satisfied that any person called as a witness does not believe in the existence of a supreme being, a solemn affirmation may be administered to him in the form of the oath prescribed, except that instead of the word "swear" the words "solemnly and sincerely affirm and declare" shall be used and instead of the words "so help you God" the words "upon the pains and penalties of perjury or false statement" shall be used. The parties shall be advised that all sworn testimony is subject to the Connecticut Statutes on perjury.

(b) All witnesses called shall be subject to cross examination by the other party's chief spokesperson.

(c) The panel members may question witnesses at any point in the hearing.

(d) The chairman of the panel shall have the power to require the retirement of any witness or witnesses during the testimony of other witnesses, and a request by either party that a witness or witnesses be so retired may be granted if any possibility exists that denial of such a request could affect the testimony of the witnesses provided the following persons shall not be so retired:

(1) Persons who are a direct party in interest; except that if such person is to be a witness, such person shall be first to present testimony;

(2) The principal spokesperson for a party; or

(3) Persons whose duty it is to assist the principal spokesperson in preparing the case.

### Sec. 31-91-39. Evidence by affidavit and filing of documents.

(a) The panel members may receive and consider the evidence of witnesses by affidavit, but shall only give it such weight as deemed proper after consideration of any objection made to its admission.

(b) All documents not filed with the panel at the hearing, but which are arranged at the hearing or subsequently by agreement of the parties to be submitted, shall be filed with the board for transmission to the panel. All parties shall be afforded opportunity to examine such documents.

### Sec. 31-91-40. Inspection.

Whenever the panel judges it necessary, an on site inspection may be made of the premises in connection with the subject matter of the dispute, after written notice of the parties, who may be present at such inspection.

### Sec. 31-91-41. Briefs.

(a) After the presentation of evidence, each party shall be permitted to file a brief.

(b) The panel may require the parties to submit briefs on the issue or issues of the dispute and may require a brief on a particular point or question.

(c) The briefing schedules agreed upon by the parties and the arbitrator or arbitrators shall be strictly adhered to and the parties shall submit their briefs directly to the panel and to the opposing party with a copy to the board in accordance with such schedule. Parties wishing to reserve their right to a reply brief shall do so at the hearing. Any request for extension of the briefing schedule shall be made only to the board. The board shall forward all such requests to the panel. The panel may grant a request for extension only where sufficient cause is shown by the requesting party or parties. For purposes of this subsection sufficient cause means an occurrence which could not have been known or anticipated by a reasonable person at the time the briefing schedule was agreed to and which the requesting party or parties argues created the need for delay. An extension may be considered by the panel only where the request has been received by the board at least one week prior to the due date, unless sufficient cause has been shown for making the request later. Late briefs shall be returned to the filing party.

### Sec. 31-91-42. Closing of hearings.

(a) The panel members shall inquire of both parties whether they have any further evidence to offer or witnesses to be heard. Upon receiving negative replies, the chairman of the panel shall declare the hearings closed.

(b) If briefs or other documents are to be filed, the hearings shall be declared closed as of the final date set by the panel members for the filing of said summary briefs or documents with the

### Sec. 31-91-43. Reopening of hearings.

Prior to the rendering of an award, a party may move to reopen a hearing for good cause shown such as the emergence of new evidence, but a hearing shall be reopened contingent solely upon the discretion of the panel chairman.

### Sec. 31-91-44. Award.

The award for termination cases shall be rendered by the panel members not more than forty-five (45) days from the date of the final executive panel session held to decide the case, or, where heard by a single arbitrator not more than forty-five (45) days from the date of the last hearing or the briefing date, whichever is later. The award for all cases other than terminations shall be rendered by the panel

members within seventy-five (75) days from the date of the final executive panel session held to decide the case or, where heard by a single arbitrator, not more than seventy-five (75) days from the date of the last hearing or the briefing date, whichever is later.

## Sec. 31-91-45. Executive panel sessions; form of award.

(a) The executive panel session is the session held to decide the case after the last hearing or the briefing date, whichever is later. The panel shall schedule an agreed upon date for an executive panel session which shall be held not more than thirty days after the last hearing or the briefing date, whichever is later.

(b) Oral awards may be rendered upon mutual request of the parties. Whether or not an oral award has been rendered, an award shall be reduced to writing and signed by the members of the panel.

(c) Decisions shall be made by majority vote of the panel members. A panel member may express his disapproval of the majority decision by adding the word "dissenting" after his signature on the award or said panel member may also prepare a dissenting opinion which shall be sent to the board's office and will be made part of the award proper.

## Sec. 31-91-46. Award upon settlement.

If the parties settle their dispute during the course of the arbitration, the arbitrator, upon their request, may set forth the terms of the agreed settlement in an award.

## Sec. 31-91-47. Delivery of award.

The award, incorporating the panel's decision, will be sent by first class mail to the parties.

## Sec. 31-91-48. Expenses.

With the exception of the filing fee, arbitration services of the board are supplied to Connecticut employers and employee organizations without charge.

## Sec. 31-91-49. Communication with panel members.

There shall be no communication concerning the pending case between the parties and the panel members after the chairman of the panel has declared the arbitration hearing or hearings closed.

Any other oral or written communication, other than the briefs and reply briefs, from the parties to the panel members shall be directed to the director of the board for transmittal to the respective panel members. It shall be the duty of the board to notify a party of any communication of the other party.

## Sec. 31-91-50.

Section 31-91-50 of the Regulations of Connecticut State Agencies is repealed.

## Sec. 31-91-51. Request for expedited arbitration.

(a) Upon mutual request by both parties to a dispute, the board will process the dispute according to the following expedited arbitration procedure:

(1) There shall be no stenographic record;

(2) There shall be no briefs;

(3) There shall be no written opinion accompanying the award;

(4) A single arbitrator may hear the case at the option of the parties;

(5) All other requirements of the board's regulations concerning arbitration, which are not in conflict with this Section, shall apply;

(6) Arbitrability may not be claimed; and

(7) Only one day of hearings shall be allowed for each case.


## [ARTICLE III]

### Mediation

### Sec. 31-91-52. Purpose and scope of mediation services.

Mediation is the use of third party neutrals to assist two contending parties to reach agreement on matters in dispute. The mediation services of the board are available to State employers and employee organizations for purposes of settlement of grievances or mediation of impasses in contract negotiations.

### Sec. 31-91-53. Appointment of powers of mediators.

The full time mediators appointed by the Labor Commissioner, with the advice and approval of the board, shall be available to investigate and adjust labor disputes between State employers and employee organizations. Each mediator shall have all the powers of the board to enter establishments, to examine payrolls or other records, to issue subpoenas and to administer oaths.

### Sec. 31-91-54. Goals and duties of mediators.

Every labor dispute is unique, therefore, no techniques or procedures can be established to govern the conduct of mediators in every dispute. However, to assure the parties the greatest degree of equity and professional conduct by mediators, the board and its labor mediators will adhere to the "Code of Professional Conduct for Labor Mediators" which has been adopted by the federal mediation and conciliation service and the association of labor relations agencies. In the performance of mediation services, mediators shall be responsible to the board.

### Sec. 31-91-55. Function of the board in strikes and lockouts.

In cases where the board has knowledge of a potential or actual strike or lockout, the chairman of the board or a panel of said board shall establish communications with both parties to the controversy and endeavor by the process of mediation to secure a settlement of such strike or lockout.

### Sec. 31-91-56. Testimony by mediators.

To maintain the effectiveness of mediation the parties must be assured that their discussions with mediators shall not be disclosed. Mediators shall not testify, even if subpoenaed, concerning information disclosed during the mediation process.

**Sec. 31-91-57 - Sec. 31-91-63.**

Sections 31-91-57 through Sec. 31-91-63, inclusive, of the Regulations of Connecticut State Agencies are repealed.

**[ARTICLE V]**

**Rules of Procedure for Municipal Mediation**

**Fact Finding, and Binding Interest Arbitration**

**Sec. 31-91-64. Notice of contract expiration; form; contents.**

(a) The board shall provide municipal employers with a notice form, which shall be completed by the municipal employer and returned to the board within thirty days after the approval of each municipal collective bargaining agreement.

(b) The information provided by the municipal employer on the notice form shall include, but shall not be limited to, the following:

(1) The name and address of the municipality and the name of the official who will represent the municipality in impasse resolution procedures.

(2) The name and address of the employee organization and the name of the official who will represent the employee organization in impasse resolution procedures.

(3) The approval date and expiration date of the contract.

(4) The number of employees covered by the contract.

(5) The subject matter and sections of the contract which may be subject to a reopener clause.

**Sec. 31-91-65 - Sec. 31-91-70.**

Section 31-91-65 through Sec. 31-91-70, inclusive, of the Regulations of Connecticut State Agencies are repealed.

**Statement of Purpose**

The purpose of these regulations is to make changes that incorporate the present organization and policies of the State Board of Mediation and Arbitration and that reflect changes in statute since the effective date of the existing regulations.

Last Updated: May 21, 2002
Published by the Connecticut Department of Labor, Automation Support Unit

WORKING AGREEMENT

BETWEEN

THE CITY OF BRISTOL

AND

POLICE LOCAL #754 OF COUNCIL NO.15

AMERICAN FEDERATION OF STATE, COUNTY

AND MUNICIPAL EMPLOYEES, AFL-CIO



JULY 1, 1996 – JUNE 30, 2001

66

O2CV 1210 ExB 16

1⁶

# TABLE OF CONTENTS

| ARTICLE | | PAGE |
|---|---|---|
| | APPENDIX A - CODE AND SALARY SCHEDULE EFFECTIVE JULY 1, 1996 | 63 |
| | APPENDIX B - CODE AND SALARY SCHEDULE EFFECTIVE JULY 1, 1997 | 64 |
| | APPENDIX C - CODE AND SALARY SCHEDULE EFFECTIVE JULY 1, 1998 | 65 |
| | APPENDIX D - CODE AND SALARY SCHEDULE EFFECTIVE JULY 1, 1999 | 66 |
| XXXI | APPENDIX E – HEALTH INSURANCE PLAN | 67 |
| XVI | COMMUNICATIONS DIVISION | 53 |
| XXXVI | DISCIPLINE AND DISCHARGE | |
| XXXIV | DRESS AND GROOMING STANDARDS | |
| V | DRUG TESTING | |
| XXXVII | DUES CHECK OFF | |
| XXX | DURATION | |
| XI | EDUCATION | |
| XVII | EXTRA DUTY ASSIGNMENTS | 17 |
| XXVI | FUNERAL LEAVE | 30 |
| XV | GENERAL PROVISIONS | 15 |
| XII | GRIEVANCE PROCEDURE | 5 |
| XX | HOLIDAYS | 9 |
| VIII | HOSPITALIZATION AND INSURANCE | 34 |
| XXXII | HOURS OF WORK | |
| XXIII | IDENTIFICATION DIVISION | |
| XXIII | LEAVE OF ABSENCE | |
| XXXVII | LEGAL COUNSEL | |
| II | MANAGEMENT RIGHTS | |
| XXXV | MATERNITY LEAVE | |
| XXIV | MILITARY LEAVE | 58 |
| I | NO DISCRIMINATION | |
| X | OVERTIME | |
| XXVII | PENSIONS | |
| XXII | PERFECT ATTENDANCE | |
| XXX | PHYSICAL FITNESS | |
| | PREAMBLE | |
| VII | PROBATIONARY PERIOD | |
| XXXIII | PROMOTIONS FOR CRIMINAL INVESTIGATION DIVISION | |
| IX | RATES OF PAY | |
| III | RECOGNITION | |
| VI | SENIORITY | |
| XIV | SICK LEAVE | |
| XXXVIII | SIGNATURE PAGE | |
| XXV | TIME CLOCKS - GENERAL RULES | |
| XIX | UNIFORMS AND CLOTHING | |
| XVIII | UNION BUSINESS LEAVE | |
| IV | UNION SECURITY | |
| XIII | VACATIONS | |
| XXI | WORKERS' COMPENSATION | 37 |

AGREEMENT

between

THE CITY OF BRISTOL, CONNECTICUT

and

THE BRISTOL POLICE UNION LOCAL #754

AFSCME, AFL-CIO

## PREAMBLE

0:1    This Agreement entered into by the City of Bristol, hereinafter referred to as the City, and the Bristol Police Union Local #754 and Council #15, American Federation of State, County, and Municipal Employees, AFL-CIO, hereinafter referred to as the Union, has as its purpose the promotion of harmonious relations between the City and the Union:  The establishment of an equitable and peaceful procedure for the resolution of differences:  The establishment of rates of pay, hours of work, working privileges or benefits, or any other matters that come within the general meaning of the terms, working conditions or conditions of employment.

## ARTICLE I

## NO DISCRIMINATION

1:1    Both parties agree to continue their policies of not discriminating against any employee on the basis of race, color, religion, age, sex, national origin, marital status, political affiliation, physical disability, or sexual orientation which is unrelated to the ability of

-1-

the employee to perform a particular job. As used in this Agreement, masculine or feminine pronouns shall include reference to either sex.

## ARTICLE II
### MANAGEMENT RIGHTS

2:1    The City shall have the right to determine all matters concerning the management or administration of the Department subject to the provisions of this Agreement.

2:2    The City recognizes its obligations under the Municipal Employees Relations Act and shall not make unilateral changes in any substantial conditions of employment without prior negotiations upon request of the Union.

2:3    Except as otherwise specified in this Agreement, the City has the right to determine the table of organization, staffing levels and job responsibilities. However, if a change in such matters results in a change in any substantial conditions of employment of members of the bargaining unit, such effects shall be subject to negotiation upon request of the Union.

## ARTICLE III
### RECOGNITION

3:1    The City recognizes the Union as the sole and exclusive bargaining agent for all full time uniformed and investigatory members of the Police Department with the authority to exercise police powers exclusive of the Chief and Captains.

## ARTICLE IV
### UNION SECURITY

4:1    Any employee who is a member of the Union at the time the Agreement becomes effective shall continue membership in the Union. Any new employee, within thirty (30) days following the day of employment shall become a member of the Union as a condition of his employment. It is understood that new employees cannot process a grievance for termination during their probationary period.

## ARTICLE V
### DUES CHECK OFF

5:1    The City is authorized to deduct weekly, Union dues of members of Local #754. Such deductions shall be made only after said member has signed a request form furnished by the Union, authorizing the City to deduct said Union dues. The amount of dues to be deducted shall be determined by the Union by written notice to the Personnel Department with the Union being totally responsible for amount requested. Any change in the amount of dues deducted will not become effective until thirty (30) days after receipt of such written notice the deduction week.

5:2    The City will notify the Union thirty (30) days in advance of any change in the deduction week.

## ARTICLE VI
### SENIORITY

6:1.1    The Department seniority as used in this Article is defined as the total length of continuous service as a regular member of the Police Department.

6.1.2   Rank seniority is defined as the total length of continuous service in a particular rank.

6.2   If more than one appointment as a regular full time member of the department is made on the same day, the seniority of such appointees shall be determined by the order of their appointment. If more than one promotion is made on the same day, seniority in rank shall be determined by employee's respective position on the eligibility list.

6:3   An employee shall lose all seniority if

6.3.1   He voluntarily terminates his employment with the Department.

6.3.2   He is discharged for just cause.

6.3.3   He fails to return to work upon expiration of a leave of absence.

Department seniority shall continue during any period of authorized leave whether paid or not.

6:4.1   Shift assignments within each division except the Criminal Investigation Division (Detective and Identification Divisions) and Communications Division shall be based upon departmental seniority, and selection of shifts shall take place every twelve (12) weeks. Sergeants and Lieutenants in the Patrol Division shall also make selections every twelve (12) weeks, but such selection shall be based on rank seniority (length of service as a Sergeant or Lieutenant). In the Criminal Investigation Division, (Detective and Identification Divisions) shift assignments shall be made on the basis of rank seniority within the division (Detective and Identification) subject to operating requirements and case load within the division. Management shall have the absolute right to determine the number of Criminal Investigation Division personnel assigned to any shift except that the number of Criminal Investigation Division personnel presently assigned to the first shift (7:00 A.M. - 8:00 A.M.) shall not be reduced

during the term of this Agreement. This section shall not apply to Lieutenants in the Staff Services Division.

6:4.2   Special patrols and shifts may be established at hours to fit the needs of the Department. Assignments to these special patrols and shifts may be filled by volunteers at the Chief's choice as far as possible. If it is impossible to fill the assignment by volunteers, the least senior man shall be assigned to the special shift and the special assignment shall be filled into the Supervisor.

6:4.3   Any employee assigned to a shift which overlaps more than half the hours of the day shift must have sufficient seniority for assignment to the day shift. Effective upon ratification of this contract, this section shall not apply to Lieutenants, Sergeants assigned outside the Patrol Division, FTO officers or probationary officers during on-the-job training.

6:5   The Chief shall have the authority to assign a total of six (6) employees for an indefinite period of time for the purpose of those employees (injured on duty) who are able to return to duty and who are on certified limited or light duty for medical or other reasons, and who are unable to perform most of their normal duties. Such assignments may fill existing positions at the discretion of the Chief (Limited to: communications, front desk, to assist other administrative personnel). Shift assignments shall be governed by departmental seniority provided, however, Lieutenant(s) will be assigned to administrative duties only.

6:5.1   If any bargaining unit member is permanently disqualified from performing any police duty upon a certificate of a physician appointed by the Board of Police Commissioners, then such member may apply for Veterans Reserve, at any time.

6:5.2   Employees who are certified, limited or light duty for medical or other reasons, are eligible to take a promotional examination. However, such employees will not be

entitled to receive or accept a promotion unless they are certified by a physician as having no physical restrictions.

6.6   Any two (2) employees of the same rank may exchange shifts on a one-day basis without regard to seniority provisions. However, any such exchange of shifts must have the approval of the Chief or his designee, and any employee whose shift assignment is changed. In any event, there shall be no cost to the City.

6.7   If any openings should occur on any shift within any twelve (12) week period, and the City elects to fill said opening, said opening shall be filled based on the preceding shift bid.

6.8   The groups shall be defined as to the days off of a Patrol Officer or a Sergeant, and for this purpose only, shall be broken down into three (3) units, these units being A, B, and C. These units shall be maintained on all three (3) shifts. It will be Management's prerogative to assign personnel to groups subject to the following stipulation:

6.8.1   That a member of the Department who changes shifts at the end of a twelve (12) week cycle, will move to the vacated group. Seniority will prevail in cases where there is more than one (1) group vacancy.

6.8.2   That a member of the Department shall only be allowed to change his group with the permission of every junior member of the group he wishes to enter.

6.8.3   That a member of the Department who is on temporary assignment for training into any division, will be allowed back into the group he had belonged to prior to the temporary assignment.

6.8.4   There shall be one Lieutenant on each of the three (3) patrol shifts, each with different days off, and a relief Lieutenant scheduled to work on the other Lieutenant's day off.

6.9   In the event the City decides to reduce the number of positions within any classifications in the bargaining unit, then the employee with the least rank seniority within the affected classification shall be laid off first provided that, in lieu of layoff he may elect to accept a voluntary demotion to a lower classification if his departmental seniority exceeds the department seniority of any other employee in that lower classification. The employee in that lower classification with the least rank seniority shall be laid off unless he elects to accept a voluntary demotion (by following the above procedures) to a still lower classification. Any recall to duty shall be governed by departmental seniority and any such employee shall have recall rights which shall remain in effect for three (3) years from the date of that employee's layoff, which recall shall be subject to that employee passing a physical examination to be paid for by the City.

6.10   During the term of this Agreement, management reserves the absolute right to create special assignments without consideration for seniority when, in the opinion of the Chief, the employee possesses special skills to perform such assignment. If more than one (1) employee is equally qualified, seniority shall prevail. It is agreed that if such position is created and there is a need for a new job description, change in hours of work, or other working conditions, the parties agree to negotiate.

## ARTICLE VII

### PROBATIONARY PERIOD

7:1    All new probationary Police Officers appointed to the department shall serve a probationary period of one (1) year after which they shall become regular full time employees of the department.

7:2    The parties recognize the need to properly train new officers. Therefore, effective upon the issuance of the arbitrators' award, the City shall establish a Field Training Officer (FTO) Program for all new officers following graduation from the municipal police academy. The program shall be based upon the nationally recognized San Jose Model Program and shall be of a duration of no less than twelve (12) weeks. The training shall take place during regularly scheduled hours. After the completion of the initial FTO program, the parties agree to sit down and review the program to determine what if any changes are needed. All officers performing FTO duties shall be compensated with 5% of their respective base pay while training a recruit officer and participating in the program.

7:3    During such orientation and training period, the new Police Officer(s) may be assigned to any shift and shall not be eligible to work overtime or any extra duty assignments; however new police officers may be used for overtime or extra duty assignments only after the scheduling officer has exhausted the internal assignment list. However, such officers may be used if the need arises to eliminate an immediate emergency.

7:4    Upon completion of the probationary period, an employee's departmental seniority shall be computed from the first day of such probationary period.

-8-

## ARTICLE VIII

### HOURS OF WORK

8:1.1    The work week for all employees shall be thirty-seven and one-half (37 1/2) hours per week within the six-week work cycle used in the Department.

8:1.2    The schedule of hours for the Patrol Division and Communication Division shall be four (4) consecutive days of eight (8) hour shifts on duty followed by two (2) days off.

8:1.3    The schedule for all others, including the Court Liaison, Traffic Officer, and Communications Sergeant, shall be four (4) work weeks of five (5) consecutive eight (8) hour days (Monday through Friday) and two (2) weeks of four (4) consecutive eight (8) hour days (either Monday through Thursday or Tuesday through Friday). It is understood between parties that there is no requirement to fill these vacancies on days off.

8:2    The regular patrol and communications shifts shall be as follows:

8:2.1    Day time or first shift will be between the hours of 7:00 A.M. and 3:00 P.M.

8:2.2    Night shift or second shift will be between the hours of 3:00 P.M. and 11:00 P.M.

8:2.3    Night shift or third shift will be between the hours of 11:00 P.M. and 7:00 A.M.

8:2.4    Starting time for certain beats, zones, or Lieutenants may differ fifteen (15) minutes either way.

8:3    Shift schedules are to be posted five (5) days in advance of the effective work date. Shift assignments are to be posted on this schedule four (4) days in advance of the

-9-

effective work date, except when circumstances prevent it. Except in cases of emergency, any type of off duty request must be submitted twenty-four (24) hours prior to the posting date.

8.4    In cases of emergency as declared by the Mayor, the City shall have the right to temporarily change shift hours as needed with adherence to seniority where possible. Such changes will remain only for the duration of the emergency.

8.5    The regular shifts for Criminal Investigation Division (Detective and Identification Divisions) shall be as follows:

8.5.1    First shift will start between the hours of 7:00 A.M. and 8:00 A.M.

8.5.2    Split shift will start between the hours of 11:00 A.M. and 2:00 P.M.

8.5.3    Second shift will start between the hours of 3:00 P.M. and 4:00 P.M.

These hours of work as set forth above shall be subject to the caseload and operating requirements of the Criminal Investigation Division.

8.6    The regular shift for the present positions of Court Liaison Officer, Traffic Division, Records Division, and Training Lieutenant will start between the hours of 7:00 A.M. and 9:00 A.M., except, for the purposes of training responsibility only, the Chief shall have discretion to schedule the Training Lieutenant's hours of work.

8.7    The City will have the right to order employees into work on their day off for the purpose of state certification, firearms training, and emergency medical technician training.

8.7.1    The City will have the right to call employees in on their day off only in the following cases:

a.    For the reasons explained in the above paragraph, or

b.    In an emergency as declared by the Mayor of the City.

-10-

8.7.2    The City shall notify the employee at least five (5) days in advance if a vacation has to be canceled for the purpose of the training described above.

## ARTICLE IX

## RATES OF PAY

9.1    Police Officers shall be hired at Step 1 and on completion of four months service or upon completion of training academy shall be advanced to Step 2 and shall thereafter advance to the next highest Step on their anniversary date of employment.

9.2    Retroactive to July 1, 1996, all classifications, at all steps, on the salary schedule effective 6/30/96 shall be increased by 2.5%. The 1996-97 wage schedule shall become Appendix A in the contract.

9.3    Effective July 1, 1997, all classifications, at all steps, on the salary schedule effective on 6/30/97 shall be increased by 2.75%. The 1997-98 wage schedule shall become Appendix B in the contract.

9.4    Effective July 1, 1998, all classifications, at all steps, on the salary schedule effective on 6/30/98 shall be increased by 2.75%. The 1998-99 wage schedule shall become Appendix C in the contract.

9.5    Effective July 1, 1999, all classifications, at all steps, on the salary schedule effective on 6/30/99 shall be increased by 2.75%. The 1999-2000 wage schedule shall become Appendix D in the contract.

9.6    Effective July 1, 2000, there will be a wage-reopener.

9.7    Effective retroactively from July 1, 1994, any employee whose assigned shift begins between the hours of twelve (12) noon and 6:45 A.M. shall receive in addition to his

-11-

or her regular pay, a shift premium percentage of three percent (3%) for each hour or portion thereof worked on each shift.

9:7.1    Effective July 1, 1995, any employee whose assigned shift begins between the hours of twelve (12) noon and 6:45 A.M. shall receive, in addition to his or her regular pay, a shift premium percentage of four percent (4%) for each hour or portion thereof worked on each shift.

9:7.2    Effective July 1, 1998, any employee whose assigned shift begins between the hours of twelve (12) noon and 6:45 A.M. shall receive, in addition to his or her regular pay, a shift premium percentage of four and one half percent (4.5%) for each hour or portion thereof worked on each shift.

9:7.3    Effective July 1, 1999, any employee whose assigned shift begins between the hours of twelve (12) noon and 6:45 A.M. shall receive, in addition to his or her regular pay, a shift premium percentage of five percent (5.0%) for each hour or portion thereof worked on each shift.

9:8    Whenever any employee has worked in a higher classification than his regular classification, such employee for any days so worked after two (2) consecutive days or for any days worked after an accumulation of five (5) days in any fiscal year, shall receive the lowest rate of pay provided in the salary plan for the highest classification in which he serves in this acting capacity; provided the employee assumes the authority and responsibility of the highest classification.

## ARTICLE X

## OVERTIME

10:1    The term "overtime" for the purpose of this Agreement shall mean police duty in excess of the regular work day or work week for which the employee is paid by the Police Department.

10:2    All overtime shall be paid at a time and one-half rate, and shall be paid for all hours or any portion thereof, in excess of eight (8) hours per day.

10:3    Employees who are called in during off duty time to perform overtime duty for the City shall be paid a minimum of four (4) hours pay at the rate of time and one-half, or the actual hours worked at the rate of time and one-half, whichever is greater.

10:4    Overtime pay shall not be subject to the minimum hour provision of this Article when such overtime hours are contiguous with the initial or terminal hours of employee's scheduled shift.

10:5    Supernumerary Police Officers in the Department shall be used after an honest effort is made to recruit regular Patrol Officers. It is understood that a regular can displace a Supernumerary when there is more than seventy-two (72) hours remaining in the time of the assignment.

10:6    The method of overtime equalization shall be as follows:

10:6.1    Equalization of overtime shall occur over a period of one (1) year begining on July 1 of each year, with the understanding that the City will attempt to maintain equalization throughout the year.

10.6.2    Said equalization shall be within twenty-five (25) hours when efficiently practical at the end of the period of time allotted and shall be equalized within groups.

10.6.3    Effective July 1, 1997, the breakdown within the Department for the purpose of distributing overtime only shall be as follows:

Patrol Division in their respective shift (first, second, or third) and working schedule (A, B, or C) making a total of nine (9) separate groups.

The following shall be considered as separate individual groups:

A)    Patrol Lieutenants
B)    Patrol Sergeants
C)    Patrol officers assigned to Communications, Traffic and Court Liaison
D)    Detectives assigned to CID
E)    Detectives assigned to special operations (narcotics, gangs, etc.)
F)    Evidence Technicians
G)    Staff Lieutenants and Staff Sergeants
H)    Youth
I)    Detective Lieutenants and Detective Sergeants

10.6.4    Overtime within the Patrol Division shall be on rotation within their respective Groups, except for Lieutenants. Patrol Lieutenants shall rotate through their Group during the work week until all Patrol Lieutenants have had the opportunity to work eight (8) hours. The next opportunity during the same work week will be offered to the Staff Services Lieutenants. Any additional opportunities will then return to the Patrol Lieutenants for the remainder of that work week. If all Lieutenants refuse the overtime, then the Detective Lieutenant shall be offered the overtime before Patrol Sergeants.

Patrol Officers assigned to Communications, Traffic, and Court Liaison shall be considered to be one (1) group and rotate within their Group.

All personnel assigned to Criminal Investigation Division (Detective and Identification Divisions) shall have the opportunity, once every third Saturday, to work an ei[...] (8) hour overtime shift.

Staff Services Lieutenants and Communications Sergeant shall have at least eight (... hours of overtime opportunity every three (3) weeks.

No change will be allowed unless mutually agreed to by both parties, and no change... overtime shifts will be allowed within seventy-two (72) hours prior to the start of the... excluding Article VI, Section 6.6.

10.6.5    All overtime hours, including extra duty hours, shall be logged and posted... in a conspicuous place.

10.6.6    All Patrol Officers within their respective Patrol Group shall be considered... on a rotating basis for their first extra overtime shift assignment before consideration is given... the second extra shift.

10.6.7    Members of the groups named in Section 10.6.3, A, B, and C, will not be charged with unavailability or refusal of overtime when they create an opening by taking... authorized one-day leave from duty or when they are working regular duty or when the overtime would result in more than sixteen (16) hours of continuous duty.

10.6.8    Overtime assignments within the Patrol Division shall be given outside an Officer's respective group when he is deemed competent, and if there is a thirty-two (32) hour difference between the average in one (1) group and the average in any other group, unless in said group, all available personnel in that group are assigned overtime for two (2) of their scheduled days off or have been offered overtime and refused.

# ARTICLE XI

## EXTRA DUTY ASSIGNMENTS

11:1    The term "extra duty" or "extra assignment" for the purpose of this Agreement, shall mean police duty for which an employee's services are being charged by the City to an outside party, or some City Department, other than the Police Department (including Animal Control Officer). Assignments will be scheduled either four (4) or eight (8) hours, and hours so scheduled will be paid even if the assignment ends earlier. All personnel giving extra duty assignments shall at all times be under the direction of the Shift Commander.

11:2    All extra duty assignments shall be made by the Chief of Police or his designated representative, and shall be filled by employees during their off duty hours, and such assignments shall be allocated as equally as possible among employees who have indicated their desire to work extra duty assignments. It is understood that preference for extra duty assignments in a work week will be given to employees who have had the least opportunities for overtime and extra duty based upon the work week preceding the last week worked.

11:3.1    For the purpose of four (4) hour assignments:  Employees working extra duty assignments shall be paid one and one-half (1-1/2) times their regular straight time hourly rate for any hour(s) so worked up to four (4) hours or any portion of an hour so worked, set for (4) hours, rounded to the nearest one-half (1/2) hour.

11:3.2    For the purpose of eight (8) hour assignments:  Employees working extra duty assignments shall be paid one and one-half (1-1/2) times their regular straight time hourly rate for any hours so worked up to eight (8) hours, and shall be paid two and one quarter (2-1/4) times their regular straight time hourly rate for any hour or portion of an hour so worked over eight (8) hours, rounded to the nearest one-half (1/2) hour.

-17-

Patrol Officers from groups on the other two (2) shifts would then be allowed to work overtime in the available positions. If these Patrol Officers already have been assigned overtime or had been offered overtime during that work week, the assignments would be made available to the Officers of the Staff Services Division.

It is further understood that when overtime is given outside a Patrol Group, Patrol Officers with no overtime will be offered the position first.

All other individual groups shall maintain equalization of overtime within their own individual groups.

It is also agreed between the parties that those employees desiring off-shift overtime (Thursday, Friday, Saturday) and meet the requirements set forth in Bristol Police Department Form #116, shall submit this form to the Chief or his designee by 8:00 A.M. on Wednesday of each work week.

10:6.9    When an employee is either transferred to another division or group, or is a new employee, he shall assume the average overtime of the group he is entering.

10:6.10    All employees who have more overtime differential than is allowable under Section 10:6 of this Article at the end of each year because of conditions beyond control shall be credited with these extra hours in the new year. This Section shall not apply to Lieutenants.

10:6.11    Any employee who gives less than twenty-four (24) hours notice of his inability to work an overtime shift for which he has been previously scheduled shall forfeit his next three (3) overtime opportunities and shall be charged as if he had refused them.

10:6.12    Refusal slips shall be submitted by the employee to the assignment officer or the shift commander twenty-four (24) hours prior to the start of the assignment. Failure to do so shall result in the penalties as set forth in Section 10:6.11.

-16-

11:3.3    Employees working extra duty assignments on a holiday recognized in the contract shall be paid two (2) times their regular straight time hourly rate for any hour(s) so worked up to eight (8) hours, and shall be paid two and one-half (2-1/2) times their regular straight time hourly rate for any hour or portion of an hour so worked over eight (8) hours, rounded to the nearest one-half (1/2) hour.

11:4    Employees with the rank of Detective Lieutenant, Lieutenant, Detective Sergeant(s), Sergeant, Detective, Evidence Technician(s), and Patrol Officer shall be eligible to work extra duty assignments. Employees shall not change their scheduled shift hours for the purpose of working extra duty assignments except as provided in Section 6:6 or as otherwise agreed between the parties.

11:5    An employee who desires assignments to extra duty work shall so notify the designated officer, in writing, forty-eight (48) hours prior to the start of the assignment. Within forty-eight (48) hours of the start of the assignment, the City's designated officer may fill the job at his own discretion. If such assignment is posted or arises less than forty-eight (48) hours prior to the start of that assignment, a reasonable effort shall be made to contact regular Patrol Officers.

11:6    Any employee who gives less than twenty-four (24) hour notice of his inability to work an extra duty assignment for which he has agreed to work shall forfeit the right to work extra duty opportunities for the next thirty (30) calendar days and shall be charged as if he had refused such extra duty assignments. This provision shall not apply when an employee has been granted reassignment to other duty.

-18-

11:7    Priority for all extra duty assignments shall be granted to members of the classified service before the non-classified (Supernumerary) employees, provided employee(s) comply with Section 11:5 above.

11:8    Officers who are assigned to an extra duty assignment which is canceled must be notified of such cancellation no less than forty-five (45) minutes prior to the start of the job. If the City fails to provide such notification within the time required, the officer shall be paid for all hours scheduled for the extra duty assignment. Said notification shall be to the officer's home telephone number.

## ARTICLE XII

## HOLIDAYS

12:1    The recognized paid holidays for qualifying employees are as follows:

| | | |
|---|---|---|
| New Year's Day | Memorial Day | Thanksgiving Day |
| Martin Luther King Day | Independence Day | 1/2 day December 24 |
| Lincoln's Birthday | Labor Day | Christmas Day |
| Presidents' Day | Columbus Day | 1/2 day December 31 |
| Good Friday | Veterans' Day | |

Employees qualifying under Section 12:2 shall receive holiday pay in the check covering the calendar week in which the holiday falls.

12:2    To qualify for holiday payment an employee shall have worked six (6) hours on his previously scheduled working day and six (6) hours on his first scheduled working day following the holiday. Paid sick leave or injuries on duty, if valid, and all earned leave time shall be credited as a day worked.

-19-

12:3    For the purpose of holiday pay under this Article, New Year's Day and Christmas Day will be recognized on the actual calendar date and all other holidays will be recognized on the dates legally observed.

12:4    In the event a division or divisions are closed on Thanksgiving, Christmas, or New Year's Day, employees in such divisions may volunteer to work in the Patrol Division or Communications Division in order to allow more officers in those divisions time off, and shall be paid at their regular straight time hourly rate for the first eight (8) hours of such duty.

12:5    Employees who work on a holiday specified in Section 12:1 may elect to receive Compensatory Time in lieu of pay for working on such day. This time must be used six (6) months from the day of the holiday.

12:6    Employees who work on Independence Day, Thanksgiving Day, or Christmas Day shall be paid one and one-half (1 1/2) times their regular straight time hourly rate for all hours so worked.

## ARTICLE XIII
## VACATIONS

13:1    Full time employees who have less than six (6) months of continuous employment as of June 30th of any year, shall receive one (1) week vacation with pay at their regular weekly rate.

13:2    Full time employees who have been continuously employed over six (6) months but less than six (6) years as of June 30th of any year shall receive two (2) weeks vacation with pay at their regular weekly rate.

-20-

13:3    Full time employees who have been continuously employed for six (6) but less than eleven (11) years as of June 30th of any year shall receive three (3) weeks vacation with pay at their regular weekly rate.

13:4    Full time employees who have been continuously employed for eleven (11) years or more as of June 30th of any year shall receive four (4) weeks vacation with pay at their regular weekly rate.

13:5    Employees completing the year of continuous service which will entitle them to a third or fourth week of vacation pursuant to Section 13:3 or 13:4 above shall be entitled to take such additional week at any time within one (1) year after their anniversary date.

13:6    The vacation period shall be from July 1st to June 30th of each year.

13:7    Employees shall be granted their vacations throughout the year according to seniority within rank subject to the demand of police service as determined by the Chief of Police.

13:8    In no event shall employees entitled to three (3) or more weeks vacation have the right to take three (3) consecutive weeks during the period of May 1st through September 15th.

13:9    Vacation time can be taken in whole or in part, if in accordance with Section 13:8 of this Article. Employees wishing to commence a vacation period of less than two (2) weeks shall notify the responsible officer of his intentions seven (7) days before starting such period. Employees wishing to commence a vacation period of two (2) weeks or more shall notify the responsible officer of his intentions fourteen (14) days before starting such period. No employee shall be entitled to more than one (1) Saturday and one (1) Sunday off for each week of vacation earned.

-21-

13:10    All vacations must be completed during the vacation year and are not accumulative. The City must afford the opportunity for the employee to take his vacation within the vacation year, except where this is in conflict with the provisions of Section 13.5.

13:11    Employees with four (4) weeks vacation can request compensation of one (1) week of said vacation in lieu of said vacation should the Department Head feel the employee can be used at employment. Said employment shall be at the straight time rate of pay.

13:12    An employee who resigns or is terminated for any reason before his vacation period in any year shall not be eligible for vacation in that year. It is understood that any employee who has earned vacation from the previous year shall receive pay in lieu of unused vacation. An employee who retires or is laid off shall receive vacation pay on a pro-rated basis.

13:13    In the event of any employee's death, his pro-rated accumulated vacation pay shall be paid to his survivor(s).

13:14    Employees who work four (4) hours or more overtime may elect to be compensated for such overtime in the form of extra vacation time, unless filling a vacancy created by the use of earned extra vacation time, and subject to the following:

13:14.1    Extra vacation time will be computed on the basis of one and one-half (1-1/2) hours of extra vacation time for each hour of overtime worked.

13:14.2    A maximum of ten (10) days per year shall be allowed in any fiscal year and all credited time shall be taken by the conclusion of each fiscal year. A maximum of ten (10) days per year shall be allowed in any fiscal year unless otherwise mutually agreed for Lieutenants in divisions other than Patrol and all credited time shall be taken by the conclusion of each fiscal year.

13:14.3    Employees can accumulate a maximum of five (5) days at one-time before being required to take said credited time unless otherwise mutually agreed for Lieutenants in divisions other than Patrol.

13:14.4    Extra vacation time shall be returned to employees when sufficient notice given and it does not interfere with the efficient operation of the Department.

13:15    One (1) day off duty requests based upon days earned by the employee (i.e. vacation, personal leave, extra vacation time), may be granted provided the request is submitted no later than three (3) days prior to the day desired. Such request shall be in writing and shall be granted subject to the demands of the Department. All requests that are received seven (7) days or more in advance of date desired, shall be given in order of adherence to the seniority. All requests that are received less than seven (7) days in advance of date desired, when granted, shall be given in order of date and time submitted.

### ARTICLE XIV

### SICK LEAVE

14:1    Sick leave shall be considered as absence from duty with pay for the following reasons:

14:1.1    Illness or injury, except when directly traceable to employment by an employer other than the City of Bristol.

14:1.2    When the employee is required to undergo medical, optical, or dental treatment and only when this cannot be accomplished on off duty hours.

14:2    Eligibility for sick leave payments shall be computed from the date an employee is appointed a full time employee. Employees shall call in at least one-half (1/2) hour

before their assigned starting time or they shall not receive sick credit for said day unless the reason for tardy notification is deemed satisfactory by the Chief of Police. The accumulation and payment of sick leave shall be made as covered in this Article.

14:3 An employee who has been on the payroll for less than six (6) months will receive no sick leave.

14:4 An employee who has been on the payroll for six (6) months but less than one (1) year shall be paid for absence of not more than five (5) working days.

14:5 An employee who has been on the payroll continuously for more than one (1) year but less than five (5) years shall receive twelve (12) working days sick leave credit each year on the anniversary date of his employment, subject to the provisions of Section 14:8.

14:6 An employee who has been on the payroll continuously for five (5) years but less than ten (10) years shall receive eighteen (18) working days sick leave credit each year on the anniversary date of his employment, subject to the provisions of Section 14:8.

14:7 An employee who has been on the payroll continuously for ten (10) years or more shall receive twenty-five (25) working days sick leave credit each year on the anniversary date of his employment subject to the provisions of Section 14:8.

14:8 Sick days shall begin to accumulate at said anniversary date of employment and continue until such time as two hundred (200) working days are achieved which shall be the maximum credits allowable for any employee.

14:9 After the expiration of sick leave days, employees will receive Sickness and Accident benefits under the terms of the approved policy for thirteen (13) weeks based on their wage range.

14:10 A medical certificate shall be required for an absence consisting of four (4) consecutive working days at the employee's expense. Should a medical certificate be required by the City for absences of three (3) consecutive days or less, it shall be paid for by the City.

14:11 If an employee is approved for return to work without a physician's certificate, he shall return to work immediately if scheduled. Should an employee require physician's approval, he shall not return to work until approval is given by said physician and it is received by the responsible officer in charge.

14:12 It shall be the right of the City through the Chief of Police and/or Director of Personnel to indicate existing abuses of sick leave. In such case, the Chief of Police and/or Director of Personnel shall produce records and proof of sick leave abuse to the Union, and the City will notify the Union the manner in which the abuse is to be handled. The City may request a medical evaluation by a physician of its choice at its expense, and if the employee's physician and the City's physician disagree on the employee's ability to work, those two physicians shall select a third physician whose opinion shall be binding on the parties. The cost of the third physician shall be shared by the City and the employee.

14:13 Effective upon ratification of this contract, upon retirement or death of an employee, forty-four percent (44%) of all unused sick leave shall be paid to the employee, or next of kin, whichever is applicable.

## ARTICLE XV

### GRIEVANCE PROCEDURE

15:0.1 PURPOSE. The purpose of the grievance procedure shall be to settle employee grievances on as low an administrative level as possible so as to insure efficiency and employee morale.

15.0.2    DEFINITION.    A grievance for purposes of this procedure shall be considered to be an employee or Police Union complaint concerned with:

15.0.2.1    Discharge, suspension or other disciplinary action.

15.0.2.2    Charge of favoritism or discrimination.

15.0.2.3    Interpretation and application of rules and regulations of the Police Department.

15.0.2.4    Matters relating to the interpretation and application of the Articles and Sections of this Agreement.

15.1    PROCEDURE.    The following grievance procedure shall be used by an employee or the Police Union to settle all departmental grievances. The only grievances that will be recognized are those that are initiated within twenty (20) calendar days of the alleged infraction. It is also understood that either the employee, the Union, or the City can represent themselves and/or have representation of their choice.

15.1.1    STEP ONE.    The aggrieved shall submit his written grievance to the Chief of Police or his designee, setting forth the applicable Article and Section of the Agreement which is alleged to have been violated. The grievance must be answered in writing within eleven (11) calendar days after receipt.

15.1.2    STEP TWO.    Should the grievance not be settled to the satisfaction of the aggrieved, it shall be submitted within fourteen (14) calendar days to the Director of Personnel. The decision of the Director of Personnel shall be rendered in writing to all parties involved within fifteen (15) calendar days after receipt.

15.1.3    STEP THREE.    Should the grievance not be settled to the satisfaction of the aggrieved, it shall be submitted within fourteen (14) calendar days to the Board of Police

Commissioners or its designated committee. The decision of the Board of Police Commissioners shall be rendered in writing to all parties involved within fifteen (15) calendar days after receipt.

15.1.4    STEP FOUR.    Should the grievance not be settled to the satisfaction of the Union, it may within twenty (20) calendar days after receipt of the decision rendered in Step Three submit the grievance to arbitration, with a copy to the Director of Personnel. Arbitration shall be conducted by the Connecticut State Board of Mediation and Arbitration in accordance with its rules and regulations. The arbitrators shall hear and decide only one (1) grievance in each case. They shall be bound by and must comply with the specific terms of this Agreement. They shall have no power to add to, delete from, or modify in any way any of the provisions in this Agreement.

15.2    MEETINGS.    If either party related to the grievance procedure desire to meet for the purpose of oral discussion, a meeting shall be requested and scheduled not later than five (5) days after receipt of the request.

15.3    MEDIATION.    The mediation services of the State Board of Mediation and Arbitration may be used prior to Step Four provided both parties mutually agree on the desirability of this service.

15.4    TIME EXTENSIONS.    Reasonable extension of time after initiation of the grievance procedure shall be agreed between the City and the Union if such request is made before the expiration of the time limit set forth in steps and provided such request is made in writing.

15.5    RECORDING OF TESTIMONY.    All parties concerned shall have the right to record the proceedings at any or all steps of the grievance procedure.

15:6    In order to avoid the necessity of processing numerous grievances originating with the same event or occurrence, the Union shall file a single grievance beginning at Step One, and shall identify those employees affected by the grievance. The final outcome of the grievance shall be binding upon all affected employees, as well as the City and the Union.

## ARTICLE XVI

### DISCIPLINE AND DISCHARGE

16:1    The power of suspension and discharge shall rest with the Board of Police Commissioners except that the power of suspension may be delegated to the Chief of Police or his/her designee. The Chief of Police may impose punitive suspensions for periods not to exceed two (2) calendar weeks. Superior officers, so designated, shall have the authority to relieve from duty for cause only, any member of the Department. Such action shall immediately be reported to the Chief of Police for such action as the Chief may deem necessary.

16:2    Further disciplinary action by the Chief or his designee will take place after the employee has been given the opportunity to appear before the Chief of Police to answer charges, with or without Union representation as he/she may so desire, within a period of twenty-four (24) hours from the time the Chief decides to take action, excluding Saturdays, Sundays, and holidays.

16:3    The Chief of Police shall attempt to notify the employee of the charges involved and, if unable, shall notify an official of the Union. If, for good reason, either side cannot meet within the twenty-four (24) hour period, such hearing shall be rescheduled as soon as possible. In severe cases warranting immediate reference to the Board of Police Commissioners for disciplinary action beyond the powers of the Chief or his/her designee,

the Chief may suspend immediately pending Board hearing which shall take place within fourteen (14) days from date of suspension.

16:4    Any member who may be suspended by the Chief of Police has the right to make appeal to the Board of Police Commissioners. In the event of such appeal, which must be made in writing to the Board with a copy to the Chief within forty-eight (48) hours, the suspension shall be held in abeyance except as noted in Section 16:3 until the hearing and decision of the Board of Police Commissioners shall have been made.

16:5    In the event of such appeal to the Board of Police Commissioners, the Board shall act not later than its next regular meeting after receipt of said appeal. The Board of Police Commissioners shall be responsible for all disciplinary hearings outside of the grievance procedure should the disciplined employee feel said discipline was given without just cause. All witnesses shall be sworn, mechanical recording equipment may be used to record the testimony and all persons concerned shall have the right and choice of representation. Such hearing shall be closed to the public unless an open hearing is requested by the employee. The conclusions of the hearing shall be reduced to writing with copies distributed to all concerned within fourteen (14) calendar days after the hearing. An employee or the Union may request and have a stenographic report or tape recording of said meeting at their own expense.

16:6    In acting upon such appeal, the Board of Police Commissioners shall have the right to rescind, modify, affirm, or increase the suspension and other penalties ordered by the Chief.

16:7    The execution of an order of suspension by the Board of Police Commissioners shall not be held in abeyance, but the employee shall be entitled to his right of appeal by going immediately to the Salary Committee of the City Council. If the Union is not