# CONNECTICUT STATE BOARD OF MEDIATION AND ARBITRATION
## LABOR DEPARTMENT

### 38 WOLCOTT HILL ROAD
### WETHERSFIELD, CONNECTICUT

Tuesday, April 24, 2001

## TRANSMITTAL MEMORANDUM

*Bristol, City of*
and
*AFSCME Co. 15*
*Local 754*

---

**Case # 9900-A-0454  Estes. J.**                          **# 99-39**

---

## INTERIM   AWARD

---

Copies were sent to the following parties:

**Eric R. Brown, Esquire**

**Jennifer Hamilton, Esquire**

**James Byer, Pers. Dir.**

**Kevin Mellon, Grievance Chair**

**Town Clerk***
**File**

*When applicable, this transmittal is filed with the
town clerk in accordance with Section 31-98, Chapter
560, of the Connecticut General Statues.

**CONTACT PERSON**
Brigitta Rainey
Tel: 566-4125

satisfied with the decision rendered by the Salary Committee, the Union may appeal to the State Board of Mediation and Arbitration with a copy to the Director of Personnel.

16:8    Any employee who has been disciplined or discharged, and who is subsequently exonerated, shall be reinstated without prejudice or loss of seniority, and shall accept the monetary compensation that is judged fair by the Committee engaged in the decision.

16:9    Any time limit set forth in this Article may be extended by mutual agreement between the City and the Union.

## ARTICLE XVII
## FUNERAL LEAVE

17:1    The City will grant up to a maximum of three (3) regular working days with pay in the event of a death in the immediate family. The funeral leave days granted shall only be from the date of death through the date of the funeral and the City may request proof of attendance. The immediate family shall include Mother, Father, Sister, Daughter, Brother, Husband, Wife, Son, Mother-in-law, Father-in-law, or any relative who is an actual member of the household.

17:2    In the event of a death of a Grandchild, Grandparent, Brother-in-law, Sister-in-law, Aunt, Uncle, Niece, or Nephew of the employee or employee's spouse, one (1) day will be allowed provided the employee attends the funeral.

17:3    The Chief of Police can allow up to an additional two (2) working days leave over the days allowed in Section 17:1 and 17:2 of this Article, should he deem the reason(s) unusual and worthy provided that it does not disrupt the efficient operation of the Department.

## ARTICLE XVIII
## UNION BUSINESS LEAVE

18:1    Six (6) members of the Union Negotiating Committee shall be granted leave from duty, by their shift commander, with full pay for all meetings between the City and the Union for purposes of negotiating the terms of the Contract, when such members are scheduled to be on duty. All requests for time off duty under this Section shall be made stating the approximate length of time, date, and location of the meetings.

18:2    Two (2) members of the Union's Grievance Committee and Grievant shall be granted leave from duty, by the Chief of Police, with full pay for all meetings between the City and the Union for purposes of processing grievances, arbitration hearings, administrative hearings, or judicial proceedings involving labor relations. Such time off will be granted provided that it does not interfere with the normal operation of the department. All requests for time off duty under this Section shall be made stating the approximate length of time, date, and location of the meetings.

18:3    Union Officials and delegates shall be given time off to attend conventions and/or meetings associated with their affiliation. At no individual meeting or conference shall any more than a maximum of four (4) employees of the department with no more than two (2) employees from a shift be granted this privilege without loss of pay. One (1) additional employee for a total of three (3) employees shall be allowed off provided, however, that in allowing the one (1) additional employee off there is no additional cost to the City in filling such vacancy with overtime payment. There shall be a maximum of two hundred (200) paid hours per contract year for all employees covered by this Section. It is understood that hours paid shall be only during and for the employee's regularly scheduled work week. It is additionally understo

## ARTICLE XIX

### UNIFORMS AND CLOTHING

19:1     The Police Department will continue to furnish such equipment as is customarily furnished in the past and whenever possible shall furnish such additional equipment that will promote the safety and welfare of the Department members and aid in the efficient performance of their duties.

19:2.1    The City shall annually provide uniforms for employees in accordance with Section 19:2.2 with the understanding that new employees shall receive the uniform allocation at the time of regular full time appointment.

19:2.2    The City shall provide, annually, for the first three (3) years of employment the following clothing allowance: four (4) uniform trousers, three (3) long sleeve shirts, three (3) short sleeve shirts, three (3) neckties. Provided, however, employees may, after the effective date of the arbitration award, have the option of electing the clothing allotment or clothing allowance of $500 in the fourth (4th) year of employment. Effective 7-1-1997, employees have the option of electing the clothing allotment or clothing allowance of $750 in the fourth (4th) year of employment. After the fourth (4th) year of employment, employees shall receive $1250 clothing allowance for all clothing items. Effective 7-1-2000, after the fourth (4th) year employment, employees shall receive $1,000 clothing allowance for all clothing items.

The specifications agreement dated October 29, 1987 will no longer apply; however, the City will use a "union tailor".

19:2.3    The City will supply the thirty-five dollar ($35) shoe allowance for the first three (3) years of employment only. Thereafter, it will be the responsibility of the employee.

-33-

that any time spent beyond four (4) hours per meeting by Union Officials shall be charged to the above stated hours except for negotiations and grievance and/or arbitration meetings with the City. Except in cases of emergency at least twenty-four (24) hours written notice must be given to the shift commander.

18:4    A maximum of fifty percent (50%) of all bargaining unit employees on duty including Union Officials shall be allowed to attend all local and/or special meetings during regularly scheduled work day with pay, but is understood they must be available for immediate duty and must be cleared by the shift commander before being granted permission. Individual notice does not have to be in writing provided the Chief of Police receives a copy of the meeting call at least forty-eight (48) hours in advance of such meeting.

18:5    Union Officials and/or Stewards, up to a maximum of two (2) per shift, shall be allowed reasonable time off with pay on a regular work day to conduct business that concerns the Local Union, provided that such notice is in writing twenty-four (24) hours in advance of time needed, except in cases of emergency. Should time off duty exceed four (4) hours, all time off duty shall be charged against total hours outlined in Section 18:3 of this Article. It is understood that a Union official or Steward shall be allowed reasonable time off duty to discuss oral grievances with the grievant and the Department representative(s) without written notice.

18:6    The City shall permit the use of bulletin boards located in the Police Department Employees Lounge for the posting of Union notices concerning business and activities.

18:7    The City shall make available suitable quarters in which to conduct monthly and/or special meetings.

-32-

19.3     Employees shall appear on duty, in a neat, clean and presentable manner at all times.

19.4     Gun belts, magazines and cases, flashlights, batons, collar pins and tabs, name tags, guns, holsters, pepper spray, handcuffs, and ammunition shall be replaced as needed provided the item to be replaced is returned if it was provided by the City.

19.5     Employees of any Plainclothes Division shall receive an annual clothing allowance of five hundred dollars ($500) to include shoes. Effective 7-1-1997, said employees shall receive an annual clothing allowance of seven hundred and fifty dollars ($750) to include shoes. Effective 7-1-2000, said employees shall receive an annual clothing allowance of one thousand dollars ($1,000) to include shoes. Criminal Investigation Division (CID) detectives are required to appear in a neat manner and will not wear jeans or sneakers unless the job assignment calls for them to be worn. Such attire must be approved by the Commander of the Criminal Investigation Division (CID). The dress code requirements in this Section shall not apply to Drug Enforcement Officers or Evidence Technicians.

19.6     The City shall be responsible for reasonable alterations of uniforms if the employee loses weight, limited to one (1) alteration annually per item of uniform.

## ARTICLE XX

## HOSPITALIZATION AND INSURANCE

20:1     The city shall provide without cost, for each employee and enrolled dependents, the following hospitalization and insurance program, subject to the Blue Cross/Blue Shield Managed Care Program, where applicable:

-34-

20:1.1     The Connecticut Blue Cross Semi-Private Plan, which shall include the Semi-Private Maternity Rider, the Blue Cross Co-Pay Prescription Drug Rider, and the Blue Cross Co-Pay Dental Plan, with Riders A, B, C, D and the Dependent Child Rider (to age 25)

20:1.2     The Connecticut Blue Shield Century 96 Plan.

20:1.3     The City shall provide and pay for each employee a Term Life Insurance Policy in the amount of $25,000.

20:1.4     The City shall pay the full cost of the existing major medical plan that includes a maximum of $500,000 with a $200 deductible and 80% of all expenses beyond that deductible with 100% payment after the first $2,000 of covered expenses.

20:1.4.1     Effective July 1, 1994, the City shall pay the full cost of the existing major medical plan that includes a maximum of $500,00 with a $300 deductible for single coverage, a $500 deductible for dependent and family coverage, and 80% of all expenses beyond a $500 deductible with 100% payment after the first $2,000 of covered expenses.

20:1.4.2     Effective July 1, 1994, the Blue Cross co-pay prescription drug rider will contain a $3.00 deductible and the home and office visits will require a $10 deductible.

20:1.5     Effective April 1, 1997, the City of Bristol shall pay for all full time members of the bargaining unit and enrolled dependents, including dependent children to age ___ the full cost of the Non-Standard Century Preferred Point of Service Managed Benefits Plan as set forth in Appendix B, which is attached hereto. (This plan replaces provisions in Sections 20:1, 20:1.1, 20:1.2, 20:1.4, 20:1.4.1 and 20:1.4.2.)

20:1.5.1     Appendix E is for reference purposes only, with the group master plan entitled City of Bristol - Employee Benefit Plan/Benefit Program (2/3/97 draft) being on file in the City's Personnel Office.

-35-

20.1.5.2    The City shall provide without cost, for each employee and enrolled dependents, the Blue Cross Co-Pay Dental Plan, with Riders A, B, C, and D and the Dependent Child Rider (to age 25).

20.1.6    Where the City provides hospital, surgical and major medical insurance under this Article, it shall also provide one (1) or more Health Maintenance Organization (HMO) alternatives, subject to the standard administrative requirements. In the event that HMO premiums exceed the City's insurance premiums, the employee shall have one of the following options:

A.    Paying the additional premiums

B.    Select another HMO

C.    Return to the City's insurance plan

The carriers of HMOs shall be selected by the City.

20.2    The City reserves the right to substitute at any time during the term of this Contract any benefit plan which provides equal or better benefits than any existing plan.

20.3    For employees who retire on or after July 1, 1985, the City will pay the cost of health insurance coverage for retiree and spouse for the first five (5) years after retirement, and for employees who retire on or after July 1, 1988, the City will pay the cost of health insurance coverage for retiree and spouse for the first ten (10) years after retirement, in all cases subject to the following:

20.3.1    Coverage shall consist of Blue Cross Semi-Private Plan, Co-Pay Prescription Drug Rider, Blue Shield Century 90 Plan, and Major Medical insurance up to age 65, thereafter coverage shall consist of the Blue Cross and Blue Shield Medicare Supplement Plans and Major Medical insurance.

20.3.1.1    For employees who retire on or after April 1, 1997, coverage shall consist of the Non-Standard Century Preferred Point of Service Managed Benefits "Plan," as set forth in Appendix E.

20.3.2    Any retiree who wishes to enroll additional dependents, and any retiree (or spouse or dependent of a deceased retiree) who wishes to remain enrolled beyond the period specified in Section 20.3 following the date of retirement, may do so at their own expense, carrier permitting.

20.3.3    The City shall not be obligated to provide coverage for any retiree or spouse who is eligible for health insurance coverage through another employer; provided that if the employee or spouse is eligible for lesser coverage, or coverage at less than full payment, the City may elect to provide appropriate supplementary coverage or may reimburse the employee's payment in lieu of the above coverage.

20.3.4    The benefits described in this section shall only apply in cases of full normal retirement after twenty-five (25) years of service, or disability retirement which is the result of an injury sustained in the line of duty, as determined under the Police Pension Plan.

## ARTICLE XXI

## WORKERS' COMPENSATION

21:1    Any City employee who shall suffer personal injury or illness in the performance of his duty and who shall be eligible for payment under the Workers' Compensation Act shall be paid by the City of Bristol, the monetary difference between said City employee's weekly straight time salary and the benefits payable to him under Workers' Compensation Act.

## ARTICLE XXII

### PERFECT ATTENDANCE

22:1    Personal leave time shall be granted for perfect attendance under the following conditions:

22:2    Each calendar quarter of perfect attendance shall earn any employee one (1) day leave with pay to be taken within six (6) months from the time earned.  The calendar quarters shall begin January 1, April 1, July 1, and October 1, of each year.

22:3    Any employee who has four (4) consecutive quarters of perfect attendance shall receive two (2) additional days leave with pay to be taken within six (6) months from the time earned.

22:4    Eight (8) hours of accumulated lost time shall constitute a break in continuity of perfect attendance unless it is allowable time off as covered in Section 22:5.

22:5    The following leave time shall be considered earned toward perfect attendance:

22:5.1    Earned Vacation

22:5.2    Earned Extra Vacation Time

22:5.3    Perfect Attendance Leave

22:5.4    Allowable Union Business Leave

22:5.5    Injury on Duty (for initial period of absence only, and subject to a limitation of thirty (30) calendar days).

22:5.6    Funeral Leave

-38-

## ARTICLE XXIII

### LEAVE OF ABSENCE

23:1    A leave of absence without pay for good cause may be granted not to exceed one (1) year.  A request for leave of absence must be made in writing by the employee with the explanation of reasons therefore and showing dates from and to on the request and presented to the Department Head.  If approved, the Department Head will so indicate by signing the employee's request.  The request for leave shall then be sent for final approval to the Department's Board of Commissioners, or the Mayor, who shall indicate such approval by signing and returning the request for leave to the Department Head who originally approved it; he, in turn, will grant permission and send the request to the Personnel Department who will the process such leave properly.  It is understood that leaves of absence will not be granted to specifically pursue other full time paid employment except as provided for under State Statute.

23:2    A properly authorized leave of absence shall have no effect on the employee's length of service.  However, employees must pay pension costs into the Retirement Program at the rate of pay at the time of such authorized leave throughout the entire period of time, payable one (1) month in advance.  Any employee who wishes to retain health insurance coverage after thirty (30) days of such leave must do so at his/her own expense.  Upon the return to work of the employee, the Department Head shall notify the Personnel Department giving all necessary information to effectuate the employee's return to work.

-39-

## ARTICLE XXIV

## MILITARY LEAVE

24:1   An employee departing for military service shall receive any vacation time accrued to his credit and such employee's seniority rights shall not be impaired during his period of military duty.

24:2   An employee who reports to the City within ninety (90) days after his honorable release from military service, shall be immediately returned to the position he held formerly, or to one of like rank and compensation at the time of his return, provided such position still exists. This provision shall apply only to the initial enlistment period, unless otherwise provided by law. Employees returning from active duty shall be required to successfully pass a physical examination.

24:3   Military leave for members actively participating in military reserve activities, including the National Guard, shall be granted an amount specified by Connecticut Statute. Pay for those weeks shall be the difference between their current military pay for that training period and their normal straight time City pay, if any. Proof of the above must be furnished.

24:4   It is understood that any employee working elsewhere prior to claiming his pre-service position, can be denied reemployment.

## ARTICLE XXV

## TIME CLOCKS - GENERAL RULES

25:1   The following rules for time clocks shall pertain in general to the. Department during the time the City may deem it necessary to have time clocks. Should there be

-40-

any Department variation from time to time as it deals with time clocks, said variations shall be posted in a conspicuous place near the time clock.

25:2   Each employee shall only punch his own time card or be subject to dismissal.

25:3   Employees can only punch in within the fifteen (15) minutes preceding the start of his shift.

25:4   Employees can only punch out within the last three (3) minutes of his shift unless otherwise excused.

25:5   A maximum of three (3) minutes at the beginning of an employee's shift shall be allowed without loss of pay. However, continued tardiness can be handled by disciplinary action as deemed necessary.

25:6   For the purposes of computing overtime, computation shall be to the beginning of the time period next following the last time period of overtime worked provided it is one-half or better of the next time period.

25:7   Time shall be computed in ten (10) equal periods of time per hour of employment.

25:8   If a violation or violations exists making any type of disciplinary action necessary by the City, such action will be taken within ten (10) days from the time the City became aware of such infraction(s).

25:9   This Article shall not apply to Lieutenants.

-41-

## ARTICLE XXVI

## GENERAL PROVISIONS

26:1    On or before thirty (30) days after this Contract is executed, and on or before May 15th of each calendar year thereafter, the City shall furnish the Union with a copy of the seniority list. The City and the Union will have thirty (30) days in which to make corrections and signify their approval thereof.

26:2    The City shall be responsible for an employee's personal items such as dentures, watches, and prescription eyeglasses which are damaged or lost in the performance of his duties, provided the loss or damage is reported in writing when possible to the officer on duty before the termination of his shift. Watches and jewelry valued in excess of two hundred dollars ($200) will not be covered unless worn with prior written approval of the Chief. The City shall not be responsible for replacing such items if damage or loss is caused by the employee's intentional negligence, horseplay, or carelessness. It is understood that an employee shall assist the City in the necessary steps for possible private repayment of such items and should such repayment be made the City shall be reimbursed.

26:3    Each employee shall be granted a thirty (30) minute lunch period as near as practical to normal eating hours and shall be granted a ten (10) minute coffee break twice in each eight (8) hour shift. During such lunch periods and coffee breaks, the employee shall be available in case of call.

26:4    The Chief of Police shall have the right to assign Police Officers who are on the Criminal Investigation Division's eligibility list to the Criminal Investigation Division for a training period of not more than thirty (30) days. During this training period the Police Officer assigned to the Criminal Investigation Division will receive the rate of pay of a Police Officer.

The hours of work during this training period shall be the same hours as those worked by the Criminal Investigation Division. Any officer assigned to the Criminal Investigation Division will, however, be eligible to work overtime assignments within the Patrol Division during this training period.

26:5    Any position normally filled by a particular rank in the department shall be filled by an officer of that particular rank whenever possible.

26:6    All employees shall have the right every six (6) months to review 7 personnel files within two (2) working days upon written request to the Director of Personnel, and at such time that the request will not interfere with the orderly operation of the Personnel Department.

26:7    If any Article or Section of this Contract is declared invalid or unconstitutional for any reason, such declaration of invalidity or unconstitutionality shall not affect the other Articles and Sections or portions thereof which shall be valid.

26:8    Line-ups in patrol shall start at precisely ten (10) minutes before the hour, or precisely twenty (20) minutes after the hour.

26:9    The City recognizes that the Union has adopted the Bristol Soap Box Derby Handicap Division as its official charitable organization, and will allow two (2) members of the Union to attend its functions while on duty without any loss of pay. It is further agreed that these two (2) members will not have to be replaced on their work assignments by overtime personnel. It will be the Union's responsibility to notify the Chief, in writing, forty-eight (48) hours in advance of the function of the officers involved, location, and length of time of the function provided that it does not disrupt the efficient operation of the department.

-42-

-43-

## ARTICLE XXVII

## PENSIONS

27:1    The pension system for all regular members of the Bristol Police Department shall remain in effect as set forth in Section 2-90 of the Code of Ordinances, except that specific amendments to the ordinance reflecting the following changes shall be drafted and enacted, to be made effective July 1, 1985:

27:1.1    The cost of living provision set forth in Section 2-90(l) shall be eliminated, so that all regular members of the Department, whether or not on the payroll as of January 1, 1972, will be covered by the escalator clause set forth in Section 2-90(l).

27:1.2    The line-of-duty death benefit set forth in Section 2-90(t) shall be amended to require the Board of Police Commissioners to pay a benefit of one-half (1/2) pay, as defined in accordance with Section 2-90(i), to the surviving spouse of the deceased employee until her death or remarriage, and thereafter to the minor children of the deceased employee until they reach age eighteen (18).

27:1.3    As used throughout Section 2-90, whether for computing employee contribution or retirement benefits, the term "compensation" shall be defined to mean the annual rate of base salary for the employee's rank and step, as set forth in the applicable collective bargaining agreement (if any).

27:1.4    The employee contribution set forth in Section 2-90(a) shall be six percent (6%) of compensation effective July 1, 1986.

27:2    Employees shall be fully vested after ten (10) years of continuous service in the department as a regular police officer. The term "fully vested" shall mean that upon separation from employment with the Bristol Police Department, such employee may elect not to

-44-

withdraw the assessments paid into the fund by him, and instead to collect, upon reaching the age when he would have been eligible for a normal (half-pay) pension, a retirement allowance based on two percent (2%) of compensation per year of continuous service completed prior to separation from employment. Such percentage shall be applied against his rate of compensation at the time of his separation from employment, and the resulting retirement allowance shall not be increased thereafter for any reason. This Section shall not apply in the case of a discharge for just cause which is not reversed upon appeal or a resignation by an employee who has been informed he is under investigation for an offense which constitutes just cause for discharge and from which he is not exonerated.

27:3    Effective July 1, 1988, the pension plan for employees hired prior to that date shall be amended in the following respects:

27:3.1    If a member of the bargaining unit has been in service of the Bristol Police Department for a period of ten (10) years or more, and has been certified by a physician or physicians appointed by the City to be unable to perform the duties of his position, and such injury is not determined to have occurred while in the performance of his duties, such employee may receive a retirement allowance based on two percent (2%) of pay for each year of service as a regular member of the Department, subject to a minimum of twenty-five percent (25%) pay and a maximum of fifty percent (50%) of pay.

27:3.2    After twenty-five (25) years of service during which an employee has contributed to the police pension fund as a regular member of the Department, no further contributions shall be required of the employee.

27:4    In lieu of the retirement benefits set forth in the existing Police Pension Plan and in sections 27:1, 27:2, and 27:3 above, the City shall draft and adopt a new pension plan for

-45-

members of the bargaining unit hired on or after July 1, 1988, such plan to include the following features:

(a) Benefit based on two percent (2%) per year of service to a maximum of seventy percent (70%) of annual base pay.

(b) Vested rights after (10) years of service, with benefit payable only when the employee would have been eligible for normal retirement.

(c) Normal retirement after twenty-five (25) years of service and fifty (50) years of age.

(d) No escalation of benefits after retirement.

(e) Surviving spouse benefit of fifty percent (50%) of the retired employee's benefit.

(f) Benefit for disability incurred in the line of duty to be fifty percent (50%) of annual base pay at the time of the disability retirement. Disability to be defined as totally and permanently disabled from any gainful employment.

(g) Benefit for spouse of employee killed in line of duty to be fifty percent (50%) of annual base pay at the time of death.

(h) Employee contribution of six and one-half percent (6 1/2%) of base pay.

27:5   The provisions of this article, and the terms of the pension plan(s) covering members of the police bargaining unit, shall not be subject to renegotiation for a period of ten (10) years from and after July 1, 1988, to and including June 30, 1998.

27:6   Notwithstanding the provisions of Section 27:5 above, the current Canine Control Officer shall be placed in the Police Pension Plan for those officers hired prior to July 1, 1988. This change shall become effective upon ratification of this contract. Any newly hired

-46-

Canine Control Officer or Animal Control Officer hired after ratification of this agreement shall become and remain a member of the General City Pension Plan.

### ARTICLE XXVIII
### LEGAL COUNSEL

28:1   Whenever a civilian complaint is made against an employee or a group of employees of the Department, and no charges are brought against the employee(s) by the City and said complaint results in court action, said employee(s) shall be entitled to be represented by the City's Legal Department or, at the City's option, another attorney of the City's choice whose fees shall be paid by the City.

### ARTICLE XXIX
### PHYSICAL FITNESS

29:1   The City and the Union agree it is the responsibility of each employee to achieve and maintain a reasonable level of physical fitness and general good health.

29:2   There shall be no restrictions on the right of the City to impose physical or psychological testing requirements on new recruits.

29:3   Employees hired prior to July 1, 1985 shall have physical examinations every three years (one third of employees per year, designated by the Chief) which will be paid for by the City. The results of these physical examinations will be advisory and confidential and shall not be used for any disciplinary action. However, nothing herein shall diminish the right of the City with respect to employees who are demonstrably unfit to perform the duties of their position.

-47-

29:4    Employees hired after July 1, 1985 shall have physical examinations every three (3) years, the cost of which will be paid for by the City. The results of such physicals will become a part of the employee's personnel file.

29:5    Employees hired after July 1, 1985 shall be required to maintain the maximum acceptable weight standards as set forth in Section 29:15 which is the official weight chart for all new employees within the Bristol Police Bargaining Unit.

29:6    The chart specifies the ideal, average, and maximum acceptable weight by height.

29:7    The maximum acceptable weight shall represent the maximum permissible weight for any new employee within the Police Bargaining Unit.

29:8    Employees hired after July 1, 1985 shall be weighed approximately every ninety (90) days.

29:9    The scale to be utilized for measuring height and weight shall be located in the Police Department Training Complex.

29:10    All new employees to be weighed shall be allowed to wear customary underwear, trousers and shirt. The column designated Ideal, Average and Maximum Weight includes an additional four (4) pounds to compensate for the clothing referred to herein.

29:11    Height is to be measured without shoes.

29:12    All new employees of the Bargaining Unit are not to exceed the level of maximum permissible weight, in accordance with their height on or about July 1, 1986 and on each subsequent July weigh-in. Failure on the part of any new employee to remain within the allowable weight shall be cause for appropriate disciplinary action by the Chief of Police.

-48-

29:13    Any new employee of the Bargaining Unit who receives a letter of reprimand or a suspension in accordance with Section 29:12 herein above, shall have such reprimand or suspension removed from his personnel file provided such new employee reaches the level of maximum permissible weight at the next July weigh-in. Any employee who fails to remain within the allowable weight for more than two (2) consecutive on or about July 1 weigh-ins, shall be subject to discharge.

29:14    All such weigh-ins may be conducted by the Chief or any designated subordinate and shall occur immediately prior to or immediately subsequent to a work shift. Weigh-ins shall be conducted so as to cause a minimum of inconvenience to the individual employee and to the operation of the Police Department. During weigh-ins one (1) Union Official shall be allowed to be present.

-49-

29:15    The following is the Bristol Police Department official Height and Weight Chart:

**MALE**

| Height | Ideal Weight | Average Weight | Maximum Acceptable Weight |
|---|---|---|---|
| 5 ft. 0 in. | 118 | 131 | 155 |
| " 1 " | 122 | 135 | 159 |
| " 2 " | 126 | 139 | 163 |
| " 3 " | 130 | 143 | 167 |
| " 4 " | 134 | 147 | 171 |
| " 5 " | 138 | 151 | 175 |
| " 6 " | 142 | 155 | 180 |
| " 7 " | 146 | 159 | 186 |
| " 8 " | 150 | 163 | 190 |
| " 9 " | 154 | 167 | 194 |
| " 10 " | 157 | 171 | 200 |
| " 11 " | 161 | 175 | 204 |
| 6 ft. 0 in. | 165 | 179 | 219 |
| " 1 " | 169 | 183 | 223 |
| " 2 " | 173 | 187 | 229 |
| " 3 " | 177 | 193 | 235 |
| " 4 " | 181 | 199 | 242 |
| " 5 " | 185 | 204 | 248 |
| " 6 " | 189 | 210 | 255 |

**FEMALE**

| Height | Ideal Weight | Average Weight | Maximum Acceptable Weight |
|---|---|---|---|
| 4 ft. 8 in. | 100 | 111 | 137 |
| " 9 " | 102 | 113 | 140 |
| " 10 " | 104 | 115 | 142 |
| " 11 " | 106 | 117 | 144 |
| 5 ft. 0 in. | 108 | 120 | 148 |
| " 1 " | 111 | 123 | 152 |
| " 2 " | 113 | 126 | 155 |
| " 3 " | 116 | 129 | 159 |
| " 4 " | 119 | 132 | 162 |
| " 5 " | 122 | 135 | 166 |
| " 6 " | 125 | 139 | 171 |
| " 7 " | 128 | 142 | 174 |
| " 8 " | 131 | 146 | 179 |
| " 9 " | 135 | 150 | 184 |
| " 10 " | 139 | 154 | 189 |
| " 11 " | 143 | 159 | 195 |
| 6 ft. 0 in. | 148 | 164 | 201 |

29:16    Effective July 1, 1985, those present employees who are actively engaged in a weight training program must maintain a weight not exceeding the maximum acceptable weight as set forth in Section 29:15 and having attained the following years of service shall receive yearly during the month of July:

10 years of service - $100
15 years of service - $150
20 or more years of service - $200

-50-

-51-

## ARTICLE XXX

## EDUCATION

30:1    The City shall pay for the complete cost of all books and tuition, at state college rates, effective July 1, 1985, for accredited courses as outlined below for each employee participating in such courses, upon prior approval of the Chief of Police and upon satisfactory completion, at a grade C or better, of each such course and under the conditions as set forth in Section 30:3 below. The employee shall return all books purchased by the City after completion of the course. The books shall remain the property of the Bristol Police Library and will be available to the other employees for educational needs.

30:1.1    Accredited courses in Police Science and Administration or Public and Social Administration:

a    Police Science
b    Police Administration
c    Psychology
d    Sociology
e    Business Administration
f    Political Science
g    Municipal Government and Administration
h    Law
i    Public and Social Administration
j    Education
k    Government
l    History
m    Economics

30:2    Employees in the Bargaining Unit shall receive additional compensation for education attainments in accordance with the following schedule:

30.2.1    For satisfactory completion in an approved Associate's Degree program at a grade of C or better and an attainment of an Associate's Degree at an accredited college or

-52-

university in the subjects approved by the Chief of Police, shall receive an additional ten dollars ($10) per week over the employee's earned wages.

30.2.2    For satisfactory completion in an approved Bachelor's Degree program at a grade C or better and an attainment of a Bachelor's Degree at an accredited college or university in the subjects approved by the Chief of Police, shall receive an additional fifteen dollars ($15) per week over the employee's earned wages.

30:2.3    Additional compensation under Section 30:2 shall be based upon the attainment of one academic degree.

30:2.4    Current employees who have attained a degree as set forth in Section 30:1.1 shall receive the additional compensation as set forth in Sections 30:2.1 and 30:2.2 effective July 1, 1985.

30:3    Employees who receive from the City, tuition and cost of books, shall remain in employment with the City for each year that the City provides the cost of tuition and books. Any employee who terminates their employment shall reimburse the City for cost of tuition and books for each year they have received such tuition and cost of books.

## ARTICLE XXXI

## COMMUNICATIONS DIVISION

31:1    The Police Department for the City of Bristol shall have a division known as Communications, which will come under the direction of the designated Captain of Staff Services.

31:2    It shall consist of one (1) Sergeant who will have direct supervision of the personnel.

-53-

31:3    The Division will be made up of volunteers with a minimum of twenty-four (24) months in service from each shift and be selected by the Chief of Police. Volunteers shall serve a complete twelve-week (12) cycle and may bid again for subsequent cycles if he chooses. If there are no volunteers, then the least senior officer with a minimum of twenty-four (24) months seniority shall be assigned for one complete twelve (12) week cycle; thereafter, the employee with the next highest seniority shall be assigned; then the assignment shall revert back to the employee with at least twenty-four (24) months seniority. Shifts shall be bid by department seniority.

31:4    The City will have the responsibility for all training needed to maintain this Division.

31:5    The Officers assigned to Communications Division shall maintain their own rank overtime within the Communications Division. Shift assignments will be based on division rank seniority. Patrol Officers assigned to the Traffic Division and Court Liaison will share in overtime in the Communications Division.

31:6    Shift assignments will be based on rank seniority only for those employees who are now and have been in the Communications Division since its inception on September 1, 1985 and those employees shall be considered most senior for purposes of this Section. All new employees and those current employees who leave and return to the Communications Division shall have their shift assignments based on department seniority.

31:7    Employees in Communications Division who elect to return to Patrol Division shall be given shift assignments based upon department rank seniority.

## ARTICLE XXXII

## IDENTIFICATION DIVISION

32:1    The Police Department for the City of Bristol shall have a division known as Identification Division which will come under the direction of Criminal Investigation Division commander.

32:2    It shall consist of no less than two (2) Evidence Technicians.

32:3    The City will have the responsibility for all training needed to maintain this Division.

32:4    The officers assigned to the Identification Division shall maintain their own overtime within the Identification Division. Shift assignments will be based on Division Rank Seniority.

## ARTICLE XXXIII

## PROMOTIONS FOR CRIMINAL INVESTIGATION DIVISION

## (DETECTIVE AND IDENTIFICATION DIVISIONS)

33:1    All promotions to positions in the Police Department Criminal Investigation Division (Detective and Identification Divisions) shall be made as a direct result of examinations conducted under the supervision of the Director of Personnel of the City of Bristol. The only exception to this Section shall be those employees in the Criminal Investigation Division (Detective Division) on December 15, 1984, and those employees in the Criminal Investigation Division (Identification Division) on January 19, 1988, or on the Detective eligibility list in effect on that date. Any employee filling a vacancy in the Criminal Investigation Division

(Detective and Identification Divisions) thereafter shall be promoted and governed by this Article.

33:2    The Director of Personnel shall provide and supervise the examination(s) and certify the results thereof to the Bristol Board of Police Commissioners and Chief of Police.

33:3    The examinations for the ranks of Detective and Evidence Technician shall consist of both written and oral, provided no candidate for promotion shall be entitled to take the oral examination unless and until the candidate has attained a minimum grade of seventy percent (70%) on the written examination. The written examination shall be obtained from a recognized testing authority in the law enforcement field. The oral examination shall be conducted by non-Bristol residents in the law enforcement field. Each candidate must attain a minimum grade of seventy percent (70%) on the oral examination.

33:4    The Director of Personnel shall certify to the Board of Police Commissioners and the Chief of Police the names of all candidates competing for a vacancy who have attained a grade of seventy percent (70%) or higher on both the written and oral examinations. The Board of Police Commissioners shall then appoint to the vacancy that candidate with the highest passing score based upon the following factors and weights:

| (a) | Written Examination | - | 50% |
| (b) | Oral Examination | - | 50% |
| | Total | | 100% |

In the event that two (2) candidates have an identical final score, seniority, as determined by the Collective Bargaining Agreement, shall determine who is to be promoted.

33:5    A promotional examination for the rank of Detective Sergeant or Detective Lieutenant shall consist of only an oral examination. Each candidate must receive a minimum grade of seventy percent (70%) to be placed in his/her relative order of ranking on the eligibility

list for promotion. The Chief of Police shall have the authority to choose one (1) of the three (3) highest scoring candidates to fill such vacant position. In the event that two (2) candidates have an identical final score, seniority, as determined by the collective bargaining agreement, shall determine the rank order on the eligibility list.

33:6    Regular members of the Bristol Police Department with three (3) or more years seniority as of the date the examination is to be held, shall be deemed eligible to take the examination for the rank of Detective and/or Evidence Technician. In order to be eligible to take the examination for Detective Sergeant or Detective Lieutenant, members of the Bristol Police Department must hold the rank of Sergeant or Lieutenant respectively for a period of at least one (1) year as of the date the examination is to be held.

33:7    The eligibility list(s) for all positions in the Criminal Investigation Division (Detective and Identification Division) shall continue in force for two (2) years from the date such eligibility list was established as certified by Director of Personnel. New examinations shall be at more frequent intervals if a vacancy occurs and the eligibility lists for those positions are exhausted. The Director of Personnel shall have the authority to commence the examination process in order to create a new eligibility list on or before the date of the expiration of the current eligibility list.

33:8    At least two (2) weeks notice of each examination shall be given by posting on the Police Department Bulletin Board.

### ARTICLE XXXIV
### DRUG TESTING

34:1    The City reserves the right to engage in drug testing of applicants and employees, provided any testing of bargaining unit members is conducted in accordance with the

provisions of Public Act 87-551, and provided further that neither the taking of a sample nor the analysis thereof shall be conducted at a facility located within the City of Bristol. The City shall take all reasonable steps to protect the privacy of the employee, including allowing the employee to change into civilian clothing, and transporting the employee in an unmarked car. Employees shall be paid for time involved.

## ARTICLE XXXV

### MATERNITY LEAVE

35:1   In the event an employee becomes pregnant while employed in the Bristol Police Department, she shall be entitled to the following benefits and should proceed as follows:

35:1.1   Notify the Chief or his designee of such pregnancy.

35:1.2   If unable to perform her normal duties and her physician has certified that if she continues working she or her baby's health could be jeopardized, she can:

a.   Take earned sick time or vacation time;

b.   When sick time is used up, apply at Claims Office of the City of Bristol for the thirteen (13) week disability insurance and leave (see Section 14:10). A doctor's certificate may be required.

c.   If no sick time has been earned, she may apply for the disability insurance, but payment will not begin until the eighth (8th) day of leave.

35:1.3   The City and Union agree that if a state law is passed concerning this issue that changes this policy substantially, they will negotiate the impact on the employee.

## ARTICLE XXXVI

### DRESS AND GROOMING STANDARDS

36:1   Officers shall be neat in appearance and well groomed while on duty. All articles of the uniform shall conform to the departmental uniform regulations. The uniform or any part of issued equipment, will not be altered except by direction of the Chief of Police. The purpose of this rule does not apply to regular size alterations.

36:2   Wearing the Uniform:   The uniform shall be kept clean and neat, pressed and without need of repair at all times.

36:3   Manner of Dress:   Normally, officers shall wear the uniform of the day. However, Commanding Officers may permit other clothing as required by the nature of the assignment the officer may be assigned.

36:4   Appearance:

36:4.1   Male officers will conform to the following standards:

36:4.1.1   Hair shall be evenly trimmed while on duty. The bulk and length of the hair shall not interfere with the proper and normal wear of any department headgear.

36:4.1.2   Mustache:   If worn, the pattern shall be neatly trimmed and tidy. The mustache shall not extend over the edge of the upper lip, nor extend below the corner of the mouth more than one-half inch.

36:4.1.3   Sideburns:   If worn, the pattern shall be neatly trimmed and tidy. Sideburns shall not extend below the bottom of the ear and must not be more than one and one-quarter inch in width. The sideburns must be vertical in shape and shall not angle forward in "pork chop" fashion.

36.4.1.4    Beards:    Beards shall not be worn. However, all existing employees will be allowed to grow or maintain a beard as long as the beard is neat, clean, and presentable. All bargaining unit members hired after July 1, 1990 with a medical condition which precludes shaving shall be required to present a written statement signed by a medical doctor verifying such a condition.

36.4.2    Exceptions:    Officers in specialized assignments where conforming to these standards may be detrimental to their safety or assignment may be exempted by the Chief of Police.

36.4.3    Female officers shall conform to the following when in uniform:

36.4.3.1    Hair:    Officers shall keep their hair clean, neat and styled to present an attractive appearance consistent with the type of duty performed. When in uniform, they shall arrange their hair so that it does not extend over one-half (1/2) of the collar.

36.4.3.2    Hair Ornaments:    No decoration shall be worn in the hair while in uniform. Items used to hold the hair in place shall be concealed as much as possible and shall be the color and style that blend with the hair.

36.4.3.3    Makeup:    Makeup shall be subdued and natural looking.

## ARTICLE XXXVII

## DURATION

37.1    In the event that any Article or Section of this Agreement is declared invalidated, all other Articles and Sections or portions thereof not so invalidated, shall remain in full force and effect.

37.2    This Agreement is for a five (5) year contract effective July 1, 1996 through June 30, 2001, with a wage reopener only for 7-1-2000.

37.3    Negotiations for the wage reopener shall begin on or before March 1, 2000.

37.4    Negotiations for a successor Agreement shall begin on or before March 1, 2001. If no successor Agreement is reached by such date, this Contract will hold over and remain in force until such new Agreement becomes effective.

## APPENDIX A

### SALARY SCHEDULE EFFECTIVE JULY 1, 1996

#### POLICE OFFICER

| | |
|---|---|
| Step 1 | $33,835 |
| Step 2 | $34,933 |
| Step 3 | $36,364 |
| Step 4 | $37,862 |
| Step 5 | $39,310 |
| Step 6 | $40,894 |
| Step 7 | $42 |

#### SERGEANT

| | |
|---|---|
| PATROL SERGEANT | $49,1 |

#### LIEUTENANT

| | |
|---|---|
| PATROL LIEUTENANT | $56,76 |

#### CRIMINAL INVESTIGATION DIVISION
#### (DETECTIVE AND IDENTIFICATION DIVISIONS)

| | |
|---|---|
| DETECTIVE | $44,6 |
| EVIDENCE TECHNICIAN | $44,645 |
| DETECTIVE SERGEANT | $51,562 |
| DETECTIVE LIEUTENANT | $59,5 |

#### ANIMAL CONTROL OFFICER

| STARTING RATE | AFTER FIRST YEAR | AFTER SECOND YEAR |
|---|---|---|
| $33,437 | $34,817 | $35,818 |

## ARTICLE XXXVIII

## SIGNATURE PAGE

IN WITNESS WHEREOF, the parties have caused their names to be signed on this _____ day of _November_, 1998.

FOR THE CITY OF BRISTOL

_[signature]_
Frank N. Nicastro, Sr.
Mayor

_[signature]_
James Byer
Director of Personnel

_[signature]_

FOR BRISTOL POLICE UNION, LOCAL #754
AND COUNCIL #15, AFSCME, AFL-CIO

_[signature]_
Eric Osanitsch
President, Local #754

_[signature]_
Kevin Morrell
Vice President, Local #754

ATTEST: _[signature]_
Florence McAuliffe, Town and City Clerk

As per vote by City Council.

# APPENDIX B

## SALARY SCHEDULE EFFECTIVE JULY 1, 1997

### POLICE OFFICER

| | |
|---|---|
| Step 1 | $34,733 |
| Step 2 | $35,914 |
| Step 3 | $37,347 |
| Step 4 | $38,842 |
| Step 5 | $40,393 |
| Step 6 | $42,011 |
| Step 7 | $43,690 |

### SERGEANT

| | |
|---|---|
| PATROL SERGEANT | $50,465 |

### LIEUTENANT

| | |
|---|---|
| PATROL LIEUTENANT | $58,286 |

### CRIMINAL INVESTIGATION DIVISION
### (DETECTIVE AND IDENTIFICATION DIVISIONS)

| | |
|---|---|
| DETECTIVE | $45,873 |
| EVIDENCE TECHNICIAN | $45,873 |
| DETECTIVE SERGEANT | $52,985 |
| DETECTIVE LIEUTENANT | $61,200 |

### ANIMAL CONTROL OFFICER

| STARTING RATE | AFTER FIRST YEAR | AFTER SECOND YEAR |
|---|---|---|
| $34,357 | $35,774 | $36,803 |

# APPENDIX C

## SALARY SCHEDULE EFFECTIVE JULY 1, 1998

### POLICE OFFICER

| | |
|---|---|
| Step 1 | $35,686 |
| Step 2 | $36,900 |
| Step 3 | $38,372 |
| Step 4 | $39,910 |
| Step 5 | $41,50? |
| Step 6 | $43,? |
| Step 7 | $44,8? |

### SERGEANT

| | |
|---|---|
| PATROL SERGEANT | $51,83? |

### LIEUTENANT

| | |
|---|---|
| PATROL LIEUTENANT | $59,88? |

### CRIMINAL INVESTIGATION DIVISION
### (DETECTIVE AND IDENTIFICATION DIVISIONS)

| | |
|---|---|
| DETECTIVE | $47,135 |
| EVIDENCE TECHNICIAN | $47,135 |
| DETECTIVE SERGEANT | $54,442 |
| DETECTIVE LIEUTENANT | $62,8? |

### ANIMAL CONTROL OFFICER

| STARTING RATE | AFTER FIRST YEAR | AFTER SECOND YEAR |
|---|---|---|
| $35,302 | $36,758 | $37,815 |

# APPENDIX D

## SALARY SCHEDULE EFFECTIVE JULY 1, 1999

### POLICE OFFICER

| | |
|---|---|
| Step 1 | $36,669 |
| Step 2 | $37,917 |
| Step 3 | $39,429 |
| Step 4 | $41,008 |
| Step 5 | $42,645 |
| Step 6 | $44,353 |
| Step 7 | $46,126 |

### SERGEANT

| | |
|---|---|
| PATROL SERGEANT | $53,279 |

### LIEUTENANT

| | |
|---|---|
| PATROL LIEUTENANT | $61,536 |

### CRIMINAL INVESTIGATION DIVISION
(DETECTIVE AND IDENTIFICATION DIVISIONS)

| | |
|---|---|
| DETECTIVE | $48,431 |
| EVIDENCE TECHNICIAN | $48,431 |
| DETECTIVE SERGEANT | $55,939 |
| DETECTIVE LIEUTENANT | $64,612 |

### ANIMAL CONTROL OFFICER

| STARTING RATE | AFTER FIRST YEAR | AFTER SECOND YEAR |
|---|---|---|
| $36,273 | $37,769 | $38,855 |

# APPENDIX E

| Summary Covered Services | Proposed Benefit In Network | Proposed Benefit Out of Network |
|---|---|---|
| Inpatient hospital services - semi private room, physicians and surgeons charges, maternity charges for mother and child, diagnostic and lab fees, PT and OT, drugs, Operating room fees, dialysis ......etc. | Covered in full subject to preadmission review, second surgical opinion, concurrent review and managed care non compliance penalties. Medical excellence program on an optional basis (at patients option). | Covered at 80 percent of reasonable and customary above deductible to stoploss, then at 100% of UCR. Subject to preadmission review, second surgical opinion, concurrent review and managed care non compliance penalties. Maximum of 30 days per year. |
| Outpatient hospital services - Operating and recovery room, surgeons fees, lab and x-ray, Dialysis, radiation and chemo.....etc. | Covered in full subject to preadmission review, second surgical opinion, concurrent review and managed care non compliance penalties. | Covered at 80 percent of reasonable and customary above deductible to stoploss, then at 100% of UCR. Subject to , preadmission review, second surgical opinion, concurrent review and managed care non compliance penalties. |
| Ambulance | Covered in full. Non emergency use subject to case management. | Covered at 100 % of UCR for emergencies at out of network for non emergencies. Non emergency use subject to case management. |
| Inpatient Mental and Substance Abuse | | |
| Mental Health Inpatient | Covered in up to 120 days subject to preadmission review, second surgical opinion, concurrent review and managed care non compliance penalties. | Covered at 80 percent of reasonable and customary above deductible to stoploss, then at 100% of UCR to a 120 day maximum per stay (2 for 1 half days). Subject to preadmission review, concurrent review and non compliance penalties. |
| Substance Abuse Inpatient | Covered in full for up to 45 days per year subject to preadmission review, concurrent review and managed care non compliance penalties. Half days substituted on a 2 for 1 basis. | Covered for 45 days per year at 80 percent of UCR above deductible to stoploss, then at 100% of UCR. Subject to preadmit review, concurrent review and non compliance penalties. Half days on a 2 for 1 basis. |
| Emergency Care | Emergency room visits covered in full above a $50 copay if the condition meets the sudden and serious requirements. Failure to meet the sudden and serious requirements results in the treatment being treated as an out of network usage, subject to deductible and coinsurance. Treatment on the direction of Physician is treated as in network. Copay is waived if admitted. | Emergency room visits covered at UCR above a $50 copay if the condition meets the sudden and serious requirements. Non sudden and serious requirements results in the treatment being treated as out of network usage, subject to deductible and coinsurance. Treatment at the direction of Physician is treated as in network. Copay waived if admitted. (Note: same as in network) |
| Walk in care (walk in center or physician's office) | Cove[illegible] full above $10 copay. | Co[illegible]t UCR above $10 copay if sudden and serious. [illegible] treated as an out of network usage, subject to deductible and coinsurance. |

| Summary Covered Services | Proposed Benefit In Network | Proposed Benefit Out of Network |
|---|---|---|
| **Physician services** | | |
| Medical Care (clinical indications of illness) | Covered in full above $10 copay. No annual or lifetime maximum. | Covered at 80 percent of UCR above deductible to stoploss then at 100% of UCR. No annual or lifetime maximum. |
| Allergy care | Covered in full above $10 copay for examination. No copay for injections. No annual or lifetime maximum. Subject to case management. | Covered at 80 percent of UCR above deductible to stoploss then at 100% of UCR. No annual or lifetime maximum. Subject to case management. |
| Well Child Care (no clinical indications or history) | Covered in full above $0 copay. Subject to age based schedule. To 6 months once per month, then to one year every two months, then to two years every three months, then to three years every six months, then once per year to age 18. | Covered at 80% of UCR above deductible to stoploss. Subject to age based schedule. To 6 months once per month, then to one year every two months, then to two years every three months, then to three years every six months, then once per year to age 18. |
| Adult Physical Examinations (no clinical indications or history) | Covered in full above $0 copay. Subject to age based schedule. Every three years to age 30 then every two years to age 50 then every year. | Covered at 80% of UCR above deductible to stoploss. Subject to age based schedule. Every three years to age 30 then every two years to age 50 then every year. |
| Routine Mammography (no clinical indication or history) | Covered in full above $0 copay. Subject to age based schedule. One exam between age 35 and 40, then every two years to age 50 then every year. | Covered at 80% of UCR above deductible to stoploss. Subject to age based schedule. |
| Routine Gynecological (no clinical indication or history) | Covered in full above $0 copay. Limited to one examination per year. | Covered at 80% of UCR above deductible to stoploss. Limited to one examination per year. |
| Vision and Hearing Screening | Covered in full above $ 0 copay. Limited to one of each per year. | Covered at 80% of UCR above deductible to stoploss. Limited to one of each per year. |
| **Outpatient Therapy Coverages** | | |
| Speech Therapy, OT, PT and Chiropractic Services | Covered in full above $10 copay. Maxi. of 50 visits per year. Subject to case management after first visit. After maximum is reached further benefits are available on out of network basis. | Covered at 80% of UCR above deductible to stoploss. Maximum of 50 combined visits per year. Subject to case management after first visit. |
| Electroshock Therapy | Covered above $10 copay for up to 15 visits per annum. Subject to case management | Covered at 80% of UCR above deductible to stoploss for up to 15 visits per annum. Subject to case management |

| Summary Covered Services | Proposed Benefit In Network | Proposed Benefit Out of Network |
|---|---|---|
| Prescription Drug Benefits | Covered subject to $0/$3/$6 copay for mail / generic/ brand script. Maximum of $2,000 then benefit rolls to out of network basis. | Covered at 80% of UCR above deductible to stoploss. |
| Outpatient Mental and Substance | Covered in full after $25 copay up to 50 visits per year applied separately(MH and SA). Subject to case management | Covered at 80% of UCR above deductible to stoploss. Up to 30 visits per year applied separately(MH and SA). Subject to case management |
| Maternity Care (Prenatal and Post Natal) | Covered in full after $10 copay (first visit only). | Covered at 80% of UCR above deductible to stoploss. |
| Durable Medical Equipment and Prosthesis | Covered in full subject to case management and buy lease decision.. | Covered at 80% of UCR above deductible to stoploss subject to case management and buy lease decision. |
| **Home Health and Hospice** | | |
| Home health aid | Covered in full for 80 days subject to case management. | Covered at 80% of UCR above deductible to stoploss for up to 80 days per year, subject to case management. |
| Nursing and therapeutic services | Covered in full for 200 days per year subject to case management | Covered at 80% of UCR above deductible to stoploss for up to 200 days per year, subject to case management |
| Hospice Care | Covered during last 6 months of life. Subject to case management. | Covered at 80% of UCR above deductible to stoploss during last 6 months of life. Subject to case management. |
| Skilled Nursing facility | Covered in full for up to 120 days per year subject to case management | Covered at 80% of UCR above deductible to stoploss for up to 120 days per year subject to case management |
| Eligibility | Insured, spouse and unmarried dependents to age 25. Standard language for disabled dependents over age 25. Late entrant option. | Insured, spouse and unmarried dependents to age 25. Standard language for disabled dependents over age 25. Late entrant option. |
| Non-compliance Penalties | $500 per event | $500 per event |
| Deductible | Generally not applicable to in network usage. | $250/$500 /$750 individual/family. |
| Payment Basis | Negotiated fees no balance billing. | % of UCR at 90th percentile. |

STATE OF CONNECTICUT
DEPARTMENT OF LABOR

STATE BOARD OF MEDIATION AND ARBITRATION

## BOARD RULING

| | |
|---|---|
| In The Matter Of: ) | **CASE NO: 9900-A-0454 (a)** |
| ) | |
| CITY OF BRISTOL ) | AWARD DATE[1]:  April 24, 2001 |
| ) | HEARING DATE: September 12, 2000 |
| AND ) | |
| ) | |
| AFSCME, COUNCIL 15, L#754 ) | LOCATION OF HEARING: |
| ) | Department of Labor |
| ) | Wethersfield, Connecticut |
| Grievant: Joel Estes ) | |

**APPEARANCES:**

    For the City of Bristol:

        Attorney Jennifer J. Hamilton, Attorney for the City

    For the Union:

        Eric R. Brown, Esquire, Staff Attorney

### STIPULATED ISSUE

The Parties agreed to the following statement of the Issue:

Whether the grievance is arbitrable?

---

[1] The City's brief was received on October 21, 2000. The Union's brief was received on October 24, 2000. On October 31, 2000, the City notified the Board that they were not in receipt of the Union's brief. The date for the filing of reply briefs was then extended from ⌒ember 3, 2000 to November 10, 2000. Reply briefs were received on November 13, 2000. An executive session was held on ⌒ember 21, 2000.

15:0.2.1  Discharge, suspension or other disciplinary action.

15:0.2.2  Charge of favoritism or discrimination.

15:0.2.3  Interpretation and application of rules and regulations of the Police Department.

15:0.2.4  Matters relating to the interpretation and application of the Articles and Sections of this Agreement.

15:1  PROCEDURE. The following grievance procedure shall be used by an employee or the Police Union to settle all departmental grievances. The only grievances that will be recognized are those that are initiated within twenty (20) calendar days of the alleged infraction. It is also understood that either the employee, the Union, or the City can represent themselves and/or have representation of their choice.

15:1.1  STEP ONE. The aggrieved shall submit his written grievance to the Chief of Police or his designee, setting forth the applicable Article and Section of the Agreement which is alleged to have been violated. The grievance must be answered in writing within eleven (11) calendar days after receipt.

15:1.2  STEP TWO. Should the grievance not be settled to the satisfaction of the aggrieved, it shall be submitted within fourteen (14) calendar days to the Director of Personnel. The decision of the Director of Personnel shall be rendered in writing to all parties involved within fifteen (15) calendar days after receipt.

15:1.3  STEP THREE. Should the grievance not be settled to the satisfaction of the aggrieved, it shall be submitted within fourteen (14) calendar days to the Board of Police Commissioners or its designated committee. The decision of the Board of Police Commissioners shall be rendered in writing to all parties involved within fifteen (15) calendar days after receipt.

15:1.4  STEP FOUR Should the grievance not be settled to the satisfaction of the Union, it may within twenty (20) calendar days after receipt of the decision rendered in Step Three submit the grievance to arbitration, with a copy to the Director of Personnel. Arbitration shall be conducted by the Connecticut State Board of Mediation and Arbitration in accordance with its rules and regulations. The arbitrators shall hear and decide only one (1) grievance in each case. They shall be bound by and must comply with the specific terms of this Agreement. They shall have no power to add to, delete from, or modify in any way any of the provisions in this Agreement.

the twenty-four (24) hour period, such hearing shall be rescheduled as on as possible. In severe cases warranting immediate reference to the board of Police Commissioners for disciplinary action beyond the powers of the Chief or his/her designee, the Chief may suspend immediately pending Board hearing which shall take place within fourteen (14) days from date of suspension.

16:4    Any member who may be suspended by the Chief of Police has the right of appeal to the Board of Police Commissioners. In the event of such appeal, which must be made in writing to the Board with a copy to the Chief within forty-eight (48) hours, the suspension shall be held in abeyance except as noted in Section 16:3 until the hearing and decision of the Board of Police Commissioners shall have been made.

16:5    In the event of such appeal to the Board of Police Commissioners, the Board shall act not later than its next regular meeting alter receipt of said appeal. The Board of Police Commissioners shall be responsible for all disciplinary hearings outside of the grievance procedure should the disciplined employee feel said discipline was given without just cause. All witnesses shall be sworn, mechanical recording equipment may be used to record the testimony, and all persons concerned shall have the right and choice of representation. Such hearings shall be closed to the public unless an open hearing is requested by the employee. The conclusions of the hearing shall be reduced to writing with copies stributed to all concerned within fourteen (14) calendar days after the hearing. An employee or the Union may request and have a stenographic report or tape recording of said meeting at their own expense.

16:6    In acting upon such appeal, the Board of Police Commissioners shall have the right to rescind, modify, affirm, or increase the suspension and other penalties ordered by the Chief.

16:7    The execution of an order of suspension by the Board of Police Commissioners shall not be held in abeyance, but the employee shall be entitled to his right of appeal by going immediately to the Salary Committee of the City Council. If the Union is not satisfied with the decision rendered by the Salary Committee, the Union may appeal to the State Board of Mediation and Arbitration with a copy to the Director of Personnel.

16:8    Any employee who has been disciplined or discharged, and who is subsequently exonerated, shall be reinstated without prejudice or loss of seniority, and shall Accept the monetary compensation that is judged fair by the Committee engaged in the decision.

16:9    Any time limit set forth in this Article may be extended by tual Agreement between the City and the Union.

The Personnel Director testified at the hearing. He stated that he meets with the Assistant Director of Personnel, his assistant, "to discuss all of the facts that have arisen from both sides"; asks for a recommendation; and, if he concurs with it authorizes his assistant to "give a decision". He testified that the decision is ultimately his and that the Assistant Director "drafts" the decision.

The Union refused to proceed with the Step Two proceeding until such time as the Director of Personnel heard and decided the grievance.

On November 12, 1999, the Grievance Chairman submitted to Step Three of the grievance process indicating the following:

> This grievance was denied at the first step. The City Personnel Dept. refused to have a hearing in accordance with sec. 15:1.2 of the working agreement. Therefore there was no hearing at second step. In accordance with the working agreement, it is being submitted to you for a hearing.

On November 24, 1999, the Police Commission denied the Union's grievance indicating the following:

> Upheld the City's position regarding the removal of Sgt. Estes from his D.A.R.E. assignment. Asst. Personnel Director challenged Arbitrability as the Union failed to follow the grievance procedure.

## POSITION OF THE CITY

The City maintains that the Union refused to participate in Step 2 as required by the contract by its challenge to the Assistant Personnel Director's designation by the Personnel Director to hear Step 2 grievances. The Union skipped the step and considered it a failure to answer.

The City relies on the language of Section 15:1 which states that "[I]t is understood that either the employee, the Union, or the City can represent themselves and/or have representation of their choice.

The City insists that specific language allows for the Personnel Director to designate the Assistant Personnel Director to sit in his stead

It claims that the City was a party to the contract negotiation that resulted in the language at Section 15:1.2. The City never presented the option to delegate the Director's authority to the Assistant. The contract expressly shows that where delegation of authority was contemplated, the right to do so was expressly included in the contract (i.e. Section 15:1.3).

The Union was correct in proceeding to Step Three when the City failed to abide by its obligations at Step Two.

Finally, the City's reliance on a "past practice" is moot, as the contractual language is unambiguous.

## ANALYSIS AND RULING

The Panel analyzed the record evidence in light of the terms of the collective bargaining agreement and the Stipulated Issue.

We find the contract language with reference to the Personnel Director sitting at Step 2 is clear and unambiguous.

The Union is correct that when the grievance procedure contemplates the delegation of authority, the language is specific.

We do not find that the reference in Section 15:1 to representation allows for the Assistant Personnel Director's substitution at Step 2. That word does not allow the designation as indicated in the other Steps.

We believe that the intent of the procedure, which calls for the resolution of grievances at the lowest level supports this face-to-face with the Personnel Director. He has the authority to resolve the grievances.

We also must find that the situation--the fact that the Union would have grieved its concerns about Step 2 to the Step 2 it was grieving--allowed for it to proceed to Step 3. The City's failure to render the decision, as the contract required, was a constructive waiver of Step 2. We make this finding in spite of our belief in the principle that you follow the process and then grieve later.



HOMEPAGE | TODAY'S NEWS | CONTACT AFSCME | CALENDAR | SEARC

**Join AFSCME**
**About AFSCME**

- How AFSCME Works
- AFSCME Services
- AFSCME by the Numbers
- History
- President Gerald W. McEntee
- Secretary-Treasurer William Lucy
- International Vice Presidents
- AFSCME Constitution
- AFSCME Resolutions
- Leaders' Bookshelf
- AFSCME Financial Standards Code
- AFSCME Advantage
- Scholarship Programs
- Employment Opportunities

**The AFSCME Web**
**Privatization**
**Legislative Action**
**Health & Safety**
**AFSCME LaborLinks**
**Publications**
**What's New**
**AFSCME en Español**

# AFSCME International Constitution

## Table of Contents

*As amended at the AFSCME 35th International Convention, Las Vegas, Nevada, June 24-28, 2002*



- Preamble
- Bill of Rights
- Article I - Name, Affiliation, and Headquarters
- Article II - Objectives
- Article III - Membership
- Article IV - The Convention
- Article V - The International President
- Article VI - The International Secretary-Treasurer
- Article VII - The International Vice Presidents
- Article VIII - The International Executive Board
- Article IX - Subordinate Bodies
- Article X - Judicial Procedure
- Article XI - The Judicial Panel
- Article XII - Miscellaneous Provisions
- Article XIII - Amendments
- Appendix A - Membership Obligation
- Appendix B - Obligation of an Officer
- Appendix C - Constitution for Local Unions
- Appendix D - Elections Code
- Suggested Ritual and Order of Business for Local and Council Meetings
- Recommended Form for Local Minutes

Minutes
- CHART - Key Parliamentary Rules
- Index



**ABOUT AFSCME**

HOMEPAGE    |    TODAY'S NEWS    |    CONTACT AFSCME    |    CALENDAR    |    SEARCH

**Join AFSCME**
**About AFSCME**

- How AFSCME Works
- AFSCME Services
- AFSCME by the Numbers
- History
- President Gerald W. McEntee
- Secretary-Treasurer William Lucy
- International Vice Presidents
- AFSCME Constitution
- AFSCME Resolutions
- Leaders' Bookshelf
- AFSCME Financial Standards Code
- AFSCME Advantage
- Scholarship Programs
- Employment Opportunities

**The AFSCME Web**
**Privatization**
**Legislative Action**
**Health & Safety**
**AFSCME LaborLinks**
**Publications**
**What's New**
**AFSCME en Español**

## AFSCME International Constitution
# Preamble

Workers organize labor unions primarily to secure better wages and better working conditions.

We hold that they also organize in order to participate in the decisions which affect them at work. One of the fundamental tenets of democratic government is the consent of the governed. Unions are an extension of that idea.

Union members are both workers and citizens.

Collective bargaining is the expression of citizenship in employment. Participation in the political life of the nation is but another aspect of that citizenship.

In the same way that unions are dedicated to improvement of the terms and conditions of employment, we are equally dedicated to exert ourselves, individually and collectively, to fulfill the promise of American life. Amidst unparalleled abundance, there should be no want. Surrounded by agricultural surpluses of all descriptions, there should be no hunger. With advanced science and medical research, sickness should not go untreated. A country that voyages into outer space can provide adequate education, protection and family preservation for all its children.

For unions, the work place and the polling place are inseparable, and the exercise of the awesome rights and responsibilities of citizenship is equally required at both.

Unions are under a solemn obligation: to represent members forcefully and effectively in negotiations with management and to conduct internal union affairs according to democratic standards.

Therefore, we the members of the American Federation of State, County and Municipal Employees, in convention assembled, adopt this Constitution and this    .

**Bill of Rights for Union Members**

1. No person otherwise eligible for membership in this union shall be denied membership, on a basis of unqualified equality, because of race, creed, color, national origin, sex, age, sexual orientation, disability, or political belief.

2. Members shall suffer no impairment of freedom of speech concerning the operations of this union. Active discussion of union affairs shall be encouraged and protected within this organization.

3. Members shall have the right to conduct the internal affairs of the union free from employer domination.

4. Members shall have the right to fair and democratic elections, at all levels of the union. This includes due notice of nominations and elections, equal opportunity for competing candidates, and proper election procedures which shall be constitutionally specified.

5. Members shall have an equal right to run for and hold office, subject only to constitutionally specified qualifications, uniformly applied.

6. Members shall have the right to a full and clear accounting of all union funds at all levels. Such accounting shall include, but not be limited to, periodic reports to the membership by the appropriate fiscal officers and periodic audits by officers elected for that purpose or by independent auditors not otherwise connected with the union.

7. Members shall have the right to full participation, through discussion and vote, in the decisionmaking processes of the union, and to pertinent information needed for the exercise of this right. This right shall specifically include decisions concerning the acceptance or rejection of collective bargaining contracts, memoranda of understanding, or any other agreements affecting their wages, hours, or other terms and conditions of employment. All members shall have an equal right to vote and each vote cast shall be of equal weight.

8. Charges against a member or officer shall be specific and shall be only on grounds provided in this Constitution. Accused members or officers shall have the right to a fair trial with strict adherence to due process. The accused shall be considered innocent until proven guilty.