

**ABOUT AFSCME**

HOMEPAGE  |  TODAY'S NEWS  |  CONTACT AFSCME  |  CALENDAR  |  SEARCH

**Join AFSCME**
**About AFSCME**

- How AFSCME Works
- AFSCME Services
- AFSCME by the Numbers
- History
- President Gerald W. McEntee
- Secretary-Treasurer William Lucy
- International Vice Presidents
- AFSCME Constitution
- AFSCME Resolutions
- Leaders' Bookshelf
- AFSCME Financial Standards Code
- AFSCME Advantage
- Scholarship Programs
- Employment Opportunities

**The AFSCME Web**
**Privatization**
**Legislative Action**
**Health & Safety**
**AFSCME LaborLinks**
**Publications**
**What's New**
**AFSCME en Español**

## AFSCME International Constitution
# ARTICLE X

### Judicial Procedure

**Section 1.** Except as hereafter provided in this Article, any member of the Federation may file charges against any individual for actions taken while a member of the Federation or while a staff employee of the Federation or a subordinate body.

**Section 2.** The following and no other shall constitute the basis for the filing of charges:

A. Violation of any provision of this Constitution or of any officially adopted and approved constitution of a subordinate body to which the member being accused is subject.

B. Misappropriation, embezzlement, or improper or illegal use of union funds.

C. Any action by any officer or employee of any council which results in the expenditure by said council of money which is the property of any other subordinate body or of the International Union without proper written authorization from the body which is the owner of such funds.

D. Acting in collusion with management to the detriment of the welfare of the union or its membership.

E. Any activity which assists or is intended to assist a competing organization within the jurisdiction of the union.

F. Refusal or deliberate failure to carry out legally authorized decisions of the International Convention, the International President, the International Executive Board, the Judicial Panel, or of the convention or executive board of a subordinate body of which the accused is a part.

G. Willful violation of a legally negotiated and approved collective bargaining agreement.

H. Using the name of the Federation or of a subordinate body in an unauthorized manner or for an unauthorized purpose.

I. Obtaining membership through fraud or misrepresentation.

J. Deliberately interfering with any official of the Federation or of a subordinate body in the discharge of such official's lawful duties.

K. The solicitation or acceptance of a bribe or the acceptance of any gift of more than nominal value from any employer, member, group of members or employee of the union, or from any person or firm which has or is seeking to establish a business relationship with the Federation or any subordinate body.

L. Conviction of a crime, the nature of which is such as to bring the union as an organization into disrepute.

M. Knowingly submitting a false per capita tax or other financial or audit report to the International Union or any subordinate body or knowingly and intentionally making any false financial report or statement to any lawfully constituted body at any level of the union.

**Section 3.** Charges against an individual for actions taken in such individual's capacity as a member, a local union officer, or a local union staff employee shall be filed with and heard by the local union trial body in the local of which the accused was a member at the time of the alleged actions, with the exceptions provided below. Charges against an individual for actions taken in such individual's capacity as a council officer, a council delegate or a council staff employee shall be filed with and heard by the council trial body in which the accused was an officer, delegate or staff employee at the time of the alleged actions, with the exceptions provided below. Charges against an International Officer or International staff employee shall be filed with and heard by the Judicial Panel, as hereinafter provided. Charges against an officer or staff employee of a subordinate body, who, at the time such charges are filed, is under suspension by the International President under the provisions of Article V, Section 13, of this Constitution, and charges against a member who has been removed as an officer or staff employee during an administratorship of said subordinate body, which administratorship is in effect at the time such charges are filed, shall be filed with and heard by the Judicial Panel in the same manner as appeals to the Judicial Panel.

**Section 4.** Any charges filed against the International President, the International Secretary-Treasurer, or the Chairperson of the

Judicial Panel must be filed by vote of the membership of ten local unions, or a council representing at least ten local unions, or by any member of the International Executive Board.

**Section 5.** Any charge filed against an International Vice President in the capacity of an International Vice President must be filed by vote of the membership of five local unions in the Legislative District which the International Vice President represents or of one-third of the total number of locals in said District when such District includes fewer than fifteen local unions or by a council made up of at least five local unions in said District, or by any member of the International Executive Board.

**Section 6.** Charges shall be in writing and shall be signed by the member or members bringing the charges. The charges shall be specific, citing in detail the nature, the date, and the circumstances of the alleged offense and, where a violation of a constitutional provision is alleged, the specific section shall be cited, along with the specific act or failure to act which constitutes the alleged violation. The charges shall be filed with the secretary of the trial body or, if the secretary of such trial body is a directly interested party, with the presiding officer of the trial body.

**Section 7.** The trial body at the local union level shall consist of the local executive board, unless the local constitution provides otherwise. Any directly interested party shall be disqualified, and the presiding officer of the trial body shall then appoint a disinterested member to serve instead.

**Section 8.** The trial body at the council level shall consist of the council executive board, unless the council constitution provides otherwise, subject to the qualifications herein provided. Any directly interested party shall be disqualified, and the presiding officer of the trial body shall then appoint a disinterested member to serve instead. Any council trial body of any council having jurisdiction over a state-wide area may, by majority vote of the council trial body, appoint a subcommittee to conduct the trial. In such cases, however, the subcommittee shall report in writing to the full membership of the trial body who shall then make the decision and assess the penalty, if any.

**Section 9.** Charges originating at the Judicial Panel level or charges reaching the Judicial Panel as a result of the exercise of the appeal rights set forth in this Article shall be filed with the Chairperson of the Judicial Panel, unless a member of the Judicial Panel is either the person bringing the charge or the accused person, in which case they shall be filed with the

International President.

**Section 10.** Within fifteen days following the receipt of the charges, the person with whom the charges have been filed shall send by registered mail, return receipt requested, an exact and full copy of the charge to the accused party, together with a copy of Article X of this Constitution and an explanation of the trial procedure to be followed.

**Section 11.** The trial body shall fix the date, time, and place for the trial, in such manner as to afford the maximum convenience to both the accused and the accuser practical under all the circumstances. Except as otherwise specifically provided in this Constitution, it shall not be necessary to maintain a verbatim record of the trial unless request for such record is made by a directly interested party to the proceedings. If such request is made, the party making it shall be responsible for the cost of such record and of three copies of the transcript, one of which shall be furnished to the trial body and one to the opposing party. The reporter shall attach an affidavit to each copy of the transcript stating that it is a true and accurate record of the evidence taken at the trial.

**Section 12.** The accused person shall be guaranteed the following rights:

A. The right to be served personally with, or to have forwarded by registered mail to the accused person's current address of record with the local union, return receipt requested, a full copy of the charges within fifteen days after they are filed and to receive a copy at least thirty days before the trial date.

B. The right to file a written answer to the charges.

C. The right to be tried within sixty days after having been personally served, or sixty-three calendar days after having been forwarded, a copy of the charge(s) as provided in Subsection A of Section 12 of this Article.

D. The right to have at least fifteen days' advance notice of the date, time, and place of the trial.

E. The right to confront the accuser.

F. The right to cross-examine the accuser and any witnesses.

G. The right to present witnesses in the accused person's behalf.

accused person full opportunity to prepare a defense.

B. To appear in person at the trial.

C. To assume the burden of proof.

**Section 15.** A trial body may, if it finds the accused person guilty, assess any one or more of the following penalties:

A. A formal reprimand, accompanied by a formal warning against any repetition of the act or acts of which the accused is found guilty.

B. A fine in an amount not to exceed one year's dues, to be paid to the union at the level at which the charges originate.

C. Full or partial restitution, where the consequences of the offense can be measured in material terms.

D. Removal from office in the union at the level at which the charges originate.

E. Suspension from the right to hold any elected position at the level at which the charges originate for a period not to exceed four years.

F. Suspension from the right to hold or seek any elected position at any level of the union for a period not to exceed four years.

G. Suspension from membership for a specified period of time, not to exceed two years.

H. Expulsion from membership.

I. Suspension from employment by the Federation or its subordinate bodies.

J. Removal from employment by the Federation or its subordinate bodies.

Any individual who has been suspended, expelled or removed as provided in paragraphs E, F, G, H, I, or J, above, may not, during the period of such penalty, be employed in any capacity by the International Union or any subordinate body.

**Section 16.** If the charges are not sustained, and the trial body or the appellate body is convinced that the charges were not brought in good faith or were actuated by malice, the trial body

or the appellate body may impose such penalty on the charging party as in its judgment is deemed proper under the circumstances. In any case, the party against whom the penalty is imposed shall have the right to appeal the imposition of the penalty in the manner provided for other appeals, beginning at the level immediately above the trial or appellate level at which the penalty was imposed, and no such penalty shall take effect while an appeal of such penalty is pending.

**Section 17.** The decision of a local union trial body may be appealed by either party to the council trial body, if the local is affiliated with a council. In any case where a local union is not affiliated with a council, the decision of the local union trial body may be appealed to the Judicial Panel. Decisions of a council trial body, whether sitting as an original trial body or as an appellate trial body, may be appealed to the Judicial Panel.

**Section 18.** All decisions must be rendered by the trial body within thirty days following completion of the trial, except by mutual consent of the accuser and the accused; provided, however, in cases where a council trial body subcommittee has been authorized to conduct the trial in accordance with Article X, Section 8 of this Constitution, decisions must be rendered by the council trial body within fifteen days following the report of the council trial body subcommittee to the council executive board; and provided further, that such council trial body subcommittee shall issue its report to the council executive board not later than the next meeting of the council executive board following completion of the trial. Such decision shall be in writing and shall be transmitted by registered mail, return receipt requested, to the person bringing the charge and to the accused simultaneously.

**Section 19.** Either party may, within thirty days following receipt of the decision, file an appeal to the next higher trial body in the same manner as is provided for the filing of original charges with such trial body. The appeal shall be in writing, and shall be accompanied by a copy of the original charge and of the decision which is being appealed. The appeal shall set forth in substance the appellant's reasons for believing the trial body was in error and the nature of the error.

**Section 20.** Where the appeal is to a council trial body, the council trial body shall proceed, in the manner described for the hearing of original charges, to hear such appeal; provided, however, that the council trial body may, in its discretion, hear the appeal on the record established at the local union level or as a new case.

**Section 21.** In any case where a local union trial body or a council trial body fails or refuses to carry out its responsibilities under this Article or, except by mutual consent, expressed in writing, of the accuser and the accused, to adhere to the time limits set forth in this Article, either party shall have the right to appeal to the next higher trial body; provided, however, that under unusual circumstances, which shall be clearly set forth and made a part of the trial record, a trial body may, by majority vote of all its members, extend the time limits for the holding of a trial not to exceed thirty days.

**Section 22.** Decisions of trial bodies at all levels shall be in full force and effect from the date of the decision until and unless reversed or modified by an appellate body at a higher level; provided, however, that except in matters subject to <u>Section 16</u> of this Article, any appellate body, upon receiving a notice of appeal, may order a delay in the carrying out of any penalty which has been assessed, pending its hearing and disposition of the appeal.

## Affidavit of Ken Gallup

The undersigned deposes and says:

1.  I am over the age of 18 years and understand the obligation of an oath.

2.  I am the President of Local 754, Council 15, AFSCME, AFL-CIO.  As such I have personal knowledge of the facts as stated herein.

3.  Local 754 is funded through union dues paid by its members, and receives no governmental funding.

4.  Regulatory control of Local 754 is maintained by AFSCME Council 15, and AFSCME International, the Local's parent organizations.

5.  The Union plays no role in the appointment of personnel to the position of ERT team member in the Bristol Police Department.

6.  Melvin DeKow was President of AFSCME Local 754 from *1-1-99* through *12-31-02*.

Ken Gallup

STATE OF CONNECTICUT       :

                                  :      SS: BRISTOL

COUNTY OF HARTFORD        :

      The foregoing affidavit was subcribed and sworn to by _Ken Gallup_ , before me, this 31ˢᵗ day of July, 2003.

                                        Eric R. Brown
                                        Commissioner of the Superior Court

NO.  CV-94-538581                 :        SUPERIOR COURT

ALICE EVANS                       :        JUDICIAL DISTRICT OF
                                  :        HARTFORD/NEW BRITAIN
VS.                               :        AT HARTFORD

ASSOCIATION OF NORWALK
SCHOOL ADMINISTRATORS             :        JANUARY 30, 1998

<u>MEMORANDUM OF DECISION ON
DEFENDANT'S MOTION TO DISMISS (#119)</u>

The plaintiff, Alice Evans, commenced this action in June, 1994 for compensatory damages against the defendant union, Association of Norwalk School Administrators (defendant or union), her bargaining representative, for compensatory damages, alleging a breach of the duty of fair representation. The defendant has moved to dismiss the action on the ground that General Statutes §§ 10-153a and 10-153e as amended by Public Acts 1993, No. 93-426 (eff. October 1, 1993) require that the plaintiff's action be brought to the Connecticut State Board of Labor Relations (labor board), and therefore this court lacks subject matter jurisdiction. The issue therefore is whether Public Act No. 93-426 should be applied retroactively to plaintiff's claims which arose from events which allegedly predate the effective date of the amendment.

1

since the plaintiff failed to exhaust her administrative remedies. She did not file a claim of a breach of a duty of fair representation with the [labor board] which the defendant argues has exclusive jurisdiction over such claim pursuant to the above mentioned statutes [General Statutes §§ 10-153a, 10-153e]." (Corradino Memorandum).

On June 20, 1995, the court, *Corradino, J.*, denied the motion to dismiss.[1] Because he denied the motion to dismiss

---

[1]Judge Corradino denied the defendant's motion to dismiss, which was based on a lack of subject matter jurisdiction. He wrote: "I have a problem, however, with the application of the exhaustion doctrine in this case and thus with the whole claim of lack of subject matter jurisdiction. . . . My problem is that a plaintiff in this plaintiff's position apparently had a right to sue her union for lack of fair representation prior to and independent of any of the 1993 amendments to the statutory scheme. The statutory amendments merely provided that a union member who felt he or she was receiving unfair representation couldn't go into Superior Court for injunctive relief. A complaint first had to be filed with the [labor board] which in the appropriate case could take steps to protect the worker's rights. Nowhere in the statutory scheme of § 10-153[a] and [e] and its sister statutes is there any provision providing monetary damages to the worker who didn't receive fair representation. How can this person's suit be thrown out of court on the basis of *Sullivan*? There the court said `this plaintiff had available to him administrative remedies that could have afforded him meaningful relief under the federal

3

not filing a breach of the duty of fair representation claim with the [labor board] . . . which has exclusive jurisdiction over such claims . . . ."[2]

The plaintiff filed a memorandum in opposition to the defendant's motion to dismiss, contending that the Superior Court has subject matter jurisdiction and oral argument was held. According to the plaintiff, the administrative remedies are inadequate since the labor board "does not have the authority to award monetary damages."[3]

## II.  DISCUSSION

"Practice Book § 143 governs motions to dismiss.  A motion to dismiss admits all facts well pleaded and invokes

---

[2]  On February 20, 1997, the labor board submitted an amicus brief in support of the defendant's motion to dismiss.  The brief set forth jurisdictional arguments that were substantially similar to those of the defendant.

[3]  The plaintiff's claim for relief is for "compensatory damages".  However no specific items of damage are expressly alleged in her complaint and therefore it is not quite clear from the pleadings at least, just what damages the plaintiff is seeking in addition to back pay. The plaintiff's claim for relief is made murkier by her agreement of settlement with the Board of Education, her employer, which provided for her resignation and a lump sum payment, among other things.

5

apparent intent of the legislature. . . .  In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Hunnihan v. Mattatuck Manufacturing Co., 243 Conn. 438, 444, ___ A.2d ___ (1997).

"This court has consistently expressed its reluctance to construe statutes as having retroactive application. . . . A statute affecting substantial changes in the law is not to be given a retrospective effect unless it clearly and unequivocally appears that such was the legislative intent. . . . The test of whether a statute is to be applied retroactively, absent an express legislative intent, is not a purely mechanical one and even if it is a procedural statute, which ordinarily will be applied retroactively without a legislative imperative to the contrary, it will not be applied retroactively if considerations of good sense and justice

7

administrators' bargaining representatives and requiring teachers and administrators to file breach of the Duty of Fair Representation Complaints with the State Board of Labor Relations. The public act became effective October 1, 1993." (Corradino Memorandum).

General Statutes § 10-153e (e) provides in pertinent part: "Whenever . . . a certified employee believes a breach of the duty of fair representation under subdivision (3) of subsection (c) of this section has occurred or is occurring, such board of education, representative organization or certified employee shall file a written complaint with the [labor board] . . . ."

If the labor board determines that an "employer has engaged in or is engaging in any unfair labor practice, it

---

Connecticut law. See <u>Tedesco v. Stamford</u>, 222 Conn. 233, 247-8 (1992). The labor board has held for over 20 years that a breach of the duty of fair representation is a prohibited practice. See <u>City of Ansonia</u>, SBLR Dec. No. 1275 (1974). Hence, it appears that § 10-153a(b) (Public Act 93-426) merely codified existing state law by declaring that: "The organization designated as the exclusive representative of a teachers' or administrators' unit shall have a duty of fair representation to the members of such unit."

9

limited to: . . . (2) **awarding of back pay;** (3) **reinstatement**

**with or without back pay** of any employee discriminated against

in violation of section 31-105 or by maintenance of a

preferential list from which such employee shall be returned

to work; (4) **reinstatement with or without back pay** of all

employees whose work has ceased or whose return to work has

been delayed or prevented as the result of unfair labor

practice in respect to any employee or employees or the

maintenance of a preferential list from which such employees

shall be returned to work." (Emphasis added.) General

Statutes § 31-107 (c).

Although plaintiffs clearly had the election of bringing

such a claim to either the labor board or the Superior Court

prior to the enactment of Public Acts 1993, No. 93-426, as the

tribunals then had concurrent jurisdiction,[6] the legislative

history demonstrates that the legislature intended to give the

labor board primary jurisdiction over breach of duty of fair

---

[6] <u>Cianci v. Connecticut Council AFSCME</u>, 8 Conn. App.
197, 200-01, 512 A.2d 232 (1986).

11

provides a hearing before a three member panel. General Statutes §§ 31-102, 31-107. It cannot be doubted that the right to a jury trial is a valuable and substantial right with constitutional dimensions. Conn. Const. art. I, § 19; see also, General Statutes § 52-215. Second, in Superior Court, compensatory damages may be recovered. Because the defendant union does not have the power to reinstate the plaintiff to her former position, money damages are the plaintiff's sole remedy. While the labor board has awarded damages in the form of interest,[8] and costs and expenses,[9] it is not expressly authorized to award monetary damages other than back pay. General Statutes § 31-107 (c)(2)-(4).[10] Moreover, neither the

---

[8]    _Greenwich v. The Silver Shield Association_, Decision No. 2269 (January 13, 1984); _Ledyard Board of Education v. Ledyard Education Association_, Decision No. 1564 (August 15, 1977).

[9]    _Danbury Police Union Local 891 v. Danbury_, Decision No. 2935 (August 1, 1991); _Killingly Board of Education v. Killingly Education Association_, Decision No. 2118 (March 18, 1982).

[10]    Cf. _Bridgeport Hospital v. Commission on Human Rights and Opportunities_, 232 Conn. 91, 101, 635 A.2d 782 (1995) (holding that the agency had no authority to award damages for emotional distress pursuant to General Statutes § 46a-86 (a) which requires "the respondent to take such

13

Not Reported in A.2d
24 Conn. L. Rptr. 616
(Cite as: 1999 WL 391122 (Conn.Super.))

**H**
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

**LOCAL 1042, AFSCME, COUNCIL 4, AFL-CIO,**
v.
CONNECTICUT STATE BOARD OF **LABOR RELATIONS** et al.

**No. CV 990493379S.**

June 1, 1999.

Memorandum of Decision

McWEENY.

**\*1** The plaintiff Local 1042, Council 4, AFSCME, AFL-CIO, is an employee organization ("Union") under the Municipal Employees Relations Act (MERA, § 7- 467, et seq.), which represents custodial and maintenance employees of the Norwalk Board of Education ("Norwalk") for purposes of collective bargaining.

The Connecticut State Board of Labor Relations ("CSBLR") is an administrative agency within the State Department of Labor, authorized pursuant to General Statutes § 7-471 to enforce collective bargaining rights under MERA. Two members of the plaintiff union filed complaints with the CSBLR alleging that the president of the plaintiff union had violated their rights under MERA by coercing, restraining or intimidating them from the exercise of their collective bargaining rights. The CSBLR, following a contested hearing, found the union had violated MERA by restraining the complainants in the exercise of their protected rights under § 7-468(a) in violation of § 7-470(b)(1) by fining them, suspending them, filing complaints with the CSBLR against the complainants, seeking punitive damages against them, and seeking employer discipline against the complainants. The union was further found to have violated its duty of fair representation (§ 7-468(d)) by failing to represent the complainants in grievance proceedings involving employer discipline.

The union contests the portion of the labor board's decision which orders them to pay the complainants' attorneys fees and costs incurred in the processing of the Labor Board cases. The Labor Board's decision is dated March 26, 1998. The union filed this administrative appeal on May 7, 1998. The appeal is brought pursuant to the Uniform.

Administrative Procedures Act ("UAPA") General Statutes § 4-166 et seq., § 4-183. The CSBLR filed the record on November 10, 1998. Plaintiff filed briefs on January 19, 1999 and March 29, 1999. The defendant CSBLR filed a brief on March 18, 1999. The parties were heard in oral argument on May 20, 1999.

In its brief, the plaintiff raises only two issues: (1) the authority of the Labor Board to award attorneys fees; and (2) the propriety of the order for payment of attorneys fees and costs without any provision for an evidentiary hearing. All issues in the appeal which are not briefed are viewed as abandoned. *Collins v. Goldberg,* 28 Conn.App. 733, 738, 611 A.2d 938 (1992).

At the outset, the court notes the "standard of review for all of the plaintiff's claims on appeal. Because [the court is] reviewing the decision of an administrative agency, [the court's] review is highly deferential ... Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes ... [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts ... Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion ... Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny ... the agency is not entitled to special deference ... [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law ..." (Citations omitted; internal quotation marks omitted.) *Bezzini v. Dept. of Social Services,* 49 Conn.App. 432, 436, 715 A.2d 791 (1998).

**\*2** The plaintiff, in arguing for a constrained construction of the "affirmative action" language of § 7-471(5)(B) cites the case of *Bridgeport Hospital v. Commission on Human Rights and Opportunities,* 232 Conn. 91, 653 A.2d 782 (1995). In *Bridgeport Hospital,* the Supreme Court construed the "affirmative action" language of § 46a-86 as it related to employment discrimination claims under § 46a-60, to preclude the award of attorneys fees by the agency (CHRO). The *Bridgeport Hospital* decision is based on

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

the peculiar history of § 46a-60 and § 46a-86. Section 46a-60 which addresses employment discrimination is not included in Section (46a-86(c)) _[FN1]_ which provides for the award of compensatory damages, attorneys fees and other costs to remedy other types of illegal discrimination. "The express exclusion of § 46a-60 from 46a-86(c) and (d) evidences intent not to authorize compensatory damages other than back pay as provided for in subsection (b) and attorneys fees for employment discrimination." _Bridgeport Hospital v. Commission on Human Rights and Opportunities,_ 232 Conn. at 101, 653 A.2d 782. There is no similar internal limitation of the application of the remedial provisions of the MERA. [FN2] This is a critical fact as _Bridgeport Hospital_ relied on the itemization in § 46a-86 to construe § 46a-60 to not authorize attorneys fees. 232 Conn. at 100-101, 653 A.2d 782. The term "affirmative action" also had a meaning in employment discrimination law which did not include compensatory damages. See _Local 28 of the Sheet Metal Worker's International Assn. v. Equal Employment Opportunities Commission,_ 478 U.S. 421, 448-49, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986), cited in _Bridgeport Hospital,_ 232 Conn. at 108, 653 A.2d 782. [FN3]

FN1. 46a-86:
(c) In addition to any other action taken hereunder, upon a finding of a discriminatory practice prohibited by section 46a-58, 46a-59, 46a-64, 46a- 64c, 46a-81b, 46a-81d or 46a-81e, the presiding officer shall determine the damage suffered by the complainant, which damage shall include but not be limited to the expense incurred by the complainant for obtaining alternate housing or space, storage of good and effects, moving costs and other costs actually incurred by him as a result of such discriminatory practice and shall allow reasonable attorneys fees and costs.

FN2. Similar provisions in other Connecticut labor law statutes have also provided for the award of attorneys fees to remedy violations. See _An Act Concerning Collective Bargaining For State Employees_ § 5-274(b); _Teacher Negotiation Act,_ § 10-153e(e); _State Labor Relations Act,_ § 31- 107(c).

FN3. The Civil Rights Act of 1991 explicitly changed the law by authorizing compensatory damages.

The Labor Board has a long history of awarding attorneys fees and costs to prevailing parties. See

_Killingly Board of Education,_ Decision No. 2118 (1982); _Mahalia Jackson Day Care Center,_ Decision No. 2137 (1982); _Connecticut State Board of Labor Relations v. Mahalia Jackson Day Care Center,_ Docket No. 206199 (J.D. Fairfield at Bridgeport, December 13, 1982) (Celotto, J.); _Branford Board of Education,_ Decision No. 2274 (1984); _Hayco Management Company,_ Decision No. 2329 (1984); _City of Milford,_ Decision No. 2465 (1986), appeal dismissed; _Local 1566, Council 4, AFSCME, AFL-CIO v. Connecticut State Board of Labor Relations, et al.,_ Docket No. 316928 (J.D. Hartford/New Britain at Hartford (September 30, 1988) (Goldstein, J.); _Farmington Board of Education,_ Decision 2627 (1988); _State of Connecticut,_ Decision No. 3064 (1993); _City of Hartford,_ Decision No. 3069 (1993); _Town of Hamden,_ Decision No. 3077 (1993); _City of New Haven,_ Decision 3081 (1993); _City of Bridgeport,_ Decision No. 3395 (1996); _Town of East Hartford,_ Decision No. 3571 (1998).

*3 The _New Haven Board of Education_ decision was affirmed in _AFSCME Local 287 AFL-CIO v. Connecticut State Board of Labor Relations,_ Docket No. 558128 (J.D. Hartford/New Britain at Hartford, November 26, 1996) (McWeeny, J.). This decision was affirmed by the Appellate Court in _AFSCME Council 4, Local 287 v. State Board of Labor Relations,_ 49 Conn.App. 513, 715 A.2d 803 (1998). In its decision the Appellate Court noted at 49 Conn.App. 521: "General Statutes § 7-471(5) directs the board that if it finds that a party is committing a practice prohibited by the Act, to 'take such affirmative action as will effectuate policies of (the Act)' awarding the employer costs and expenses is well within the discretion of the board."

The long history of the Labor Board practice of awarding attorneys fees and the judicial review of such practice including an Appellate Court decision, presents a scenario where the issue is hardly one of first impression. The authority of the Labor Board to award attorneys fees and costs is established.

The Board's order with respect to fees reads as follows: "II f. Pay to Siok and Folsom all attorneys fees and other costs incurred in the processing of these consolidated cases and case No. MPP-16,003." _[FN4]_

FN4. MPP-16,003 was the complaint that the union president filed with the Labor Board against the complainants in which he sought monetary damages and penalties.

The determination of the amount of "attorneys fees and other costs incurred" will, in the absence of a

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

willingness by the union to pay any amount requested, require evidentiary proceedings. The counsel for the Labor Board noted the existence of regulations relating to back pay awards which are somewhat analogous, but conceded that such regulations do not address specifically the determination of attorneys fees and costs.

The award of attorneys fees and costs was not presented by the Labor Board as a penalty, but rather an equitable proceeding to compensate a party for its reasonable expenses in defending the meritless case, or in this instance intimidation by their statutorily designated collective bargaining representative. The due process of law requires that the union be afforded an opportunity to examine the reasonableness of the "attorneys fees and costs incurred in the processing." There was error for the Labor Board to fail to provide the opportunity for such proceedings either in its order or in its regulations. See *Catino v. Board of Education,* 174 Conn. 414, 419, 389 A.2d 754 (1978).

The appeal is sustained. The matter is remanded to the Labor Board for a hearing limited to a determination of the specific amount of "attorneys fees and other costs." The Labor Board's determination that the union violated the complainants' rights under MERA will not be at issue, nor will the appropriateness of an award of attorneys fees and costs. The only issue to be determined is the specific amount of such orders.

1999 WL 391122 (Conn.Super.), 24 Conn. L. Rptr. 616

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

| Summary Covered Services | Proposed Benefit In Network | Proposed Benefit Out of Network |
|---|---|---|
| Maximum out of pocket | Sum of copays plus costs of deductibles and copays in out of pocket rolls and noncompliance penalties. | Sum of copays, deductibles, coinsurance and amounts above UCR fee schedule and noncompliance penalties. |
| Coinsurance | Coinsurance generally not applicable to in network services. | 20% to a maximum of $500 per individual, family coinsurance maximum is 3 x individual. |

- Final plan document using Hamden base document.

- Dental as previous.

- Three month transition

- Lifetime maximum $500, 000 out of network, $2.5 million in network.

-70-

