FILED

Oct 15   9 57 AM

U.S. DISTRICT COURT
NEW HAVEN, CONN

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREW BARTON | : | NO.: 3:02CV1210 (PCD) |
| v. | : | |
| CITY OF BRISTOL; AND IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES, RICHARD MULLANEY, POLICE SERGEANT; BRIAN SUCHINSKI, POLICE DETECTIVE; AFSCME LOCAL # 754; AND IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, MELVIN DEKOW, UNION PRESIDENT | : : : : : : : : : : | JULY 31, 2003 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56(c), the defendant, **CITY OF BRISTOL**, submits the following memorandum of law in support of its Motion for Summary Judgment dated July 31, 2003.

### I.    BACKGROUND

The plaintiff, Andrew Barton, was hired as a police officer with the Bristol Police Department in August 1986.  See Plaintiff's Complaint, Count One, ¶ 5; and plaintiff's deposition transcript, p. 11, attached as **Exhibit A.**  He was promoted to detective in

June 1997, and assigned to the narcotics unit in the fall of that year. See Plaintiff's Complaint, Count One, ¶¶ 6, 7; and **Exhibit A**, pp. 13, 17. Originally, Detective Barton's immediate supervisor was his brother, Sgt. Peter Barton. See **Exhibit A**, p. 19. In 1999, defendant Richard Mullaney became his supervisor. See **Exhibit A**, p. 19.

On August 31, 1999, the Bristol and West Hartford police departments were involved in a joint narcotics investigation. See Plaintiff's Complaint, Count One, ¶ 9; and **Exhibit A**, p. 29. Detectives from the two departments arranged for a controlled delivery of an intercepted shipment of marijuana at Meineke Muffler in Bristol. See **Exhibit A**, p. 29. The delivery of marijuana was accepted and signed for by an employee, Rivera, at which time the officers converged on the business and eventually arrested the employee/suspect. See **Exhibit A**, p. 34.

While on the scene, Detective Sergeant Mullaney determined that probable cause existed to arrest the suspect, and advised Detective Lennon of his decision to effectuate the arrest. See **Exhibit A**, pp. 37, 39. Thereafter, Det. Lennon located Det. Barton, advised Det. Barton of Det. Sgt. Mullaney's decision to arrest the suspect, and reportedly requested that Det. Barton speak with Det. Sgt. Mullaney regarding his decision. See **Exhibit A**, p. 37. Det. Barton complied. He returned inside Meineke with Det. Lennon in order to speak with Det. Sgt. Mullaney. See **Exhibit A**, p. 37. Det. Sgt. Mullaney again stated that he wanted to arrest the suspect, and the three

2

officers engaged in a conversation about this decision. <u>See</u> **Exhibit A**, p. 37. According to the plaintiff, Det. Sgt. Mullaney asked him and Det. Lennon why the suspect should not be arrested, and that they simply responded to Det. Sgt. Mullaney's questions. <u>See</u> **Exhibit A**, pp. 37-39. The plaintiff concedes, however, that Det. Sgt. Mullaney had indicated his decision to arrest the suspect before this debate took place. <u>See</u> **Exhibit A**, p. 39. This debate occurred in front of other detectives, the suspect, Rivera, and two other Meineke employees. <u>See</u> **Exhibit A**, pp. 29-30, 38-39; **Exhibit C**; **Exhibit G**; Bristol Police Department Internal Affairs Investigation, dated September 24, 2002, attached as **Exhibit 0**.

Det. Sgt. Mullaney prepared a report for Lieutenant Killiany regarding the incident, stating that Det. Barton's vigorous, public opposition to his decision caused a scene and violated sections 2.22[1] and 1.00[2] of the Bristol Police Department's Code of Conduct. <u>See</u> Code of Conduct attached as **Exhibit B**; and Memorandum by Det. Sgt. Mullaney to Det. Lt. Killiany dated September 3, 1999, attached as **Exhibit C**. Det. Lt. Killiany reviewed Det. Sgt. Mullaney's statement and found Det. Barton's behavior

---

[1] Section 2.22 of Article II, states Conduct Unbecoming an Employee occurs when an employee is observed "[f]ighting or quarreling with other employees of a supervisory officer in the public view."

[2] Section 1.00 of Article I, states Conduct Unbecoming an Officer occurs when an officer "brings the Police Department into disrepute; or reflects discredit upon the officer or the Police Department; or impairs the operation, efficiency, or discipline of the Police Department or any officer; or adversely effects the morale of efficiency of

totally inappropriate, bordering on insubordination.  <u>See</u> Memorandum from Det. Lt. Killiany to Chief DiVenere dated September 10, 1999, attached as **Exhibit D**.  Det. Lt. Killiany recommended to Chief DiVenere that Det. Barton be issued a written reprimand.  <u>Id</u>.  The Chief agreed, and the plaintiff was issued a written reprimand on September 14, 1999.[3]  <u>See</u> Plaintiff's Complaint, Count One, ¶ 24; **Exhibit A**, p. 42, and Employee Reprimand Report, attached as **Exhibit E**; Affidavit of Chief DiVenere, attached as **Exhibit R**.  The plaintiff claims that Det. Sgt. Mullaney's allegations regarding his conduct during the narcotics investigation were false.  <u>See</u> Plaintiff's Complaint, Count One, ¶ 10.

Pursuant to City of Bristol General Order 95-1-134 on selection and removal of Emergency Response Team ("ERT") members, a detective can be removed from the team for a serious, sustained, violation of the BPD Code of conduct as determined by the Chief of Police and ERT Commander.  <u>See</u> ERT Member Removal Process attached as **Exhibit H**.  On September 24, 1999, Capt. Kalwat, ERT Commander, informed Barton that he was being removed from the ERT.  <u>See</u> Plaintiff's Complaint, Count One, ¶ 26; **Exhibit A**, pp. 43-44; Memorandum from Barton to Det. Mendella dated October 1, 1999 attached as **Exhibit F**.  The plaintiff had been a member of the

---

the Police Department; or has a tendency to adversely effect, lower or destroy public respect and confidence in the Police Department or the officer."
[3] The maximum penalty for a first offense under §2.22 of the code of conduct is a fifteen-day suspension.  <u>See</u> **Exhibit A**, p. 42.

4

ERT since its inception in 1994 or 1995. <u>See</u> **Exhibit A**, p. 20. Barton had been placed on a 6 month ERT probation on December 5, 1997 for poor behavior. <u>See</u> ERT Probation Memorandum attached as **Exhibit P**. In late 1998, Sgt. Osanitsch also raised concerns about Barton's performance on the ERT. <u>See</u> Osanitsch Memorandum to Capt. Kalwat dated October 18, 1998 attached as **Exhibit Q**.

The plaintiff was a beneficiary of the Collective Bargaining Agreement between the City of Bristol and AFSCME Local #754. <u>See</u> Plaintiff's Complaint, Count Four, ¶2. Said Agreement sets forth a four-step grievance procedure for addressing any employee or union complaints regarding the following: (1) discharge, suspension or other disciplinary action; (2) charge of favoritism or discrimination; (3) interpretation and application of rules and regulations of the Police Department; and/or (4) matters relating to the interpretation and application of the Articles and Conditions of the Agreement. <u>See</u> Collective Bargaining Agreement, §15:0.2, and §15:1, attached as **Exhibit J**. Pursuant to this procedure, a grievance is to be submitted first to the Chief of Police. <u>See</u> **Exhibit A**, 48; and **Exhibit J**, §15:1.1. If either the employee or the union is dissatisfied, the grievance may then be submitted to the Director of Personnel (Step Two), and from there, to the Board of Police Commissioners (Step Three). <u>See</u> **Exhibit A**, pp. 48-49; and **Exhibit J**, § 15:1.2 and § 15:1.3. If the grievance is not resolved to the satisfaction of the union at Step Three, then the grievance may be submitted to arbitration. <u>See</u> **Exhibit J**, § 15.1.4.

5

In this case, the plaintiff grieved his removal from the ERT. <u>See</u> **Exhibit A**, pp. 47-48. The grievance went to Step Four arbitration. <u>See</u> April 19, 2001 Arbitration Award attached as **Exhibit M; Exhibit A**, pp. 48-49. The plaintiff did not grieve the fact that he received a written reprimand. <u>See</u> **Exhibit A**, pp. 46-48.

Count Two is the only count directed to the City of Bristol. In Count Two, the plaintiff alleges that the City violated his constitutional right to due process "by carrying out a pattern of outrageous conduct and removing him from ERT." <u>See</u> Plaintiff's Complaint, Count Two, ¶2. The plaintiff contends that he had a property interest in his position on the ERT. <u>See</u> Plaintiff's Responses to Defendant's, City of Bristol, First Set of Interrogatories, No. 8, attached as **Exhibit N**. The plaintiff does not contend that he was denied any liberty interest. <u>See</u> **Exhibit N**, No. 9.

The City of Bristol hereby moves for summary judgment as to Count Two of the plaintiff's complaint.

## II.    STANDARD OF REVIEW ON SUMMARY JUDGMENT

Federal Rules of Civil Procedure 56(c) requires the entry of summary judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A factual dispute is "genuine" when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A "material fact" is one whose resolution will affect the ultimate determination of the case. Id. In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party. Id. at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Servi-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). However "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Samuels v. Smith, 839 F.Supp. 959, 962 (D.Conn. 1993).

The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. 1570, 94 L.Ed.2d 763 (1986); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the non-moving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 25 (1986). "Neither courts nor defendants

7

should be subjected to trials which can be little more than harassment." <u>Applegate v. Top Assoc., Inc.</u>, 425 F.2d 92, 96 (2d Cir. 1970).

When Rule 56(e) shifts the burden of proof to the non-moving party, that party must produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. <u>Equimark Commercial Fin. Co. v. C.I.T. Fin. Serv. Corp.</u>, 812 F.2d 141, 144 (3d Cir. 1987). Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial. <u>See, First Nat'l Bank of Clinton, Ill. v. Insurance Co. of N. America</u>, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the district court properly relied on documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay which does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered. <u>See</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); <u>Beyene v. Coleman Sec. Serv., Inc.</u>, 854 F.2d 1179 (9th Cir. 1988); <u>Edward B. Marks Music Corp. v. Stasny Music Corp.</u>, 1 F.R.D. 720 (S.D.N.Y. 1941).

## III.    <u>LAW AND ARGUMENT</u>:

In Count Two, the plaintiff alleges that the City of Bristol violated his Fourteenth Amendment right to due process. The claim is brought through the application of 42

8

U.S.C. §1983. As a matter of law, the claim must fail for four reasons. First, the plaintiff was not denied a property interest protected by the Fourteenth Amendment.[4] Second, the plaintiff received all the process he was due. Third, the plaintiff's substantive due process allegations fail to state a claim upon which relief can be granted. Fourth, the plaintiff's § 1983 claim fails to state a claim upon which relief may be granted.

**A.    THE PLAINTIFF HAS FAILED TO ARTICULATE A CONSTITUTIONALLY PROTECTED PROPERTY INTEREST TO TRIGGER DUE PROCESS PROTECTION.**

To be entitled to due process protection, the plaintiff must show a deprivation of a constitutionally protected "property interest." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972); MacFarlane v. Grasso, 696 F.2d 217, 221 (2d Cir. 1982). In Roth, the U.S. Supreme Court concluded:

> [t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must instead, have a legitimate claim of entitlement to it.

408 U.S. at 577, 92 S.Ct. at 2709. Property interests are not created by the federal constitution, but instead are "defined by existing rules or understandings that stem from an independent source such as state law." Id. The due process clause is triggered to protect something more than ordinary contractual rights. S & D

---

[4] The plaintiff does not claim a deprivation of any liberty interest.

9

Maintenance Co., Inc. v. Goldin, 844 F.2d 962, 966 (2d Cir. 1988). "[N]ot every contractual benefit rises to the level of a constitutionally protected property interest." Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 783 (2d Cir. 1991), cert denied, 502 U.S. 1013 (1991). The Court should be mindful in transforming breach of contract disputes into federal constitutional claims. Id.

In analyzing a procedural due process claim, the Second Circuit follows a two-step process. The initial step is to determine whether a plaintiff has been deprived of a protected interest. See Narumanchi v. Board of Trustees of Conn. St. Univ., 850 F.2d 70 (2d Cir. 1988), citing, Board of Regents v. Roth, 408 U.S. 564 (1972). If a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process. The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review. See Narumanchi v. Board of Trustees of Conn. St. Univ., supra citing Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The plaintiff fails to satisfy both aspects of this inquiry.

In the instant case, the plaintiff has failed to identify a property interest invoking due process protection. The plaintiff maintains that the defendants deprived him of his constitutional rights by depriving him of due process and removing him from the ERT. (Complaint, Count Two, ¶ 2.) The plaintiff has not alleged that his

10

employment was terminated, only that he was denied the opportunity to work overtime, a claim unsupported by specific facts. In any event, these occurrences do not constitute a protected property interest sufficient to trigger due process protection. "Personnel decisions short of termination do not constitute a deprivation under the due process claim of the Fourteenth Amendment." Wargat v. Long, 590 F. Supp. 1213, 1215 (D.Conn. 1984). In Wargat, the plaintiff alleged a due process deprivation when he was transferred from one assignment to another. Judge Blumenfeld rejected the plaintiff's constitutional claims by concluding that the "constitution must not be trivialized by being dragged into every personnel dispute in state and local government." Id. (Internal citations and quotations omitted).

The plaintiff's employment was not terminated; he suffered no loss in pay or benefits. The plaintiff alleges that he had a property interest in his position on the ERT, but the plaintiff is mistaken. Where there is no taking of property, a hearing is not required. Constitutional guarantees of due process apply only when the government "seeks to remove or significantly alter an individual's protected status." Id. (Internal quotations omitted.) Hunt v. Prior, 236 Conn. 421, 439 (1996). Contract disputes between employers and employees do not give rise to a cause of action under Section 1983. Costello v. Town of Fairfield, 811 F.2d 782, 784 (2d Cir. 1987). See also Danese v. Knox, 827 F.Supp 185, 193 (S.D.N.Y. 1993) (a public employee's right to receive sick leave under a collective bargaining agreement was not a "property

11

right" subject to due process protection).  The plaintiff's claim for denial of the opportunity to work overtime should not be construed as a constitutionally protected property interest entitling him to some type of hearing.  To do so, would further encumber the federal courts with countless personnel disputes, a result obviously not intended when Section 1983 was enacted.

This procedural due process claim asserts, in essence, that Barton has a constitutional right to a hearing for being removed from an assignment that was a "secondary assignment to his regular duties".  See Exhibit H, p.1.  Because the procedural due process prong of the due process clause protects only tangible property interests and benefits (such as the right to continued employment itself), this claim must be dismissed.

The defendant has failed to discover any case extending the constitutionally protected property right to assignments of employment.  In fact, many courts have rejected this argument.  The Court in Lyznicki v. Board of Educ., 707 F.2d 949, 951 (7th Cir. 1983) expressed doubt as to whether a lateral transfer, involving no loss of pay, could ever be a sufficient deprivation to violate the Fourteenth Amendment.  "A contrary conclusion would subject virtually all personnel actions by state and local government agencies to potential federal damage suits under 42 U.S.C. § 1983 – a breathtaking expansion in the scope of that already far-reaching statute, and one remote from the contemplation of its framers." Id.  "Disputes over overtime, over work

12

assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment." Brown v. Brienen, 722 F.2d 360, 365 (7th Cir. 1983) See also Hajjar v. Dayner, 96 F.Supp.2d 142, 144 (D. Conn. 2000) (failure to transfer plaintiff did not implicate protected property interest); Murray v. Board of Educ. of City of New York, 984 F. Supp. 169, 183 (S.D.N.Y. 1997) (plaintiff had no property right, and thus no right to procedural due process, with respect to her involuntary transfer or failure to be hired as assistant principal).

All of the courts of appeals that have addressed this issue have reached an identical conclusion. See, e.g., Anglemyer v. Hamilton County Hospital, 58 F.3d 533 (10th Cir. 1995) ("[T]he overwhelming weight of authority holds that no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory provision or contract term to the contrary); Clark v. Township of Falls, 89 F.2d 611, 617-19 (3d Cir. 1989) (temporary six-week reassignment of police officer was not a constructive reduction in rank; therefore, no property interest was implicated under Pennsylvania law); Huang v. Board of Governors of Univ. of North Carolina, 902 F.2d 1134, 1141-44 (4th Cir. 1990) (tenured college professor had no property interest in particular departmental assignment under North Carolina law); Kelleher v. Flawn, 761 F.2d 1079, 1087 (5th Cir. 1985) (no property interest in a particular teaching assignment under Texas law); Garvie v. Jackson, 845 F.2d 647, 651-52 (6th Cir. 1988) (no property interest under Tennessee

13

law in university department head position); Volk v. Coler, 845 F.2d 1422, 1430 (7th

Cir. 1988) (no property interest in a particular employment position under Illinois law);

Raposa v. Meade Sch. Dist. 46-1, 790 F.2d 1349, 1353 (8th Cir. 1986) (no property

interest in a particular teaching assignment pursuant to South Dakota law); Lagos v.

Modesto City Sch. Dist., 843 F.2d 347, 349-50 (9th Cir.) (tenured high school

mathematics teacher had no property interest in his additional school position as

baseball coach under California law), cert. denied, 488 U.S. 926, 109 S.Ct. 309, 102

L.Ed.2d 328 (1988); Childers v. Independent Sch. Dist. No. 1, 676 F.2d 1338, 1340-41

(10th Cir. 1982) (high school teacher had no property interest in vocational-agriculture

teaching assignment under Oklahoma law); Maples v. Martin, 858 F.2d 1546, 1550-51

(11th Cir. 1988) (job transfer or reassignment did not implicate a property interest

under Alabama law). But see Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775 (2d

Cir. 1991), cert denied, 502 U.S. 1013 (1991) (plaintiff's claimed right to an

appointment as chief medical resident at a New York City public hospital was a

recognized property interest). These cases indicate that an administrative decision to

reassign or transfer a particular employee absent a statutory or contractual provision

to the contrary is left to the "unfettered discretion" of the employer. Roth 408 U.S. at

567, 92 S.Ct. at 2704.

A requirement that due process be afforded prior to altering assignments

would bring government to a halt: each affected individual would have the right to a

14

constitutional hearing before any assignment could be changed.  Barton, as a member of the collective bargaining unit, has a property interest in employment.  <u>Cleveland Board of Educ. v. Loudermill</u>, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). He may not be terminated without both pre- and post deprivation Due Process. <u>Id</u>. However, our constitutional jurisprudence has never sought to involve itself in day-to-day management decisions.  By holding that Barton's allegations affect constitutionally protected property interests, the Court will greatly expand its role in managing municipal and state agencies.

     1.       **<u>Barton's Reprimand And Termination From The ERT</u>.**

The fundamental premise of Barton's claim against the City of Bristol is that he was terminated from his employment as a member of the ERT.  Conspicuously absent from Barton's Complaint is any reference to the nature, process or disposition of the reprimand that was issued against him on August 31, 1999.  Such reprimand was the catalyst and basis for Barton's removal from the ERT.

Among other things, Barton was accused of violating Sections 1.00 and 2.22 of the Code of Conduct.  <u>See</u> **Exhibit B**, pp. 1 and 3.  These charges were for conduct that took place on August 31, 1999 while Barton was on active duty with the City of Bristol Police Department, and were a significant concern for Det. Sgt. Mullaney. Barton hotly disputed Det. Sgt. Mullaney's decision to effectuate an arrest of Rivera at Meineke Muffler.  <u>See</u> **Exhibit C**.  Det. Sgt. Mullaney was Barton's supervisor.  <u>See</u>

15

**Exhibit A**, p. 39; **Exhibit O**; **Exhibit R**.  This dispute occurred in the public view.  <u>See</u> **Exhibit A**, pp. 29-30, 38-39; **Exhibit C**; **Exhibit G**; **Exhibit O**.  Three Meineke employees, Rivera, Burke and Castillo, were present.  <u>Id</u>.  At least two West Hartford Detectives were present.  <u>See</u> **Exhibit A**, p. 30; **Exhibit C**; **Exhibit G**; **Exhibit O**.  At least two City of Bristol Detectives were present.  <u>See</u> **Exhibit C**; **Exhibit G**; **Exhibit O**.

Det. Lt. Killiany reviewed Det. Sgt. Mullaney's September 3, 1999 report and found that Barton's behavior was "totally inappropriate and bordered on insubordination."  <u>See</u> **Exhibit D**.  Det. Lt. Killiany recommended Barton be "issued a written reprimand for violation of Sections 1.00 – Conduct Unbecoming an Officer and 2.22 – Quarrelling With Other Employees or a Supervisor in the Public View."  <u>Id</u>. Police Chief DiVenere authorized the reprimand.  <u>See</u> **Exhibit R**.  Det. Sgt. Mullaney issued Barton the written reprimand on September 14, 1999.  <u>See</u> **Exhibit E**; **Exhibit A**, p. 42.  Barton could have been suspended for 15 days for his behavior for a first offense.  <u>See</u> **Exhibit B**, Preamble; **Exhibit A**, p. 42.  Notably, Barton did <u>not</u> file a grievance regarding the written reprimand.  He only filed a grievance as a result of his removal from the ERT.  <u>See</u> **Exhibit I**.

On September 24, 1999, Barton was removed from the ERT because he had sustained a serious violation of the Bristol Police Department Code of Conduct.  <u>See</u> ERT Member Removal Process attached as **Exhibit H**, p. 3.

16

2. **Barton Was Not Suspended Or Terminated By The City of Bristol.**

Barton contends that he was terminated from the ERT. The undisputed material facts, however, demonstrate that Barton was not terminated, demoted or constructively discharged from his employment with the Bristol Police Department. Barton was hired by the City of Bristol as a Patrolman in 1986. See **Exhibit A**, pp. 12-13. In 1997, he was promoted to Detective. See **Exhibit A**, p. 13. To this day, Barton remains on active duty as a Detective. See **Exhibit R**.

Assignment to the ERT did not involve any change in pay. See **Exhibit A**, p. 21. See **Exhibit R**. Barton's base salary was not reduced as a result of being removed from the ERT. See **Exhibit A**, p. 21; **Exhibit R**. Barton's benefits were not changed as a result of being removed from the ERT. See **Exhibit R**. Barton's seniority was not changed as a result of his removal from the ERT. See **Exhibit R**. Barton was not assigned a different rank as a result of being removed from the ERT. See **Exhibit R**. Barton's title was not changed as a result of being removed from the ERT. See **Exhibit R**.

The loss of overtime is not, in and of itself, a deprivation of a property interest. Nonetheless, in this case, the facts do not show that Barton suffered a loss of overtime as a result of his removal from the ERT. Barton lost overtime opportunities that are

17



available to members of the ERT. See **Exhibit A**, p. 21 **Exhibit R**. Except for the year immediately following Barton's removal from the ERT, Barton's overtime earnings have increased. Barton earned $12,523.26 in overtime during the fiscal year preceding his removal from the ERT on September 24, 1999. See City of Bristol payroll records attached as **Exhibit S**. Barton earned only $9,865.47 in overtime for fiscal year 7/1/99 – 7/1/00. Id. However, Barton's overtime earnings increased to $13,550.28 in fiscal year 7/1/00 – 7/1/01. Id. Barton's overtime earnings again increased to $18,873.12 in fiscal year 7/1/01 – 7/1/02. Id.

**B.     THE PLAINTIFF RECEIVED ALL THE PROCESS HE WAS DUE.**

Second, assuming *arguendo* that the plaintiff could identify a protected interest, the grievance procedure set forth in the Collective Bargaining Agreement provided the plaintiff all the process that he was due as a matter of law. See Narumanchi v. Board of Trustees of Conn. St. Univ., 850 F.2d 70 (2d Cir. 1988).

The essential elements of due process are notice and an opportunity to be heard. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). Post-deprivation grievance procedures that provide for a hearing to contest a challenged employment decision satisfy the due process requirement. See Harhay v. Town of Ellington, 323 F.3d 206 (2d Cir. 2003); see also, Locurto v. Safir, 264 F.3d 154, 171 (2d Cir. 2001) ("When such a public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard

18

prior to termination, so long as a full adversarial hearing is provided afterwards."); Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 102 (1st Cir. 2002) (pre-deprivation notice and "the full arbitration afforded by the collective bargaining agreement w[ere] more than sufficient to satisfy" due process requirements); Tedesco v. Stamford, 222 Conn. 233, 244 (1992) (grievance procedure set forth in collective bargaining agreement satisfied plaintiff's Fourteenth Amendment right to due process).

In this case, the plaintiff was afforded all the process he was due. The plaintiff was a beneficiary of the Collective Bargaining Agreement between the City of Bristol and AFSCME Local 754. Section 15:1 of said Agreement establishes a procedure for employee grievances. A grievance is defined to include a complaint concerned with discharge, suspension or other disciplinary action; a charge of favoritism or discrimination; and interpretation and application of rules and regulations of the Police Department." See Exhibit J, p. 26. Pursuant to Step One, the aggrieved shall submit his written grievance to the Chief of Police or his designee. Id. Should the grievance not be settled to the satisfaction of the aggrieved, it shall be submitted to the Director of Personnel pursuant to Step Two. Id. If unsuccessful at this stage, then pursuant to Step Three, the employee shall submit the grievance to the Board of Police Commissioners. Id. Step Four provides for arbitration. Id. Pursuant to the Collective Bargaining Agreement, a sufficient post-deprivation procedure was made available to the plaintiff.

19

On October 1, 1999 Barton sent a memorandum to Union Representative Mendella stating that he wanted to grieve his removal from the ERT. See **Exhibit F.** On October 5, 1999, Union Representative Mendella submitted Grievance No. 99-38, which states:

> That on Sept. 24, 1999, Det. A. Barton was removed from the Emergency Response Team as the result of a written reprimand he received. The reprimand did not involve Det. Barton's performance as a member of the E.R.T. The removal is without just cause.

See **Exhibit I.**

Barton's grievance was submitted to Chief DiVenere. Chief DiVenere denied the grievance at Step One, finding that Barton had been "properly removed as per G.O. 95-1-134." See First Step Response attached as **Exhibit K**; General Order 95-1-134 attached as **Exhibit H.** The grievance was then submitted to the Personnel Director. See **Exhibit L.** A Step Two hearing was scheduled at which the union objected to holding a hearing before the Assistant Director of Personnel. See **Exhibit M.** The Union then moved to Step Three and the Police Commission denied the grievance. Id. The Union then filed the grievance at Step Four on December 19, 1999. Id. The State Arbitration Panel found that Union failed to follow the contract when it by passed the Step Two hearing and, as a result, the Union forfeited its right to proceed. Id.

20

Due process requires that a person deprived of a constitutionally protected liberty or property right be given an opportunity to be heard at a meaningful time and in a meaningful manner. See Mathews v. Eldridge, 424 U.S. 319, 333 (1976). Generally, that process includes a notice of the proposed action, and an opportunity to be heard. Id. at 335. The plaintiff received both. It is uncontested that there is no recognized constitutional right to a hearing for job reassignment. Because there is no precedent in recognizing a property interest in a particular job assignment and, therefore, no constitutional right to a hearing, the Court must dismiss Count Two.

C.    **PLAINTIFF'S SUBSTANTIVE DUE PROCESS ALLEGATIONS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Section 1983 provides a right of action against any person who, acting under color of law, deprives another of a right, privilege, or immunity secured by the Constitution or federal laws. See, 42 U.S.C. § 1983; Rendell-Baker v. Kohn, 457 U.S. 830, 835, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Section 1983 does not create any substantive rights, but rather provides a procedure to redress the deprivation of federal rights that are guaranteed elsewhere. See, City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). The plaintiff must first identify the specific right which has been infringed. Graham v. Conner, 490 U.S. 386, 394, 109 S.Ct. 1865, 1867 (1989). The Supreme Court has always been reluctant to expand the scope of substantive due

21



process. <u>Albright v. Oliver</u>, 510 U.S. 266, 271-72; 114 S.Ct. 807, 812 (1994). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." <u>Id</u>. at 272, 114 S.Ct. at 812.

Here, the plaintiff argues that the City violated the plaintiff's constitutional rights by depriving him of due process of law by carrying out a pattern of outrageous conduct and removing him from the ERT. <u>See</u> Complaint, Count Two, ¶ 2. He claims that the City's actions promoted a hostile work environment in violation of his constitutional rights. <u>See</u> Complaint, Count Two, ¶ 10. He claims that he was singled out and discriminated against. <u>See</u> Complaint, Count Two, ¶ 11.

The specific constitutional sources for these rights, however, relate to equal protection and should be analyzed under that standard, not the more generalized notion of substantive due process. The Supreme Court has more recently reaffirmed this principle:

> [w]hen a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.

<u>Albright v. Oliver</u>, 510 U.S. 266, 272; 114 S.Ct. 807, 812 (1994). Therefore, the plaintiff's claim must fail. In addition, the plaintiff's claim must fail because there is no evidence to support a constitutional violation.

22

It is well established that in order to state a claim under § 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. Eagleston v. Guido, 41 F.3d 865 (2d Cir. 1994) (citation omitted).

The threshold inquiry is whether, taken in the light most favorable to the plaintiffs, the facts show the City of Bristol's conduct violated the asserted constitutional right. Saucier v. Katz, supra. It is clear that the conduct in question was not gender discrimination and did not violate the plaintiff's constitutional rights.

The conduct claimed by the plaintiff in this case is that Det. Suchinski harassed him on several occasions by (1) placing a rubber rat on his desk; (2) hiding rental car keys; (3) failing to give him important messages; and (4) making false allegations against him to get him in trouble. See Complaint ¶¶ 13-18. The plaintiff admits that the defendants removed Det. Suchinski from the Narcotics Unit. See Complaint ¶ 20.

In a due process challenge to abusive conduct by a state actor, the court must determine "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S.Ct. 1708 (1998). "[M]inor

discomfort and hurt feelings do not make a federal case." <u>Wise v. Pea Ridge Sch. Dist.</u>, 855 F.2d 560, 565 (8th Cir. 1988).

Substantive due process has been extended to those rights that are "fundamental" and "implicit in the concept of ordered liberty." <u>Palko v. Connecticut</u>, 302 U.S. 319, 325 (1937); <u>Skinner v. City of Miami, Florida</u>, 62 F.3d 344, 347 (11th Cir. 1995). Governmental acts which violate substantive due process protections ordinarily must "shock the conscience" of the court. <u>See</u>, <u>e.g.</u>, <u>Rochlin v. State of California</u>, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). The plaintiff's claim is limited to that sort of horseplay that is often associated with teenagers. While juvenile and arguably inappropriate in a place of business, there is nothing about the conduct alleged by the plaintiff which is "brutal" or "shocking" to the conscience.

The plaintiff merely duplicates the allegations supporting his Equal Protection claim set forth in Count One, while attempting to create another compensable claim under the substantive component of the due process clause. The Court should decline the plaintiff's invitation to expand the scope of the due process clause and dismiss the claim.

D. **PLAINTIFF'S SECTION 1983 CLAIM AGAINST THE CITY OF BRISTOL FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.**

In order to state a claim pursuant to 42 U.S.C. § 1983, the complaint must allege that a person, acting under color of state law, committed an act which deprived the plaintiff of a right, privilege or immunity secured by the laws or Constitution of the United States. See Dove v. Fordham Univ., 56 F.Supp. 2d 330, 335-36 (S.D.N.Y. 1999). Where a plaintiff seeks to hold a municipality liable as a "person" within the meaning of § 1983, the plaintiff must establish that the municipality was in some way at fault for the injuries sustained. Id. at 336.

The United States Supreme Court has held that a municipality may be held liable only where the deprivation of a Constitutional right was the result of a municipal custom or policy. See Monell v. Dept. of Social Services, 436 U.S. 658, 690-91, 98 S.Ct. 2427, 56 L.Ed.2d 611 (1978); Oklahoma v. Tuttle, 471 U.S. 808, 810, 105 S.Ct. 2018, 56 L.Ed.2d 791 (1985). Thus, in order to state a claim against a municipality pursuant to § 1983, a plaintiff must: (1) prove the existence of a municipal policy or custom, the exercise of which caused a deprivation of the plaintiff's rights; and (2) establish an affirmative link between the policy and the alleged constitutional violation. See Oklahoma v. Tuttle, 471 U.S. at 817, 823.

In the alternative,

> [a]bsent evidence of a municipal policy (i.e., evidence of the policy itself or of the involvement of statutorily authorized policy-making officials), a plaintiff seeking to establish municipal liability under § 1983 can only meet his burden by establishing that responsible supervisory officials

25

> acquiesced in a pattern of unconstitutional conduct by subordinates. Only after such a pattern of acquiescence is shown, may a municipality be deemed to have sanctioned the unconstitutional conduct.

Dove, 56 F.Supp. 2d at 336, citing Turpin v. Mailet, 619 F.2d 196, 201 (2d Cir. 1980). A municipality cannot be liable pursuant to a theory of *respondeat superior* for actions committed by its employees. See Id. On the contrary, a municipality may be sued only for the execution of an official policy, regulation or custom that inflicts injury, or for the actions of those municipal officials who have final policy making authority. Id.; City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, (1988), citing, Pembaur v. Cincinnati, 475 U.S. 469, 106 S.Ct. 1292, (1986).

In the present case, the plaintiff has failed to state a claim against the City of Bristol pursuant to § 1983. The plaintiff's complaint does not allege that any municipal custom or policy resulted in the deprivation of his Constitutional rights. In fact, the plaintiff is alleging the inverse. The plaintiff alleges that the City of Bristol (1) did not follow the proper procedures in investigating the plaintiff; (2) did not conduct any interviews during the course of their investigation; and (3) did not interview the plaintiff in the course of their investigation. Complaint, Count One, ¶¶ 21-23. Such allegations fall well short of the standard for liability required by the U.S. Supreme Court in Monell, namely that the deprivation of a Constitutional right was the result of a municipal custom or policy.

26

## IV.    **CONCLUSION**

For the foregoing reasons, the defendant, CITY OF BRISTOL, respectfully requests that the Court grant its motion for summary judgment.

DEFENDANT,
CITY OF BRISTOL

By _____
Martha A. Shaw
ct12855
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (fax)
E-Mail: mshaw@hl-law.com

27

## A. <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 31st day of July, 2003.

Erin I. O'Neil, Esquire
James S. Brewer, Esquire
818 Farmington Avenue
West Hartford, CT  06119

Richard Lacey, Esquire
Corporation Counsel
City of Bristol
111 North Main Street
Bristol, CT  06010

John K. McDonald, Esquire
Giovanna Trocchi Giardina, Esquire
Melissa A. Scozzafava, Esquire
Kernan & Henry, LLP
207 Bank Street
P.O. Box 2156
Waterbury, CT  06722-2156

Eric R. Brown
AFSCME Council 15 Legal Dept.
290 Pratt Street
Meriden, CT  06450

_____
Martha A. Shaw

28