31:3    The Division will be made up of volunteers with a minimum of twenty-four (24) months in service from each shift and be selected by the Chief of Police. Volunteers shall serve a complete twelve-week (12) cycle and may bid again for subsequent cycles if he chooses. If there are no volunteers, then the least senior officer with a minimum of twenty-four (24) months seniority shall be assigned for one complete twelve (12) week cycle; thereafter, the employee with the next highest seniority shall be assigned; then the assignment shall revert back to the employee with at least twenty-four (24) months seniority. Shifts shall be bid by department seniority.

31:4    The City will have the responsibility for all training needed to maintain this Division.

31:5    The Officers assigned to Communications Division shall maintain their own seniority. Patrol Officers assigned to the Traffic Division and Court Liaison will share in overtime within the Communications Division.

31:6    Shift assignments will be based on rank seniority only for those employees who are now and have been in the Communications Division since its inception on September 1, 1985 and those employees shall be considered most senior for purposes of this Section. All new employees and those current employees who leave and return to the Communications Division shall have their shift assignments based on department seniority.

31:7    Employees in Communications Division who elect to return to Patrol Division shall be given shift assignments based upon department rank seniority.

-54-

## ARTICLE XXXII

### IDENTIFICATION DIVISION

32:1    The Police Department for the City of Bristol shall have a division known as Identification Division which will come under the direction of Criminal Investigation Division commander.

32:2    It shall consist of no less than two (2) Evidence Technicians.

32:3    The City will have the responsibility for all training needed to maintain this Division.



32:4    The officers assigned to the Identification Division shall maintain their own overtime within the Identification Division. Shift assignments will be based on Division Rank Seniority.

## ARTICLE XXXIII

### PROMOTIONS FOR CRIMINAL INVESTIGATION DIVISION
### (DETECTIVE AND IDENTIFICATION DIVISIONS)

33:1    All promotions to positions in the Police Department Criminal Investigation Division (Detective and Identification Divisions) shall be made as a direct result of examinations conducted under the supervision of the Director of Personnel of the City of Bristol. The only exception to this Section shall be those employees in the Criminal Investigation Division (Detective Division) on December 15, 1984, and those employees in the Criminal Investigation Division (Identification Division) on January 19, 1988, or on the Detective eligibility list in effect on that date. Any employee filling a vacancy in the Criminal Investigation Division

-55-

(Detective and Identification Divisions) thereafter shall be promoted and governed by this Article.

**33.2** The Director of Personnel shall provide and supervise the examination(s) and certify the results thereof to the Bristol Board of Police Commissioners and Chief of Police.

**33.3** The examinations for the ranks of Detective and Evidence Technician shall consist of both written and oral, provided no candidate for promotion shall be entitled to take the oral examination unless and until the candidate has attained a minimum grade of seventy percent (70%) on the written examination. The written examination shall be obtained from a recognized testing authority in the law enforcement field. The oral examination shall be conducted by non-Bristol residents in the law enforcement field. Each candidate must attain a minimum grade of seventy percent (70%) on the oral examination.

**33.4** The Director of Personnel shall certify to the Board of Police Commissioners and the Chief of Police the names of all candidates competing for a vacancy who have attained a grade of seventy percent (70%) or higher on both the written and oral examinations. The Board of Police Commissioners shall then appoint to the vacancy that candidate with the highest passing score based upon the following factors and weights:

(a) Written Examination   -   50%
(b) Oral Examination       -   50%
                   Total      100%

**33.5** A promotional examination for the rank of Detective Sergeant or Detective Lieutenant shall consist of only an oral examination. Each candidate must receive a minimum grade of seventy percent (70%) to be placed in his/her relative order of ranking on the eligibility

list for promotion. The Chief of Police shall have the authority to choose one (1) of the three (3) highest scoring candidates to fill such vacant position. In the event that two (2) candidates have an identical final score, seniority, as determined by the collective bargaining agreement, shall determine the rank order on the eligibility list.

**33.6** Regular members of the Bristol Police Department with three (3) or more years seniority as of the date the examination is to be held, shall be deemed eligible to take the examination for the rank of Detective and/or Evidence Technician. In order to be eligible to take the examination for Detective Sergeant or Detective Lieutenant, members of the Bristol Police Department must hold the rank of Sergeant or Lieutenant respectively for a period of at least one (1) year as of the date the examination is to be held.

**33.7** The eligibility list(s) for all positions in the Criminal Investigation Division (Detective and Identification Division) shall continue in force for two (2) years from the date the eligibility list was established as certified by Director of Personnel. New examinations shall be at more frequent intervals if a vacancy occurs and the eligibility lists for those positions are exhausted. The Director of Personnel shall have the authority to commence the examination process in order to create a new eligibility list on or before the date of the expiration of the then eligibility list.

**33.8** At least two (2) weeks notice of each examination shall be given by posting on the Police Department Bulletin Board.

## ARTICLE XXXIV
## DRUG TESTING

**34.1** The City reserves the right to engage in drug testing of applicants and employees, provided any testing of bargaining unit members is conducted in accordance with the

provisions of Public Act 87-551, and provided further that neither the taking of a sample nor the analysis thereof shall be conducted at a facility located within the City of Bristol. The City shall take all reasonable steps to protect the privacy of the employee, including allowing the employee to change into civilian clothing, and transporting the employee in an unmarked car. Employees shall be paid for time involved.

## ARTICLE XXXV
## MATERNITY LEAVE

35:1    In the event an employee becomes pregnant while employed in the Bristol Police Department, she shall be entitled to the following benefits and should proceed as follows:

35:1.1    Notify the Chief or his designee of such pregnancy.

35:1.2    If unable to perform her normal duties and her physician has certified that if she continues working she or her baby's health could be jeopardized, she can:

a.    Take earned sick time or vacation time;

b.    When sick time is used up, apply at Claims Office of the City of Bristol for the thirteen (13) week disability insurance and leave (see Section 14:10). A doctor's certificate may be required.

c.    If no sick time has been earned, she may apply for the disability insurance, but payment will not begin until the eighth (8th) day of leave.

35:1.3    The City and Union agree that if a state law is passed concerning this issue that changes this policy substantially, they will negotiate the impact on the employee.

-58-

## ARTICLE XXXVI
## DRESS AND GROOMING STANDARDS

36:1    Officers shall be neat in appearance and well groomed while on duty. All articles of the uniform shall conform to the departmental uniform regulations. The uniform, or any part of issued equipment, will not be altered except by direction of the Chief of Police. The purpose of this rule does not apply to regular size alterations.

36:2    Wearing the Uniform:    The uniform shall be kept clean and neat, well pressed and without need of repair at all times.

36:3    Manner of Dress:    Normally, officers shall wear the uniform of the day. However, Commanding Officers may permit other clothing as required by the nature of the day the officer may be assigned.

36:4    Appearance:

36:4.1    Male officers will conform to the following standards:

36:4.1.1    Hair shall be evenly trimmed while on duty. The bulk and length of the hair shall not interfere with the proper and normal wear of any department headgear.



36:4.1.2    Mustache:    If worn, the pattern shall be neatly trimmed and tidy. The mustache shall not extend over the edge of the upper lip, not extend below the corner of the mouth more than one-half inch.

36:4.1.3    Sideburns:    If worn, the pattern shall be neatly trimmed and tidy. Sideburns shall not extend below the bottom of the ear and must not be more than one and one-quarter inch in width. The sideburns must be vertical in shape and shall not angle forward in "pork chop" fashion.

-59-

36:4.1.4   Beards:   Beards shall not be worn. However, all existing employees will be allowed to grow or maintain a beard as long as the beard is neat, clean, and presentable. All bargaining unit members hired after July 1, 1990 with a medical condition which precludes shaving shall be required to present a written statement signed by a medical doctor verifying such a condition.

36:4.2   Exceptions:   Officers in specialized assignments where conforming to these standards may be detrimental to their safety or assignment may be exempted by the Chief of Police.

36:4.3   Female officers shall conform to the following when in uniform:

36:4.3.1   Hair. Officers shall keep their hair clean, neat and styled to present an attractive appearance consistent with the type of duty performed. When in uniform, they shall arrange their hair so that it does not extend over one-half (1/2) of the collar.

36:4.3.2   Hair Ornaments:   No decoration shall be worn in the hair while in uniform. Items used to hold the hair in place shall be concealed as much as possible and shall be the color and style that blend with the hair.

36:4.3.3   Makeup:   Makeup shall be subdued and natural looking.

## ARTICLE XXXVII
## DURATION

37:1   In the event that any Article or Section of this Agreement is declared invalidated, all other Articles and Sections or portions thereof not so invalidated, shall remain in full force and effect.

37:2   This Agreement is for a five (5) year contract effective July 1, 1996 through ___ 30, 2001, with a wage reopener only for 7-1-2000.

37:3   Negotiations for the wage reopener shall begin on or before March 1, 2000.

37:4   Negotiations for a successor Agreement shall begin on or before March 1, 2001. If no successor Agreement is reached by such date, this Contract will hold over and remain in force until such new Agreement becomes effective.



## ARTICLE XXXVIII
### SIGNATURE PAGE

IN WITNESS WHEREOF, the parties have caused their names to be signed on this

6th day of November _____, 1998.

FOR THE CITY OF BRISTOL

FOR BRISTOL POLICE UNION, LOCAL #754
AND COUNCIL #15, AFSCME, AFL-CIO

Frank N. Nicastro, Sr.
Mayor

Eric Osanitsch
President, Local #754

James Byer
Director of Personnel

Kevin Morrell
Vice President, Local #754

ATTEST:
Florence McAuliffe, Town and City Clerk

As per vote by City Council.

-62-

---

## APPENDIX A
### SALARY SCHEDULE EFFECTIVE JULY 1, 1996

#### POLICE OFFICER

| | |
|---|---|
| Step 1 | $33,803 |
| Step 2 | $34,955 |
| Step 3 | $36,347 |
| Step 4 | $37,802 |
| Step 5 | $39,312 |
| Step 6 | $40,887 |
| Step 7 | $42,521 |

| | |
|---|---|
| PATROL SERGEANT SERGEANT | $49,114 |

| | |
|---|---|
| PATROL LIEUTENANT LIEUTENANT | $56,726 |

#### CRIMINAL INVESTIGATION DIVISION
#### (DETECTIVE AND IDENTIFICATION DIVISIONS)

| | |
|---|---|
| DETECTIVE | $44,645 |
| EVIDENCE TECHNICIAN | $44,645 |
| DETECTIVE SERGEANT | $51,567 |
| DETECTIVE LIEUTENANT | $59,562 |

#### ANIMAL CONTROL OFFICER

| STARTING RATE | AFTER FIRST YEAR | AFTER SECOND YEAR |
|---|---|---|
| $33,437 | $34,817 | $35,818 |

-63-

## APPENDIX B

### SALARY SCHEDULE EFFECTIVE JULY 1, 1997

#### POLICE OFFICER

| | |
|---|---|
| Step 1 | $34,733 |
| Step 2 | $35,914 |
| Step 3 | $37,347 |
| Step 4 | $38,842 |
| Step 5 | $40,393 |
| Step 6 | $42,011 |
| Step 7 | $43,690 |

#### PATROL SERGEANT / SERGEANT

$50,465

#### PATROL LIEUTENANT / LIEUTENANT

$58,286

#### CRIMINAL INVESTIGATION DIVISION
#### (DETECTIVE AND IDENTIFICATION DIVISIONS)

| | |
|---|---|
| DETECTIVE | $45,873 |
| EVIDENCE TECHNICIAN | $45,873 |
| DETECTIVE SERGEANT | $52,985 |
| DETECTIVE LIEUTENANT | $61,200 |

#### ANIMAL CONTROL OFFICER

| STARTING RATE | AFTER FIRST YEAR | AFTER SECOND YEAR |
|---|---|---|
| $34,357 | $35,774 | $36,803 |

## APPENDIX C

### SALARY SCHEDULE EFFECTIVE JULY 1, 1998

#### POLICE OFFICER

| | |
|---|---|
| Step 1 | $35,688 |
| Step 2 | $36,902 |
| Step 3 | $38,374 |
| Step 4 | $39,910 |
| Step 5 | $41,504 |
| Step 6 | $43,166 |
| Step 7 | $44,891 |

#### PATROL SERGEANT / SERGEANT

$51,853

#### PATROL LIEUTENANT / LIEUTENANT

$59,889

#### CRIMINAL INVESTIGATION DIVISION
#### (DETECTIVE AND IDENTIFICATION DIVISIONS)

| | |
|---|---|
| DETECTIVE | $47,135 |
| EVIDENCE TECHNICIAN | $47,135 |
| DETECTIVE SERGEANT | $54,442 |
| DETECTIVE LIEUTENANT | $62,883 |

#### ANIMAL CONTROL OFFICER

| STARTING RATE | AFTER FIRST YEAR | AFTER SECOND YEAR |
|---|---|---|
| $35,302 | $36,758 | $37,815 |

## APPENDIX D

### SALARY SCHEDULE EFFECTIVE JULY 1, 1999

**POLICE OFFICER**

| | |
|---|---|
| Step 1 | $36,669 |
| Step 2 | $37,917 |
| Step 3 | $39,429 |
| Step 4 | $41,008 |
| Step 5 | $42,645 |
| Step 6 | $44,353 |
| Step 7 | $46,126 |

| | |
|---|---|
| PATROL SERGEANT | $53,279 |
| PATROL LIEUTENANT | $61,536 |

### CRIMINAL INVESTIGATION DIVISION
### (DETECTIVE AND IDENTIFICATION DIVISIONS)

| | |
|---|---|
| DETECTIVE | $48,431 |
| EVIDENCE TECHNICIAN | $48,431 |
| DETECTIVE SERGEANT | $55,939 |
| DETECTIVE LIEUTENANT | $64,612 |

| | |
|---|---|
| SERGEANT | $53,279 |
| LIEUTENANT | $61,536 |

**ANIMAL CONTROL OFFICER**

| STARTING RATE | AFTER FIRST YEAR | AFTER SECOND YEAR |
|---|---|---|
| $36,273 | $37,769 | $38,855 |

---

APPENDIX E

| Summary Covered Services | Proposed Benefit In Network | Proposed Benefit Out of Network |
|---|---|---|
| Inpatient hospital services - semi private room, physicians and surgeons charges, maternity charges for mother and child, diagnostic and lab fees, PT and OT, drugs, Operating room fees, dialysis ......etc. | Covered in full subject to preadmission review, second surgical opinion, concurrent review and managed care non compliance penalties. Medical excellence program on an optional basis (at patients option). | Covered at 80 percent of reasonable and customary above deductible to stoploss, then at 100% of UCR. Subject to preadmission review, second surgical opinion, concurrent review and managed care non compliance penalties. Maximum of 30 days per year. |
| Outpatient hospital services - Operating and recovery room, surgeons fees, lab and x-ray, Dialysis, radiation and chemo.....etc. | Covered in full subject to preadmission review, second surgical opinion, concurrent review and managed care non compliance penalties. | Covered at 80 percent of reasonable and customary above deductible to stoploss. Subject to , preadmission review, second surgical opinion, concurrent review and managed care non compliance penalties. |
| Ambulance | Covered in full. Non emergency use subject to case management. | Covered at 100 % of UCR for emergencies at out of network for non emergencies. Non emergency use subject to case management. |
| **Inpatient Mental and Substance Abuse** | | |
| Mental Health Inpatient | Covered in up to 120 days subject to preadmission review, second surgical opinion, concurrent review and managed care non compliance penalties. | Covered at 80 percent of reasonable and customary above deductible to stoploss, then at 100% of UCR to a 120 day maximum per stay (2 for 1 half days). Subject to preadmission review, concurrent review and non compliance penalties. |
| Substance Abuse Inpatient | Covered in full for up to 45 days per year subject to preadmission review, concurrent review and managed care non compliance penalties. Half days substituted on a 2 for 1 basis. | Covered for 45 days per year at 80 percent of UCR above deductible to stoploss, then at 100% of UCR. Subject to preadmit review, concurrent review and non compliance penalties. Half days on a 2 for 1 basis. |
| Emergency Care | Emergency room visits covered in full above a $50 copay if the condition meets the sudden and serious requirements. Failure to meet the sudden and serious requirements results in the treatment being treated as an out of network usage, subject to deductible and coinsurance. Treatment on the direction of Physician is treated as in network. Copay is waived if admitted. | Emergency room visits covered at UCR above a $50 copay if the condition meets the sudden and serious requirements. Non sudden and serious requirements results in the treatment being treated as out of network usage, subject to deductible and coinsurance. Treatment at the direction of Physician is treated as in network. Copay waived if admitted. (Note: same as in network) |
| Walk in care (walk in center or physician's office) | Covered in full above $10 copay. | Covered at UCR above $10 copay if sudden and serious. Otherwise treated as an out of network usage. Subject to deductible and coinsurance. |



| Summary Covered Services | Proposed Benefit In Network | Proposed Benefit Out of Network |
|---|---|---|
| **Physician services** | | |
| Medical Care (clinical indications of illness) | Covered in full above $10 copay. No annual or lifetime maximum. | Covered at 80 percent of UCR above deductible to stoploss then at 100% of UCR. No annual or lifetime maximum. |
| Allergy care | Covered in full above $10 copay for examination. No copay for injections. No annual or lifetime maximum. Subject to case management. | Covered at 80 percent of UCR above deductible to stoploss then at 100% of UCR. No annual or lifetime maximum. Subject to case management. |
| Well Child Care (no clinical indications or history) | Covered in full above $0 copay. Subject to age based schedule. To 6 months once per month, then to one year every two months, then to two years every three months, then to three years every six months, then once per year to age 18. | Covered at 80% of UCR above deductible to stoploss. Subject to age based schedule. To 6 months once per month, then to one year every two months, then to two years every three months, then to three years every six months, then once per year to age 18. |
| Adult Physical Examinations (no clinical indications or history) | Covered in full above $0 copay. Subject to age based schedule. Every three years to age 30 then every two years to age 50 then every year. | Covered at 80% of UCR above deductible to stoploss. Subject to age based schedule. Every three years to age 30 then every two years to age 50 then every year. |
| Routine Mammography (no clinical indication or history) | Covered in full above $0 copay. Subject to age based schedule. One exam between age 35 and 40, then every two years to age 50 then every year. | Covered at 80% of UCR above deductible to stoploss. Subject to age based schedule. |
| Routine Gynecological (no clinical indication or history) | Covered in full above $0 copay. Limited to one examination per year. | Covered at 80% of UCR above deductible to stoploss. Limited to one examination per year. |
| Vision and Hearing Screening | Covered in full above $ 0 copay. Limited to one of each per year. | Covered at 80% of UCR above deductible to stoploss. Limited to one of each per year. |
| **Outpatient Therapy Coverages** | | |
| Speech Therapy, OT, PT and Chiropractic Services | Covered in full above $10 copay. Maxi. of 50 visits per year. Subject to case management after first visit. After maximum is reached further benefits are available on out of network basis. | Covered at 80% of UCR above deductible to stoploss. Maximum of 50 combined visits per year. Subject to case management after first visit. |
| Electroshock Therapy | Covered above $10 copay for up to 15 visits per annum. Subject to case management | Covered at 80% of UCR above deductible to stoploss for up to 15 visits per annum. Subject to case management |



| Summary Covered Services | Proposed Benefit In Network | Proposed Benefit |
|---|---|---|
| Prescription Drug Benefits | Covered subject to $0/$3/$6 copay for mail / generic/ brand script. Maximum of $2,000 then benefit rolls to out of network basis. | Covered at 80% of UCR above deductible to stoploss. |
| Outpatient Mental and Substance | Covered in full after $25 copay up to 50 visits per year applied separately(MH and SA). Subject to case management | Covered at 80% of UCR above deductible to stoploss. Up to 30 visits per year applied separately(MH and SA). Subject to case management |
| Maternity Care (Prenatal and Post Natal) | Covered in full after $10 copay (first visit only). | Covered at 80% of UCR above deductible to stoploss. |
| Durable Medical Equipment and Prosthesis | Covered in full subject to case management and buy lease decision.. | Covered at 80% of UCR above deductible to stoploss subject to case management and buy lease decision. |
| **Home Health and Hospice** | | |
| Home health aid | Covered in full for 80 days subject to case management. | Covered at 80% of UCR above deductible to stoploss  for up to 80 days per year, subject to case management. |
| Nursing and therapeutic services | Covered in full for 200 days per year subject to case management | Covered at 80% of UCR above deductible to stoploss for up to 200 days per year, subject to case management |
| Hospice Care | Covered during last 6 months of life. Subject to case management. | Covered at 80% of UCR above deductible  to stoploss during last 6 months of life. Subject to case management. |
| Skilled Nursing facility | Covered in full for up to 120 days per year subject to case management | Covered at 80% of UCR above deductible  to stoploss  for up to 120 days per year subject to case management |
| Eligibility | Insured, spouse and unmarried dependents to age 25. Standard language for disabled dependents over age 25. Late entrant option. | Insured, spouse and unmarried dependents to age 25. Standard language for disabled dependents over age 25. Late entrant option. |
| Non-compliance Penalties | $500 per event | $500 per event |
| Deductible | Generally not applicable to in network usage. | $250/$500 /$750 individual/family. |
| Payment Basis | Negotiated fees no balance billing. | % of UCR at 90th percentile. |



| Summary Covered Services | Proposed Benefit In Network | Proposed Benefit Out of Network |
|---|---|---|
| Maximum out of pocket | Sum of copays plus costs of deductibles and copays in out of pocket rolls and noncompliance penalties. | Sum of copays, deductibles, coinsurance and amounts above UCR fee schedule and noncompliance penalties. |
| Coinsurance | Coinsurance generally not applicable to in network services. | 20% to a maximum of $500 per individual, family coinsurance maximum is 3 x individual. |

- Final plan document using Hamden base document.

- Dental as previous.

- Three month transition

- Lifetime maximum $500, 000 out of network, $2.5 million in network.

-70-

FIRST STEP RESPONSE:  The grievance was submitted to me on

My response is as follows:  Denied - properly Removed

as per G.O. 95-1-134.

_____

_____

_____

Signed _____   Title __Chief__   Date _10/5/99_

RECEIVED
BRISTOL POLICE DEPT
Oct 20 2 19 PM '99

SECOND STEP RESPONSE:  The grievance was submitted to me on _____

My response is as follows: _____

_____

_____

_____

Signed_____   Title_____   Date_____

THIRD STEP RESPONSE:  The grievance was submitted to me on _____

My response is as follows: _____

_____

_____

_____

Signed_____   Title_____   Date_____

*************
Waiver Form:  The time limits for submission to Step # 1, 2, 3, 4
            (CIRCLE) have been extended for a period.

of_____   Signed_____   Date_____
                Municipal Representative


N.B.  EMPLOYER
      IN ORDER THAT THE UNION CAN DETERMINE WHETHER TO PROGRESS THIS
      GRIEVANCE, IT REQUESTS THE FOLLOWING INFORMATION.

      1.  Any and all records, documents and/or statements in the
          municipality's possession pertaining to this matter.

      2.  A written detailed explanation for the decision to deny this

**Bristol Police Union**
*Local 754*
*AFL-CIO AFSCME Council 15*
131 North Main Street
Bristol, Connecticut 06010

CITY OF BRISTOL
PERSONNEL DEPT.
RECEIVED

OCT 2 1 1999

AM 7 8 9 10 11 12 1 2 3 4 5 6 PM

DATE: 10/20/99

TO: Jim Byer – Personnel Director

FROM: Kevin Mellon – Grievance Chairman

RE: Grievance 99-38 (A.Barton / ERT removal)

Sir,
    This grievance was denied at the first step. In accordance with the working agreement, it is being submitted to you. The original grievance was denied on 10/5/99 according to the Chief's signature. However, the reply was not forwarded to the Union until 10/20/99.

Sincerely,

cc:file

**OFFICIAL REQUEST FOR GRIEVANCE ARBITRATION**
**FORM TO BE SUBMITTED WITH FILING FEE**
- complete one form for each grievance
- filing fee must accompany grievance
- original to State Board of Mediation and Arbitration
- copy to employer/employee organization

LABOR DEPT. USE ONLY

CASE NO. _9900-A-455_

Mediator _Sweeney_

## STATE BOARD OF MEDIATION AND ARBITRATION
38 Wolcott Hill Road, Wethersfield, CT 06109 (860)566-4394

**EMPLOYEE ORGANIZATION (Union) INFORMATION**
Union: Bristol Police Union Local 754, Council #15, AFSCME, AFL-CIO
Union Official: Chip DeKow, President
Address: 131 North Main Street, Bristol, CT 06010
Phone: 860-584-7915    Fax:

**REPRESENTATIVE FOR LABOR**
Eric R. Brown, Staff Attorney
CT Council of Police Unions #15, AFSCME
290 Pratt Street, Meriden, CT 06450
Phone: 203-237-2250    Fax:  203-237-2262

**PROCEDURE SELECTED:** Tripartite: X   Expedited:   If expedited, neutral choice is:
Name of Grievant(s): A. Barton    Grievance No.: 99-38
For SBMA processing purposes only, please describe the nature of this grievance :
(Include length) Suspension:    Layoff
Other: Demotion and Discipline without just cause    Termination:

**MEDIATION REQUESTED:** Yes:    No: X

Filed by (Signature) _Eric R. Brown_
Print Name:  Eric R. Brown    Date: December 7, 1999    Title: Staff Attorney

**EMPLOYER INFORMATION**
City or Town: City of Bristol
Name: Frank Nicastro, Mayor
Address: 111 North Main Street, Bristol, CT 06010
Phone: 860-584-7600    Fax:

**REPRESENTATIVE FOR MANAGEMENT**
Name: James Byer, Personnel Director
Address: 111 North Main Street, Bristol, CT 06010
Phone: 860-564-7600    Fax:

**LABOR DEPT. USE ONLY**
Employee Org. Check No. _085_    Date Received _12/9/99_    (SBMA Date Stamp Only)

Employer Check No._____    Date Received_____

Panel Member(s)_____

Hearing Date(s)_____

Disposition_____  Date Closed_____

RECEIVED

DEC 0 9 1999

DEPARTMENT OF LABOR
BD. OF MEDIATION & ARBITRATION

# Connecticut
# Department of Labor
*Working with you for a better future.*

**Board of Mediation and Arbitration**

**Chair**
Robin E. Miller
**Deputy Chair**
Gerald T. Weiner, Esq.
**Management**
David A. Ryan
Edward H. Simpson
**Labor**
Michael J. Ferrucci, Jr.
Raymond D. Shea

**FOR MANAGEMENT**
Michael E. Foley, Esquire
Pepe & Hazard
Goodwin Square
Hartford    CT  06103-

**FOR THE UNION**
Eric R. Brown, Esquire
AFSCME, CO. 15
290 Pratt Street
Meriden    CT  06450-

Catherine J. Serino, Director
Wednesday, March 01, 2000

Bristol, City of
-and-
AFSCME Co. 15    Local 754

---

**Case # 9900-A-0455**   *Barton, A.*       99-38    *Demotion and Discipline without just cause*

The Board has determined that only those grievance arbitration cases which are in the active file for more than 6 months will be assigned hearing dates. Cases should be heard in the order listed. The second case should immediately follow the completion of the first case. The above case(s) are assigned for an Arbitration hearing on:

**Wednesday, May 03, 2000 at  1:00 pm   at 38 Wolcott Hill Road, Wethersfield, CT**

Effective July 1, 1996, ONE postponement per grievance will be granted for case(s) that have been unilaterally assigned hearing dates by the Board providing all the specific steps for exercising this option are followed. Prior to contacting the Board, the requesting party must obtain agreement for the postponement and a mutually agreeable date for rescheduling from the other party. This date must be at least three (3) but not more than six (6) months from the date of the postponement request. **The requesting party must then contact the Board within fifteen (15) days from the receipt of the hearing notice and present all of the above information to the contact person listed below.** Any conflict with the Board's calendar concerning a date will result in the requesting party obtaining another mutual date. If these steps are not followed or the parties cannot reach agreement, the postponement request will be handled under the Board's regular postponement policy. Any subsequent requests for postponements will also proceed under the regular postponement policy.

**NOTE: In compliance with the "Withdrawal/Settlement" policy, the Board must receive notice of withdrawal/ settlement of this case on or before 4/26/2000. If the Board does not hear from you by date, a representative of labor or management must personally appear before the Board to present such withdrawal/settlement.**

XC: James Byer, Pers. Dir.

    Kevin Mellon, Grievance Chair

**CONTACT PERSON**
Brigitta Rainey
Tel: 566-4125

---

MDT message to A.J. Barton and Dekow 3/9/00 @ 08:40 Hrs.

Labor Board hearing for A.J. Barton re: ERT removal grievance 99-38 will be held on Wednesday May 3, 2000 @ 13:00 Hrs. at 38 Wolcott Hill Rd, Wethersfield. Please let me know when you get this message. The "Return Receipt" function doesn't always work.   MEL.



# CONNECTICUT COUNCIL OF POLICE
# AFSCME COUNCIL 15
## AFL-CIO



290 Pratt Street, Meriden, Connecticut 06450
Telephone: 203-237-2250    Fax: 203-237-2262
www.CTCOP.org

**President**
GARY E. WATERHOUSE
Manchester

**Secretary**
WILLIAM CURWEN
Norwalk

**Treasurer**
A. DAVID CENEVIVA
Meriden

**Vice Presidents**
PAUL ARIOLA
Waterbury
JAMES BATTISTO
Bristol
GERALD BUTLER
Milford
EDWARD COLLINS
Stratford
RICHARD FAILLA
Westport
ROBERT FERONE
New Britain
DEAN FORIER
New London
ALBERT HARRISON
Enfield
JAMES HOWELL
New Haven
DAVID RIEHL
Bridgeport
MARK ROSATO
Danbury
JOSEPH VERRENGIA
West Hartford

**Staff Attorneys**
ERIC R. BROWN
KENNETH DeLORENZO
HARRY B. ELLIOTT, JR.
ROBERT J. MURRAY

**Staff Secretaries**
DEE CAPONE
MARLENE RODRIGUEZ

March 10, 2000

Chip DeKow, President
Bristol Police Union Local 754
131 North Main Street
Bristol, CT 06010

Re:    City of Bristol and Bristol Police Union
       Local #754, Council #15, AFSCME, AFL-CIO
       Case No. 9900-A-0455 (A. Barton #99-38)

Dear Chip:

A hearing in the above captioned matter has been scheduled for:

**WEDNESDAY, MAY 3, 2000**
**1:00 P.M.**
**LABOR DEPT., 38 WOLCOTT HILL ROAD, WETHERSFIELD**

Very truly yours,

*Eric R. Brown*

Eric R. Brown,    CMES
Staff Attorney

ERB/mr

STATE OF CONNECTICUT
DEPARTMENT OF LABOR
STATE BOARD OF MEDIATION AND ARBITRATION

## ARBITRATION AWARD

|  |  |  |
|---|---|---|
| In the Matter of: | ) | CASE NO. 9900-A-0455 |
|  | ) |  |
| CITY OF BRISTOL | ) | HEARING DATE: May 3, 2000 |
|  | ) |  |
| -and- | ) | AWARD DATE:: April 19, 2001 |
|  | ) |  |
| AFSCME CO. 15 LOCAL 754 | ) | LOCATION OF HEARING |
|  |  | Department of Labor |
|  |  | Wethersfield Ct. |

APPEARANCES:

For the City:   Michael B. Foley, Esquire
                Theodore D. Glanzer, Esquire

For the Union:   Eric R. Brown, Esquire

## ISSUE

Is Case No. 9900-A-0455 Arbitrable?

## FACTS

The City of Bristol, the "City" and AFSCME Council 15, Local 754, the "Union," are the parties involved in this instant dispute. The Union submitted its grievance, Number 99-38, on behalf of Detective A. J. Barton, the "Grievant," on October 5, 1999. The Grievance cited Article 15.0.2.1 through 15.0.2.3, but not limited thereto. The grievance was filed as a result of the Grievant's removal from the Emergency Response Team on September 24, 1999 as a result of a written reprimand he received. At the scheduled hearing involving this grievance, the City adhering to the rules specified under the procedures of the SBMA raised the issue of arbitrability which the Panel was directed prior to addressing any other issue.

## POSITION OF THE CITY

Under Conn Gen Stat. 7-472, an arbitration panel has the authority only to "interpret [] or appl[y] ... the terms of a written agreement". Since the Union failed to follow the grievance procedure as set forth in Article XV of the Agreement by skipping a step in processing the grievance and by failing to cite a specific Article and Section alleged to have been violated. Therefore, the City argued the grievance was not arbitrable. Relevant Contract Provisions are:

**15:0.2 Step One:** The aggrieved shall submit his written grievance to the Chief of Police of his designee, setting forth the applicable Article and Section of the Agreement which is alleged to have been violated. The grievance must be answered in writing within eleven(11) calendar days after receipt.

**15:1.2 Step Two:** Should the grievance not be settled to the satisfaction of the aggrieved, it shall be submitted within fourteen (14) calendar days to the Director of Personnel. The decision of the Director of Personnel shall be rendered in writing to all parties involved within fifteen (15) calendar days after receipt.

**15:1.3 Step Three:** Should the grievance not be settled to the satisfaction of the aggrieved it shall be submitted within fourteen (14) calendar days to the Board of Police Commissioners or its designated committee. The decision of the Board of Police Commissioners shall be rendered in writing to all parties involved within fifteen (15) calendar days after receipt.

**15:1.4 Step Four:** Should the grievance not be settled to the satisfaction of the Union, it may within twenty (20) calendar days after receipt of the decision rendered in Step Three submit the grievance to arbitration, with a copy to the Director of Personnel. Arbitration shall be conducted by the Connecticut State Board of Mediation and Arbitration in accordance with its rules and regulations. The arbitrators shall hear and decide only one (1) grievance in each case. They shall be bound by and must comply with the specific

CASE NO. 9900-A-0455              PAGE 3

terms of this Agreement. They shall have no power to add to, delete from, or modify in any way any of the provisions in this Agreement.

      The City argued it only changed the Grievant's assignment. He continued to receive the same pay, benefits and seniority as in his prior assignment. Nonetheless, the Union grieved the City's action under Article XV, arguing the removal was disciplinary and without just cause. Under the Agreement the Union is required to cite a specific Article and Section which has been violated. In its original grievance no Article and Section is cited. At Step 1, the Chief denied the grievance on October 5, 1999. The Union did not follow Article XV, Section 15:1.2 by going next to Step 2, but instead, it choose to move unilaterally to Step 3. The Union argued that the City's representative at Step 2, the Assistant Director of Personnel, lacked the authority to resolve the dispute. Under the Article XV, "the City can represent [itself] and/or have a representative of [its] choice." The representative for the City previously has heard at least forty grievances without Union complaint. For the Union's failure to follow the dictates of the Agreement, the City claims this grievance is not arbitrable.

## POSITION OF THE UNION

      The Union argued that it did in fact specify the Article and Sections which it believed was the basis for its grievance. The grievance was denied at the First Step. Therefore, a Step 2 hearing was scheduled at which the Union objected to holding a hearing before the Assistant Director of Personnel, claiming such a procedure was violation of Article 15:1.2 of the Agreement. The Union then moved to Step 3, and when the Police Commission denied the grievance, the Union filed the grievance at Step IV on December 9, 1999.

      It was the City that failed to follow the Agreement when it sent the Assistant, not the Director of Personnel who under the contract shall render the decision. In order to render a decision, the Union argued the Director shall be present at the hearing.

## DISCUSSION

      The Panel reviewed the issue put before it by the Parties. It reviewed the relevant contract language and agreed that the grievance itself did cite a section which the Union could use as the basis for its grievance. However, the Union clearly failed to follow the contract when it by passed Step 2. The purpose of a grievance procedure is to resolve issues in dispute. The contract states the City has the right to send anyone it chooses. The Union did not like it and

CASE NO. 9900-A-0455                                                    PAGE 4

refused to meet. It choose to ignore the contract. If this was a problem, the Union should have proceeded with Step 2 and grieved the format. It was clear from the testimony taken that Step 2 was skipped when both parties agreed to do so. There was not such agreement in this case. By refusing to meet at Step 2 with the City's designee, the Union forfeited its right to proceed.

AWARD

Case No. 9900-A-0455 is not Arbitrable.


Joseph Parker, PhD
Panel Chair


Victor Muschell, Esquire
Management Member


John P. Colangelo
Union Member



# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANDREW BARTON NO.                    :              3:02CV1210 (PCD)

v.

CITY OF BRISTOL; ET AL.              :              July 3, 2003

## PLAINTIFF' S SUPPLEMENTAL RESPONSES TO
### DEFENDANT'S, CITY OF BRISTOL, FIRST SET OF INTERROGATORIES

Defendant, **CITY OF BRISTOL**, requests that the plaintiff, **ANDREW BARTON**, answer

under oath in accordance with Rule 33 of the Fed. R. Civ. P ., the interrogatories attached hereto,

and produce for inspection, copying, testing or sampling, as the case may be, the documents or

tangible things described hereinafter, pursuant to Rule 34 of the Fed. R. Civ. P .

## INTERROGATORIES

1. Please state your name, age, address, occupation, and place of current

employment.

## ANSWER:

| | |
|---|---|
| **Name:** | **Andrew Barton** |
| **Address:** | **153 Southdown Dr, Bristol, CT 06010** |
| **Employment:** | **Police Officer, City of Bristol** |
| **Age:** | **37** |

2. Identify all employment positions held by you from 1980 to the present, including the name and address of each employer, the dates employed and the type of work performed

**ANSWER:**

**Lake Compounce, Bristol, CT**

**Carvel Ice Cream, Bristol, CT**

**Bristol Police Department, Bristol, CT**

3. Have you ever been suspended, or been asked to resign?

**ANSWER:**

**Objection. Vague and Overbroad.**

4. If your answer to the preceding interrogatory is in the affirmative, please state with reference to each suspension, termination or involuntary resignation:

(a) The reason for each suspension, termination or resignation;

(b) The date of any activities for which you were suspended, terminated or asked to resign;

(c) The date of each suspension, termination, or resignation;

(d) The name and address of the employer and supervisor for whom you were working when you were suspended, terminated or involuntarily resigned.

**ANSWER:**

**Objection. Vague and Overbroad.**

5. Please describe your first job with the City of Bristol Police Department including:

(a) Your job title and duties;

**Patrolman--Patrol Duties**

(b) The percentage of time you spent each week performing each duty;

**Variable.**

(c) Any training you received;

**All training related to Emergency Response Team, Administrative/ Human Resources Training.**

(d) Your weekly wage when you began this job;

**Unknown.**

*(e)* Your weekly wage when you left this job;

**Not applicable.**

(f) The financial benefits, other than wages, which you received;

**Not applicable.**

(g) The name and title of your supervisor;

(h) The name and title of all employees who performed the same work as you;

**Response to this interrogatory is more easily obtained through the City of Bristol.**

(i) Each promotion and bonus which you received.

**Promotion to Detective in 1997.**

6. If you had any other jobs with the City of Bristol Police Department after your first job, please state with reference to each job:

(a) Whether the job was a promotion, transfer or demotion;

(b) The title of your job;

(c) The date you began work at this job;

(d) The qualifications required for the job (if known);

(e) Your qualifications for the job;

(f) Each new skill you acquired on the job;

(g) The name and title of your supervisor;

(h) The name and title of all employees who performed the same work as you;

(i) The name and title of all employees whom you supervised;

j) A description of your job duties;

(k) The percentage of your time spent each week performing each duty;

(l) Your weekly wage when you began the job;

(m) Your weekly wage when you left the job;

(n) Each promotion or bonus which you received; and

(o) Each financial benefit, other than your wages, that you received.

**ANSWER:**

**Not applicable.**

7. With respect to Count One of your Complaint, please state each and every alleged act taken against you which you perceive to be a violation of your right to equal protection, and for each state the following:

(a) The date of the alleged act;

(b) The name and position of the individual who carried out said act;

(c) The names and addresses of all individuals who witnessed the alleged

(d) The name of each similarly situated individual who was treated differently with respect to each alleged act; and

(e) A brief description of how the plaintiff was treated differently than the identified similarly situated employees.

**ANSWER:**

**The plaintiff was removed from the ERT and disciplined while other similarly situated police officers were not disciplined, specifically, Bryce Linksy and Mike Brascher.**

**ANSWER:**

8. With respect to Count Two of the Complaint, state the alleged property right that entitled the plaintiff to due process, and the manner in which due process was allegedly denied.

**ANSWER:**

**The plaintiff had a property interest in his position on the ERT.**

9. With respect to Count Two of the Complaint, please state the alleged liberty interest that entitled the plaintiff to due process, and the manner in which due process was allegedly denied.

**ANSWER:**

**Not applicable.**

10. With respect to Count Two of the Complaint, identify the name and position of each individual who allegedly denied the plaintiff due process, and the date of the denial.

**ANSWER:**

**Richard Mullaney, Melvin Dekow and Chief DiVener.**

11. With respect to paragraph 2 of the Complaint, please identify each and every alleged willful, intentional and/or reckless action taken by the defendants, and for each, state:

(a) The date of each action;

**August and September 1999.**

(b) The name and position of each individual who carried out said act; (c) The names of all individuals who witnessed said action;

**Brian Suchinski.**

(d) Whether the plaintiff filed a grievance regarding said action;

**No.**

(e) The name and position of each individual who was treated differently under similar circumstances.

**Defendants: Suchinski, Mullaney and Dekow.**

**ANSWER:**

12. With respect to Count Three of the Complaint, please state the alleged speech or conduct of the plaintiff that was constitutionally protected by the First Amendment, including:

(a) The date of the alleged speech or conduct;

(b) The names of all individuals who witnessed the alleged protected speech and/or conduct;

(c) The alleged retaliatory action taken as a result of the plaintiff's alleged protected speech and/or conduct;

(d) The name and position of the individual(s) who allegedly engaged in retaliatory conduct.

**ANSWER:**

**Not applicable.**

13. With respect to paragraph 5 of your Complaint, please state, in detail, all facts upon which you base the allegation that the defendants have intentionally inflicted severe emotional distress upon the plaintiff.

**ANSWER:**

**On September 1, 1999, Mullaney falsely alleged that plaintiff acted inappropriately towards him during the 8/31/99 narcotics investigation. September 1999, the plaintiff was maliciously investigated by defendants based upon a false allegation by Mullaney. Suchinski and Mullaney were friends. Suchinski harassed plaintiff on several occasions. Suchinski placed a rubber rat on plaintiff's desk. Suchinski hid the plaintiff's rental car keys. Suchinski failed to give plaintiff important messages. Suchinski made false allegations against plaintiff to get him into trouble. Suchinski encouraged Mullaney to make false allegations against plaintiff regarding the 8/31/99 investigation. Mullaney produced false statements regarding plaintiff's conduct on his report.**

14. To the extent that you claim your psychological condition is an element of damages that you have alleged in your Complaint, please state:

(a) Whether you have ever been examined or treated by a psychiatrist, psychologist or therapist;

**The plaintiff has not treated with any such mental health provider.**

(b) The name and address of each psychiatrist, psychologist or therapist;

(c) The date of the examination or treatment;

(d) Whether you have been discharged from treatment, and if so, by whom, and when; and

(e) Whether you anticipate further examination or treatment, and if so, why.

**ANSWER:**

15. Please list the names of any medical doctor, psychologist, therapist, pastoral counselor, or the like, from whom you sought medical care as a result of the alleged conduct of the defendants.

**ANSWER:**

**Not applicable.**

16. Please state the names, addresses, and occupations of all persons who have witnessed the conduct referenced above, with whom you have spoken about said conduct, or whom you expect to testify at trial as a witness.

**ANSWER:**

**Chief John DiVener, Capt. Donald Kalwat, Capt. Daniel Ahearn, (Ret.) Det. Lt. Tom Killiany, Sgt. Tom Grimaldi, Det. Dave Plasczenski, Det. Robert Mendella, Det. Dave Carello, Det. Chris Lennon, Ptlmn John Kiszket, Ptlmn Robert Metayer, Ptlmn Frsank Saunders, Ptlmn Dave Thompson (Resg.) Ptlmn Tom Lavinge, Det. Kevin Mellon, Det. Kevin Hayes.**

17. Identify each person who the plaintiff expects to call as an expert witness at trial, and the subject matter on which the expert is expected to testify.

**ANSWER:**

**To be provided.**

18. State the substance of facts and opinions which the expert is expected to testify, as well as a summary of the grounds for each opinion.

**ANSWER:**
**To be provided.**

19. Please list each item of special damages, losses and expenses that you claim resulted from the events alleged in your Complaint.

**ANSWER:**

**See damage analysis.**

20. State whether you, your attorney or any other representatives have statements of any parties or witnesses, signed or otherwise, in writing, adopted or approved by the person making it, or any stenographic, mechanical, electrical or other recording or a transcription thereof, made by a party or non-party declarant regarding the subject matter of this case or concerning the actions of any party or witness therein, except statements made by a party to his attorney.

**ANSWER:**

**The plaintiff does not have such material in his possession.**

21. If applicable, identify any official policy, regulation or custom that deprived the plaintiff of his due process rights.

**ANSWER:**

**The Bristol Police Department conducted a very different Internal Investigation for the Plaintiff than they have done in the past. The plaintiff is not sure if there was a policy at that time regarding Internal Investigations but the Bristol Police Department acted differently than was the custom at the time.**

## REQUESTS FOR PRODUCTION

1. Copies of all statements described in the preceding interrogatories and within the possession or control of you or your representative.

**ANSWER:**
**The plaintiff does not have such materials in his possession.**

2. All documentation that relates to damages referred to by you in your responses to the preceding interrogatories.

**ANSWER:**
**To be provided in damage analysis.**

3. An authorization permitting the undersigned or their representative to obtain full information and copies of records concerning the employment of the plaintiff, including payroll, attendance and medical records.

**ANSWER:**
**See attached.**

4. Sign and return the attached medical authorization.

**ANSWER:**
**Not applicable.**

5. Sign and return the attached mental health authorization.

**ANSWER:**
**Not applicable.**

6. All photographs, reports, papers, books, journals, diaries, documents, maps, diagrams, drawings, models and other tangible evidence within your control which in any way relate to the allegations of your complaint.

**ANSWER:**
**To be provided in the form of email or cd-rom.**

7. All notes, journal entries, diary entries, correspondence or any other written memorialization of events alleged in your Complaint.

**ANSWER:**
**Objection. Response is protected by attorney client privilege.**

8. All correspondence, complaints, reports, records or other documentation that support your contention that you were treated differently than similarly situated employees.

**ANSWER:**
**See attached.**

9. All correspondence, complaints, reports, records or other documentation that support your contention that you were denied procedural and/or substantive due process.

**ANSWER:**
**The plaintiff does not have such materials in his possession.**

10. All documentation that support the plaintiff's claim for lost and future lost wages.

**ANSWER:**
**See damage analysis.**

                          PLAINTIFF,
                          ANDREW BARTON


                    BY
                          Erin I. O'Neil
                          818 Farmington Avenue
                          West Hartford, CT  06119
                          (860) 523-4055
                          Fed. ct# 23073

## CERTIFICATION

This is to certify that the foregoing was faxed and mailed postage prepaid to all counsel and pro se parties of record on July 3, 2003:

Michael Rose
Alexandria Bufford
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114
fax: 860-246-2375

John K. McDonald, Esq.
Kernan & Henry, LLP
PO Box 2156
Waterbury, CT 08069
fax: (203) 754-2353

Eric R. Brown, Esq.
AFSCME Council 15
90 Pratt Street
Meriden, CT 06450

Erin I. O'Neil