# BRISTOL POLICE DEPARTMENT

**TO:**      Chief DiVenere

**FROM:**   Capt. D. W. Kalwat

**DATE:**    9/24/02

**RE:**      Barton Discipline, IA# 99-26

On Tuesday, 8/31/99, an incident occurred in West Hartford during a joint drug investigation involving detectives from our department and officers from West Hartford PD. Now retired Det. Sgt. Richard Mullaney was in charge of our detectives at the West Hartford location of a Meineke Muffler Shop. At one point Sgt. Mullaney directed an arrest to be made by Det. Andrew Barton. Barton felt that an arrest should not be made and questioned Mullaney. The discussion became more of an argument as Barton did (in Mullaney's words, "vigorously disputed" Mullaney's decision and order. Barton continued to argue. Mullaney states that Barton interrupted him on four to six occasions during this operation regarding the arrest. Mullaney describes Barton's attitude as arrogant, argumentative, hot, and showing poor control over himself. The incident took place in the near presence of at least three of the Meineke employees and a number of officers listed later along with their statements.

Once again of 9/2/99 Barton again disputed the decision of Sgt. Mullaney. This time the incident took place at our PD while planning the execution of a search warrant operation. Barton stated to Mullaney "that's not usually how we do the warrants" and said that his (Mullaney's) decision was "not very logical". He was argumentative and had to be firmly told that the decision was made and was final. Det. Lennon was present during both incidents.

The Meineke incident took place in the presence of the following officers:

WHPD Dets. Carl Rosenweig and Bill Kinahan: I called Rosenwieg on 8/12/02. He currently serves WHPD as the Assistant Chief. He said that he recalled the incident but when he found out that there was an impending lawsuit on the issue he wanted to speak with his Corporation Council first. Rosenwieg called me back about a week later and said that he could not remember anything significant about the incident. He went on that he had also spoken with Kinahan who also had no knowledge of the incident.

Det. Brian Suchinski: Suchinski was not interviewed as to an impending lawsuit he is initiating against Barton.

Det. Kevin Mellon: Mellon was present during this incident. He clearly heard Barton and how he questioned Mullaney and describes Barton as being animated, louder and "pressing his point". He goes on that Barton kept debating and disputing the arrest until Mullaney sternly told him that his decision was final. Mellon also verified that there were other officers as well as employees in the immediate area. A written report by Mellon is attached.

Det. Steve Tavares: Tavares remembers being there but said he couldn't remember anything of this nature occurring.

Det. Christopher Lennon: I spoke with Det. Lennon on 8/14/02 regarding this incident. While his attitude and demeanor were very professional in disclosing any information on this incident he was clearly uneasy in discussing it and he openly noted some displeasure in the possibility over becoming involved in a lawsuit. He was procrastinate in writing a report but did so. His report is attached and the condensed version is that he states that both he and Barton discussed and attempted to dissuade Mullaney in both the first and second instances but were unsuccessful. According to Lennon they did not show any disrespect to Mullaney and in Lennon's view it was him (Lennon) who was trying to dissuade Mullaney and it was Barton who was supporting his argument.

Lennon states in his report that he did not think Barton should have been reprimanded because in his view he had done nothing wrong. He also questions why he wasn't also remanded and goes on to question the way the entire grievance procedure was handled. Mullaney never mentioned any part that Lennon had in this incident.

My conclusions:

Investigating incidents involving peers as witnesses are often very difficult as there usually prevails a peer pressure not to "get your equals in trouble". In my numerous years of investigating similar issues I have found that the attitude of peers is that is up to a supervisor to divulge any incriminating evidence. With the exception of the West Hartford officers I know all of our involved men quite well and in my experiences with them have found them to be truthful on all occasions. I also feel that the impending lawsuit may be a significant factor in this investigation and while I'm not accusing anyone involved with having "selective amnesia" it does seen to be too coincidental to be ignored.

In the case of Det. Lennon, whom I have found to be of the utmost integrity, my opinion is that he just may not have been totally cognizant of the argument that apparently took place. He probably had to see it from the position of a supervisor, in this case, Sgt. Mullaney, to realize it's full impact.

Regarding Det. Mellon, I have always found him as well to be truthful with me. He is a long time drug investigator and I see no motive for him to be dishonest in this instance.

Det. Tavares simply said that he had no specific recollection of the incident.

Sgt. Mullaney is currently retired from our department. While he was here he worked for me for many years as a street sergeant. I have witnessed him work and know him personally as well as professional. He is not a person who lies nor even exaggerates. On the contrary he is extremely honest and has a high ethical threshold. I have witnessed him as he dealt with other employees in a similar nature as with Barton and he conducted himself properly and reported the same honestly. I feel that according to the reports that I received, both written and verbal, Mullaney acted correctly and reported on the incident truthfully and the results of this disciplinary action should be upheld.

Cpt Dw Klt
9/26/0c



# BRISTOL POLICE DEPARTMENT
### 131 North Main Street
### Bristol, CT 06010

August 20, 2002

TO : Capt. Kalwat

FROM : Det. Kevin Mellon

SUBJECT : Meineke Muffler 8-31-99.

I was assigned to this incident involving the controlled delivery of a quantity of drugs through a carrier service that had been originally discovered by West Hartford Police. Det. Lennon was assigned as the actual case officer. As the Bristol end of the investigation commenced, the delivery was made to the muffler shop and was signed for by an employee. It appeared the employee would be signing for an outside suspect who did not work at the muffler shop. These officers moved in to seize the evidence and take the involved employee into custody and to try to lure the other outside suspect to the muffler shop.

There came a point at the muffler shop scene when it appeared that the attempt to lure the outside involved suspect would not be successful. Sgt. Mullaney and Det. Lennon were discussing this and the on-sight arrest of the involved muffler shop employee that Sgt. Mullaney had ordered.

At one point, Det. Andy Barton became involved in this discussion. Det. Barton apparently did not want to arrest the muffler shop employee at the time. Det. Barton became rather animated and louder in pressing his point of view on how the investigation should continue. Det. Barton's view and Sgt. Mullaney's view were different. Sgt. Mullaney wanted the employee arrested now. There was sufficient probable cause to arrest the employee at the time. Det. Barton continued to debate and dispute the arrest with Sgt. Mullaney, becoming more upset and vocal as he (Barton) went on. This happened in front of the West Hartford detectives and the other muffler shop employees who were not involved in the drug case. Sgt. Mullaney had to sternly advise Det. Barton that the decision was made to arrest the employee and the decision was final.

It reached a point where Ofc. Tavares and I decided to leave the muffler shop and the arrest debate. We went to make a sweep of the area roads in case the other outside involved suspect was lurking in the area or still on his way to pick up the drugs. That suspect was not located and the scene was eventually cleared and the employee brought into Police H.Q.

Det. Kevin Mellon 0028

## BRISTOL POLICE DEPARTMENT

### Day: Wednesday    Date: 09/10/02    Time:

**TO:  Capt. Kalwat**

**FROM: Det. Lennon**

**SUBJECT:  Incident at Meineke Muffler**


I am writing this memo in response to your order for me to do so on 08/14/02. I was present during the alleged incident. Up until 08/14/02 no one had ever asked me for my account of what had occurred. As this incident occurred approx. 3 years ago, I will put in writing what I can recall. I have reread my original case report, as well as Det. Sgt. Mullaney's report on the incident in an attempt to refresh my memory.

Towards the end of Aug. 1999 I had taken a phone call from the West Hartford Police Dept. concerning an intercepted marijuana shipment. West Hartford Police had intercepted a shipment of marijuana at the Airborne Express depot in West Hartford. They developed probable cause and conducted a search via a search warrant on the package, a large box. There were approx. 31.5lbs of marijuana in the box. The package was to be delivered to the Meineke Muffler Shop on Farmington Av. in Bristol.

With the assistance of the West Hartford Police, a controlled delivery was set up. Most of the marijuana was removed from the package, and it was resealed. A West Hartford Detective using a borrowed Airborne Express van and uniform delivered the package to the Meineke Muffler shop. The manager signed for the package. Surveillance was conducted on the business from a van provided by West Hartford Police for a short while following the delivery to see what would become of the package. The package stayed right where it was dropped off, so police then entered the business.

There were 3 employees in the muffler shop, including the suspect, Javier Rivera. After we identified ourselves to Rivera and stated our purpose, he was very cooperative. Rivera said that the other two employees had nothing to do with the marijuana, and knew nothing about it. These two employees were separated from Rivera. In the garage bay area of the shop there was a storeroom along the back wall. The two employees went into the storeroom. The door was kept open, and I seem to remember them sitting on buckets in the room with Det. Suchinski watching them.

Rivera explained that he would accept delivery of these packages. Right after the delivery came, a black male would show up, pay Rivera, and take the package. Rivera said that he had an idea what was in the packages, but did not open them. He had done this several times. This time, the male did not show up as usual. Rivera said that he was willing to call up the male to have him come pick up the package, so that we could arrest this male when he showed up. This was discussed with Sgt. Mullaney, who agreed that it was worth a try. Rivera paged up this male. During this time, Det. Barton and I were in the office with Rivera. Everyone else was in the garage bay area. Somewhere during this time, Det.

Mellon became involved by providing us with some information. He remembered a similar case he had worked on while in Statewide. He provided possible suspect information that fit the description of the main target as provided by Rivera.

The surveillance van had been moved into the garage bay, so that it was out of sight in case the main target showed up. Rivera tried several times to page the main target, but was not getting a response.

During this time, Sgt. Mullaney seemed to begin to doubt that there was any other person involved. He told me that I was going to arrest Rivera and bring him in at that time. Det. Barton was in the surveillance van in the garage bay. I believe Rivera was already handcuffed at this time, and was standing in the garage bay also.

I attempted to explain to Sgt. Mullaney that I didn't think we should arrest Rivera at that time because Rivera was attempting to contact the main target. I felt that we should wait until we were sure that Rivera either could or could not make contact with this main target. Rivera was not stalling for time because I had made it very clear to him that he was being arrested regardless. He was only trying to help his own situation. Sgt. Mullaney did not want to wait any longer and wanted Rivera arrested and brought to the station then.

I went over to Det. Barton in the van. I told him that Sgt. Mullaney wanted Rivera arrested right then, and did not want to wait any longer to see if Rivera could contact the main target. I asked Det. Barton if he would go talk to Sgt. Mullaney with me to see if we could get him to wait a little longer with the arrest.

We both walked over to Det. Mullaney, who was standing in the bay area. Det. Kinahan was standing about 5 feet away from Sgt. Mullaney. Det. Suchinski was standing over near the door to the storage closet, where the other two employees were still sitting. I don't know exactly where anyone else was, but do not recall any other persons being in close proximity to us. I explained to Sgt. Mullaney why I thought we should wait to make the arrest at that time. Sgt. Mullaney then began to ask why we should wait. We explained some options, including an arrest by warrant. I did not say that I wanted to arrest Rivera at a later time by warrant, it only came up as an option so that the investigation could be furthered, and the main target could be identified and arrested. I explained to Sgt. Mullaney that if Rivera were arrested at that moment, we would have little chance of getting the main target. He asked repeatedly for us to explain why we should not arrest Rivera at that moment. Det. Barton and I tried to explain to Sgt. Mullaney why I felt it would be prudent to wait a little while longer, before affecting the arrest. Sgt. Mullaney would then ask us again why Rivera should not be arrested. We kept answering the same question. There were only so many ways that I could explain the exact same reason to him, and to have him ask me why again following each explanation was becoming frustrating. Det. Barton seemed to sense my growing frustration and attempted to explain to Sgt. Mullaney. Finally Sgt. Mullaney told me to just arrest him (Rivera). I gave up trying to explain to him, and arrested Rivera. I walked away to place Rivera in a marked cruiser. I don't recall where anyone else went to or what other conversations may have taken place.

This discussion between Det. Sgt. Mullaney, Det. Barton and I did not break down into an argument. I was more frustrated by Sgt. Mullaney's decision than Det. Barton was, because I was the case officer. I thought that Det. Barton was calmly trying to answer Sgt. Mullaney's question as to why it would be prudent to wait even a short while longer, while I was the one who was more vocal in my insistence that we wait a while longer. Det. Barton did not interrupt the conversation between Sgt. Mullaney and I. I had gone and gotten him to assist me in explaining the reasons to Sgt. Mullaney

because I was still relatively new to the unit and thought that maybe I just wasn't making my reasoning clear.

When we arrived at the station with Rivera, Det. Mellon showed Rivera a photo line-up containing a picture of the person who he suspected was involved in the above mentioned Statewide case. Rivera immediately picked out the picture of the suspect Mellon had as being the same person he was accepting the deliveries for.

Following the incident, nothing more was said of it until Det. Barton was reprimanded. I was shocked by his reprimand, because I did not think he had done anything wrong. I was also surprised that he was being reprimanded, while no action was being taken against me. Sgt. Mullaney had not even said a word to me about the incident.

I remember Det. Barton filing a grievance on the matter. Somehow, Det. Mellon was involved in the grievance. I think he may have been on the grievance committee during that time. I told Det. Mellon that I remembered the incident differently, and did he (Det. Mellon) need something in writing from me for the grievance. Det. Mellon told me not to worry about it, if the union needed anything from me, he would let me know. No one, from either the union or management ever asked me for my version of this incident until now.

As to the second incident described by Sgt. Mullaney, concerning the search warrants on Davis Dr. I had utilized a C/I to make several drug purchases on Davis Dr. for the purpose of obtaining search warrants. After I had obtained the search warrants, Sgt. Mullaney informed me that, when the warrants were served, he was going to have Det. Suchinski write up the final reports. This decision did not make any sense to me, as Det. Suchinski had nothing to do with either of the cases. I attempted to obtain an explanation from Sgt. Mullaney, who told me something to the effect that it was Det. Suchinski was doing all of the Drive cases so it made the most sense to have him write the final reports on my search warrant cases. Det. Barton was present and also did not understand the decision. He did question the decision in the same manner and for the same reason that I had. Det. Barton was supporting me in making my case to Sgt. Mullaney as to why I should be allowed to write my own reports, and they not be turned over to Det. Suchinski. This discussion took place in the privacy of the NET office.

BRISTOL POLICE DEPARTMENT

TO:      Chief John Divenere

FROM:   Capt. D.W. Kalwat

DATE:   12/5/97

Re: ERT Probation of Det. Andrew Barton

On 12/5/97 I placed Det. Andrew Barton on a 6 month ERT probation.

The probation stems from potentially embarrassing remarks made by Barton at the Smith & Wesson Academy and for an embarrassing display of attitude at a training demonstration with Southington PD.

In July Barton was issued a reprimand for Abuse of Sick Time.

ERT members are expected to set positive examples for other officers, Barton's behavior has not.

On this date I spoke extensively with Barton and found that he very much wants to be on the ERT and that he is fully co operative and the behavior especially that regarding attitude and remarks were not meant to embarrass the team or the department and I do not expect a re occurrence.

BRISTOL POLICE DEPARTMENT

TO:  Capt. Kalwat

FROM: Sgt E. Osanitsch

DATE: 10-9-98

As per our conversation, enclosed is the information requested on the performance of Detective A. Barton as concerning to the Emergency Response Team.

During the past two calender years Det. Barton has missed four training sessions and two ERT call outs ( on one arriving after the situation was resolved ).

On Sept. 3,4, 1998 the ERT was activated and assigned to execute a NET search warrant. Detective Barton was the lead NET investigator and provided the team with a briefing of the situation. A number of team members expressed that they were shocked at the quality and content of the briefing. Comments made by Det. Barton, such as, " This is a minor deal " , " I want this to be low key so nobody notices the team out there " and " The main target is the first floor, they are dealing pounds ( when the search warrant was for the 1st floor ) shows lack of understanding as to what the mission of the ERT is. A major concern of mine is that Det. Barton failed to inform the team that the person listed in the search warrant had armed encounters recently with other drug dealers, one in which shots were fired. This would be unacceptable conduct from any department member, let alone an ERT member.

On 9-2-98 Det. Barton split his normal work shift so that he could collect four hours overtime for training that day. The splitting of the shift appears in violation of a direct order issued by Det. Lt. Killiany stating CID members could not split shifts for ERT with out his prior approval. Assistant Team Leader Sgt. Grimaldi investigated this incident on request of the Chief and found that Det. Barton was informed of this " no splitting shift " policy after a similar incident 5-12-98. It appears that this incident is not an ERT issue at this time but an issue within CID.

During the month of September 1998 Det. Barton stated he no longer wished to conduct any training for the Department. This negatively impacted the teams Chemical / Def-Tec Training.

page 2

On 12-5-97 Det. Barton was placed on a six month ERT probation for making embarrassing remarks at Smith & Wesson Academy.

These incidents raise a number of concerns and I request that we schedule a meeting with the Team Leaders after the next training session.

Respectfully,

Sgt. Osanitsch

*R*

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ANDREW BARTON                          :   NO.: 3:02CV1210 (PCD)

v.                                     :

                                       :
CITY OF BRISTOL; AND IN THEIR          :
INDIVIDUAL AND OFFICIAL                :
CAPACITIES, RICHARD MULLANEY,          :
POLICE SERGEANT; BRIAN                 :
SUCHINSKI, POLICE DETECTIVE;           :
AFSCME LOCAL # 754; AND IN HIS         :
INDIVIDUAL AND OFFICIAL                :
CAPACITY, MELVIN DEKOW,                :
UNION PRESIDENT                        :

## A F F I D A V I T

I, John DiVenere, being duly sworn, do hereby depose and say:

1.  I am over eighteen years of age;

2.  I believe in the obligation of the oath;

3.  I have personal knowledge of the facts set forth in this Affidavit;

4.  I am the Chief of Police and have been employed by the City of Bristol since January 1978;

5.  Andrew Barton was hired as a Patrol Officer for the Bristol Police Department in August 1986.

6.  On June 13, 1997, he was sworn in as a Detective.

1

7. In June, 1997, Det. Barton was promoted from the Patrol Division to the Criminal Investigations Division.

8. In September, 1997, Det. Barton was reassigned from the Criminal Investigations Division to the Narcotics Unit.

9. The Narcotics Unit is part of the Criminal Investigations Division.

10. In July, 2002, Det. Barton was reassigned from the Narcotics Unit back to the Criminal Investigations Division.

11. In 1995, Det. Barton was selected to be a member of the Emergency Response Team ("ERT").

12. Personnel assigned to the ERT assume the duty as a secondary assignment to their regular duties.

13. Personnel assigned to the ERT do not receive additional compensation.

14. Det. Sgt. Mullaney was Det. Barton's supervisor on August 31, 1999.

15. As a result of Det. Barton's conduct on August 31, 1999, Det. Sgt. Mullaney submitted a report dated September 3, 1999, recommending discipline pursuant to the Bristol Police Department's Code of Conduct.

16. Based upon the recommendation of Det. Sgt. Mullaney and Lt. Killiany, I authorized the recommended discipline.

17. Det. Barton received a written reprimand for his conduct on August 31, 1999.

18. As a result of the written reprimand, Det. Barton was removed from the ERT for a serious, sustained violation of the Code of conduct pursuant to General Order 95-1-134.

2

19.  The City of Bristol Police Department does not investigate violations of the Code of Conduct when a supervisor has first hand knowledge of a violation of the Code of Conduct and that supervisor is recommending discipline.

20.  Supervisors are responsible for recommending discipline for Bristol Police Department employees who violate the Bristol Police Department Code of Conduct.

21.  Violation of any section of the Code of Conduct constitutes grounds for disciplinary action.

22.  Det. Barton's base salary was not reduced as a result of being removed from the ERT.

23.  Det. Barton's benefits were not changed as a result of being removed from the ERT.

24.  Det. Barton's seniority was not changed as a result of his removal from the ERT.

25.  As a result of his removal from the ERT, Det. Barton lost overtime opportunities customarily available to members of the ERT.

26.  Prior to January 2003, however, overtime hours that were incurred by members of the ERT were "equalized" among all officers in the Criminal Investigations Division.

27.  Pursuant to the collective bargaining agreement, the hours of all members of the Criminal Investigations Division have to be "equalized" to within 25

3

hours of each other.

29.  Det. Barton was not assigned to a different rank as a result of his removal from the ERT.

30.  Det. Barton's title did not change as a result of his removal from the ERT.

31.  Det. Barton is currently employed as a Detective with the City of Bristol.

_____
John DiVenere

STATE OF CONNECTICUT      )
                                    ) ss:  Bristol
COUNTY OF HARTFORD        )

Subscribed and sworn to before me this 30 day of July, 2003.


_____
Notary Public

My commission expires:  05-31-06

4

07/28/2003
10:03:33

PAGE 1
pracmrpt

# CITY OF BRISTOL
## ACCUMULATORS REPORT

EMP #  NAME
  731  BARTON, ANDREW    LOC: 2113
       SSN: 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

| PAY/DEDUCTION | YEAR | FREQ | EMPLOYEE AMOUNT | GROSS AMOUNT | |
|---|---|---|---|---|---|
| 100 BASE P | 2000 | FYTD | POLICE 0.00 | 35808.19 10012113 | POL CID |
| 112 HOL+1 | 2000 | FYTD | 0.00 | 2377.79 | |
| 201 OT 1.5 | 2000 | FYTD | 0.00 | 9865.47 | |
| 203 EX 1.5 | 2000 | FYTD | 0.00 | 21065.47 | |
| 204 EX 2.0 | 2000 | FYTD | 0.00 | 2198.15 | |
| 205 EX2.25 | 2000 | FYTD | 0.00 | 2786.43 | |
| 300 VACATN | 2000 | FYTD | 0.00 | 3764.79 | |
| 303 EVT | 2000 | FYTD | 0.00 | 3609.96 | |
| 400 SICK | 2000 | FYTD | 0.00 | 2894.43 | |
| 402 W.COMP | 2000 | FYTD | 0.00 | 1205.23 | |
| 502 EPL | 2000 | FYTD | 0.00 | 592.60 | |
| 505 BEREAV | 2000 | FYTD | 0.00 | 594.44 | |
| 753 ED.PAY | 2000 | FYTD | 0.00 | 520.00 | |
| 802 SHFT $ | 2000 | FYTD | 0.00 | 1974.06 | |

LOC TOTAL: 2113 POLICE CID

| PAY/DEDUCTION | YEAR | FREQ | EMPLOYEE AMOUNT | GROSS AMOUNT |
|---|---|---|---|---|
| 100 BASE P | 2000 | FYTD | 0.00 | 35808.19 |
| 112 HOL+1 | 2000 | FYTD | 0.00 | 2377.79 |
| 201 OT 1.5 | 2000 | FYTD | 0.00 | 9865.47 |
| 203 EX 1.5 | 2000 | FYTD | 0.00 | 21065.47 |
| 204 EX 2.0 | 2000 | FYTD | 0.00 | 2198.15 |
| 205 EX2.25 | 2000 | FYTD | 0.00 | 2786.43 |
| 300 VACATN | 2000 | FYTD | 0.00 | 3764.79 |
| 303 EVT | 2000 | FYTD | 0.00 | 3609.96 |
| 400 SICK | 2000 | FYTD | 0.00 | 2894.43 |
| 402 W.COMP | 2000 | FYTD | 0.00 | 1205.23 |
| 502 EPL | 2000 | FYTD | 0.00 | 592.60 |
| 505 BEREAV | 2000 | FYTD | 0.00 | 594.44 |
| 753 ED.PAY | 2000 | FYTD | 0.00 | 520.00 |
| 802 SHFT $ | 2000 | FYTD | 0.00 | 1974.06 |

REPORT TOTAL:

| PAY/DEDUCTION | YEAR | FREQ | EMPLOYEE AMOUNT | GROSS AMOUNT |
|---|---|---|---|---|
| 100 BASE P | 2000 | FYTD | 0.00 | 35808.19 |
| 112 HOL+1 | 2000 | FYTD | 0.00 | 2377.79 |
| 201 OT 1.5 | 2000 | FYTD | 0.00 | 9865.47 |
| 203 EX 1.5 | 2000 | FYTD | 0.00 | 21065.47 |
| 204 EX 2.0 | 2000 | FYTD | 0.00 | 2198.15 |
| 205 EX2.25 | 2000 | FYTD | 0.00 | 2786.43 |
| 300 VACATN | 2000 | FYTD | 0.00 | 3764.79 |
| 303 EVT | 2000 | FYTD | 0.00 | 3609.96 |
| 400 SICK | 2000 | FYTD | 0.00 | 2894.43 |
| 402 W.COMP | 2000 | FYTD | 0.00 | 1205.23 |
| 502 EPL | 2000 | FYTD | 0.00 | 592.60 |
| 505 BEREAV | 2000 | FYTD | 0.00 | 594.44 |
| 753 ED.PAY | 2000 | FYTD | 0.00 | 520.00 |
| 802 SHFT $ | 2000 | FYTD | 0.00 | 1974.06 |

EMPLOYEE COUNT= 1

** END OF REPORT **

PAGE 1
pracmrpt

07/28/2003
09:26:44

CITY OF BRISTOL
ACCUMULATORS REPORT

| EMP # | NAME | PAY/DEDUCTION | YEAR | FREQ | EMPLOYEE AMOUNT | GROSS AMOUNT | |
|---|---|---|---|---|---|---|---|
| 731 | BARTON, ANDREW | LOC: 2113 | | | | | |
| SSN: 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 | | POLICE CID | GROUP: 0012113 | | ORG: 0012113 | POL CID | |
| | | 100 BASE P | 2001 BW1.52 | | POLICE | 39418.64 | |
| | | 112 HOL+1 | 2001 FYTD | | 0.00 | 2575.94 | |
| | | 201 OT 1.5 | 2001 FYTD | | 0.00 | 13550.28 | |
| | | 203 EX 1.5 | 2001 FYTD | | 0.00 | 12817.61 | |
| | | 204 EX 2.0 | 2001 FYTD | | 0.00 | 743.05 | |
| | | 205 EX2.25 | 2001 FYTD | | 0.00 | 1114.55 | |
| | | 300 VACATN | 2001 FYTD | | 0.00 | 2699.75 | |
| | | 303 EVT | 2001 FYTD | | 0.00 | 0.00 | |
| | | 330 VACADJ | 2001 FYTD | | 0.00 | 2476.84 | |
| | | 400 SICK | 2001 FYTD | | 0.00 | -1244.57 | |
| | | 403 W.COMP | 2001 FYTD | | 0.00 | 198.15 | |
| | | 505 BEREAV | 2001 FYTD | | 0.00 | 500.00 | |
| | | 753 ED.PAY | 2001 FYTD | | 0.00 | 1956.61 | |
| | | 802 SHFT $ | 2001 FYTD | | 0.00 | | |

LOC TOTAL: 2113 POLICE CID

| | PAY/DEDUCTION | YEAR | FREQ | EMPLOYEE AMOUNT | GROSS AMOUNT |
|---|---|---|---|---|---|
| | 100 BASE P | 2001 | | 0.00 | 39418.64 |
| | 112 HOL+1 | 2001 FYTD | | 0.00 | 2575.94 |
| | 201 OT 1.5 | 2001 FYTD | | 0.00 | 13550.28 |
| | 203 EX 1.5 | 2001 FYTD | | 0.00 | 12817.61 |
| | 204 EX 2.0 | 2001 FYTD | | 0.00 | 743.05 |
| | 205 EX2.25 | 2001 FYTD | | 0.00 | 1114.55 |
| | 300 VACATN | 2001 FYTD | | 0.00 | 2699.75 |
| | 303 EVT | 2001 FYTD | | 0.00 | 0.00 |
| | 330 VACADJ | 2001 FYTD | | 0.00 | 2476.84 |
| | 400 SICK | 2001 FYTD | | 0.00 | -1244.57 |
| | 403 W.COMP | 2001 FYTD | | 0.00 | 198.15 |
| | 505 BEREAV | 2001 FYTD | | 0.00 | 500.00 |
| | 753 ED.PAY | 2001 FYTD | | 0.00 | 1956.61 |
| | 802 SHFT $ | 2001 FYTD | | 0.00 | |

REPORT TOTAL:

| | PAY/DEDUCTION | YEAR | FREQ | EMPLOYEE AMOUNT | GROSS AMOUNT |
|---|---|---|---|---|---|
| | 100 BASE P | 2001 | | 0.00 | 39418.64 |
| | 112 HOL+1 | 2001 FYTD | | 0.00 | 2575.94 |
| | 201 OT 1.5 | 2001 FYTD | | 0.00 | 13550.28 |
| | 203 EX 1.5 | 2001 FYTD | | 0.00 | 12817.61 |
| | 204 EX 2.0 | 2001 FYTD | | 0.00 | 743.05 |
| | 205 EX2.25 | 2001 FYTD | | 0.00 | 1114.55 |
| | 300 VACATN | 2001 FYTD | | 0.00 | 2699.75 |
| | 303 EVT | 2001 FYTD | | 0.00 | 0.00 |
| | 330 VACADJ | 2001 FYTD | | 0.00 | 2476.84 |
| | 400 SICK | 2001 FYTD | | 0.00 | -1244.57 |
| | 403 W.COMP | 2001 FYTD | | 0.00 | 198.15 |
| | 505 BEREAV | 2001 FYTD | | 0.00 | 500.00 |
| | 753 ED.PAY | 2001 FYTD | | 0.00 | 1956.61 |
| | 802 SHFT $ | 2001 FYTD | | 0.00 | |

EMPLOYEE COUNT= 1

** END OF REPORT **

PAGE 1
prthisrpt

07/28/2003
09:34:30

CITY OF BRISTOL
DETAIL CHECK HISTORY
From 01/01/1999 To 06/30/1999

000731 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 BARTON, ANDREW
Check Date: 01/07/1999

| ORG | OBJ | PROJ | LOC | JOB | CHECK | PAY TYPE | HOURS | AMOUNT | DED | TYPE | EMPLOYEE | EMPLOYEE | EMPLOYEE |
|-----|-----|------|-----|-----|-------|----------|-------|--------|-----|------|----------|----------|----------|
| | | | | | | | | LOC: 2113 ORG: 0012113 | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0800000 | 100 BASE P | 22.50 | 542.38 | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0800000 | 164 SHFTDF | 0.00 | 3.86 | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0800000 | 300 VACATN | 8.00 | 192.84 | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0800000 | 303 EVT | 7.00 | 168.74 | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0800000 | 153 ED.PAY | 0.00 | 10.00 | | | | | |
| 0012113 | 517000 | | 2113 | 3030 | 0800000 | 203 EX2+1. | 0.00 | 289.27 | | | | | |
| 0012113 | 517000 | | 2113 | 3030 | 0800000 | 203 EX 1.5 | 12.00 | 433.90 | | | | | |
| 0012113 | 517000 | | 2113 | 3030 | 0800000 | 205 EX2 1.25 | 2.50 | 135.59 | | | | | |
| | | | | | NET: | | 64.00 | 1,776.58 | | | 0 | | |
| | | | | | Check Date: CHECK 01/07/1999 TOTALS: | | | | | | | | |

CITY OF BRISTOL

| 0012113 | 514000 | | 2113 | 3030 | 0803221 | 100 BASE P | 36.50 | 879.85 | | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0803221 | 201 OT 1.5 | 8.00 | 289.27 | | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0803221 | 203 EX 1.5 | 8.00 | 289.27 | | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0803221 | 305 EX2 2.25 | 4.00 | 216.95 | | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0803221 | 753 ED.PAY | 0.00 | 24.10 | | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0803221 | 802 SHFT $ | 1.00 | 5.78 | | | | | |
| | | | | | NET: | | 57.50 | 1,715.23 | | | 0.00 | | |
| | | | | | Check Date: 01/21/1999 | | | | | | | | |
| | | | | | CHECK 01/14/1999 TOTALS: | | | 1,715.23 | | | | | |

| 0012113 | 514000 | | 2113 | 3030 | 0803627 | 100 BASE P | 37.50 | 903.96 | | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0803627 | 753 ED.PAY | 0.00 | 10.00 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0803627 | 201 OT 1.5 | 8.00 | 289.27 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0803627 | 802 EX 1.5 | 8.00 | 289.27 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0803627 | 802 SHFT $ | 0.00 | 13.39 | | | | | |
| | | | | | NET: | | 53.50 | 1,505.89 | | | 0.00 | | |
| | | | | | Check Date: 01/28/1999 | | | | | | | | |

| 0012113 | 514000 | | 2113 | 3030 | 0000000 | 100 BASE P | 37.50 | 903.96 | | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0000000 | 753 ED.PAY | 0.00 | 10.00 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0000000 | 152 HOL.PAY | 8.00 | 192.84 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0000000 | 201 OT 1.5 | 7.55 | 273.04 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0000000 | 802 SHFT $ | 0.00 | 14.94 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0000000 | 203 EX 1.5 | 4.00 | 144.63 | | | | | |
| | | | | | NET: | | 57.05 | 1,539.37 | | | 0.00 | | |
| | | | | | Check Date: 02/04/1999 | | | | | | | | |
| | | | | | CHECK 01/28/1999 TOTALS: | | | | | | | | |

| 0012113 | 514000 | | 2113 | 3030 | 0010970 | 100 BASE P | 35.50 | 855.75 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0010970 | 753 ED.PAY | 0.00 | 10.00 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0010970 | 201 OT 1.5 | 6.00 | 216.95 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0010970 | 303 EVT | 2.00 | 48.21 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0010970 | 802 SHFT $ | 0.00 | 40.39 | | | | | |
| 0012113 | 515118 | | 2110 | 3030 | 0010970 | 203 EX 1.5 | 4.00 | 144.63 | | | | | |
| | | | | | NET: | | 47.50 | 1,316.53 | | | 0.00 | | |
| | | | | | Check Date: 02/11/1999 | | | | | | | | |
| | | | | | CHECK 02/04/1999 TOTALS: | | | 1,316.53 | | | | | |

| 0012113 | 514000 | | 2113 | 3030 | 0011642 | 100 BASE P | 29.50 | 711.12 | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0011642 | 753 ED.PAY | 0.00 | 10.00 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0011642 | 201 OT 1.5 | 4.00 | 144.63 | | | | | |
| 0012113 | 515100 | | 2110 | | 0011642 | 203 EX 1.5 | 8.00 | 289.27 | | | | | |

PAGE 2
prhisrpt

07/28/2003
09:34:30

CITY OF BRISTOL
DETAIL CHECK HISTORY
From:01/01/1999 To:06/30/1999

| ORG | OBJ | PROJ | LOC | JOB | CHECK | PAY TYPE | HOURS | AMOUNT | DED | TYPE | EMPLOYEE | EMPLOYER |
|-----|-----|------|-----|-----|-------|----------|-------|--------|-----|------|----------|----------|
| | | | | | | | | | | | | 0.00 |
| 0012113 | 515100 | | 2110 | 3030 | 0011642 | 300 VACATN | 8.00 | 192.84 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0011642 | 802 SHFT $ | 49.50 | 23.13 | | | | |
| | | CHECK 02/11/1999 TOTALS: | | | NET: | 1,370.99 | | | | | 0.00 | |
| Check Date: 02/18/1999 | | | | | | | | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0013324 | 100 BASE P | 31.50 | 759.33 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0013324 | 753 ED.PAY | | 10.00 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0013324 | 112 HOL+1. | 8.00 | 192.84 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0013324 | 303 OT 1.5 | 7.00 | 243.13 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0013324 | 303 EVT 1. | 6.00 | 144.63 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0013324 | 802 SHFT $ | 0.00 | 18.30 | | | | |
| 0012113 | 515118 | | 2110 | 3030 | 0013324 | 204 EX 2.0 | 6.00 | 192.84 | | | | |
| | | CHECK 02/18/1999 TOTALS: | | | NET: | 1,571.05 | 56.50 | 1,571.05 | | | 0.00 | |
| Check Date: 02/25/1999 | | | | | | | | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0013700 | 100 BASE P | 33.50 | 807.54 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0013700 | 753 ED.PAY | 0.00 | 10.00 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0013700 | 112 HOL+1. | 8.00 | 192.84 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0013700 | 303 OT 1.5 | 6.12 | 221.29 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0013700 | 303 EVT 1. | 4.00 | 96.42 | | | | |
| 0012113 | 515118 | | 2110 | 3030 | 0013700 | 203 EX 1.5 | 8.00 | 289.27 | | | | |
| 0012113 | 515118 | | 2110 | 3030 | 0013700 | 802 SHFT $ | 0.00 | 38.57 | | | | |
| | | CHECK 02/25/1999 TOTALS: | | | NET: | 1,655.93 | 59.62 | 1,655.93 | | | 0.00 | |
| Check Date: 03/04/1999 | | | | | | | | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0014948 | 100 BASE P | 37.50 | 903.96 | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0014948 | 753 ED.PAY | 0.00 | 10.00 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0014948 | 201 OT 1.5 | 8.00 | 289.27 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0014948 | 802 SHFT $ | 0.00 | 30.84 | | | | |
| | | CHECK 03/04/1999 TOTALS: | | | NET: | 1,234.07 | 45.50 | 1,234.07 | | | 0.00 | |
| Check Date: 03/11/1999 | | | | | | | | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0015714 | 100 BASE P | 34.50 | 831.64 | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0015714 | 753 ED.PAY | 0.00 | 10.00 | | | | |
| 0012113 | 515118 | | 2110 | 3030 | 0015714 | 303 EX 1.5 | 4.00 | 144.63 | | | | |
| 0012113 | 515118 | | 2110 | 3030 | 0015714 | 303 EVT | 3.00 | 72.32 | | | | |
| 0012113 | 517000 | | 2110 | 3030 | 0015714 | 802 SHFT $ | 0.00 | 20.72 | | | | |
| | | CHECK 03/11/1999 TOTALS: | | | NET: | 1,079.31 | 41.50 | 1,079.31 | | | 0.00 | |
| Check Date: 03/18/1999 | | | | | | | | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0016548 | 100 BASE P | 36.50 | 879.85 | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0016548 | 753 ED.PAY | 0.00 | 10.00 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0016548 | 201 OT 1.5 | 2.55 | 92.20 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0016548 | 203 EX 1.5 | 8.00 | 289.27 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0016548 | 303 EVT | 1.00 | 24.11 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0016548 | 802 SHFT $ | 0.00 | 39.05 | | | | |
| | | CHECK 03/18/1999 TOTALS: | | | NET: | 1,334.48 | 48.05 | 1,334.48 | | | 0.00 | |
| Check Date: 03/25/1999 | | | | | | | | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0017299 | 100 BASE P | 29.50 | 711.12 | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0017299 | 753 ED.PAY | 0.00 | 10.00 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0017299 | 201 OT 1. | 4.00 | 140.63 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0017299 | 303 EVT | 8.00 | 192.84 | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0017299 | 802 SHFT $ | 0.00 | 28.93 | | | | |

Case 3:02-cv-01210-PCD    Document 72-6    Filed 10/15/2003    Page 19 of 23

CITY OF BRISTOL
DETAIL CHECK HISTORY
From:01/01/1999 To:06/30/1999

| ORG | OBJ | PROJ | LOC | JOB | CHECK | PAY TYPE | HOURS | AMOUNT | DED | TYPE | EMPLOYEE | EMPLOYEE | EMPLOYEE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | 100 BASE P | 41.50 | 1,087.52 | | | | | |
| | | | | | NET: | | | 1,087.52 | | | 0.00 | 0.00 | 0.00 |
| | | | | | | **CHECK 03/25/1999 TOTALS:** | | | | | | | |
| | | | | | | **Check Date: 04/01/1999** | | | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0018584 | 100 BASE P | 17.50 | 421.85 | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0018584 | 753 ED.PAY | 0.00 | 10.00 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0018584 | 201 OT 1.5 | 13.00 | 470.06 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0018584 | 400 SICK $ | 20.00 | 482.11 | | | | | |
| 0012113 | 517000 | | 2110 | 3030 | 0018584 | 802 SHFT $ | | 26.51 | | | | | |
| | | | | | NET: | | 50.50 | 1,410.53 | | | 0.00 | 0.00 | 0.00 |
| | | | | | | **CHECK 04/01/1999 TOTALS:** | | | | | | | |
| | | | | | | **Check Date: 04/08/1999** | | | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0019323 | 100 BASE P | 29.50 | 711.12 | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0019323 | 753 ED.PAY | 0.00 | 10.00 | | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0019323 | 802 SHFT | 0.00 | 28.93 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0019323 | 112 HOL+1 | 8.00 | 192.84 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0019323 | 201 OT 1.5 | 4.00 | 144.63 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0019323 | 203 EX 1.5 | 8.00 | 289.27 | | | | | |
| 0012113 | 517000 | | 2110 | 3030 | 0019323 | 802 SHFT $ | | 192.84 | | | | | |
| | | | | | NET: | | 57.50 | 1,569.63 | | | 0.00 | 0.00 | 0.00 |
| | | | | | | **CHECK 04/08/1999 TOTALS:** | | | | | | | |
| | | | | | | **Check Date: 04/15/1999** | | | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0020155 | 100 BASE P | 35.50 | 855.75 | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0020155 | 303 EVT | 2.00 | 48.21 | | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0020155 | 753 ED.PAY | 0.00 | 10.00 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0020155 | 201 OT 1.5 | 5.00 | 183.68 | | | | | |
| 0012113 | 517000 | | 2110 | 3030 | 0020155 | 802 SHFT $ | 0.00 | 37.61 | | | | | |
| | | | | | NET: | | 42.50 | 1,135.25 | | | 0.00 | 0.00 | 0.00 |
| | | | | | | **CHECK 04/15/1999 TOTALS:** | | | | | | | |
| | | | | | | **Check Date: 04/22/1999** | | | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0020899 | 100 BASE P | 37.50 | 903.96 | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0020899 | 753 ED.PAY | 0.00 | 10.00 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0020899 | 201 OT 1.5 | 16.00 | 578.53 | | | | | |
| 0012113 | 515118 | | 2110 | 3030 | 0020899 | 203 EX 1.5 | 4.00 | 144.63 | | | | | |
| 0012113 | 517000 | | 2110 | 3030 | 0020899 | 802 SHFT $ | | 42.41 | | | | | |
| | | | | | NET: | | 57.50 | 1,679.53 | | | 0.00 | 0.00 | 0.00 |
| | | | | | | **CHECK 04/22/1999 TOTALS:** | | | | | | | |
| | | | | | | **Check Date: 04/29/1999** | | | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0022174 | 100 BASE P | 30.50 | 735.22 | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0022174 | 303 EVT | 7.00 | 168.74 | | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0022174 | 753 ED.PAY | 0.00 | 10.00 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0022174 | 201 OT 1.5 | 5.50 | 198.87 | | | | | |
| 0012113 | 515118 | | 2110 | 3030 | 0022174 | 203 EX 1.5 | 12.00 | 433.90 | | | | | |
| 0012113 | 517000 | | 2110 | 3030 | 0022174 | 802 SHFT $ | 0.00 | 40.65 | | | | | |
| | | | | | NET: | | 55.00 | 1,587.38 | | | 0.00 | 0.00 | 0.00 |
| | | | | | | **CHECK 04/29/1999 TOTALS:** | | | | | | | |
| | | | | | | **Check Date: 05/06/1999** | | | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0023243 | 100 BASE P | 33.00 | 795.48 | | | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0023243 | 303 EVT | 4.50 | 108.48 | | | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0023243 | 753 ED.PAY | 0.00 | 10.00 | | | | | |
| 0012113 | 515100 | | 2110 | 3030 | 0023243 | 201 OT 1.5 | 12.00 | 433.90 | | | | | |
| 0012113 | 517000 | | 2110 | 3030 | 0023243 | 802 SHFT $ | 0.00 | 26.91 | | | | | |
| | | | | | NET: | | 49.50 | 1,374.77 | | | 0.00 | 0.00 | 0.00 |
| | | | | | | **CHECK 05/06/1999 TOTALS:** | | | | | | | |
| | | | | | | **Check Date: 05/13/1999** | | | | | | | |
| | | | | | | **CHECK 05/13/1999** | | | | | | | |

```
07/28/2003                                    CITY OF BRISTOL                                          PAGE 4
09:34:31                                   DETAIL CHECK HISTORY                                        prhisrpt
                                    From:01/01/1999 To:06/30/1999

ORG      OBJ    PROJ  LOC   JOB   CHECK     PAY TYPE   HOURS    AMOUNT   DED  TYPE   EMPLOYEE  EMPLOYER

0012113  514000       2113  3030  0024052   750 BASE P  37.50   903.96
0012113  514000       2113  3030  0024052   753 ED.PAY    .00    10.00
0012113  514000       2110  3030  0024052   203 EX 1.5   4.00   144.63
0012113  515118       2110  3030  0024052                       4.00
0012113                                     NET:        41.50 1,058.59                         0.00       0.00
         Check Date: 05/13/1999 TOTALS:

0012113  514000       2113  3030  0024759   100 BASE P  27.50   662.90
0012113  514000       2113  3030  0024759   300 VACATN   8.00   192.84
0012113  514000       2113  3030  0024759   303 EVT      2.00    48.21
0012113  515100       2113  3030  0024759   753 ED.PAY    .00    10.00
0012113  515118       2110  3030  0024759   201 OT 1.5   4.00   144.63
0012113  515118       2110  3030  0024759   203 EX 1.5  12.50   433.91
0012113  515118       2110  3030  0024759   205 EX2.25   1.50    23.12
0012113  517000       2110  3030  0024759   802 SHFT $    .00    23.13
0012113                                     NET:        54.00 1,542.73                         0.00       0.00
         Check Date: 05/20/1999 TOTALS:
CHECK 05/27/1999

0012113  514000       2113  3030  0025572   100 BASE P  28.50   687.01
0012113  514000       2113  3030  0025572   300 VACATN   8.00   192.84
0012113  514000       2113  3030  0025572   303 EVT      1.00    24.11
0012113  515100       2113  3030  0025572   753 ED.PAY    .00    10.00
0012113  515118       2110  3030  0025572   201 OT 1.5   8.00   289.27
0012113  515118       2110  3030  0025572   203 EX 1.5   8.00   289.27
0012113  517000       2110  3030  0025572   802 SHFT $    .00    15.42
0012113                                     NET:        53.50 1,507.92                         0.00       0.00
         Check Date: 06/03/1999 TOTALS:

0012113  514000       2113  3030  0027089   100 BASE P  29.50   711.12
0012113  514000       2113  3030  0027089   300 VACATN   8.00   192.84
0012113  514000       2113  3030  0027089   753 ED.PAY    .00    10.00
0012113  515100       2110  3030  0027089   201 OT 1.5   5.00   180.79
0012113  515118       2110  3030  0027089   203 EX 1.5  16.00   578.53
0012113  517000       2110  3030  0027089   802 SHFT $    .00    32.29
0012113                                     NET:        58.50 1,705.57                         0.00       0.00
         Check Date: 06/10/1999 TOTALS:

0012113  514000       2113  3030  0027453   100 BASE P  21.50   518.27
0012113  514000       2113  3030  0027453   300 VACATN  16.00   385.69
0012113  514000       2113  3030  0027453   753 ED.PAY    .00    10.00
0012113  515100       2110  3030  0027453   201 OT 1.5   8.00   289.27
0012113  515118       2110  3030  0027453   812 HOL+1.   8.00   192.84
0012113  517000       2110  3030  0027453   802 SHFT $    .00    26.98
0012113                                     NET:        53.50 1,423.05                         0.00       0.00
CHECK 06/10/1999 TOTALS:

         Check Date: 06/17/1999

0012113  514000       2113  3030  0028153   100 BASE P  24.00   578.54
0012113  514000       2113  3030  0028153   300 VACATN   8.00   192.84
0012113  514000       2113  3030  0028153   303 EVT      5.00   132.58
0012113  514000       2113  3030  0028153   753 ED.PAY    .00    10.00
0012113  515100       2110  3030  0028153   201 OT 1.5   2.01    72.68
0012113  515118       2110  3030  0028153   203 EX 1.5  20.00   723.17
0012113  515118       2110  3030  0028153   205 EX2.25   2.50   108.48
0012113  517000       2110  3030  0028153   802 SHFT $    .00    22.67
0012113                                     NET:        61.51 1,840.96                         0.00       0.00
         CHECK 06/17/1999 TOTALS:
```

07/28/2003
09:34:31

CITY OF BRISTOL
DETAIL CHECK HISTORY
From:01/01/1999 To:06/30/1999

PAGE 5
prhistrpt

| ORG | OBJ | PROJ | LOC | JOB | CHECK | PAY TYPE | HOURS | AMOUNT | DED TYPE | EMPLOYEE | EMPLOYER |
|-----|-----|------|-----|-----|-------|----------|-------|--------|----------|----------|----------|

Check Date: 06/24/1999

| 0012113 | 514000 | | 2113 | 3030 | 0028980 | 100 BASE P | 18.00 | 433.90 | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0028980 | 300 VACATN | 16.00 | 385.69 | | | |
| 0012113 | 514000 | | 2110 | 3030 | 0028980 | 303 EVT | 3.50 | 84.37 | | | |
| 0012113 | 514000 | | 2113 | 3030 | 0028980 | 753 BD.PAY | 0.00 | 10.00 | | | |
| 0011113 | 515118 | | 2110 | 3030 | 0028980 | 201 OT 1.5 | 9.00 | 325.43 | | | |
| 0012113 | 515118 | | 2110 | 3030 | 0028980 | 203 EX 1.5 | 16.00 | 528.58 | | | |
| 0012113 | 517000 | | 2110 | 3030 | 0028980 | 802 SHFT $ | | 57.38 | | | |
| | | | | | | NET: | 62.50 | 1,845.30 | | 0.00 | 0.00 |

CHECK 06/24/1999 TOTALS: NET: 62.50 1,845.30 0.00 0.00
EMPLOYEE TOTALS: NET: 1,319.31 36,868.16

GRAND TOTALS: NET: 36,868.16 1,319.31 36,868.16 0.00 0.00

*** END OF REPORT ***

07/28/2003
09:27:19

# CITY OF BRISTOL
## ACCUMULATORS REPORT

| EMP # | NAME | | | |
|---|---|---|---|---|
| 731 | BARTON, ANDREW | | | |
| | SSN: 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 | LOC: 2113 | POLICE CID | |

| PAY/DEDUCTION | YEAR | FREQ | EMPLOYEE AMOUNT | GROSS AMOUNT |
|---|---|---|---|---|
| 100 BASE P | 2002 | FYTD | | 39481.70 |
| 112 HOL+1. | 2002 | FYTD | | 2727.02 |
| 201 OT 1.5 | 2002 | FYTD | | 18873.12 |
| 203 EX 1.5 | 2002 | FYTD | | 6379.74 |
| 204 EX 2.0 | 2002 | FYTD | | 808.60 |
| 205 EX2.25 | 2002 | FYTD | | 484.95 |
| 300 VACATN | 2002 | FYTD | | 3925.03 |
| 301 VAC + | 2002 | FYTD | | 990.73 |
| 330 EVT | 2002 | FYTD | | 3696.86 |
| 400 VACADJ | 2002 | FYTD | | 0.00 |
| 400 SICK | 2002 | FYTD | | 2133.02 |
| 753 ED.PAY | 2002 | FYTD | | 520.00 |
| 802 SHFT $ | 2002 | FYTD | | 2038.65 |
| 950 RETRO | 2002 | FYTD | | 4163.49 |

LOC TOTAL: 2113 POLICE CID

| | YEAR | FREQ | POLICE | ORG: 0012113  POL CID |
|---|---|---|---|---|
| 100 BASE P | 2002 | FYTD | 0.00 | 39481.70 |
| 112 HOL+1. | 2002 | FYTD | .00 | 2727.02 |
| 201 OT 1.5 | 2002 | FYTD | .00 | 18873.12 |
| 203 EX 1.5 | 2002 | FYTD | .00 | 6379.74 |
| 204 EX 2.0 | 2002 | FYTD | .00 | 808.60 |
| 205 EX2.25 | 2002 | FYTD | .00 | 484.95 |
| 300 VACATN | 2002 | FYTD | .00 | 3925.03 |
| 301 VAC + | 2002 | FYTD | .00 | 990.73 |
| 330 EVT | 2002 | FYTD | .00 | 3696.86 |
| 400 VACADJ | 2002 | FYTD | .00 | 0.00 |
| 400 SICK | 2002 | FYTD | .00 | 2133.02 |
| 753 ED.PAY | 2002 | FYTD | .00 | 520.00 |
| 802 SHFT $ | 2002 | FYTD | .00 | 2038.65 |
| 950 RETRO | 2002 | FYTD | .00 | 4163.49 |

REPORT TOTAL:

EMPLOYEE COUNT= 1

** END OF REPORT **



# Total of Hours/W... For The Period 7/01/98 Thru 12/31/...

| 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 | Barton | Andrew | J |
| --- | --- | --- | --- |

| Hours Code | Hours Description | Number of Hours | Wages |
| --- | --- | --- | --- |
| 00 | REGULAR HOURS | 889.00 | $21,906.95 |
| 01 | OVERTIME AT 1.5 | 213.30 | $7,704.80 |
| 04 | VACATION TIME EARNED | 160.00 | $0.00 |
| 06 | VACATION PAY | 56.00 | $1,349.90 |
| 12 | SICK TIME EARNED | 200.00 | $0.00 |
| 15 | HOLIDAY PAY - NOT COMP | 52.00 | $1,253.47 |
| 16 | EARNED PERSONAL LEAVE EARNED | 16.00 | $0.00 |
| 17 | EARNED PERSONAL LEAVE TAKEN | 32.00 | $771.37 |
| 26 | WORKING IN A DIFFERENT CODE | 0.00 | ($10.32) |
| 29 | NIGHT DIFFERENTIAL | 0.00 | $680.05 |
| 33 | VAC EVT ACCUMULATED | 93.75 | $0.00 |
| 34 | VAC EVT TAKEN | 35.50 | $854.49 |
| 36 | POLICE SPECIAL SERVICES 1.5 | 76.00 | $2,748.04 |
| 40 | EDUCATIONAL PAY | 0.00 | $270.00 |
| 78 | POLICE SPECIAL SERVICES 2.25 | 2.00 | $108.48 |

Total Hours: 1,825.55

| Total Gross Wages (Hours Records): | Total Gross Wages (Check Records): |
| --- | --- |
| $37,137.23 | $37,137.2. |

7-1-98 thru 6-30-99
$1,704.80
5,091.44
$13,796.96