UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
Oct 15  3 57 AM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

| | |
|---|---|
| ANDREW BARTON | CIVIL ACTION NO. |
| PLAINTIFF, | 3:02CV1210 (PCD) |
| VS. | |
| CITY OF BRISTOL, ET AL. | |
| DEFENDANTS. | SEPTEMBER 21, 2003 |

### PLAINTIFF'S JOINT OPPOSITION TO ALL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**I.     INTRODUCTION**

The Union Defendants: Local 754 AFSCME and Melvin Dekow, the Individual Defendants: Brian Suchinski and Richard Mullaney, and defendant the Town of Bristol have filed separate Motions for Summary Judgment. Pursuant to Local Rule 9 and Rule 56 of the of the Federal Rules of Civil Procedure, the plaintiff hereby objects to the defendants' motions for summary judgment in this Joint Opposition. The defendants are not entitled to summary judgment as a matter of law because the plaintiff has been successful in presenting genuine issues to several material facts.

**II.    STATEMENT OF FACTS**

The plaintiff was hired as a police officer with the Bristol Police Department ("Department") in August 1986. The plaintiff was promoted to detective in June 1997. In 1997,

1

the plaintiff was assigned to the narcotics unit. In 1999, Mullaney became Sergeant in the narcotics unit. On August 31, 1999, a joint narcotics investigation occurred with the West Hartford Police Department. On September 1, 1999, Mullaney falsely alleged that plaintiff acted inappropriately towards him during the 8/31/99 narcotics investigation. In September 1999, the plaintiff was maliciously investigated by defendants based upon a false allegation by Mullaney. Suchinski and Mullaney were friends. Suchinski harassed plaintiff on several occasions. Suchinski placed a rubber rat on plaintiff's desk. Suchinski hid the plaintiff's rental car keys. Suchinski failed to give plaintiff important messages. Suchinski made false allegations against plaintiff to get him into trouble. Suchinski encouraged Mullaney to make false allegations against plaintiff regarding the 8/31/99 investigation. Mullaney produced false statements regarding plaintiff's conduct on his report. Suchinski has been removed from the narcotics unit. The defendants did not follow the proper procedures in investigating the plaintiff. The defendants did not conduct any interviews during the course of their investigation. The defendants did not interview the plaintiff in the course of their investigation. On September 14, 1999, plaintiff was reprimanded based on the false allegation by Mullaney. Prior to this incident, plaintiff was never reprimanded by the department. On or about September 24, 1999, plaintiff was removed from his position on the Emergency Response Team ("ERT"). On October 1, 1999, plaintiff filed a grievance with the Bristol Police Union regarding his removal from the ERT. Defendants failed to file plaintiff's grievance with the state. In approximately October 2002, after the plaintiff had filed the present federal lawsuit against Suchinski and Mullaney, plaintiff asked Chief Divenere to investigate

further harassment that had been done against the plaintiff by Suchinski, specifically: derogatory postings on public union bulletin boards that insulted the plaintiff for filing the present lawsuit.Chief Divenere did not investigate the harassment complaint made by the plaintiff and did not take any steps to discipline those who were harassing the plaintiff.On December 29, 2002, the plaintiff complained to Chief Divenere about continued harassment that had been directed toward him specifically: the doctoring and falsification of an Emergency Overtime List. Chief Divenere did not investigate the harassment complaint made by the plaintiff and did not take any steps to discipline those who were harassing the plaintiff. Plaintiff was not treated the same as similarly situated officers.

### III. ARGUMENT

#### A. STANDARD FOR SUMMARY JUDGMENT

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Rule 56(c), F.R.C.P.; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202, 217 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact...." <u>Miner v. Gen. Falls,</u> 999 F.2d 655, 661 (2d Cir. 1993)(citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Aldrich v. Randolph Cent. Sch. Dist.</u>, 963 F.2d 520, 523 (2d Cir. 1992).After discovery, if the nonmoving

3

party "has failed to make sufficient showing on an essential element of his case with respect to which he has the burden of proof," then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265, 273 (1986). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.) cert. denied, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d. 117 (1991). See also, Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).

In the context of a motion for summary judgment pursuant to Rule 56(c), disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law even if the disputed issues were resolved in favor of the nonmoving party. Such factual disputes, however genuine, are not material, and their presence will not preclude summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also, Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir, 1992).

**B.     PLAINTIFF HAS NOT FAILED TO STATE A CLAIM FOR RELIEF UNDER 42 U.S.C. §1983**

   **1.     Summary Judgment Standard Under § 1983.**

To state a cause of action under §§ 1983, the plaintiff must show (1) that the defendants deprived him of a right "secured by the Constitution or laws of the United States"; and (2) that they did so "under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50

4

(1999); accord Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999); Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993). The elements of a plaintiff's case are the same under Section 1981, Section 1983, or Title VII. Direct evidence is not necessary to prove employer acted with discriminatory motive. Randle v. City of Aurora, 69 F.3d 441 (10th Cir. 1995). A showing of pretext is evidence which allows a jury to infer discriminatory intent. Randle v. City of Aurora, 69 F.3d 441 (10th Cir. 1995). Because a jury may find illegal discrimination upon nothing more than a prima facie case and pretext, such a showing at the summary judgment state is sufficient to get the case to the jury. Randle v. City of Aurora, 69 F.3d 441 (10th Cir. 1995). Procedural irregularities can provide sufficient evidence of pretext to defeat summary judgment where the disregarded procedures directly and uniquely disadvantage a minority employee, ..." Randle v. City of Aurora, 69 F.3d 441 (10th Cir. 1995).

Due to the difficulty of proving a subjective state of mind, cases involving motivation and intent are usually inappropriate for summary judgment. Lac Du Flambeau Indians v. Stop Treaty Abuse-Wis., 991 F.2d 1249 (7th Cir. 1993). Evidence of mixed motives is "ordinarily not the gist for the summary judgment mill," and, where there was evidence that defendants were racists, ..." Lac Du Flambeau Indians v. Stop Treaty Abuse-Wis., 991 F.2d 1249 (7th Cir. 1993). Trier of fact may consider the same evidence introduced to prove prima facie case in determining whether discipline was pretextual. Lowe v. City of Monrovia, 775 F.2d 998 (9th Cir. 1985) Decision as to employer's motive is almost always for the trier of fact to determine at trial. Lowe v. City of Monrovia, 775 F.2d 998 (9th Cir. 1985).

5

Plaintiff may defeat summary judgment in a discrimination or retaliation case if he or she can present evidence that the proffered reason for the adverse action was pretextual or "unworthy of belief" or if he or she can otherwise introduce evidence of illegal motive. Beaird v. Seagate Technology, Inc., 145 F.3d 1159 (10th Cir. 1998). To survive summary judgment, a plaintiff will prevail "by either a) discrediting the employer's proffered reasons, either circumstantially or directly or b) by adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determining cause of the adverse employment action." Torres v. Casio Inc., 42 F.3d 825 (3rd Cir. 1994).

### 2. Plaintiff Has Stated a Claim for a Violation of Procedural Due Process Against the City.

The Fourteenth Amendment guarantees an individual due process of the law where the state deprives an individual of a constitutionally protected liberty or property interest. Board of Regents v. Roth, 408 U.S. 564, 569, 33 L.Ed. 2d 548, 92 S. Ct. 2701 (1972). If no such interest is implicated, then no process is due the affected individual. See Id at 569-570. On the other hand, if the state deprives a person of a protected interest, the state must provide such procedures as the circumstances demand. Mathews v. Eldridge, 424 U.S. 319, 333, 47 L. Ed.2d 18, 96 S. Ct. 893 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 14 L.Ed.2d 62, 85 S. Ct 1187 (1965)). Property interests are created and defined " 'by existing rules or understandings that stem from an independent source such as state law– rules or understandings that secure certain benefits and that support claims of entitlement of those benefits.'" Id. (citing Donato v. Plainview-

6

old Bethpage Cent. School Dist, 96 F.3d at 629, quoting Roth, 408 U. S. At 577). "Plaintiff must establish that she has a 'constitutionally-protected 'legitimate claim of entitlement'" to the positions which she sought, rather than 'an unprotected unilateral expectation of employment' to have a protected property interest." Id. (citing Donato, 96 F.3d at 629)

The Second Circuit has indicated that, when applying the entitlement test, a court must look to "existing rules or misunderstandings that stem from an independent source such as state law" to determine whether a claimed property right rises to the level of a right entitled to protection..." DLC Mgmt. Corp. v. Town of Hyde Park, 163 f.3d 124 (2d Cir. 1998) (quoting Roth, 408 U.S. At 577).

    3.    **Plaintiff Has Stated a Claim for a Violation of the Equal Protection Clause Against the Individual Defendants and the Union Defendants.**

"In order to establish an equal protection violation under the Fourteenth Amendment the plaintiff must prove that (1) in comparison with others similarly situated, he was selectively treated, and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999.) "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class . . . individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government

7

officials" may also bring an equal protection claim. Harlen Assoc. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2000) (citing LeClair v. Saunders, 627 F.2d 606, 608-10 (2d Cir. 1980)). The plaintiffs can establish a "class of one" equal protection claim by proving that (a) they were similarly situated to others, (b) they were intentionally treated differently from others similarly situated, and (c) there is no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); African Trade & Information Center, Inc. v. Abromaitis, 294 F.3d 355, 362-63 (2d Cir. 2002). The court's duty to determine whether the defendants have offered a rational basis for the difference in the defendants' treatment "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). Nor does it authorize "the judiciary [to] sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." New Orleans v. Dukes, 427 U.S. 297, 303 (1976) (per curiam). Accordingly, the court under a rational-basis review affords governmental decisions a "strong presumption of validity," Heller v. Doe by Doe, 113 S.Ct. 2637, 2642 (1993); Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 462 (1988), and will uphold a governmental decision "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Heller v. Doe by Doe, 113 S.Ct. at 2642; Sullivan v. Stroop, 496 U.S. 478, 485 (1990).

Equal protection clause protects against any arbitrary classification of persons for unfavorable governmental treatment, not merely against such invidious classifications such as race

or gender. Hayden v. Grayson, 134 F.3d 449 (1st Cir. 1998). Plaintiff must prove the decision maker acted because of, not merely "in spite of," its adverse effects on an identifiable group; the issue of whether defendant's conduct had a rationale basis does not arise unless the requisite discriminatory intent is first established. Hayden v. Grayson, 134 F.3d 449 (1st Cir. 1998). The Supreme Court held that a plaintiff states an equal protection claim where he has alleged he was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562 (2000). The Court found that Olech's complaint could "fairly be construed as alleging" differential treatment from similarly situated property owners which, coupled with Olech's allegation that the Village's conduct was irrational and wholly arbitrary, was "sufficient to state a claim for relief under traditional equal protection analysis." Id. at 565. Such allegations, quite apart from a defendant's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis. Village of Willowbrook v. Olech, 120 S.Ct. 1073 (2000). The number of individuals in a class is immaterial for equal protection analysis. Village of Willowbrook v. Olech, 120 S.Ct. 1073 (2000).

The plaintiff was treated differently than other detectives similarly situated as him by the defendants. The defendants created a pre-textual reason to remove the plaintiff from the ERT. The defendants based their decision to remove the plaintiff on an incident that was exagerated and falsified by Mullaney. During the incident of August 31, 1999, Mullaney did not at any time warn the plaintiff that he was being insubordinate, did not order the plaintiff to stop arguing with him

9

and did not communicate to the plaintiff in any way that he considered the plaintiff's actions to be in conduct unbecoming. There was not an argument between the plaintiff and Mullaney.

Mullaney and Suchinski both had influence over the decision to remove the plaintiff from ERT. Mullaney and Suchinski had a personal relationship in which Suchinski had influence over Mullaney. Suchinski worked with the plaintiff in Narcotics and both the plaintiff and Suchinski were supervised by Mullaney. Mullaney and Suchinski were friends prior to working together at the Bristol Police Department and had met in 1973. Mullaney and Suchinski entered the Bristol Police Department in 1974 and were trained together. Mullaney and Suchinski had a social and personal relationship that included visiting each others homes and visiting with each others families. The relationship between Suchinski and Mullaney is demonstrated by Mullaney's inaction in disciplining or reprimanding Suchinski. Despite Suchinski's history of personality conflicts with other members of the Departmen and the complaints made to Mullaney about Suchinski by other members of the Department, Mullaney never disciplined Suchinski.

Suchinski would constantly complain about and criticize the plaintiff to Mullaney, including stating that the plaintiff was untrustworthy. Suchinski had a history of making up complaints and instances about the plaintiff in order to complain to Mullaney about the plaintiff and create discipline problems for the plaintiff, specifically (1) Suchinski falsely reported that the plaintiff had thrown a hole-punch in the office but there was no indication that such an event

happened and (2) Suchinski falsely reported that the plaintiff pushed papers off of his desk and ignored Suchinski.

Mullaney did not make any formal attempts to address the harassment by Suchinski against the plaintiff. Mullaney condoned the treatment by Suchinski although the plaintiff had complained numerous times to Mullaney. Mullaney also began directly harassing Mullaney by keeping detailed notes on the plaintiff in August, 2000, to track the plaintiff's days off and did not keep similar notes on any other employee.

To constitute an adverse employment action, a change in working conditions must be "materially adverse." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). A materially adverse change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities" and "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id. (internal quotation and citation omitted). See also Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997). A lateral transfer that does not result in a reduction in pay or benefits may be an adverse employment action so long as the transfer alters the terms and conditions of the plaintiff's employment in a materially negative way. See de la Cruz v. New York City Human Resources Admin. Dep't of Social Servs., 82 F.3d 16, 21 (2d Cir. 1996) (transfer to "less prestigious" unit of social services department with reduced opportunities for professional

growth was adverse employment action); <u>Rodriguez v. Board of Educ.</u>, 620 F.2d 362, 366 (2d Cir. 1980) (transfer of experienced middle school art teacher to elementary school constituted adverse action). In <u>Patrolmen's Benevolent v. City of New York</u>, 310 F.3d 43 (2nd Cir. 2002), the plaintiff had received training in domestic violence issues and had worked as a caseworker for agencies serving domestic violence victims but was involuntarily transferred he unsuccessfully sought an assignment as a domestic violence officer. The court found that the transfer had a sufficiently material negative impact on the terms and conditions of Espinal's employment with the NYPD to constitute an adverse employment action. An ERT benefit also allows for training opportunities and team status.

In the present case, the plaintiff did suffer an adverse employment action. The plaintiff suffered from a loss of overtime, loss of training opportunities, loss of the benefit of being in that (ERT) position. This is a violation of the equal protection process because a different set of procedures were used on the plaintiff, he was subject to intensified scrutiny and harassment by Suchinski continued.

### 4. **Plaintiff Has Stated a Claim for a Violation of the Substantive Due Process Clause Against the Individual Defendants and The City.**

A claim for a substantive due process violation must "shock the conscience." <u>Rochin v. California</u>, 342 U.S. 165, 172 (1952). "[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument

12

of oppression.'" De Shaney v. Winnebago County Dept. of Social Services, 489 U.S.189, 196 (1989) quoting Davidson v. Cannon, 474 U.S. 344, 348 (1986. Actions violate the substantive component of the Due Process Clause only when they "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." Collins v. Harker Heights, 503 U.S. 115, 128 (1992); see also County of Sacremento v. Lewis, 523 U.S. 833 (1998). Actions intended to injure in some way and unjustifiable by any government interest will most likely be found conscience-shocking. Id. This is a fact-specific inquiry that requires a case by case analysis.

Understanding that actions which would shock the conscience in one set of circumstances could be considered completely rational in another set of circumstances, the Supreme Court has established that the "deliberate indifference" standard will determine if an official's actions "shock the conscience." Sacremento v. Lewis, 523 U.S. at 850-1; see also Betts v. Brady, 316 U.S. 455, 462 (1942). Inherent to the word "deliberate" is the idea that the actor must contemplate her actions within a given time frame; split-second decisions that result in harm are not equal to those actions that are considered and implemented over a longer period of time. Pre-meditated actions are decidedly more egregious and therefore often rise to the level of constitutional violation. Id.

The Supreme Court has held, and the Second Circuit has recognized, the subjective deliberate indifference standard to determine if an official's actions shock the conscience. This standard necessitates that the official actually knew of the substantial risks of his behavior and violated the individual's rights by responding with deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 837 (1994); Hanrahan v. City of Norwich, 959 F.Supp. 118, 122 (D. Conn. 1997).

A government official shocks the conscience and violates one's substantive due process rights when, given the opportunity to deliberate and decide upon a course of action that would intentionally harm an individual, that official carries through with such actions. Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662 (1986). The actions of the defendants meet the criteria of subjective deliberate indifference.

### 5.     **The Defendants Are Not Entitled to Qualified Immunity.**

The doctrine of qualified immunity provides that "government officials performing discretionary function, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Soffit v. Brookfield, 950 F. 2d 880, 885 (2d Cir. 1991), citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Government officials are protected from liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Lee v. Sandberg, 136 F.3d 94, 101 (2d Cir. 1997) citing Anderson v. Crieghton, 483 U.S. 635, 641 (1987). The defense of qualified immunity depends on whether "'a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information [he] possessed.'" Weyant v. Okst, 101 F.3d 845, 858 (2d Cir. 1996) citing Anderson, 483 U.S. at 641. Qualified immunity does not protect officials "who are plainly incompetent or those who knowingly violate the law." Id., citing Hunter v. Bryant, 502 U.S. 224, 229 (1991).

14

When qualified, good faith, immunity is evoked to protect a government official from liability for damages, on account of their performance of discretionary functions, their conduct can not have violated clearly established statutory or constitutional rights which a reasonable person would know of, Harlow v Fitzgerald, 457 U.S. 800, 818 (1982); La Bounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights. Anderson v. Creighton, 483 U.S. 635, 638 (1987). The availability of the defense turns on the reasonableness of the allegedly unlawful official action and whether the actions violate a clearly established statutory or constitutional right which a reasonable person would have known. Id.

The defendant, Mullaney knew that his actions against the plaintiff were in violation of his rights, Mullaney also knew that Suchinski's actions against the plaintiff were violative of his rights but did nothing to prevent the continued violations.

### C. THE PLAINTIFF SUFFERED RETALIATION AFTER FILING A GRIEVANCE AGAINST HIS SUPERVISOR MULLANEY.

To prevail on a First Amendment retaliation claim the plaintiff must establish: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Garcia v. S.U.N.Y. Health Sciences Center, 280 F.3d 98 (2nd Cir. 2001); see also Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001).

To establish that the defendant took adverse action against the plaintiff, the plaintiff must show that defendants subjected him to "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Dawes, supra, 239 at 493. In the present case, the plaintiff did suffer an adverse employment action. The plaintiff suffered from a loss of overtime, loss of training opportunities, loss of the benefit of being in that (ERT) position. This is a violation of the equal protection process because a different set of procedures were used on the plaintiff, he was subject to intensified scrutiny and harassment by Suchinski continued.

To establish a causal connection, the courts look to whether there is an inference that defendants had a retaliatory motive. Morales v. Mackalm, 278 F.3d 126 (2nd Cir. 2002). "The causal connection must be sufficient to support the inference 'that the speech played a substantial part' [in the adverse action]." Dawes, supra, 239 at 492, *quoting* Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 780-91 (2d Cir. 1991).

On October 1, 1999, plaintiff filed a grievance with the Bristol Police Union regarding his removal from the ERT. Following the filing of this grievance, the plaintiff was subject to scrutiny by Mullaney, including Mullaney began directly harassing by keeping detailed notes on the plaintiff in August, 2000, to track the plaintiff's days off and did not keep similar notes on any other employee. . In addition, in approximately October 2002, after the plaintiff had filed the present federal lawsuit against Suchinski and Mullaney, plaintiff asked Chief Divenere to investigate further harassment that had been done against the plaintiff by Suchinski, specifically:

16

derogatory postings on public union bulletin boards that insulted the plaintiff for filing the present lawsuit. Chief Divenere did not investigate the harassment complaint made by the plaintiff and did not take any steps to discipline those who were harassing the plaintiff. On December 29, 2002, the plaintiff complained to Chief Divenere about continued harassment that had been directed toward him specifically: the doctoring and falsification of an Emergency Overtime List.

### D. THE PLAINTIFF SUFFICIENTLY ALLEGES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

To prevail on his claim for intentional infliction of emotional distress the plaintiff must prove the following: (1) that defendant intended or should have known that emotional distress was a likely result of their conduct; (2) that the conduct was extreme and outrageous (3) that the conducted caused plaintiff distress (4) and that the plaintiff suffered severe emotional distress. Drew v. K-Mart Corp., 37 Conn App. 239, 251 (1995). To sustain a claim for intentional infliction of emotional distress, the plaintiff must show that the defendant in "conduct exceeding all bounds usually tolerated by decent society." DeLaurentis v. City of New Haven, 220 Conn. 225, 597 A.2d 807, 828 (1991).

### E. THE UNION BREACHED ITS DUTY OF FAIR REPRESENTATION.

"A union breaches its duty of fair representation owed to its members only wen its conduct is arbitrary, discriminatory, or in bad faith. Vaca v. Sipes, 386 U.S. 171, 190, 87 S.CT. 903, 17 L. Ed.2d 842 (1967). According to the second Circuit's two-part test, the union's conduct must have been arbitrary, discriminatory or in bad faith, and secondly, it must have

17

seriously undermined the arbitral process. Barr v. United Parcel Services, 868 F.2d 36, 43 (2d cir.), *cert. denied*, 493 U.S. 975, 110 S. Ct. 499, 107 L.Ed.2d 502 (1989)." Rennie v. Glass, Molders, Pottery Plastics & Allied Workers International Union, AFL-CIO, CLC, 38 F. Supp. 2d 209 (D.Conn. 1999)

The duty of fair representation requires the union to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion in complete good faith and honesty, and to avoid arbitrary conduct. A union breaches this duty if it acts arbitrarily, discriminatorily or in bad faith. Labbe v. Pension Commission, 239 Conn. 168, 194 (1996)

A "union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational. Furthermore, a union's actions are in bad faith if the unions acts fraudulently or deceitfully; or does not act to further the best interests of its members." Labbe v. Pension ommission, 239 Conn. at 195.

In reviewing the substantive decisions of a union, a court engages in a highly deferential review in light of the wide latitude that negotiators need for the effective performance of their bargaining responsibilities. Labbe v. Pension Commision, 239 Conn. at 194. "[I]f the union made an informed decision that a grievance was not meritorious of arbitration, the employee has no right to have that grievance arbitrated." Rennin v. Glass, Molders, 38 F. Supp. 2d at 215.

The "union" was notified, and the wrote his memo according to what the "union" told him

18

to write. The grievance intentionally skipped a step of the process. Mullaney was friends with the Union defendant, Dekow. Defendant, AFSCME Local # 754, is the exclusive collective bargaining representative of Bristol police officers pursuant to Conn. Gen. Stat. 4-471 et. seq. The union failed to represent the plaintiff by failing to file plaintiff's grievance against the department defendants with the state. The Union, as a representative for the plaintiff, did not keep the plaintiff informed about the status of his grievance.

## CONCLUSION

Issues of material fact exist as to the plaintiff's procedural due process claim, equal protection claim. Therefore, the defendants' Motion for Summary Judgment should be denied.

PLAINTIFF,
ANDREW BARTON

BY:_____
Erin O'Neil
Brewer & O'Neil, LLC
818 Farmington Avenue
West Hartford, CT 06119
(860)523-4055
Federal Bar #ct 23073

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed via U.S. Mail, postage pre-paid, on September 21, 2003, to the following:

Michael Rose
Alexandria Voccio
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114
fax: 860-246-2375

John K. McDonald, Esq.
Giovanna Trocchi Giardina, Esq.
Melissa A. Scozzafava, Esq.
Kernan & Henry, LLP
PO Box 2156
Waterbury, CT 08069
fax: (203) 754-2353

Eric R. Brown, Esq.
AFSCME Council 15
90 Pratt Street
Meriden, CT 06450
fax: (203) 237-2262

_____
Erin I. O'Neil