**Mail From: John Divenere**

File  Edit  View  Actions  Tools  Window  Help

From: John Divenere
CC:
To: Andy Barton
Subject: Re: Complaint

Message:
i'll save the list, but how am I supposed to analyse the ink and find the offending pen?

>>> Andy Barton 12/29/02 10:05PM >>>
   Sorry to do this to you Chief, but I feel the Harassment is still continuing. Not quite sure who to complain to, so in order to ensure that things don't get too messed up, I'll start with you.
   If you wouldn't mind securing the EMERGENCY OVERTIME LIST that was used for this past weekend. It includes volunteers for Mondays Construction. Someone crossed me off the volunteer list. I notified Lt. Spyros Sunday evening after noticing this. He put me back on.
   I would like to know who crossed me off, and why? As you will be able to tell, no one wanted to put their initials next to my name after crossing me off. This was probably done some time after Kirsch put the sheet out on Friday.
   Please don't let anything happen to this sheet because I believe the ink from the pen that crossed out my name was also used to cross out someone else's name. I am sure an analysis of that will confirm it.
   Thank you in advance for you cooperation, and assistance.

Date: 12/30/02 7:35AM

**Mail From: Andy Barton**

File  Edit  View  Actions  Tools  Window  Help

From: Andy Barton
To: Divenere, John
CC:
BC:
Subject: Complaint

Message:
  Sorry to do this to you Chief, but I feel the Harassment is still continuing. Not quite sure who to complain to, so in order to ensure that things don't get too messed up, I'll start with you.
  If you wouldn't mind securing the EMERGENCY OVERTIME LIST that was used for this past weekend. It includes volunteers for Mondays Construction. Someone crossed me off the volunteer list. I notified Lt. Spyros Sunday evening after noticing this. He put me back on.
  I would like to know who crossed me off, and why? As you will be able to tell, no one wanted to put their initials next to my name after crossing me off. This was probably done some time after Kirsch put the sheet out on Friday.
  Please don't let anything happen to this sheet because I believe the ink from the pen that crossed out my name was also used to cross out someone else's name. I am sure an analysis of that will confirm it.
  Thank you in advance for you cooperation, and assistance.

Date: 12/29/02 10:05PM

## BRISTOL POLICE DEPARTMENT

September 10th, 1999

TO:     Chief J. DiVenere

FROM:   Lt. T. Killiany

SUBJECT:    Detective Andrew Barton


On Wednesday, September 1, 1999 Detective Sergeant Richard Mullaney approached me with a situation that arose on Tuesday, August 31, 1999 during a joint narcotics investigation with the West Hartford Police. This situation involved the conduct of Detective Andrew Barton. I directed Sergeant Mullaney to document the incident and submit his report to me for review.

Attached you will find Sergeant Mullaney's documentation of the incident at the Meineke Muffler Shop during the course of a drug investigation and narcotics arrest.

I have reviewed this report and spoken with Sergeant Mullaney concerning the incident and his report. Det. Barton's behavior was totally inappropriate and bordered on insubordination.

Sergeant Mullaney explains that he was approached by the case officer, Det. Lennon, and a discussion took place concerning the arrest. Sergeant Mullaney discussed the arrest with Lennon and Lennon followed Mullaney's instructions. Det. Barton interrupted the discussion to provide his opinion on how the case should be handled. Sergeant Mullaney listened to Barton and evaluated his opinion along with all the circumstances. Sergeant Mullaney instructed Lennon and Barton that the arrest would take place as decided previously. Barton continued to argue with Mullaney in full view of civilians and officers from another department. Not until Mullaney became very assertive, did Barton stop arguing.

This type of conduct can not be tolerated between a supervisor and a subordinate, especially in public view and in the presence of officers from another police department. I believe Det. Barton was disrespectful to his supervisor in public view and crossed the line between offering his opinion and arguing with his supervisor.

I agree with Sergeant Mullaney's assessment of the situation, that Det. Barton violated two sections of the Bristol Police Department Code of Conduct. At the very least, Det. Barton should be issued a written reprimand for violations of Sections 1.00 – Conduct Unbecoming an Officer and 2.22 – Quarreling With Other Employees or a Supervisory Officer in the Public View.

*I agree w/ Killiany & Mullaney* ~~[redacted]~~

*I agree [illegible]*      DWK  9/13/99

*I concur. Issue as suggested.*  JDV 9/13/99



PLAINTIFF'S EXHIBIT
Am 4
6-27-05

## BRISTOL POLICE DEPARTMENT

Day: Monday  Date: 01-22-01

TO: Det. Sgt. R. Mullaney

FROM: Det. A. J. Barton

SUBJECT: Incident in NET

Sir,

    I realize that you are retiring this week, however I must inform you of an incident that took place in NET on Friday 01-19-01. If you are not able to investigate this, please forward it for assignment.

    On Friday afternoon, January 19th, 2001, Det. Chris Lennon and myself meet with an officer from Statewide Narcotics. He was brought to our office for privacy, as well as to be able to give intelligence information to him. He was working a case that we had information on.

    During this meeting, Det. Suchinski entered the office. He was visibly upset, and appeared to be muttering to himself. The officer from Statewide greeted Det. Suchinski, but it appeared to go unacknowledged. As we continued talking to the S.W. officer, Det. Suchinski was doing things at his desk and began to become frustrated. This started to affect the meeting, and I began to feel uncomfortable.

    At one point, we were discussing an investigation in which Det. Suchinski took part. As I talked about this, I deferred to Det. Suchinski. He ignored my statements regarding information he might have been able to offer. At this point I began to feel embarrassed at Det. Suchinski's behavior towards this S.W. officer.

    Det. Suchinski then finished doing what he had come to do and was about to leave. There is a blue recycling bucket in our office for empty bottles. Det. Suchinski then kicked this bucket, possibly by accident, but I don't know. This stunned the three of us, and we looked up. Instead of excusing himself or something similar, Det. Suchinski became even more upset, mumbled something and then picked up the bucket and threw it against the wall, and stormed out of the NET office.

At this point, I did not know what to say to the S.W. officer. I knew I felt uncomfortable at Det. Suchinski's behavior, and I am sure it did not go unnoticed, as well as it reflected poorly on the members of NET to this officer. He ended the meeting shortly after this incident, and I'm sure it was cut short by Det. Suchinski's behavior.

As you recalled, a short time after that you asked if I had seen Det. Suchinski. I had told you yes, as well as that he was in a bad mood. You did not ask me to elaborate on that.

I do not know if Det. Suchinski is staying in the NET office or not. I know that for the last year and a half his attitude towards me has been very poor, and has affected my work performance. He is very confrontational, and verbally assails me in front of other persons, especially co-workers.

On Monday afternoon, around 1530 or so, Officer Boutin came to the NET office so we could examine some pills. Det. Lennon was present at the time and was trying to test these pills. Det. Suchinski came into the office. Officer Boutin then asked me who was going to get Det. Sgt. Mullaney's job. I was busy typing an E-Mail, and put up a finger indicating, "hang on a minute, I'll answer you when I'm done". Det. Suchinski then interrupted and started saying "His Lover, right Andy, your Lover is getting the job". I know how argumentative Det. Suchinski gets, so I did not want to acknowledge him because he would use whatever reply I gave to further his arguing. Det. Suchinski then began again. "His Lover, right Andy, I know you can hear me!"

Officer Boutin then asked if Eric (Osanitch) was going to get the job. "Det Suchinski then really started in with his harassment, See I told you it was his Lover, right Andy, huh, huh, right. See he's just pretending not to hear me". Officer Boutin then told Det. Suchinski, "well Andy put his finger up to tell me to hang on a minute". Det. Suchinski then keep going on about Eric Osanitch being my "Lover".

After a few more "Lover" type comments, Det. Suchinski saw he was unable to get a response out of me, he stopped and left the office. I am tired of being subjected to his unsolicited comments and opinions. I have complained to you before about his poor and disruptive attitude. I would like to see this stopped so I can work in a productive environment, free from this constant abuse and harassment.

Respectfully,

*[signature]*

Det Andrew J. Barton


PLAINTIFF'S
EXHIBIT
RM 6
6.27.03 EF



Boynton
6/16



To:       Captain Ahearn
From:     Detective Brian S. Suchinski                    02/08/01
Subject:  IA report

Sir:

In regards to your questions regarding complaints that Det. A.J. Barton has filed with your office, I told you prior that I did in fact kick the blue bucket and yes I did make reference to Det. A.J. Barton as to Sgt. Osanitsch being his lover. The facts and circumstances are as follows.

On the date in question, I walked into the Net office. I went to my desk. Det.Barton was talking with someone who I thought was giving narcotics information. I was never introduced nor was I ever privy to the conversation. I exited from my desk area and as I stood up at my chair, I tripped over the blue bucket. I then actually stumble and kicked the bucket again, almost falling down. I tripped over the bucket by accident. Being frustrated with the bucket and the tight office (this is not the first time an item placed in that location was accidentally kicked) I took the bucket and placed it with frustration, behind the office door. I said a few things about the bucket and left the room, which is what I was doing when I tripped over the bucket.

On the second senario, I knew that in the past Det. A.J. Barton has said in front of other officers used vulgar and slanderous comments in his opinion and description of Sgt. Osanitsch. He on many occasions would talk this way about Sgt. Osanitsch including dealings with Sgt. Osanitsch when he was on the ERT team and how Sgt. Osanitsch was the ringleader in him being kicked off the ERT team. Knowing this, when I was told by Officer Boutin that Sgt. Osanitsch was going to be my new boss in NET. I told Officer Boutin that he wasn't going to be my new boss that he (Osanitsch) was his (meaning Barton) lover. I asked Barton a few times and he ignored me, as he was busy on computer. I did say it a few times however it wasn't anything extrapolated. I then left the room at the time.

You and I had a conversation in the hallway when I was first told of this IA and I told you then before knowing anything that the bucket incident was accidental and I tripped and almost fell over. The lover statement was a joke in nature, no different than the many many many times over the years in jest this type of statement is use by so many employees to state dislike for someone, as Det. A.J. Barton dislike Sgt. Osanitsch.

I have complained in the past and the very recent past about Det. A.J. Barton's antics, untruths, half-truth and deceit in dealing with him. Other Detectives have left the unit strickly because of him and do not want to work with him. If you disagree with him he pouts. When he is told to do something by a supervisor, he can never do it without trying to change it or skirting around what he is told to do. This has cause problems in investigations, delays and leaves everyone guessing,what's next?  This complaint is another one of those half truths and exaggerations. You can also see from the trivial nature of this juvinile complaint, that it is retalitory in nature because of a recent complaint I filed about him and his office antics.

BRISTOL POLICE DEPARTMENT

DAY Wednesday   DATE 09-15-99   TIME _____

TO: Det. Lt. Killiany

FROM: Det. Sgt. Mullaney

SUBJECT: Discipline   RE: Det. A. Barton

Sir;

    On 09-14-99, I issued Det. A. Barton a written reprimand regarding the incident at Meineke Muffler that I previously reported to you. The reprimand was for violations for Code of Conduct Article I, Section 1.00 and also Article II, Section 2.22.

    In addition, I have spoken to Det. Barton regarding his responsibilities while at work. It was explained to him that input from employees is acceptable and encouraged during the course of an investigation. He was informed that his level of input rose to the point where he engaged in arguing his point and caused a scene. He was further advised that once a decision is made by any supervisor, that it is his responsibility to comply with the decision at that time.

    Sgt. E. Osanitsch witnessed the issuance of the reprimand and the above discussion with Det. Barton.




# BRISTOL POLICE DEPARTMENT
131 North Main Street
Bristol, CT 06010

August 20, 2002

TO : Capt. Kalwat

FROM : Det. Kevin Mellon

SUBJECT : Meineke Muffler 8-31-99.

I was assigned to this incident involving the controlled delivery of a quantity of drugs through a carrier service that had been originally discovered by West Hartford Police. Det. Lennon was assigned as the actual case officer. As the Bristol end of the investigation commenced, the delivery was made to the muffler shop and was signed for by an employee. It appeared the employee would be signing for an outside suspect who did not work at the muffler shop. These officers moved in to seize the evidence and take the involved employee into custody and to try to lure the other outside suspect to the muffler shop.

There came a point at the muffler shop scene when it appeared that the attempt to lure the outside involved suspect would not be successful. Sgt. Mullaney and Det. Lennon were discussing this and the on-sight arrest of the involved muffler shop employee that Sgt. Mullaney had ordered.

At one point, Det. Andy Barton became involved in this discussion. Det. Barton apparently did not want to arrest the muffler shop employee at the time. Det. Barton became rather animated and louder in pressing his point of view on how the investigation should continue. Det. Barton's view and Sgt. Mullaney's view were different. Sgt. Mullaney wanted the employee arrested now. There was sufficient probable cause to arrest the employee at the time. Det. Barton continued to debate and dispute the arrest with Sgt. Mullaney, becoming more upset and vocal as he (Barton) went on. This happened in front of the West Hartford detectives and the other muffler shop employees who were not involved in the drug case. Sgt. Mullaney had to sternly advise Det. Barton that the decision was made to arrest the employee and the decision was final.

It reached a point where Ofc. Tavares and I decided to leave the muffler shop and the arrest debate. We went to make a sweep of the area roads in case the other outside involved suspect was lurking in the area or still on his way to pick up the drugs. That suspect was not located and the scene was eventually cleared and the employee brought into Police H.Q.