# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

__Barton__

v.

__City of Bristol Et al.__

CIVIL CASE NO.
3:02CV1210 (PCD)

## NOTICE OF APPEAL

1.    Pursuant to F. R .A. P. 4(a)(1), the plaintiff hereby gives notice and appeals to the United States Court of Appeals for the Second Circuit from the following Judgment or Order (attach the Judgment or Order): The Court's granting of the defendants' Motions for Summary Judgment.

2.    The Judgement/Order in this action was entered on November 26, 2003.

_____
Signature

Erin I. O'Neil_____
Print Name

Brewer & O'Neil, LLC
818 Farmington Avenue
West Hartford, CT 06119
(860) 523-4055

Telephone Number

Date: 12/23/03

Note: You may use this form to take an appeal provided that it is received by the Office of the Clerk of the U.S. District Court withing 30 days of the date on which the judgment was entered (60 days if the United States or an officer or agency of the United States is a party).

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed via U.S. Mail, postage pre-paid, on December 23, 2003, to the following:

Alexandria Voccio
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114
fax: 860-246-2375

Melissa A. Scozzafava, Esq.
Kernan & Henry, LLP
PO Box 2156
Waterbury, CT 08069
fax: (203) 754-2353

Eric R. Brown, Esq.
AFSCME Council 15
90 Pratt Street
Meriden, CT 06450
fax: (203) 237-2262

Erin I. O'Neil



UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

2003 NOV 26 P 2: 35

ANDREW BARTON

.S. DISTRICT C
NEW HAVEN. CO

v.

Civil No.  3:02 CV 1210 (PCD)

CITY OF BRISTOL, AND IN THEIR INDIVIDUAL
AND OFFICIAL CAPACITIES, RICHARD MULLANEY,
POLICE SERGEANT; BRIAN SUCHINSKI, POLICE
DETECTIVE; AFSCME LOCAL #754; AND IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY MELVIN
DEKOW, UNION PRESIDENT

### JUDGMENT

This matter came on for consideration on the defendants' motions for summary judgment before the Honorable Peter C. Dorsey, Senior United States District Judge.

The Court has reviewed all of the papers filed in conjunction with the motions and on November 25, 2003, entered a Ruling on Defendants' Motions for Summary Judgment granting the relief.

It is therefore ORDERED and ADJUDGED that summary judgment is entered for the defendants and the case is closed.

Dated at New Haven, Connecticut, this 26th day of November, 2003.

KEVIN F. ROWE, CLERK
By

*Patricia A. Villano*

Patricia A. Villano
Deputy Clerk

**RECEIVED**

DEC 9 4 2003

EOD: 12/1/03



UNITED STATES DISTRICT COURT

RECEIVED

NOV 25 2003    DISTRICT OF CONNECTICUT

FILED

Nov 25  4:02 PM '03

U.S. DISTRICT COURT
...........

ANDREW BARTON,
     Plaintiff,

    -vs-

CITY OF BRISTOL, *et. al.*
    Defendants.

:
:
:
:
: Civil No. 3:02cv1210 (PCD)
:
:
:

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants Suchinski, Mullaney, Dekow, Bristol Police Union Local #754, and the City of Bristol move for summary judgment. [Doc. No. 64, 68, 70]. For the reasons stated herein, Defendants' motions are **granted**.

### I.    Background[1]

Plaintiff was hired by the Bristol Police Department in August, 1986. In June, 1997 he was promoted to detective and thereafter assigned to the narcotics unit. Mullaney, a Detective Sergeant in the Bristol Police Department, supervised detectives on the narcotics team, including Plaintiff. On August 31, 1999, Suchinski was a Bristol Police Department Detective assigned to the narcotics unit.

On August 31, 1999, the Bristol and West Hartford police departments were involved in a joint narcotics investigation in which a controlled delivery of intercepted marijuana was arranged at Meineke Muffler in Bristol. A Meineke employee, Rivera, signed for and accepted the

---

[1]    The facts are taken from the parties' Local Rule 56(a) statements, and are undisputed unless stated otherwise.

delivery. Rivera told the detectives that he had received the package for an acquaintance named "Eddie" in exchange for $1,000. He paged "Eddie" three times to notify him that the package arrived, but "Eddie" failed to respond. Mullaney determined that probable cause existed to arrest Rivera, and advised Detective Lennon of his decision. After advising Plaintiff of Mullaney's decision, Lennon requested that Plaintiff speak with Mullaney. When Mullaney reiterated his decision to arrest Rivera, the three officers (Mullaney, Lennon, and Barton) conversed about the decision.

According to Plaintiff, after Mullaney had decided to arrest Rivera, Mullaney asked Plaintiff and Lennon why the suspect should not be arrested, and they responded to his questions. Although Plaintiff admits that a discussion occurred, he denies Defendants' allegation that he argued with Mullaney in public view.[2]

Mullaney submitted a report to Detective Lieutenant Killiany regarding the incident, stating that Plaintiff's vigorous and public opposition to his decision constituted a scene and violated §§ 2.22 and 1.00 of the Bristol Police Department's Code of Conduct.[3] The report was

---

[2]    According to Defendants, Rivera and two other Meineke employees, as well as two other West Hartford detectives and two Bristol detectives, witnessed the argument. Plaintiff denies this, contending that "only three people [were] involved in the discussion."

[3]    Article I §1.00 of the Code of Conduct provides that
> Officers shall conduct themselves at all times, both on and off duty, in such a manner so as to reflect favorably upon the Department. "Conduct Unbecoming an Officer" shall include any conduct which:
>> brings the Police Department into disrepute; or
>> reflects discredit upon the officer or the Police Department; or
>> impairs the operation, efficiency, or discipline of the Police Department or any officer; or
>> adversely effects the morale or efficience of the Police Department; or
>> has a tendency to adversely effect, lower or destroy public respect and confidence in the Police Department or the officer.

Code of Conduct § 1.00, City of Bristol's Mem. in Supp. of Summ. J. at Exh. B.

Article II of the Code of Conduct identifies "[f]ighting or quarreling with other employees or a

2

reviewed by Killianny, Captain Kalwat, and Bristol Police Chief John DiVenere. After finding Plaintiff's behavior "totally inappropriate and border[ing] on insubordination," Killiany, Kalwat, and Divenere directed Mullaney to issue Plaintiff a written reprimand for violating §§ 2.22 and 1.00. On September 4, 1999, Mullaney issued Plaintiff the reprimand.[4]

On September 24, 1999, Captain Kalwat, Commander of the Emergency Response Team ("ERT"), informed Plaintiff he was being removed from the ERT for breaching the Code of Conduct. Pursuant to Bristol Gen. Order 95-1-134, a detective may be removed from the ERT for "[a] serious, sustained, violation of the [Bristol Police Department] Code of Conduct as determined by the Chief of Police and ERT Commander." Bristol. Gen. Order 95-1-134, Bristol's Mem. in Supp. of Summ. J. at Exh. H.[5]

Plaintiff had been a member of the ERT since its inception in 1994 or 1995. Assignment to the ERT did not involve any pay change. On December 5, 1997, he had been placed on a six month ERT probation for poor behavior. In 1998 Sergeant Osanitsch raised concerns about Plaintiff's performance on the ERT. Plaintiff's removal from the ERT did not result in any changes to his base salary, seniority, ranking, or title. Although Defendants argue that removal from the ERT did not affect Plaintiff's benefits, Plaintiff alleges that he suffered from loss of overtime, training opportunities, and loss of the general benefit derived from being a member of

---

supervisory officer in the public view" as "conduct unbecoming an employee." Code of Conduct § 2.22, City of Bristol's Mem. in Supp. of Summ. J. at Exh. B.

[4] Although the parties agree that Plaintiff could have been suspended for fifteen days as a consequence, it is unclear from the parties 56(a) statements whether Plaintiff actually was suspended, or just could have been.

[5] Although Plaintiff purports to deny this statement, his denial merely states that "A team member could be removed from the team for a serious violation."

3

the ERT. Plaintiff alleges that his position of the ERT constituted a property right protected by the Fourteenth Amendment.

Mullaney and Suchinski were not involved in supervising the ERT or disciplining ERT members.[6] Defendants deny that Mullaney or Suchinski were personally involved in the decision to remove Plaintiff from the ERT. Plaintiff alleges, without further evidentiary substantiation, that they had influence over the decision. Defendants deny Plaintiff's allegation that Suchinski placed a rubber rat on Plaintiff's desk. Plaintiff concedes that he does not know for a fact that Suchinski placed the rubber rat. Cars used by detectives on the Narcotics Enforcement team are not assigned to particular individuals for personal use.[7]

Plaintiff was a beneficiary of the collective bargaining agreement between Bristol and AFSCME Local #754. On October 1, 1999 he filed a grievance concerning his removal from the ERT. On October 5, 1999, Local #754's Vice President filed a Local Grievance on the removal, which went to Step Four arbitration. The parties dispute what happened in the interim.[8]

Defendant Dekow was President of Local #754 from January 1, 1994 through December 31, 2002. In September, 1999, neither Dekow nor Local #754 engaged in any investigation of Plaintiff. Neither Dekow nor Local #754 had any authority to decide to remove Plaintiff from the ERT or to deprive him of any property or liberty interest he alleges to have enjoyed with Bristol.

---

[6]   Plaintiff purports to deny this statement, but merely states that "[t]he decision making by a supervisor will affect ERT members."

[7]   Plaintiff purports to deny this statement, but merely states that "[t]he vehicles were not assigned at that time."

[8]   Plaintiff contends that the grievance skipped a step in the process. Additional facts pertaining to Local #754 are provided in the discussion of Plaintiff's allegation that the Union breached its duty of fair representation.

Neither Dekow nor Local #754 conspired to have him removed from the ERT or caused him to suffer deprivation of any constitutionally protected interests. Plaintiff never filed internal union charges of misconduct against Local #754 members regarding his complaint. Local #754 is funded by its members' dues and receives no governmental funding. Regulatory control of Local #754 is maintained by AFSCME Council 15 and AFSCME International, the Local's parents. When asked to describe specifically how the Local #754 Defendants allegedly failed to represent him (including specific dates), Plaintiff stated that "the union defendants did not pursue [his] grievance regarding his removal from ERT. The dates are unknown to Plaintiff."

Count One alleges a violation of Plaintiff's Fourteenth Amendment right to Equal Protection against all individual Defendants pursuant to 18 U.S.C. § 1983.

Count Two alleges a violation of Plaintiff's Fourteenth Amendment right to Due Process as to all Defendants pursuant to 18 U.S.C. § 1983.

Count Three alleges a claim of First Amendment retaliation against all individual Defendants pursuant to 18 U.S.C. § 1983.

Count Four alleges a breach of duty of fair representation by Local #754.

Count Five alleges intentional infliction of emotional distress as to all individual Defendants.

Plaintiff seeks (1) compensatory damages of $1,000,000; (2) punitive damages pursuant to state common law and 18 U.S.C. § 1983; (3) attorneys fees and costs under 18 U.S.C. § 1988; (4) lost and future wages; (5) reinstatement into position as Lieutenant with all attendant wages and benefits; and (6) such other relief the Court may deem appropriate.

5

## II.    Standard

A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Summary judgment is proper when reasonable minds could not differ as to the import of evidence. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). "Conclusory allegations will not suffice to create a genuine issue." *Delaware & H. R. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir. 1990). Determinations as to the weight to accord evidence or credibility assessments of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

6

## III.   Discussion

### A.   Threshold Issue–the Union Defendants and Plaintiff's 18 U.S.C. § 1983 Claims

The Union Defendants, Local #754 and Dekow, argue that they cannot be held liable for any alleged violation of 18 U.S.C. § 1983 because they are not state actors. Local #754 Mem. in Supp. of Summ. J. at 9-15.

To state a claim under 42 U.S.C. § 1983, the alleged injury must have been caused by state actors or those acting under color of state law. *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). The Second Circuit has set forth the following criteria to analyze whether an entity's action constitutes state action:

> (1) the degree to which the "private" organization is dependent on governmental aid; (2) the extent and intrusiveness of the governmental regulatory scheme; (3) whether that scheme connotes government approval of the activity or whether the assistance is merely provided to all without such connotation; (4) the extent to which the organization serves a public function or acts as a surrogate for the State; (5) whether the organization has legitimate claims to recognition as a "private" organization in associational or other constitutional terms.

*Jackson v. Statler Foundation*, 496 F.2d 623, 629 (2d Cir. 1973). The Union Defendants argue that Local #754 meets none of these criteria, *see* Local #754 Mem. in Supp. of Summ. J. at 11-13, and Plaintiff does not contest Defendants' position. "Labor unions . . . generally are not state actors," *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002), and Plaintiff does not argue otherwise.

To any extent Plaintiff alleges that the Union Defendants violated his § 1983 by acting in conspiracy with the police, his claim lacks merit. "To state a claim against a private entity on a § 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity

7

acted in concert with the state actor to commit an unconstitutional act." *Spear*, 954 F.2d at 68.

"A merely conclusory allegation that a private entity acted in concert with a state actor does not

suffice to state a § 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324.

Plaintiff's allegation that Dekow and Mullaney were friends does not support a conclusion that

Dekow or the Union conspired with the police so as to fall under the rubric of state action.

Accordingly, because the Union Defendants are not state actors and because Plaintiff fails

to establish that they acted under the color of state law or acted in conspiracy with state actors,

summary judgment is **granted** to Defendants Local #754 and Dekow on all § 1983 claims.[9]

**B.      18 U.S.C. § 1983 Fourteenth Amendment Right to Equal Protection (Count One)**

Count One alleges a violation of Plaintiff's Fourteenth Amendment right to Equal

Protection against all individual Defendants pursuant to 18 U.S.C. § 1983.  Defendants argue that

Plaintiff fails to demonstrate that they treated him differently than similarly situated persons.

Mullaney and Suchinski Mem. in Supp. of Summ. J. at 5-13.

"The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction

that all persons similarly situated should be treated alike.'" *Lawrence v. Texas*, __ U.S. __, 123

S. Ct. 2472, 2484, 156 L. Ed. 2d 508 (2003) (quoting *Cleburne v. Cleburne Living Center, Inc.*,

473 U.S. 432, 439, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985)).  "[E]qual protection analysis

requires strict scrutiny . . . only when the classification impermissibly interferes with the exercise

of a fundamental right or operates to the peculiar disadvantage of a suspect class."

*Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S. Ct. 2562, 49 L. Ed. 2d 520

---

[9]      Moreover, for the reasons stated below, assuming *arguendo* that the Union Defendants were acting under the color of state law, Plaintiff's § 1983 claims fail on their merits.

8

(1976) (*citing San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16, 93 S. Ct. 1278; 36 L. Ed. 2d 16 (1973)). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, . . . the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2000). "[E]qual protection claims can be brought by a 'class of one' where a plaintiff alleges that she has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362-63 (2d Cir. 2002) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000) (per curiam)). Thus, a party asserting a "class of one" claim must show (1) that he was treated differently than others similarly situated, and that this disparate treatment was (2) irrational and wholly arbitrary and (3) intentional. *See Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir. 2001) (citing *Olech*, 528 U.S. at 565)).

Plaintiff alleges that he suffered a loss of overtime, loss of training opportunities, and loss of benefit of being in the ERT position in violation of his right to Equal Protection "because a different set of procedures were used on [him]." Pl. Joint Opp. at 12.[10]

---

[10]    Defendants note that Plaintiff's complaint alleges that Suchinski "placed a rubber rat on [P]laintiff's desk." Comp. Count One ¶ 14. During his deposition, however, Plaintiff admitted that he did not know for a fact that Suchinski had placed the rat there. Mullaney and Suchinski Mem. in Supp. of Summ. J. at 10 (citing Exh. J. at 74). Plaintiff does not explain how this allegation, nor his allegation that Suchinski hid the Police Department's car keys or failed to give him important phone messages (also issues raised in the complaint but not argued in relation to Plaintiff's Equal Protection claim) relate to his equal protection claim.

9

## 1.    Disparate Treatment of Plaintiff

Plaintiff fails to demonstrate that he was treated differently than similarly situated individuals. He relies on unsubstantiated conclusory allegations that he was treated differently. For example, he argues that he "was treated differently than other detectives similarly situated as him by [D]efendants." Pl. Joint Opp. at 9. He offers no evidence of others' treatment. Instead, he argues conclusorily that the reason he was removed from the ERT was pretextual, that Mullaney and Suchinski influenced the decision to remove Plaintiff from the ERT, that Suchinski complained about him to Mullaney, that Mullaney failed to address the alleged harassment by Suchinski, and that Plaintiff suffered an adverse employment action. Pl. Joint Opp. at 9-11.

He conclusorily alleges that he was "treated differently than other detectives similarly situated" and that "a different set of procedures" were used on him. Pl. Joint Opp. at 9-10, 12. He fails to identify individuals who were treated differently in similar situations or any other procedures used on any identified individuals. His allegation that Mullaney's friendship with Suchinski deterred Mullaney from "disciplining or reprimanding Suchinski, [d]espite Suchinski's history of personality conflicts" with Department members, is conclusory, and Plaintiff fails to point to specific evidence that Suchinski was treated differently in a situation similar to Plaintiff's situation. He produces no evidence to demonstrate that similar conduct (e.g. involving allegations of public misconduct) by other officers under Mullaney's supervision were unreported or not investigated. Although he alleges that Mullaney kept detailed notes of his days off, which Mullaney did not keep for other employees, he produces no evidence to support this

allegation.[11]  *See* Pl. Opp. at 11.  The cases Plaintiff cites involve issues relating to Title VII or ADEA claims, and not Equal Protection claims.  *See* Pl. Opp. at 11-12.

Accordingly, because Plaintiff fails to demonstrate that he was subjected to disparate treatment and was treated differently than other similarly situated individuals, summary judgment is **granted** to all individual Defendants on Count One.

**C.    18 U.S.C. § 1983 Fourteenth Amendment Right to Due Process (Count Two)**

Count Two alleges a violation of Plaintiff's Fourteenth Amendment right to Due Process as to all Defendants pursuant to 18 U.S.C. § 1983.  Plaintiff argues that both his procedural due process and substantive due process rights were violated by Defendants.

"[T]he Due Process Clause of the Fourteenth Amendment confers both substantive and procedural rights."  *Albright v. Oliver*, 510 U.S. 266, 272, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994).  Plaintiff's claim that he was denied procedural due process apparently hinges on his contention that he was deprived of overtime pay and other benefits when he was removed from the ERT.[12]  Pl. Opp. at 6-7.  He argues that the City and the individual Defendants violated his substantive due process rights because their actions "shock the conscience."  Pl. Opp. at 12-14.

---

[11]    Assuming *arguendo* that Plaintiff did produce evidence of specific instances, he does not demonstrate that Mullaney's actions were irrational or arbitrary.

[12]    Although Plaintiff's complaint alleges that the individual Defendants violated his procedural due process rights, Compl. Count One ¶¶ 4-5, his opposition memorandum only raises this claim against the City.  Pl. Opp. at 6 ("Plaintiff has stated a claim for violation of procedural due process against the City").  Plaintiff's caption in Count One of his complaint states that his due process claim generally lies against all Defendants.  Because his opposition memorandum only addresses the City, it is concluded that Plaintiff concedes any procedural due process claims against the individual Defendants and Local #754.  Assuming *arguendo* that his claim lies against all Defendants, it would fail on the merits for the same reason his procedural due process claim against the City fails.

11

### 1. Procedural Due Process

Plaintiff claims a violation of due process against the City, Pl. Opp. at 6, citing cases involving property rights in employment which he does not apply to his facts. Defendants argue that his claim of right to the opportunity to work overtime does not qualify as a protectable property right. Bristol Mem. in Supp. of Summ. J. at 10-11.

"In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1060-61 (2d Cir. 1993) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976)). "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 576, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1971). To establish a property interest, a plaintiff must demonstrate more than an abstract need or desire for it, and more than a unilateral expectation; he must instead show that he had a legitimate claim of entitlement, arising from some independent basis in law. *Roth*, 408 U.S. at 577. "[N]ot every contractual benefit rises to the level of a constitutionally protected property interest." *Ezekwo v. NYC Health & Hosp. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991).

A two-prong test applies to analyze procedural due process claims. *Narumanchi v. Bd. of Trustees*, 850 F.2d 70, 72 (2d Cir. 1988). First, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Id.* (citation omitted). Second, "*[i]f* a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process." *Id.* (emphasis in original).

12

### 1.    Threshold Issue–Existence of Property or Liberty Interest

Plaintiff asserts a property interest in membership on the ERT and its attendant benefits (overtime pay and prestige). In two paragraphs devoted to his procedural due process claim, he merely describes the general concept of procedural due process without analysis. *See* Pl. Opp. at 6-7. In discussing equal protection, he relies on cases regarding whether a change in working conditions constitutes an adverse employment action. It is not clear whether he intends this argument to apply to his procedural due process claim.[13] *See* Pl. Opp. at 11-12. The cases he cites contain no discussion of employees' property interests in membership on a special unit with overtime pay, where the underlying position was retained. *See e.g. Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (discussing adverse employment actions in an ADEA case); *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) (same); *De La Cruz v. New York City Human Resources Admin. Dep't. of Social Serv.*, 82 F.3d 16, 21 (2d Cir. 1996) (in a Title VII action, finding plaintiff met his prima facie burden and "arguably" established an adverse employment action, albeit "quite thin," when he alleges he was transferred from an "elite" department to a "less prestigious" one).

Plaintiff cites no authority for the proposition that the analysis of an adverse employment action in the discrimination context (e.g. Title VII and ADEA) applies to whether an individual has a protected property interest in overtime pay and intangible benefits in the context of a procedural due process claim. Assuming *arguendo* that Plaintiff suffered an adverse employment action because of the lost overtime, training opportunities, and prestige of being on the ERT, Plaintiff fails to demonstrate that he had a protected property interest in such benefits.

---

[13]    His discussion of these cases is construed as applying to his procedural due process claim.

13

"[T]he right to work overtime is not a constitutionally protected property interest . . . . [and] courts have not found an unconstitutional deprivation of property . . . where an employee has retained his rank and base pay after an administrative action." *Caniello v. City of New York*, No. 00 Civ. 3009 (BSJ), 2001 U.S. Dist. LEXIS 20, at *1 (S.D.N.Y. Jan. 4, 2001). Plaintiff's wish that he work overtime as an ERT member is "at best an expectation rather than an entitlement." *Id.* at *3. Plaintiff identifies no contractual, regulatory or statutory provision that would have entitled him to work overtime. *See Ghaly v. United States Dep't of Agric.*, 228 F. Supp. 2d 283, 291-92 (S.D.N.Y. 2002).

Accordingly, summary judgment is **granted** to Defendants on Plaintiff's § 1983 claim that he was denied procedural due process.

### 2.    Substantive Due Process

Plaintiff alleges that Bristol and all individual Defendants violated his substantive due process rights by engaging in "a pattern of outrageous conduct and removing him from ERT." Compl. Count Two ¶ 2.

"The protections of substantive due process are available only against egregious conduct which goes beyond merely offending some fastidious squeamishness or private sentimentalism and can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 & n.6 (2d Cir. 1973)). "[M]alicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 252 (2d Cir. 2001).

14

Plaintiff outlines the standard of substantive due process, but does not apply the law to his facts demonstrate that Defendants' conduct shocks the conscience. *See* Pl. Opp. at 14. While he conclusorily characterizes Defendants' actions as "outrageous," he fails to demonstrate that Defendants behaved outrageously so as to shock the conscience. Removal from the ERT cannot be deemed brutal and sadistic. Bristol Gen. Order 95-1-134 contemplates and clearly outlines that an officer may be removed from the ERT. Bristol Police Dep't Gen. Order 95-1-134, Bristol's Mem. in Supp. of Summ. J. at Exh. H ("ERT Member Removal Process"). A rubber rat once placed on his desk, his not being given all of his phone messages (although he can only identify one non-receipt of message allegedly left with Suchinski), and the car keys occasionally being locked in a desk and not easily available, do not arise to outrageous, sadistic, and brutal conduct that shocks the conscience.

Defendants are **granted** summary judgment on the substantive due process claim.

## D.    First Amendment Retaliation Claim (Count Three)

Plaintiff alleges that all individual Defendants denied "his right to seek redress without fear of or reprisal, as guaranteed to him by the First Amendment," and that his "removal from ERT was retaliatory, vindictive, and in direct response to the false allegations against Plaintiff on [August 31, 1999]. Compl. Count Three ¶¶ 1, 3. This claim hinges on the filing of a grievance against Mullaney (his supervisor). Pl. Opp. at 15.

"A plaintiff claiming First Amendment retaliation [must] demonstrate[] that: (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that his speech was a motivating factor in the determination." *Mandell v. County of*

15

*Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003) (internal quotations and citations omitted). "If the plaintiff produces evidence of these three elements, the government may nevertheless escape liability . . . either . . . by demonstrating by a preponderance of the evidence that it would have taken the same adverse action in the absence of the protected speech [or by showing] that plaintiff's speech was likely to disrupt the government's activities, and the likely disruption was sufficient to outweigh the First Amendment value of plaintiff's speech." *Id.* (internal quotations and citations omitted).

"In determining whether employee speech is protected by the First Amendment, a court first must decide whether the speech addresses a matter of public concern." *Lewis*, 165 F.3d at 161. "The requirement that the speech at issue involve matters of public concern 'reflects both the historical evolvement of the rights of public employees, and the common-sense realization that government offices could not function if every employment decision became a constitutional matter.'" *Ezekwo v. NYC Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991) (quoting *Connick v. Myers*, 461 U.S. 138, 143, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983).

"Whether an employee's speech addresses a matter of public concern is a question of law." *Lewis*, 165 F.3d at 163. "In reaching this decision, the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Id.* at 163-64. "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 U.S. at 147.

16

"[S]peech on a purely private matter, such as an employee's dissatisfaction with the conditions of his employment, does not pertain to a matter of public concern." *Lewis*, 165 F.3d 164. The mere fact that a plaintiff's complaint may have arisen in the context of a personal dispute does not eliminate the possibility that the matter may be of public concern. *Johnson v. Lincoln Univ. of Commonwealth Sys. of Higher Educ.*, 776 F.2d 443, 451 (3d Cir. 1985).

### 1.    Plaintiff's Alleged Constitutionally Protected Speech

Plaintiff alleges that he was removed from his ERT position on September 24, 1999, and that he filed his grievance concerning his removal on October 1, 1999. Compl. Count One ¶¶ 26, 27. His removal from the ERT cannot be deemed caused by his later-filed grievance. He alleges that he was reprimanded on September 14, 1999, due to a "false allegation by Mullaney," Compl. Count One ¶ 24, but does not allege that the false accusation was triggered by any constitutionally protected speech. Plaintiff argues that after he filed his grievance, Mullaney harassed him by keeping detailed notes of his days off. Pl. Opp. at 16. Even if this was triggered by any constitutionally protected speech, Plaintiff fails to establish that tracking his time off constitutes an adverse employment action. "[A] plaintiff may suffer an 'adverse employment action' if she endures a materially adverse change in the terms and conditions of employment." *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (internal citations and quotations omitted). "To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 649 (2d Cir. 2000) (citing *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). "A materially adverse change might be indicated by a termination of employment, a demotion

17

evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (citing *Crady*, 993 F.2d at 136). Plaintiff may not have liked having Mullaney monitor his time off, but his subjective unhappiness does not transform it into an adverse employment action. *See Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996) (finding no "materially adverse change in the terms and conditions of employment" where plaintiff was unhappy with a lateral transfer, and stating that an employment action "involving no reduction in pay and no more than a minor change in working conditions will not [constitute an adverse employment action,] otherwise every trivial personnel action that an . . . employee did not like would form the basis of a discrimination suit.").

He further alleges that after he filed this suit, he asked Police Chief Divenere to investigate his claims that Suchinski harassed him by posting derogatory messages on public union bulletin boards. Pl. Opp. at 17. However, Divenere is not a defendant in this suit, and his alleged failure to investigate Plaintiff's complaints is not at issue here and cannot be the basis of Plaintiff's claim.

Plaintiff alleges that his removal from the ERT was "in direct response to the false allegations against [him on August 31, 1999]." Compl. Count Three ¶ 3. He fails to state a claim, as no prior speech is alleged, let alone constitutionally protected speech.

Moreover, Plaintiff fails to establish that his alleged speech (grieving his ERT removal) was of public concern. "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the

18

wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick*, 461 at 147. "[S]peech on a purely private matter . . . does not pertain to a matter of public concern." *Lewis v. Cowen*, 165 F.3d 154, 164 (2d Cir. 1999).

Plaintiff's memo on October 1, 1999, to Detective Mendella states that "Capt. Kalwat called me into his office and informed me he was removing me from the ERT Team. I would like to Grieve this." Mullaney and Suchinski's Mem. in Supp. of Summ. J. Exh. I. His complaints relate to his dissatisfaction with being removed from the ERT, and are "personal in nature and generally related to [his] own situation." *Ezekwo v. NYC Health & Hospitals Corp.*, 940 F.2d 775, 781 (2d Cir.). His allegations reflect that "a single employee is upset with the status quo," which does not constitute a public concern. *Connick*, 461 U.S. at 148. Complaints about his personal dissatisfaction do not state a claim upon which relief can be granted for First Amendment retaliation under 42 U.S.C. § 1983.

Accordingly, summary judgment is **granted** to Defendants on Plaintiff's First Amendment retaliation claim.

### F.    Breach of Duty of Fair Representation–Union Defendant (Count Four)

Plaintiff alleges that Defendant Local #754 breached its duty of fair representation by failing to file Plaintiff's grievance with the state and by failing to keep him informed of his grievance's status. Compl. Count Four ¶ ¶ 5, 6.

19

1.    **Additional Facts Pertaining to the Union**

Dekow was President of Local #754 from January 1, 1999 through December 31, 2002.

Defendants allege that prior to October 1, 1999, Plaintiff never notified Local #754 that he was

the subject of an investigation by the Bristol Police Department,[14] and did not request the Union

to file a grievance on his behalf.[15]  When asked to describe with specificity every way the Union

failed to represent him, including dates, Plaintiff responded "[t]he Union Defendants did not

pursue Plaintiff's grievance regarding his removal from ERT.  The dates are unknown to

Plaintiff."

On October 1, 1999, Local #754 Vice President (the "Union VP") received Plaintiff's

memo on Bristol Police Department letterhead, requesting that the Union grieve his removal

from the ERT, which occurred on September 24, 1999.  On October 5, 1999, the Union VP filed

Local Grievance number 99-38, grieving Plaintiff's removal from the ERT team.  Police Chief

John Divenere denied the grievance at the first step.

Defendants allege that the Union Grievance Chairman (the "Union GC") filed the

grievance to the second step of the grievance process on October 20, 1999, and that he filed

grievances with the Director of Personnel and Police Commission seeking a hearing on

November 12, 1999.  Plaintiff denies these allegations.  Plaintiff also denies that on December 7,

1999, the grievance was sent to the AFSCME Council 15 Legal Department and arbitration was

---

[14]   Plaintiff purports to contest this, alleging that "[t]here were numerous conversations about the
reprimand and removal."  Because Plaintiff fails to support his statements with citations to the
record (and fails to specify dates and individuals involved), Defendants' statement is deemed
uncontested.

[15]   Plaintiff purports to deny this statement, alleging that "[t]he 'union' was notified.'"  Again, he fails
to support his statement with record citations, and his statement does not directly respond to
Defendants' stated fact, therefore Defendants' fact is deemed uncontested.

requested pursuant to the arbitration agreement. Notwithstanding Defendants' demonstration to

the contrary, Plaintiff denies that the grievance was filed with the State Board of Mediation and

Arbitration ("SBMA"), and that the SBMA scheduled a hearing on Plaintiff's grievance for May

3, 2000. Plaintiff denies that the Union GC sent him a message advising him of the hearing.

Notwithstanding Defendants' submission into evidence the Arbitration Award pertaining to

Plaintiff's case, which indicates that the hearing occurred on May 3, 2000 and that a decision was

rendered on April 19, 2001 denying the grievance as non-arbitrable, Plaintiff denies that the

hearing was held on May 3, 2000 or that a decision and award was rendered on April 19, 2001.

Article 15:1:4 of the Collective Bargaining Agreement provides that:

> STEP FOUR: Should the grievance not be settled to the satisfaction of the Union, it may
> within twenty (20) calendar days after receipt of the decision rendered in Step Three
> submit the grievance to arbitration, with a copy to the Director of Personnel. Arbitration
> shall be conducted by the Connecticut State Board of Mediation and Arbitration in
> accordance with its rules and regulations.

Notwithstanding the written Arbitration Award's representation that the Union objected to

holding a hearing in the Step Two grievance before the Assistant Director of Personnel, rather

than the Director of Personnel, Plaintiff denies that the Union took this position. Finding that the

City did not violate the Collective Bargaining Agreement, the arbitrators held that the grievance

was not arbitrable because the Union failed to exhaust the available grievance procedures.

Plaintiff denies this, notwithstanding the written Arbitration Award.

The Union made the exact same claim on behalf of Officer Joel Estes following his

removal as DARE officer for the Bristol Police Department in a grievance on September 12,

2000 before the State Board of Mediation and Arbitration. On April 21, 2001, a panel of

21

arbitrators (different from the ones who heard Plaintiff's grievance) found in the Union's favor and held that the grievance was arbitrable.

Plaintiff never filed any internal Union charges of misconduct against any Union members, including Dekow, pertaining to any facts alleged in his complaint. Local #754 is funded through union dues paid by its members, receives no governmental funding, and plays no role in the appointment to the ERT in the Bristol Police Department.

### 2. Analysis

Plaintiff contends that Local #754 breached its duty of fair representation because (1) it "intentionally skipped a step in the process" and (2) did not keep him informed of the status of his grievance. Pl. Opp. at 19.

Pursuant to the Connecticut General Statutes, "[e]mployee organizations . . . are prohibited from . . . breaching their duty of fair representation . . . ." CONN. GEN. STAT. § 7-470 (b)(3). "Two elements must be proven for a breach of the duty of fair representation claim: The union's conduct must, first, have been arbitrary, discriminatory or in bad faith, and second, it must have seriously undermined the arbitral process." *Barr v. United Parcel Service, Inc.*, 868 F.2d 36, 43 (2d Cir. 1989) (*citing Vaca v. Sipes*, 386 U.S. 171, 190, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1966); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567, 47 L. Ed. 2d 231, 96 S. Ct. 1048 (1976)). "Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Id.* at 44. "Any substantive examination of a union's performance . . . must be highly deferential." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78, 111 S. Ct. 1127; 113 L. Ed. 2d 51 (1991). "Although a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion, an

22

employee does not have an absolute right to have his or her grievance taken to arbitration." *Vaca*, 386 U.S. at 191.

"To survive a motion for summary judgment on this issue, a plaintiff must set forth concrete, specific facts from which one can infer a union's hostility, discrimination, bad faith, dishonesty or arbitrary exercise of discretion." *Rennie v. Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union*, 38 F. Supp. 2d 209, 215 (D. Conn. 1999). "Conclusory allegations without supporting facts demonstrating the union's lack of good faith fail to show a valid claim." *Id.*

Plaintiff argues that the union "intentionally skipped a step in the process," that "Mullaney was friends with . . . Dekow," and that the union failed to file his grievance with the state and failed to keep him informed. Pl. Opp. at 18-19.

Local #754 argues that it acted in good faith and processed Plaintiff's grievance through to arbitration. It notes that in Plaintiff's case it made the same argument successfully made in the Estes grievance, that the City was not in compliance with the grievance process. Plaintiff produces no evidence to demonstrate that Local #754 acted arbitrarily or in bad faith. His allegation that Mullaney and Dekow were friends does not support a conclusion that the Union acted in bad faith. There is no evidence that the Union treated Plaintiff's grievance in a perfunctory fashion, and the fact that the arbitrators rejected the argument that was successful in Estes does not mean that the Union acted arbitrarily towards Plaintiff. The Union did not believe that it was skipping a step. Its decision was based on its belief that the City had failed to comply with the terms of the agreement.   At most the union committed a tactical error, in no way suggestive of animosity to Plaintiff or his claim. Plaintiff produces no evidence to support his

23

conclusory allegation that the Union failed to keep him informed so as to affront his rights. Although Plaintiff claims that Local #754 failed to file his grievance with the state, he fails to produce any evidence to contest Defendant's evidence, which includes a Grievance Arbitration Form on State Board of Mediation and Arbitration letterhead and includes a "received" stamp indicating that the Department of Labor Board of Mediation and Arbitration received the document on December 9, 1999.[16] Dekow and Local #754 Mem. in Supp. of Summ. J. at Exh. 11. Defendants also include as evidence the written Arbitration Award pertaining to Plaintiff's grievance. Dekow and Local #754 Mem. in Supp. of Summ. J. at Exh. 14. Plaintiff cannot create a genuine issue of material fact by making a simple conclusory statement, based solely on his own affidavit, that the Union failed to file his grievance with the state, in light of the clear evidence showing that such grievance was filed.

Plaintiff fails to raise a genuine issue of material fact that #754 breached its duty of fair representation, and summary judgment is **granted** to the Union Defendants on Count Four.

### F.    Intentional Infliction of Emotional Distress (Count Five)

Plaintiff alleges that all individual Defendants acted extremely and outrageously and intended to inflict severe emotional distress on him. Compl. Count Five ¶ ¶ 3, 4.

Intentional infliction of emotional distress requires a plaintiff to allege (1) defendant intended to inflict emotional distress, or knew or should have known that it was a likely result of its conduct, (2) extreme and outrageous conduct, (3) the conduct caused plaintiff's distress and (4) plaintiff's emotional distress was severe. *See DeLaurentis v. New Haven*, 220 Conn. 225,

---

[16]    This document indicates that Eric Brown, Staff Attorney for the Connecticut Council of Police Unions #15, AFSCME, filed the request for grievance arbitration regarding Grievance No. 99-38.

24

266-67, 597 A.2d 807, 827-28 (1991). "In order to state a cognizable cause of action, Plaintiff must not only allege each of the four elements, but also must allege facts sufficient to support them." *Whitaker v. Haynes Constr. Co.*, 167 F. Supp. 2d 251, 254 (D. Conn. 2001).

The "extreme and outrageous" standard requires that the conduct "exceed[] all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Petyan v. Ellis*, 200 Conn. 243, 254 n.5, 510 A.2d 1337 (1986). It must be alleged that an average representative of the community would be aroused to anger, causing him or her to exclaim "Outrageous!" *See Carrol v. Allstate Ins. Co.*, NO. 16758, 2003 WL 312903, at *4 (D. Conn. Feb. 25, 2003) (citing 1 RESTATEMENT (SECOND), TORTS § 46, cmt (d) (1965)); *Appleton v. Board of Educ.*, 254 Conn. 205, 210, 757 A.2d 1059 (2000). Conduct that is "merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id.* Whether conduct meets this standard requires determination by the court in the first instance. *See Collins v. Gulf Oil Corp.*, 605 F. Supp. 1519, 1522 (D. Conn. 1985). Connecticut state courts and "federal district courts in the Second Circuit have interpreted the qualification of extreme and outrageous strictly." *Whitaker*, 167 F. Supp. 2d at 255 (citing cases illustrating what is and is not extreme and outrageous conduct).

Although Plaintiff alleges that Defendants intentionally inflicted emotional distress, he offers no evidence of any extreme and outrageous behavior. His reply devotes a scant paragraph discussing the standard of intentional infliction of emotional distress. Pl. Opp. at 17. He does

25

not demonstrate precisely what actions of which Defendants were extreme and outrageous,[17] and

he fails to respond to Defendants' arguments that their actions were not extreme and outrageous.

*See e.g.* Mullaney and Suchinsky's Mem. in Supp. of Summ. J. at 23-27. Accordingly, his claim

fails and Defendants are **granted** summary judgment on Count Five.[18]

---

[17]   To any extent Plaintiff argues that Defendants behaved extremely and outrageously in removing
him from the ERT, his claim lacks merit. As noted earlier, the ERT procedures contemplate
removal in certain circumstances, and nothing in the removal process as applied to Plaintiff was
extreme and outrageous. To any extent he argues that the rubber rat incident, the missing phone
message, and the locked car keys constitute extreme and outrageous conduct, such conduct fails to
meet the stringent standards required by Connecticut law. *Whitaker,* 167 F. Supp. 2d at 255.
Plaintiff fails to establish that Defendants' conduct exceeds all bounds of decency and is extreme
and outrageous.

[18]   In addition, as Defendants Dekow and Local #754 note, Plaintiff fails to set forth specific facts to
support his allegation that his distress was severe. Dekow and AFSCME Local 754's Mem. in
Supp. of Summ. J. at 27-28.

26

## IV.    Conclusion

For the reasons stated herein, Defendants Richard Mullaney and Brian Suchinski's

motion for summary judgment [Doc. No. 64] is **granted**, Defendants Bristol Police Union and

Melvin Dekow's motion for summary judgment [Doc. No. 68] is **granted**, and Defendant City of

Bristol's motion for summary judgment [Doc. No. 70] is **granted**.  The clerk shall close the file.

SO ORDERED.

Dated at New Haven, Connecticut, November 2Y, 2003.

Peter C. Dorsey
United States District Judge

27